1  Lionel Z. Glancy (#134180)
2  Robert V. Prongay (#270796)
   Charles H. Linehan (#307439)
3  Pavithra Rajesh (#323055)
4  **GLANCY PRONGAY & MURRAY LLP**
   1925 Century Park East, Suite 2100
5  Los Angeles, California 90067
6  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
7  Email: info@glancylaw.com

8  *Counsel for Plaintiff*
9  *Srinivasan Venkataraman*

10
                **UNITED STATES DISTRICT COURT**
11
                **CENTRAL DISTRICT OF CALIFORNIA**
12

13  SRINIVASAN VENKATARAMAN,        Case No.
    Individually and On Behalf of All
14  Others Similarly Situated,       **CLASS ACTION COMPLAINT
                                     FOR VIOLATIONS OF THE**
15          Plaintiff,               **FEDERAL SECURITIES LAWS**

16          v.

17  KANDI TECHNOLOGIES GROUP,
18  INC., XIAOMING HU, CHENG
    WANG, BING MEI, LIMING CHEN,
19  JERRY LEWIN, and HENRY YU,

20          Defendants.

21

22

23

24

25

26

27

28

                    CLASS ACTION COMPLAINT

Plaintiff Srinivasan Venkataraman ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Kandi Technologies Group, Inc. ("Kandi" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Kandi; and (c) review of other publicly available information concerning Kandi.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Kandi securities between June 10, 2015 and March 13, 2017, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Kandi, through its subsidiaries, designs, produces, manufactures, and distributes electric vehicles (EVs) products, EV parts, and off-road vehicles in the People's Republic of China and internationally.

3.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) certain areas in the Company's previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 required adjustment; (2) in turn, the Company lacked effective controls over financial reporting; and (3) as a result, Defendants' statements about the Company's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

4.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

5.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

7.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

8.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

9.     Plaintiff Srinivasan Venkataraman, as set forth in the accompanying certification, incorporated by reference herein, purchased Kandi securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

10.     Defendant Kandi is incorporated under the laws of Delaware with its principal executive offices located in Jinhua, Zhejian Province, People's Republic of China. Kandi's common stock trades on the NASDAQ exchange under the symbol "KNDI."

11.    Defendant Xiaoming Hu ("Hu") has been the Company's Chief Executive Officer, President and Chairman of the Board throughout the Class Period.

12.    Defendant Cheng Wang ("Wang") was the Company's CFO from May 1, 2015 until his resignation on November 14, 2016.

13.    Defendant Bing Mei ("Mei") was the Company's CFO from November 14, 2016, through the end of the Class Period.

14.    Defendant Liming Chen ("Chen") is, and was at all relevant times, a director of the Company. He has served as a director of Kandi since May 1, 2012, and currently serves as Chair of the Compensation Committee. Defendant Chen is also a member of the Audit Committee and the Nominating and Corporate Governance Committee.

15.    Defendant Jerry Lewin ("Lewin") is, and was at all relevant times, a director of the Company. Defendant Lewin has served on the Board since November 2010, and is a member of the Audit Committee.

16.    Defendant Henry Yu ("Yu") is, and was at all relevant times, a director of the Company. He has served in this role since July 1, 2011. Defendant Yu is currently the Chair of the Audit Committee, as well as a member of both the Compensation Committee and the Nominating and Corporate Governance Committee

17.    Defendants Hu, Wang, Mei, Chen, Lewin, and Yu (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to,

and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Kandi, through its subsidiaries, designs, produces, manufactures, and distributes electric vehicles (EVs) products, EV parts, and off-road vehicles in the People's Republic of China and internationally.

### Materially False and Misleading
### Statements Issued During the Class Period

19.     On March 16, 2015, the Company filed a Form 10-K for the fiscal year ended December 31, 2014 (the "2014 10-K") with the SEC. The 2014 10-K was signed by Defendant Hu. Attached to the 2014 10-K was a certification pursuant to the Sarbanes Oxley Act of 2002 ("SOX") signed by Defendant Hu attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

20.     Defendants represented in the 2014 10-K the Company's internal controls over financial reporting, stating in relevant part:

> Management conducted an assessment of the effectiveness of our system of internal control over financial reporting as of December 31, 2014, the last day of our fiscal year. This assessment was based on criteria established in the framework Internal Control—Integrated Framework (2013), issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") and included an evaluation of elements such as the design and operating effectiveness of key financial reporting controls, process documentation, accounting policies, and our overall control environment. ***Based on management's evaluation under the 2013 COSO framework, management concluded that the Company's internal controls over financial reporting were effective as of December 31, 2014.***

(Emphasis added).

21.     As to related-party transactions, Defendants represented in the 2014 10-K that:

> ***Other than as set forth below, for fiscal years ended December 31, 2014 and 2013, the Company was not involved in any related party transactions***.
> […]
> *During fiscal year ended December 31, 2014, 2013 and 2012, the Company sold products to Kandi USA Inc. carrying trade name of Eliteway Motorsports ("Eliteway") amounting to $2,981,944, $6,906,807 and $5,297,548, respectively, and to Zhejiang ZuoZhongYou Electric Vehicle Service Co., Ltd., listed simply as "Service Company", amounting to*

(Emphasis added).

22.     The Class Period begins on June 10, 2015.

23.     On August 10, 2015, the Company filed a Form 10-Q quarterly report for the second quarter of 2015 ended June 30, 2015 (the "2Q15 10-Q") with the SEC. The 2Q15 10-Q was signed by Defendants Hu and Wang. Attached to the 2Q15 10-Q were signed SOX certifications signed by Defendants Hu and Wang attesting to the accuracy of the financial statements, the disclosures of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

24.     Defendants represented in the 2Q15 10-Q the Company's related party transactions, reporting no changes in cashflow attributable to related party transactions.

25.     The 2Q15 10-Q discussed the Company's internal controls over financial reporting, stating in relevant part:

**Changes in Internal Control over Financial Reporting**

There was no change to our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

26.     On November 9, 2015, the Company filed a Form 10-Q quarterly report for the third quarter of 2015 ended September 30, 2015 (the "3Q15 10-Q") with the SEC. The 3Q15 10-Q was signed by Defendants Hu and Wang. Attached to the 2Q15 10-Q were signed SOX certifications signed by Defendants Hu and Wang attesting to the accuracy of the financial statements, the disclosures of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

27.     Defendants represented in the 3Q15 10-Q the Company's related party transactions, reporting no changes in cashflow attributable to related party transactions.

28.     The 3Q15 10-Q discussed the Company's internal controls over financial reporting, stating in relevant part:

**Changes in Internal Control over Financial Reporting**

There was no change to our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

29.     On March 14, 2016, the Company filed a Form 10-K for the fiscal year ended December 31, 2015 (the "2015 10-K") with the SEC. The 2015 10-K was signed by Defendants Hu and Wang. Attached to the 2015 10-K were signed SOX certifications signed by Defendants Hu and Wang attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

30.     Defendants represented in the 2015 10-K the Company's internal controls over financial reporting, stating in relevant part:

Management conducted an assessment of the effectiveness of our system of internal control over financial reporting as of December 31, 2015, the last day of our fiscal year. This assessment was based on criteria established in the framework Internal Control—Integrated Framework (2013), issued by the Committee of Sponsoring Organizations of the

Treadway Commission ("COSO") and included an evaluation of elements such as the design and operating effectiveness of key financial reporting controls, process documentation, accounting policies, and our overall control environment. ***Based on management's evaluation under the 2013 COSO framework, management concluded that the Company's internal controls over financial reporting were effective as of December 31, 2015.***

(Emphasis added).

31.     As to related-party transactions, Defendants represented in the 2015 10-K that:

> ***Other than as set forth below, for fiscal years ended December 31, 2015 and 2014, the Company was not involved in any related party transactions.***
> [...]
> During the fiscal years ended December 31, 2015, 2014 and 2013, the Company sold products to Kandi USA Inc., a company that operates under the trade name of Eliteway Motorsports ("Eliteway"), amounting to $0, $2,981,944 and $6,906,807, respectively.

(Emphasis added).

32.     On May 10, 2016, the Company filed a Form 10-Q for the quarterly period ended March 31, 2016 (the "1Q16 10-Q") with the SEC. The 1Q16 10-Q was signed by Defendants Hu and Wang. Attached to the 1Q16 10-Q were signed SOX certifications by Defendants Hu and Wang attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

33.     The 1Q16 10-Q discussed the Company's internal controls over financial reporting, stating in relevant part:

> **Changes in Internal Control over Financial Reporting**
>
> There was no change to our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the period covered by this report that have materially

affected, or are reasonably likely to materially affect, our internal control over financial reporting.

34.    On August 9, 2016 the Company filed a Form 10-Q for the quarterly period ended June 30, 2016 (the "2Q16 10-Q") with the SEC. The 2Q16 10-Q was signed by Defendants Hu and Wang. Attached to the 2Q16 10-Q were SOX certifications signed by Defendants Hu and Wang attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

35.    The 2Q16 10-Q discussed the Company's internal controls over financial reporting, stating in relevant part:

**Changes in Internal Control over Financial Reporting**

There was no change to our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

36.    On November 9, 2016 the Company filed a Form 10-Q for the quarterly period ended September 30, 2016 (the "3Q16 10-Q") with the SEC. The 3Q16 10-Q was signed by Defendants Hu and Wang. Attached to the 3Q16 10-Q were SOX certifications signed by Defendants Hu and Wang attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

37.    The 3Q16 10-Q discussed the Company's internal controls over financial reporting, stating in relevant part:

**Changes in Internal Control over Financial Reporting**

There was no change in our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

CLASS ACTION COMPLAINT

38.     The above statements identified in ¶¶ 22-37 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) certain areas in the Company's previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 required adjustment; (2) in turn, the Company lacked effective controls over financial reporting; and (3) as a result, Defendants' statements about the Company's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Emerges

39.     On November 14, 2016, the Company announced the abrupt resignation of Defendant Wang as the CFO.

40.     On this news, shares of Kandi fell $0.40 per share, or more than 10% from their previous closing price, to close at $3.50 per share on November 14, 2016, damaging investors.

41.     On March 13, 2017, the Company filed a Form 8-K with the SEC revealing that its previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 will need to be restated, stating in relevant part:

**Item 4.02   Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

(a)        During the course of Kandi Technologies Group, Inc.'s (the "Company") preparation of its Annual Report on Form 10-K for the year ended December 31, 2016, and during preparation of responses to comments from the staff of the Securities and Exchange Commission ("SEC"), Division of Corporate Finance, ***the Company's management identified certain areas in the Company's previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 (the "Previously Issued Financial Statements"), that require adjustment as described below and in more detail in the Company's annual report on***

*Form 10-K/A for the fiscal year ended December 31, 2015 ("Form 10-K/A"), to be filed with the SEC. As a result, on March 7, 2017, the board of directors (the "Board") of the Company, based on the recommendation of the Company's audit committee, and in consultation with management, concluded that the Company's Previously Issued Financial Statements should no longer be relied upon. The Company will, in the Form 10-K/A, restate the Previously Issued Financial Statements, which restatement will include separate audited financial statements for the JV Company (the "Restatements").* The Restatements will have no effect on the net income of the Company as reported in the Previously Issued Financial Statements. The Company will endeavor to file its Annual Report on Form 10-K for the fiscal year ended December 31, 2016, pursuant to SEC's rules (including timing guidelines), and will file the Form 10-K/A as soon as practicably possible.

The Restatements will include separate audited financial statements for the Company's equity investment in the JV Company, corrections to the classification of notes receivable and notes payable in the Company's statements of cash flow, revisions in the Company's financial statement presentation to separately identify certain related party accounts on the face of the Balance Sheets and the Consolidated Statements of Income (Loss) and Comprehensive Income (Loss), certain amendments to Note 20 – Taxes of the Notes to the Company's Consolidated Financial Statements, the adjustment of previously recorded construction-in-progress back to prepayment in Note 16 - Construction-in-Progress of the Notes to the Company's Consolidated Financial Statements, expansions of two tables of sales to and purchases from the JV Company in Note 24 - Summarized Information of Investment in the JV Company of the Notes to the Company's Consolidated Financial Statements from two years to three years, and the removal of "unaudited" labels from certain tables in Note 20 - Taxes of the Notes to the Company's Consolidated Financial Statements.

The Company will also amend its unaudited quarterly data for the first three quarters ended December 31, 2016, as set forth in its upcoming Annual Report on Form 10-K for the year ended December 31, 2016. The Company has not filed and does not intend to file amendments to its Quarterly Reports on Form 10-Q for the quarterly periods affected. Accordingly, investors should no longer rely upon the Company's previously released financial statements for those periods or any earnings

releases or other communications relating to those periods. The Company's Quarterly Reports on Form 10-Q for fiscal year 2017 will include restated results for the corresponding interim periods of fiscal year 2016.

***In addition, in conjunction with the Restatements, the Company is reassessing its internal controls over its financial reporting and compliance programs. The result of this reassessment could lead the Company to conclude that there were deficiencies in its internal controls over financial reporting that constitute material weaknesses and could therefore affect its conclusions regarding effectiveness as previously expressed in Item 9A, Controls and Procedures, of the Company's Annual Report on Form 10-K for the year ended December 31, 2015.*** Accordingly, management's report on internal controls over financial reporting as of December 31, 2015, and the associated report of AWC (CPA) Limited, the Company's former principal accountant ("AWC"), should no longer be relied upon. The Public Company Accounting Oversight Board revoked the registration of AWC on May 18, 2016. The Company dismissed AWC and engaged BDO China Shu Lun Pan Certified Public Accountants LLP ("BDO China") as its new independent registered public accounting firm on April 12, 2016, as previously reported. The Company is committed to maintaining an effective control environment and making all necessary changes to enhance control effectiveness.

The chair of the Company's audit committee, on behalf of the audit committee, and the management have discussed the matters disclosed in this Item 4.02(a) of this Current Report on Form 8-K with BDO China.

(Emphasis added).

42.    On this news, shares of Kandi fell $0.30 per share, or approximately 6%, from its previous closing price to close at $4.05 per share on March 14, 2017, further damaging investors.

43.    On March 16, 2017, the Company filed its Form 10-K for fiscal year 2016 (the "2016 10-K"), restated its 2014 – 3Q 2016 Financials, and admitted that there were material weaknesses in the Company's internal controls.

44.     Kandi conceded in the 2016 10-K that, among other things, it had made "errors" in the classification of notes receivable and notes payable in its statement of cash flows, it had failed to separately identify certain related party accounts on the face of the Company's balance sheets and income statements, and it had improperly accounted for the Company's equity investment in the JV Company.

45.     While the 2016 10-K also included a purported plan for remediating the material weaknesses in Kandi's internal controls, the Company warned that it could not "provide assurance that we will not fail to achieve and maintain an effective internal control environment on an ongoing basis, which may cause investors to lose confidence in our reported financial information and have a material adverse effect on the price of our common stock."

46.     Defendants' lack of meaningful internal controls resulted in numerous unreported related party transactions, such as in 2010 when the Company's auditors at the time, AWC, discovered that Defendant Hu was holding $1.6 million of the Company's reported year-end cash balance in a personal account. AWC did not take steps determine why this was so. Nor did AWC explore whether this was a related-party transaction that needed to be disclosed in the Company's financial statements.

47.     On November 2, 2016 the Company disclosed for the first time that it had engaged in material transactions in 2012 with Kandi USA, owned by Wangyuan Hu, the son of Defendant Hu, using its trade name, Eliteway. The Company also disclosed that it had engaged in material transactions in 2013 and 2014 with Kandi USA, again using the trade name Eliteway. The total amount of the transactions was identified as $9,888,751. The Company claimed that all the transactions had been at arm's length. Ex. A, at 16.

48.     The Company also disclosed additional related-party transactions with the Zhejiang ZuoZhongYou Electric Vehicle Services Co., Ltd. (the "Service Company"), in which the Company has a 9.5% ownership, resulting in additional receivables due from the Service Company. As of December 31, 2014, the receivables

totaled over $40 million. As of December 31, 2016, the receivables totaled $10.4 million. Ex. A, at 16.

49.     On May 10, 2017, William Hughes, Jr. ("Hughes"), a shareholder of the Company, through his counsel, initiated a 220 demand on Kandi, pursuant to 8 Del. C. § 220, for certain books and records of the Company (the "220 Demand"). The 220 Demand sought documents concerning the restatement of the Company's 2014 – 3Q 2016 Financials, as well as related breaches of fiduciary duties and wrongdoing by the Company's management and the board of directors, mismanagement, waste, and other corporate wrongdoing at the Company. Kandi ultimately refused to produce any documents in response to Hughes's 220 Demand, and on October 2, 2017, Hughes filed in the Delaware Court of Chancery a Verified Complaint Pursuant to 8 Del. C. Section 220 to Compel Inspection of Books and Records (the "220 Complaint"). *See Hughes v. Kandi Technologies Group, Inc.*, C.A. No. 2017-0700 JTL (Del. Ch.).

50.     Based on his findings, Hughes filed a complaint against Kandi in the Court of Chancery of Delaware on February 14, 2019. *See Hughes v. Hu, et al.*, C. A. No. 2019-0112-JTL. Defendants moved to dismiss the complaint pursuant to Rule 23.1, contending that the Hughes failed to make a demand on the board or plead that demand would have been futile. The court ruled against the defendants, stating in relevant part:

> The plaintiff obtained books and records before filing suit. The fruits of that investigation—and, just as important, what the Company conspicuously failed to produce—have enabled the plaintiff to plead a complaint that supports a reasonable pleading-stage inference of a bad faith failure of oversight by the named director defendants. Four of the defendants comprise a majority of the board that would have considered a demand, and the substantial threat of liability renders them incapable of disinterestedly considering a demand. Demand would have been futile, so the Rule 23.1 motion is denied.

> The defendants also have moved to dismiss the complaint pursuant to Rule 12(b)(6), contending that the plaintiff failed to state a claim on which relief can be granted. Both sides treated the analysis of the Rule

23.1 motion as dispositive of the Rule 12(b)(6) motion. That motion is also denied.

51.    On March 16, 2018, the Company filed a Form 10-K for the fiscal year ended December 31, 2017 (the "2017 10-K") with the SEC confirming that its internal controls over financial reporting ("ICFR") were not effective as of December 31, 2017, stating in relevant part:

> Management conducted an assessment of the effectiveness of our system of ICFR as of December 31, 2017, the last day of our fiscal year of 2017. This assessment was based on criteria established in Internal Control—Integrated Framework, issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in 2013 (the "2013 COSO Framework") and included an evaluation of elements such as the design and operating effectiveness of key financial reporting controls, process documentation, accounting policies, and our overall control environment. ***Based on management's evaluation under the 2013 COSO framework, management concluded that the Company's internal controls over financial reporting were not effective as of December 31, 2017. Certain control deficiencies existed in the internal control over financial reporting as of December 31, 2017, including lack of adequate knowledge of US GAAP and SEC rules and inaccurate accounting for income taxes. These material weaknesses existed as of December 31, 2015 and had not yet been fully remediated as of December 31, 2017.***

(Emphasis added).

52.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

53.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Kandi securities during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are

Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

54. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Kandi's common shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Kandi common stock were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Kandi or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

55. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

56. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

57. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Kandi; and

---

CLASS ACTION COMPLAINT

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

58.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

59.    The market for Kandi's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Kandi's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Kandi's securities relying upon the integrity of the market price of the Company's securities and market information relating to Kandi, and have been damaged thereby.

60.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Kandi's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Kandi's business, operations, and prospects as alleged herein.

61.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Kandi's

financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

62.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

63.    During the Class Period, Plaintiff and the Class purchased Kandi's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

64.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Kandi, their control over, and/or receipt and/or modification of Kandi's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential

proprietary information concerning Kandi, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

65.    The market for Kandi's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Kandi's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Kandi's securities and market information relating to Kandi, and have been damaged thereby.

66.    During the Class Period, the artificial inflation of Kandi's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Kandi's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Kandi and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

67.    At all relevant times, the market for Kandi's securities was an efficient market for the following reasons, among others:

(a)    Kandi shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

---

CLASS ACTION COMPLAINT

18

1      (b)    As a regulated issuer, Kandi filed periodic public reports with the
2  SEC and/or the NASDAQ;

3      (c)    Kandi regularly communicated with public investors via
4  established market communication mechanisms, including through regular
5  dissemination of press releases on the national circuits of major newswire services
6  and through other wide-ranging public disclosures, such as communications with the
7  financial press and other similar reporting services; and/or

8      (d)    Kandi was followed by securities analysts employed by brokerage
9  firms who wrote reports about the Company, and these reports were distributed to the
10  sales force and certain customers of their respective brokerage firms.  Each of these
11  reports was publicly available and entered the public marketplace.

12     68.    As a result of the foregoing, the market for Kandi's securities promptly
13  digested current information regarding Kandi from all publicly available sources and
14  reflected such information in Kandi's share price. Under these circumstances, all
15  purchasers of Kandi's securities during the Class Period suffered similar injury
16  through their purchase of Kandi's securities at artificially inflated prices and a
17  presumption of reliance applies.

18     69.    A Class-wide presumption of reliance is also appropriate in this action
19  under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*,
20  406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on
21  Defendants' material misstatements and/or omissions.  Because this action involves
22  Defendants' failure to disclose material adverse information regarding the Company's
23  business operations and financial prospects—information that Defendants were
24  obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All
25  that is necessary is that the facts withheld be material in the sense that a reasonable
26  investor might have considered them important in making investment decisions.
27  Given the importance of the Class Period material misstatements and omissions set
28  forth above, that requirement is satisfied here.

## NO SAFE HARBOR

70.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Kandi who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

71.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

72.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Kandi's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

73.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Kandi's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

74.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Kandi's financial well-being and prospects, as specified herein.

75.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Kandi's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Kandi and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

76.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer

and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

77.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Kandi's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

78.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Kandi's securities was artificially inflated during the Class Period.    In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades,

and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Kandi's securities during the Class Period at artificially high prices and were damaged thereby.

79.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Kandi was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Kandi securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

80.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

81.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

82.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

83.     Individual Defendants acted as controlling persons of Kandi within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the

investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

85.     As set forth above, Kandi and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c)      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d)      Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED:  June 10, 2020                     **GLANCY PRONGAY & MURRAY LLP**

By:   _s/ Robert V. Prongay_
Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Counsel for Plaintiff Srinivasan Venkataraman*

DocuSign Envelope ID: BE6986C0-3190-40CD-864D-7160D95EDC25

## SWORN CERTIFICATION OF PLAINTIFF

## KANDI TECHNOLOGIES GROUP, INC. SECURITIES LITIGATION

I, Srinivasan Venkataraman, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase the Kandi Technologies Group, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in Kandi Technologies Group, Inc. securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

6/9/2020
_____
Date

DocuSigned by:
*Srinivasan Venkataraman*
5C1D8006481248C...
_____
Srinivasan Venkataraman

**Srinivasan Venkataraman's Transactions in Kandi Technologies Group, Inc. (KNDI)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 4/1/2016 | Bought | 250 | $7.1466 |
| 4/29/2016 | Bought | 200 | $7.1800 |
| 9/7/2016 | Bought | 275 | $6.2500 |