| | |
|---|---|
| SRINIVASAN VENKATARAMAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> KANDI TECHNOLOGIES GROUP, INC., XIAOMING HU, CHENG WANG, BING MEI, LIMING CHEN, JERRY LEWIN, AND HENRY YU, <br><br> Defendants. | Case No. 1:20-cv-08082-LGS <br><br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................1

II. STATEMENT OF FACTS ..................................................................................2

    A. Background ................................................................................................2

    B. Kandi's Policies Regarding Internal Controls and Related-Party Transactions......3

    C. Defendants' False and Misleading Statements ..........................................3

    D. The Truth Begins to Emerge .....................................................................5

    E. The Full Truth Emerges .............................................................................8

III. STANDARD OF REVIEW ...............................................................................10

IV. PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT 10

    A. The Statute of Limitations Is Inapplicable and Does Not Bar Plaintiff's Claims .10

    B. Plaintiff Adequately Alleges that Defendants Made Materially False and Misleading Statements ..................................................................................13

    C. Plaintiff Adequately Alleges that Defendants Acted With Scienter ......................19

        1. The Company's Internal Control Deficiencies Support a Strong Inference of Scienter ................................................................................20

        2. Because the Facts Alleged Relate to the Company's Core Operations, They Support a Strong Inference of Scienter ...........................................21

        3. Defendants' Admissions Support a Strong Inference of Scienter .............22

        4. Defendants' SOX Certifications Support a Strong Inference of Scienter .24

        5. CFO Wang's Resignation Supports a Strong Inference of Scienter ..........24

    D. Plaintiff Adequately Alleges Control Person Liability ..........................................25

V. CONCLUSION .................................................................................................25

# TABLE OF AUTHORITIES

**<u>CASES</u>**

*Aldridge v. A.T. Cross Corp.*,
284 F.3d 72 (1st Cir. 2002)..............................................................................................23

*Armstrong v. McAlpin*,
699 F.2d 79 (2d Cir. 1983) ...............................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................10

*ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).................................................................................................25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................................10

*Bielousov v. GoPro, Inc.*,
No. 16-cv-06654-CW, 2017 WL 3168522 (N.D. Cal. July 26, 2017) ......................................24

*Booth v. Strategic Realty Tr., Inc.*,
13-CV-04921-JST, 2014 WL 3749759 (N.D. Cal. July 29, 2014).................................... 12-13

*Caiafa v. Sea Containers Ltd.*,
525 F. Supp. 2d 398 (S.D.N.Y. 2007) ...................................................................................14

*Caiola v. Citibank, N.A., New York*,
295 F.3d 312 (2d Cir. 2002) ...............................................................................................16

*California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
137 S. Ct. 2042 (2017)........................................................................................................10

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018) ...........................................................................................11, 12

*City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012) ..................................................................................20

*City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.*,
637 F.3d 169 (2d Cir. 2011) ...............................................................................................11

*Denny v. Barber*,
576 F.2d 465 (2d Cir. 1978) ...............................................................................................16

*Dodds v. Cigna Sec., Inc.*,
  12 F.3d 346 (2d Cir. 1993) ...................................................................................13

*Donoghue v. Am. Skiing Co.*,
  155 F. Supp. 2d 70 (S.D.N.Y. 2001) .....................................................................13

*FirstBank Puerto Rico, Inc. v. La Vida Merger Sub, Inc.*,
  638 F.3d 37 (1st Cir. 2011)....................................................................................13

*Frank v. Dana Corp.*,
  646 F.3d 954 (6th Cir. 2011) .................................................................................24

*Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc.*,
  268 F. Supp. 3d 526 (S.D.N.Y. 2017) ..............................................................13, 24

*Freudenberg v. E\*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010) ...................................................................21

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
  639 F. App'x 664 (2d Cir. 2016)............................................................................13

*Hall v. The Children's Place Retail Stores, Inc.*,
  580 F. Supp. 2d 212 (S.D.N.Y. 2008) ...................................................................22

*Ho v. Duoyuan Global Water, Inc.*,
  887 F. Supp. 2d 547 (S.D.N.Y. 2012) ...................................................................24

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004) ........................................................14, 15, 21

*In re Banco Bradesco S.A. Sec. Litig.*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017) ...................................................................18

*In re BISYS Sec. Litig.*,
  397 F. Supp. 2d 430 (S.D.N.Y. 2005) ...................................................................15

*In re Cannavest Corp. Sec. Litig.*,
  307 F. Supp. 3d 222 (S.D.N.Y. 2018) ...................................................................25

*In re Commtouch Software Ltd. Sec. Litig.*,
  No. C 01-00719 WHA, 2002 WL 31417998 (N.D. Cal. July 24, 2002)..................15

*In re DRDGOLD Ltd. Sec. Litig.*,
  472 F. Supp. 2d 562 (S.D.N.Y. 2007) ...................................................................13

*In re Fairway Grp. Holding Corp. Sec. Litig.*,
No. 14 CIV. 0950 LAK, 2015 WL 249508 (S.D.N.Y. Jan. 20, 2015) .......................................21

*In re Grupo Televisa Sec. Litig.*,
368 F. Supp. 3d 711 (S.D.N.Y. 2019) ...........................................................................19

*In re Kandi Technologies Group, Inc. Securities Litigation*,
No. 17 CIV. 1944 (ER), 2019 WL 4918649 (S.D.N.Y. Oct. 4, 2019) ...................................12

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010) ...........................................................................................16

*In re Salix Pharms., Ltd.*,
No. 14-CV-8925 (KMW), 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) ...............................22

*In re Scottish Re Grp. Sec. Litig.*,
524 F. Supp. 2d 370 (S.D.N.Y. 2007) ....................................................................18, 25

*In re Veeco Instruments, Inc. Sec. Litig.*,
235 F.R.D. 220 (S.D.N.Y. 2006) ...................................................................................21

*In re Vivendi Universal, S.A. Sec. Litig.*,
634 F. Supp. 2d 352 (S.D.N.Y. 2009) ..........................................................................16

*Institutional Investors Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) ...........................................................................16, 17, 18

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ........................................................................................................20

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) ...........................................................................................*passim*

*Meyer v. Jinkosolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014) .........................................................................................16

*Middlesex Ret. Sys. v. Quest Software Inc.*,
527 F. Supp. 2d 1164 (C.D. Cal. 2007) .........................................................................24

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.,*
455 Fed App'x 10 (2d Cir. 2011) .................................................................................21

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ..........................................................................................20

iv

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
 367 F. Supp. 3d 16 (S.D.N.Y. 2019) ..................................................................22

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
 432 F. Supp. 3d 131 (D. Conn. 2019)..................................................................12

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
 No. 1:16-CV-3591-GHW, 2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) .....................18, 19, 24

*Schaeffer v. Nabriva Therapeutics plc*,
 No. 19 CIV. 4183 (VM), 2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020) ..................................22

*Schiro v. Cemex, S.A.B. de C.V.*,
 438 F. Supp. 3d 194 (S.D.N.Y. 2020) ..................................................................13

*Schueneman v. Arena Pharm., Inc.*,
 840 F.3d 698 (9th Cir. 2016) ..................................................................23

*Stevelman v. Alias Research Inc.*,
 174 F. 3d 79 (2d Cir. 1999) ..................................................................20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ..................................................................10, 19, 20, 25

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
 672 F. Supp. 2d 596 (S.D.N.Y. 2009) ..................................................................14, 20

*Washington State Inv. Bd. v. Odebrecht S.A.*,
 461 F. Supp. 3d 46 (S.D.N.Y. 2020) ..................................................................12

## STATUTES

8 Del. C. § 220..................................................................7

15 U.S.C. §78j(b)..................................................................10

15 U.S.C. §78u-4(b) ..................................................................13, 19

28 U.S.C. §1658 ..................................................................10

## RULES

Fed. R. of Civ. Pro. 12(b)(6)..................................................................11

## I.     INTRODUCTION

This is a securities class action brought on behalf of all persons and/or entities who purchased or otherwise acquired the common stock of Kandi Technologies Group, Inc. ("Kandi" or the "Company") between June 10, 2015 and March 13, 2017, inclusive ("Class Period").[1] Kandi designs, manufactures, and distributes electric vehicles ("EV"), EV parts, and off-road vehicles in the People's Republic of China and internationally.  During the Class Period, Defendants made materially false and misleading statements regarding the Company's financial results and operations in violation of the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.  Specifically, Defendants: (1) falsely reported the Company's financial results for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 – financial results that the Company ultimately restated; (2) falsely attested to the accuracy of the Company's financial statements, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud in certifications made pursuant to the Sarbanes Oxley Act of 2002 ("SOX"); (3) falsely reported no change in cashflow attributable to related-party transactions; and (4) falsely misrepresented the efficacy of the Company's internal controls. When Defendants disclosed the truth related to the Company's financial results and operations, the Company's stock price decreased significantly, causing substantial losses to investors.

Despite these facts, Defendants filed a Motion to Dismiss Plaintiff's Revised Amended Complaint ("Motion").  Defendants' Motion, however, fails for several reasons.  First, Defendants repeatedly attempt to suggest that Plaintiff's Revised Amended Complaint for Violation of the

---

[1] Defendants are: Kandi; Xiaoming Hu ("Hu"), Cheng Wang ("Wang"), Bing Mei ("Mei"), Liming Chen ("Chen"), Jerry Lewin ("Lewin"), and Henry Yu ("Yu") (collectively "Defendants").  Unless otherwise indicated, all paragraph ("¶") references are to Plaintiff's Revised Amended Complaint for Violation of the Federal Securities Laws ("Complaint") (Doc 37-1), all emphasis is added, and all internal citations and quotations are omitted.

Federal Securities Laws ("Complaint") is no different from other complaints that were previously filed. Defendants are wrong. Plaintiff's Complaint includes substantially more particularized allegation detailing the false and misleading nature of Defendants' misrepresentations – and how Defendants made such allegations with scienter. Such allegations include, but are not limited to, information from Hindenburg Research in a report on Kandi entitled "Kandi: How This China-Based NASDAQ Listed Company Used Fake Sales, EV Hype to Nab $160 Million From U.S. Investors" ("Hindenburg Report") which demonstrated in detail that almost 64% of Kandi's last twelve months (LTM) sales had been to undisclosed related parties. None of the previous complaints upon which Defendants attempt to rely contained these detailed factual allegations. Second, although Defendants argue that the statute of limitations bars Plaintiff's claims, Defendants have failed to meet their burden of demonstrating not only that Plaintiff was placed on notice of the claims alleged, but that Plaintiff should have discovered facts sooner with sufficient detail and particularity to adequately assert each element of the alleged violations, including scienter. Indeed, the Supreme Court in *Merck & Co. v. Reynolds*, 559 U.S. 633, 651-53 (2010) rejected the "notice inquiry" standard upon which Defendants attempt to rely. Finally, contrary to Defendants' suggestion, Plaintiff has adequately pled falsity and scienter. As a result, the Court should deny Defendants' Motion.

## II.  STATEMENT OF FACTS

### A.  Background

Founded in March 2004, Kandi went public in June 2007 through a reverse merger with Stone Mountain Resources Inc., a Nevada company that had been pursuing a gold-mining venture. ¶23. The Company changed its name to "Kandi Technologies Group, Inc." in December 2012. *Id*. Although Kandi is headquartered in the People's Republic of China, the Company purports to

maintain an office at 230 Park Avenue, 10th Floor, New York, NY 10169. *Id*. The Company's shares trade on NASDAQ under the ticker symbol "KNDI." *Id*.

B.   **Kandi's Policies Regarding Internal Controls and Related-Party Transactions**

On March 16, 2015, the Company filed a Form 10-K for the fiscal year ended December 31, 2014 ("2014 10-K") with the SEC. ¶24. The 2014 10-K was signed by Defendant Hu. *Id*. Attached to the 2014 10-K was a SOX certification signed by Defendant Hu attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud. *Id*. Defendants also represented in the 2014 10-K the Company's internal controls over financial reporting, stating in relevant part that "[b]ased on management's evaluation under the 2013 COSO framework, management concluded that the Company's internal controls over financial reporting were effective as of December 31, 2014." ¶25. With respect to related-party transactions, Defendants represented that "[o]ther than as set forth below, for fiscal years ended December 31, 2014 and 2013, the Company was not involved in any related party transactions." ¶26. The 2014 10-K also provided Kandi's procedures for related-party transactions. ¶27.

C.   **Defendants' False and Misleading Statements**

The Class Period begins on June 10, 2015. ¶28. On August 10, 2015, the Company filed a Form 10-Q quarterly report for the second quarter of 2015 ended June 30, 2015 ("2Q15 10-Q") with the SEC. ¶29. The 2Q15 10-Q was signed by Defendants Hu and Wang. *Id*. Attached to the 2Q15 10-Q were signed SOX certifications signed by Defendants Hu and Wang attesting to the accuracy of the financial statements, the disclosures of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud. *Id*. Defendants also represented in the 2Q15 10-Q the Company's related party transactions, reporting no changes in cashflow attributable to related party transactions. ¶30.

3

On November 9, 2015, the Company filed a Form 10-Q quarterly report for the third quarter of 2015 ended September 30, 2015 ("3Q15 10-Q") with the SEC. ¶31. The 3Q15 10-Q was signed by Defendants Hu and Wang. *Id*. Attached to the 2Q15 10-Q were signed SOX certifications signed by Defendants Hu and Wang attesting to the accuracy of the financial statements, the disclosures of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud. *Id*. Defendants further represented the Company's related party transactions, reporting no changes in cashflow attributable to related party transactions, and no change to the Company's internal control over financial reporting. ¶¶32, 33.

On March 14, 2016, the Company filed a Form 10-K for the fiscal year ended December 31, 2015 ("2015 10-K") with the SEC. ¶34. The 2015 10-K was signed by Defendants Hu and Wang. *Id*. Attached to the 2015 10-K were signed SOX certifications signed by Defendants Hu and Wang attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud. *Id*. Defendants represented the Company's internal controls over financial reporting, stating in relevant part that "[b]ased on management's evaluation under the 2013 COSO framework, management concluded that the Company's internal controls over financial reporting were effective as of December 31, 2015." ¶35. As to related-party transactions, Defendants represented that "[o]ther than as set forth below, for fiscal years ended December 31, 2015 and 2014, the Company was not involved in any related party transactions." ¶36.

On May 10, 2016, the Company filed a Form 10-Q for the quarterly period ended March 31, 2016 ("1Q16 10-Q"), which was signed by Defendants Hu and Wang. ¶37. Attached to the 1Q16 10-Q were signed SOX certifications by Defendants Hu and Wang attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal

control over financial reporting and the disclosure of all fraud. *Id*. Defendants also represented that there were no changes in the Company's internal control over financial reporting. ¶38.

On August 9, 2016, the Company filed a Form 10-Q for the quarterly period ended June 30, 2016 ("2Q16 10-Q"), which was signed by Defendants Hu and Wang. ¶39. Attached to the 2Q16 10-Q were SOX certifications signed by Defendants Hu and Wang attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. *Id*. Defendants further represented that there were no changes in the Company's internal control over financial reporting. ¶40.

On November 9, 2016, the Company filed a Form 10-Q for the quarterly period ended September 30, 2016 ("3Q16 10-Q"), which was signed by Defendants Hu and Wang. ¶41. Attached were also SOX certifications signed by Defendants Hu and Wang attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. *Id*. Defendants also represented that there were no changes in Kandi's internal control over financial reporting. ¶42.

**D. The Truth Begins to Emerge**

On November 14, 2016, the Company announced the abrupt resignation of Defendant Wang as the CFO. ¶45. On this news, shares of Kandi fell $0.40 per share, or more than 10% from their previous closing price, to close at $3.50 per share on November 14, 2016, damaging investors. *Id*.

On March 13, 2017, the Company announced that its previously-issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 would need to be restated. ¶46. On this news, shares of Kandi fell $0.30 per share, or approximately 6%, from its previous closing price to close at $4.05 per share on March 14, 2017, further damaging investors. ¶47.

On March 16, 2017, the Company filed its Form 10-K for fiscal year 2016 ("2016 10-K"), restated its 2014 – 3Q 2016 Financials, and admitted that there were material weaknesses in the Company's internal controls. ¶48. Kandi conceded that, among other things, it had made "errors" in the classification of notes receivable and notes payable in its statement of cash flows, it had failed to separately identify certain related party accounts on the face of the Company's balance sheets and income statements, and it had improperly accounted for the Company's equity investment in the JV Company. ¶49. The Company further announced that it could not "provide assurance that we will not fail to achieve and maintain an effective internal control environment on an ongoing basis, which may cause investors to lose confidence in our reported financial information and have a material adverse effect on the price of our common stock." ¶50.

Defendants' lack of meaningful internal controls resulted in numerous unreported related party transactions, such as in 2010 when the Company's auditors at the time, AWC, discovered that Defendant Hu was holding $1.6 million of the Company's reported year-end cash balance in a personal account. ¶51. AWC did not take steps determine why this was so. *Id*. Nor did AWC explore whether this was a related-party transaction that needed to be disclosed in the Company's financial statements. *Id*.

On November 2, 2016, the Company disclosed for the first time that it had engaged in material transactions in 2012 with Kandi USA, owned by Wangyuan Hu, the son of Defendant Hu, using its trade name, Eliteway. ¶52. The Company also disclosed that it had engaged in material transactions in 2013 and 2014 with Kandi USA, again using the trade name Eliteway. *Id*. The total amount of the transactions was identified as $9,888,751. *Id*. The Company claimed that all the transactions had been at arm's length. *Id*.

The Company also disclosed additional related-party transactions with the Zhejiang ZuoZhongYou Electric Vehicle Services Co., Ltd. (the "Service Company"), in which the Company had a 9.5% ownership, resulting in additional receivables due from the Service Company. ¶53. As of December 31, 2014, the receivables totaled over $40 million. *Id*. As of December 31, 2016, the receivables totaled $10.4 million. *Id*. Defendants further represented, however, that other than these transactions, "for the fiscal years ended December 31, 2017 and 2016, the Company was not involved in any related party transactions." *Id*.

On May 10, 2017, William Hughes, Jr. ("Hughes"), a shareholder of the Company, through his counsel, initiated a 220 demand on Kandi, pursuant to 8 Del. C. § 220, for certain books and records of the Company (the "220 Demand"). ¶54. The 220 Demand sought documents concerning the restatement of the Company's 2014 – 3Q 2016 Financials, as well as related breaches of fiduciary duties and wrongdoing by the Company's management and the board of directors, mismanagement, waste, and other corporate wrongdoing at the Company. *Id*. Kandi ultimately refused to produce any documents in response to Hughes's 220 Demand, and on October 2, 2017, Hughes filed in the Delaware Court of Chancery a Verified Complaint Pursuant to 8 Del. C. Section 220 to Compel Inspection of Books and Records (the "220 Complaint"). *See Hughes v. Kandi Technologies Group, Inc.*, C.A. No. 2017-0700 JTL (Del. Ch.); *id*.

Based on his findings, Hughes filed a complaint against Kandi in the Court of Chancery of Delaware on February 14, 2019 *See Hughes v. Hu, et al.*, C. A. No. 2019-0112-JTL; ¶55. Defendants moved to dismiss the complaint pursuant to Rule 23.1, contending that the Hughes failed to make a demand on the board or plead that demand would have been futile. *Id*. The court ruled against the defendants, stating in relevant part:

> The plaintiff obtained books and records before filing suit. The fruits of that
> investigation—and, just as important, what the Company conspicuously failed to

produce—have enabled the plaintiff to plead a complaint that supports a reasonable pleading-stage inference of a bad faith failure of oversight by the named director defendants. Four of the defendants comprise a majority of the board that would have considered a demand, and the substantial threat of liability renders them incapable of disinterestedly considering a demand. Demand would have been futile, so the Rule 23.1 motion is denied.

The defendants also have moved to dismiss the complaint pursuant to Rule 12(b)(6), contending that the plaintiff failed to state a claim on which relief can be granted. Both sides treated the analysis of the Rule 23.1 motion as dispositive of the Rule 12(b)(6) motion. That motion is also denied.

*Id*.

On March 16, 2018, the Company filed a Form 10-K for the fiscal year ended December 31, 2017 ("2017 10-K") with the SEC confirming that its internal controls over financial reporting ("ICFR") were not effective as of December 31, 2017. ¶56. The Company stated that:

> ***Based on management's evaluation under the 2013 COSO framework, management concluded that the Company's internal controls over financial reporting were not effective as of December 31, 2017. Certain control deficiencies existed in the internal control over financial reporting as of December 31, 2017, including lack of adequate knowledge of US GAAP and SEC rules and inaccurate accounting for income taxes. These material weaknesses existed as of December 31, 2015 and had not yet been fully remediated as of December 31, 2017.***

*Id*.

E.      **The Full Truth Emerges**

On November 30, 2020, Hindenburg Research published a report on Kandi entitled "Kandi: How This China-Based NASDAQ Listed Company Used Fake Sales, EV Hype to Nab $160 Million From U.S. Investors." ¶57. The Hindenburg Report "unmasked Kandi's unnamed top customers and found that almost 64% of Kandi's last twelve months (LTM) sales have been to undisclosed related parties." ¶¶58-59. In connection with the preparation of the Hindenburg Report, representatives visited "[t]he company's largest customer, representing ~55% of last twelve months (LTM) sales." *Id*. Analyzing various sources of information, the Hindenburg

Report identified the Company's largest customer as Jinhua Chaoneng Automobile Sales Co. Ltd. ("Chaoneng"). *Id*. The Hindenburg Report found that Chaoneng was located in the same industrial park as Kandi and in "[t]he same building [that] housed another entity used by Kandi as part of a [prior] separate fake sales scheme to collect illegitimate subsidies from the Chinese government, for which it was fined and sanctioned." *Id*. The Hindenburg Report also discovered that Chaoneng previously shared an executive with Kandi, the same phone number as a Kandi subsidiary, and that Chaoneng had signage outside of its building with the name "KANDI" appearing on one sign and the words "Jinhua Kandi Electric Vehicle Chaoneng" on another. *Id*.

The Hindenburg Report also identified Kandi's second largest customer as former Kandi subsidiary Zhejiang Kuke Sports Technology Co., Ltd. ("Kuke"), which accounted for "11% of last quarter's sales and 9% of Kandi's LTM sales." ¶¶58, 60. According to the Hindenburg Report, "corporate records on QCC.com still refer to [Kuke] as being a part of Kandi." *Id*. Additionally, the Hindenburg Report found that Kuke's "website still shows close ties to Kandi," that "[t]he homepage features a large image of Kandi's factory and that [Kuke's] logo integrates Kandi with its corporate name." *Id*. The Hindenburg Report found further that Kuke's website "features the brand name 'Jasscol', which is a registered trademark *owned by Kandi*." *Id*. The Hindenburg Report found further that 30% of Kuke's historical exports were to Massimo Motor Sports LLC ("Massimo"), an entity based out of Kandi America's Headquarters and owned by the Founder and Manager of Kandi America. *Id*. According to the Hindenburg Report, Massimo was therefore a top customer and top supplier to the Company. *Id*. The Hindenburg Report stated further that 52% of Kuke's historical exports went to Jass Motorsports, Inc., an entity that shared an executive with Kandi and was based out of the same address as a branch of Kandi USA. *Id*.

The Hindenburg Report further noted that 9% of Kuke's historical exports went to Lil Pick Up, Inc., an entity that also leased warehouse space at Kandi America's Headquarters. *Id*.

## III.  STANDARD OF REVIEW

A plaintiff's allegations need only be "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must "accept all factual allegations in the complaint as true" and "must consider the complaint in its entirety. . . ." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## IV.  PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT

Section 10(b) of the Exchange Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. §78j(b).

### A.  The Statute of Limitations Is Inapplicable and Does Not Bar Plaintiff's Claims

Contrary to Defendants' contention (Motion 13-16), Plaintiff's claims are not barred by the statute of limitations. The Exchange Act provides that "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of: (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. §1658. The filing period commences "when the plaintiff discovers (or should have discovered) the securities-law violation." *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017). A securities-law violation is discovered when the plaintiff learns "sufficient

information about [the violation] to . . . plead it in a complaint" with enough "detail and particularity to survive a [Federal Rule of Civil Procedure] 12(b)(6) motion to dismiss." *City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011); *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 95 (2d Cir. 2018).

Critically, the "inquiry notice" standard upon which Defendants attempt to rely is no longer valid due to the Supreme Court's decision in *Merck*. 559 U.S. at 651-53. For instance, Defendants suggest that "the announcement of the Restatement in March 2017 ***put Plaintiff on notice*** of the alleged internal control issues and supposed misstatements in the Financial Statements." Motion at 13. Based on the clear statutory language, however, "discovery" is the event that triggers the limitations period for these claims. *Merck*, 559 U.S. at 651-53. In fact, the Supreme Court drew a sharp distinction between these two concepts, holding that, if "inquiry notice refers to the point where the facts would lead a reasonably diligent plaintiff to investigate further, ***that point is not necessarily the point at which the plaintiff would already have discovered facts***" constituting a violation of the securities laws. *Id*. at 651.

Accordingly, the Supreme Court rejected "inquiry notice" as the event triggering the applicable statute of limitations "[b]ecause the statute contains no indication that the limitations period should occur at some earlier moment before discovery, when a plaintiff would have ***begun*** investigating." *Id*. (italics in original). Thus, after *Merck*, courts still assume a reasonable plaintiff on inquiry notice would conduct further investigation, but the limitations period begins to run only when, in the course of that investigation, the reasonable plaintiff would have discovered sufficient information to plead a securities-law violation adequately. *Id*. Importantly, ***"[i]t is Defendants' burden to show how these events did alert or should have alerted Plaintiff to discover facts with sufficient detail and particularity to demonstrate each***

11

*element of the alleged violations, including the scienter of each Defendant.*" *Washington State Inv. Bd. v. Odebrecht S.A.*, 461 F. Supp. 3d 46, 62 (S.D.N.Y. 2020).

Here, Defendants identify no event through which Plaintiffs should have gained sufficient information to plead with enough detail and particularity to survive a motion to dismiss, including scienter. On the contrary, although Defendants attempt to rely heavily upon the Company's Restatement and the decision in *In re Kandi Technologies Group, Inc. Securities Litigation*, No. 17 CIV. 1944 (ER), 2019 WL 4918649 (S.D.N.Y. Oct. 4, 2019) ("Dismissed Action") to suggest that Plaintiff's claims are barred, Defendants simultaneously contend that they made no false or misleading statements at all and that they acted without scienter. "Under the discovery rule standard, though, the statute of limitations would not start running until the plaintiffs could have plausibly pled their claims." *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 180 (D. Conn. 2019). Indeed, the fact that the Dismissed Action was dismissed supports Plaintiff's position – that for purposes of the statute of limitations, in the court's opinion, the Dismissed Action *did not* plausibly plead claims under the Exchange Act.

Defendants cannot have it both ways – they cannot assert that they purportedly made no false and misleading statements and acted without scienter, and yet claim that sufficient information was nevertheless discoverable at some unspecified point in time to enable Plaintiff to successfully plead violations of the securities laws. *See, e.g.*, *Charles Schwab*, 883 F.3d at 95 ("Even if UBS's SEC filing would have led a reasonable investor to investigate the possibility of fraud, such inquiry notice does not automatically begin the running of the limitations period for Securities Exchange Act claims . . . [because] . . . [i]nstead, we must ask when an investigation would have given Schwab sufficient information to plead its claims with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss."); *Booth v. Strategic Realty Tr., Inc.*, No. 13-

CV-04921-JST, 2014 WL 3749759, at *6 (N.D. Cal. July 29, 2014) ("Just because [defendants] acknowledged a lack of control in one specific area in summer 2012 . . . how much additional time was needed to properly trigger 'discovery' under the one-year statute of limitations is a question that is best addressed after the development of a sufficient factual record."). Thus, Plaintiff's claims are not barred by the statute of limitations.[2]

**B.      Plaintiff Adequately Alleges that Defendants Made Materially False and Misleading Statements**

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a plaintiff adequately pleads falsity by "specify[ing] each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. §78u-4(b)(1)(B). Plaintiff has adequately done so here.

**1.      The Company's Restatement Constitutes an Admission that its Financial Results Were Materially False at the Time They Were Issued**

As courts within this district have declared uniformly, "misreported financial data are clearly false statements of fact." *In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 569 (S.D.N.Y. 2007). Indeed, "the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made." *Fresno Cty. Employees' Ret. Ass'n v.*

---

[2] Defendants' cases are distinguishable. In *Schiro v. Cemex, S.A.B. de C.V.*, 438 F. Supp. 3d 194 (S.D.N.Y. 2020), the Company disclosed that senior executives of its subsidiaries had paid bribes in connection with certain transactions, which the court held sufficient to trigger the running of the statute of limitations. *Id*. at 201. Similarly, in *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664, 668 (2d Cir. 2016), the court found that information that "Defendants had misrepresented facts when soliciting investors" was previously available, thereby triggering the statute of limitations. *Id*. at 668. In *FirstBank Puerto Rico, Inc. v. La Vida Merger Sub, Inc.*, 638 F.3d 37 (1st Cir. 2011), the court held that plaintiffs had actual notice of their claims, including defendants' scienter. *Id*. at 40. Defendants do not contend that such facts exist here. Additionally, *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 351 (2d Cir. 1993), *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983), and *Donoghue v. Am. Skiing Co.*, 155 F. Supp. 2d 70, 75 (S.D.N.Y. 2001), discuss inquiry notice as the event triggering the applicable statute of limitations – a principle which the Supreme Court rejected in *Merck*. 559 U.S. at 651-53. Defendants also claim that "a number of the claims contained in the Complaint are also barred by the statute of repose applicable to securities fraud claims because more than five years have passed from the making of the challenged statements and the filing of the Complaint." Motion at 13 n.4. However, the Class Period begins on June 15, 2015 (¶28), and therefore the challenged statements fall within five years of the filing of the Complaint. Thus, the statute of repose does not bar Plaintiff's claims.

*comScore, Inc.*, 268 F. Supp. 3d 526, 544 (S.D.N.Y. 2017); *see also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 606 (S.D.N.Y. 2009) ("Misreported financial information clearly amounts to a false statement of fact."); *Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 410 (S.D.N.Y. 2007) ("the mere fact that statements were restated at all is sufficient to establish falsity at the pleading stage").

On March 13, 2017, Kandi announced that its previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016, would need to be restated. ¶46. Additionally, within Kandi's 2016 10-K, the Company restated its 2014 – 3Q 2016 financial statements and admitted that there were material weaknesses in the Company's internal controls. ¶48. Specifically, Kandi conceded that it had made "errors" in the classification of notes receivable and notes payable in its statement of cash flows, it had failed to separately identify certain related party accounts on the face of the Company's balance sheets and income statements, and it had improperly accounted for the Company's equity investment in the JV Company. ¶49. "Although a restatement is not an admission of wrongdoing, the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004).

Defendants claim that Plaintiff has not adequately alleged falsity because: (1) the Restatement purportedly does not demonstrate that Defendants' statements were false at the time they were made; (2) the Restatement purportedly had no impact on Kandi's corporate income; (3) Defendants purportedly had not duty to disclose internal control deficiencies before the Company issued its 2016 10-K; and (4) the Hindenburg Report provided no new information to investors. Motion at 22-24. Each argument fails.

First, under Generally Accepted Accounting Principles ("GAAP"), restatements are proper only to correct material errors in financial statements that existed ***at the time the statements were issued***. *See, e.g.*, *Atlas*, 324 F. Supp. 2d at 486 ("the mere fact that financial results were restated is sufficient basis for pleading that those statements were false ***when made***"); *In re Commtouch Software Ltd. Sec. Litig.*, No. C 01-00719 WHA, 2002 WL 31417998, at *7-*9 (N.D. Cal. July 24, 2002) ("a restatement is proper where an error has been made in a previously-issued financial statement . . . where there has been . . . oversight or misuse of facts that existed at the time the financial statements were prepared. . .. '[A]t that time' refers to the time of revenue recognition, not the time of the audit and restatement.").

Second, even a mere announcement of a company's intention to restate its financial statements – without specific information related to the effect of the restatement on past financial results – is sufficient to establish falsity:

> The Complaint quotes from nearly every public filing and press release issued by BISYS during the Class Period and asserts that the restatement is an admission that these filings and press releases misrepresented BISYS' true financial condition. ***BISYS argues that these allegations are not sufficiently particularized because plaintiffs fail to specify which figures in the financial statements were false and to explain why those figures were misleading.***
>
> ***BISYS' argument, for the most part, is without merit***. Pursuant to Generally Accepted Accounting Principles ("GAAP"), previously issued financial statements should be restated only to correct material accounting errors that existed at the time the statements were issued. . . .***The Complaint therefore alleges adequately that the financial statements and press releases issued during the Class Period were false to the extent they reported, discussed, or analyzed figures that subsequently were restated as well as any financial statistics derived from restated figures***.

*In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 437 (S.D.N.Y. 2005). Accordingly, "[n]either the PSLRA nor Rule 9(b) requires a plaintiff to reconstruct a company's financial affairs in greater detail than the corporation's own auditors were able to achieve." *Atlas*, 324 F. Supp. 2d at 487.

Third, Defendants' contention that they had no duty to disclose the Company's internal control deficiencies earlier than the issuance of the 2016 10-K on March 16, 2017 is incorrect. "Even when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth." *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014). In addition to their attestations in their SOX Certifications, as early as November 9, 2015, Defendants represented that the Company's internal controls were effective and that there were no changes that materially affected the Company's internal control over financial reporting. ¶¶33, 35, 38, 40, 42. Once a corporation makes "a disclosure about a particular topic, whether voluntary or required, the representation must be complete and accurate." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010); *Caiola v. Citibank, N.A., New York*, 295 F.3d 312, 331 (2d Cir. 2002).

Finally, Defendants claim that the Hindenburg Report provided no new information. Motion at 23-24. Not so. The Company's shares plunged nearly 25% after the Hindenburg report was issued, demonstrating that the market was reacting to new information, not information that it had already digested. *See In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 372 (S.D.N.Y. 2009) ("While defendants argue that . . . the market had already absorbed the news, they can point to no reason why the stock declined"). Thus, Defendants' arguments fail.[3]

### 2. Defendants' Statements Regarding Related-Party Transactions Were False and Misleading

During the Class Period, Defendants also reported no change in cashflow attributable to

---

[3] Although Defendants cite to *Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978) to suggest that Plaintiff's claims are purportedly based on hindsight (Motion at 23), "[r]ather, Shareholders' allegations proffer an array of circumstantial evidence giving rise to a strong inference that [defendant's] [] statements were at least reckless, which is enough to survive a motion to dismiss under the PSLRA." *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 269 (3d Cir. 2009).

related-party transactions. ¶¶30, 32, 36. Defendants, however, failed to disclose that: (1) Kandi artificially inflated its reported revenues through undisclosed related-party transactions; and (2) a substantial amount of Kandi's previous sales had been to undisclosed related parties. ¶¶57-64. For instance, the Hindenburg Report "unmasked Kandi's unnamed top customers and found that almost 64% of Kandi's last twelve months (LTM) sales have been to undisclosed related parties." ¶¶58-59. In connection with the preparation of the Hindenburg Report, representatives visited "[t]he company's largest customer, representing ~55% of last twelve months (LTM) sales." *Id*. Analyzing various sources of information, the Hindenburg Report identified the Company's largest customer as Chaoneng. *Id*. The Hindenburg Report found that Chaoneng was located in the same industrial park as Kandi and in "[t]he same building [that] housed another entity used by Kandi as part of a [prior] separate fake sales scheme to collect illegitimate subsidies from the Chinese government, for which it was fined and sanctioned." *Id*. The Hindenburg Report also discovered that Chaoneng previously shared an executive with Kandi, the same phone number as a Kandi subsidiary, and that Chaoneng had signage outside of its building with the name "KANDI" appearing on one sign and the words "Jinhua Kandi Electric Vehicle Chaoneng" on another. *Id*.

The Hindenburg Report also identified Kandi's second largest customer as former Kandi subsidiary Kuke, which accounted for "11% of last quarter's sales and 9% of Kandi's LTM sales." ¶¶58, 60. According to the Hindenburg Report, "corporate records on QCC.com still refer to [Kuke] as being a part of Kandi." *Id*. Additionally, the Hindenburg Report found that Kuke's "website still shows close ties to Kandi," that "[t]he homepage features a large image of Kandi's factory and that [Kuke's] logo integrates Kandi with its corporate name." *Id*. The Hindenburg Report found further that Kuke's website "features the brand name 'Jasscol', which is a registered trademark *owned by Kandi*." *Id*. The Hindenburg Report found further that 30% of Kuke's

historical exports were to Massimo, an entity based out of Kandi America's Headquarters and owned by the Founder and Manager of Kandi America. *Id*. According to the Hindenburg Report, Massimo was therefore a top customer and top supplier to the Company. *Id*. The Hindenburg Report stated further that 52% of Kuke's historical exports went to Jass Motorsports, Inc., an entity that shared an executive with Kandi and was based out of the same address as a branch of Kandi USA. *Id*. The Hindenburg Report further noted that 9% of Kuke's historical exports went to Lil Pick Up, Inc., an entity that also leased warehouse space at Kandi America's Headquarters. *Id*.

### 3. Defendants' SOX Certifications Were False and Misleading

Defendants' SOX certifications were also false and misleading. Defendants repeatedly attested to the accuracy of the Company's financial statements, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud. ¶¶29, 31, 34, 37, 39, 41. These representations were false and misleading because: (1) certain areas in the Company's previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 required adjustment; and (2) the Company lacked effective controls over financial reporting. ¶¶45-56. Thus, "Defendants' SOX certifications are plausibly alleged to have been false or misleading." *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, No. 1:16-CV-3591-GHW, 2020 WL 1877821, at *12 (S.D.N.Y. Apr. 14, 2020); *see also In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 655 (S.D.N.Y. 2017) (finding SOX certification actionable); *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 391 (S.D.N.Y. 2007) ("Because plaintiffs' allegation that the certifications at issue represent false statements is plausible, the motion to dismiss the Sarbanes-Oxley claim is denied.").

### 4. Defendants' Statements Regarding the Company's Internal Controls Were False and Misleading

Defendants also misrepresented the efficacy of the Company's internal controls. Misrepresentations regarding the adequacy of a company's internal controls are actionable under the Exchange Act. *See, e.g.*, *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, No. 1:16-CV-3591-GHW, 2020 WL 1877821, at *12 (S.D.N.Y. Apr. 14, 2020) ("The Fund has also plausibly alleged that some of Defendants statements about its internal controls were false or misleading."); *In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711, 720 (S.D.N.Y. 2019) (misstatements "concerning the design and efficacy of internal controls are actionable"). In addition to Defendants' false and misleading SOX certifications, Defendants further claimed that the Company's internal controls were effective and that there were no changes that materially affected the Company's internal control over financial reporting. ¶¶33, 35, 38, 40, 42. These statements were false and misleading because as Kandi subsequently admitted, the Company lacked effective controls over financial reporting. ¶¶45-56. Accordingly, Plaintiff has adequately alleged falsity.

### C. Plaintiff Adequately Alleges that Defendants Acted With Scienter

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2); *Tellabs*, 551 U.S. at 314. Importantly, "courts must consider the complaint in its entirety . . . [t]he inquiry is whether **all** of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323 (emphasis in original). A strong inference of scienter arises if, "[w]hen the allegations are accepted as true and taken collectively," a "reasonable person would deem the inference of scienter at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. at 324-26. "The inference that the defendant acted with scienter need not be

irrefutable, *i.e.*, of the smoking gun genre, or even the most plausible of competing inferences" – the inference need only be equally plausible to as non-culpable inference. *Id.* at 324. Moreover, "at the motion to dismiss stage, a tie on scienter goes to the plaintiff." *City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012).

In the Second Circuit, plaintiffs may establish scienter in one of two ways: "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious behavior or recklessness." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). "Either set of allegations will suffice to satisfy the necessary scienter element of a securities fraud claim." *Stevelman v. Alias Research Inc.*, 174 F. 3d 79, 84 (2d Cir. 1999). Plaintiff has adequately alleged facts that constitute strong circumstantial evidence of conscious behavior or recklessness.[4]

### 1. The Company's Internal Control Deficiencies Support a Strong Inference of Scienter

The Company's internal control deficiencies also support a strong inference of scienter. *See Varghese*, 672 F. Supp. 2d at 608 (holding that allegations that defendants were aware of company's weak internal controls "support a strong inference of scienter"). Here, Kandi announced that its previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016, would need to be restated. ¶46. Additionally, on March 16, 2017, the Company restated its 2014 – 3Q 2016 financial statements and admitted that there were material weaknesses in the Company's internal controls. ¶48. As noted above, restatements are proper only to correct material errors in financial

---

[4] Defendants suggest that a lack of an alleged motive undermines Plaintiff's Complaint. Motion at 16-17. The Supreme Court has repeatedly declared, however, that the "absence of a motive allegation" is "not dispositive." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011); *see also Tellabs*, 551 U.S. at 325 ("the absence of a motive allegation is not fatal").

statements that existed *at the time the statements were issued*. *Atlas*, 324 F. Supp. 2d at 486. Thus, "a failure to maintain sufficient internal controls to avoid fraud is sufficiently indicative of scienter." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 232 (S.D.N.Y. 2006).

### 2. Because the Facts Alleged Relate to the Company's Core Operations, They Support a Strong Inference of Scienter

The facts alleged also support a strong inference of scienter because they relate to the core operations of the Company. "[A]llegations of a company's core operations . . . can provide supplemental support for allegations of scienter, even if they cannot establish scienter independently." *New Orleans Emps. Ret. Sys. v. Celestica, Inc.,* 455 Fed App'x 10, 14 n.3 (2d Cir. 2011); *see also In re Fairway Grp. Holding Corp. Sec. Litig.*, No. 14 CIV. 0950 LAK, 2015 WL 249508, at *15 (S.D.N.Y. Jan. 20, 2015) (finding a strong inference of scienter where plaintiff "alleges that defendants' misstatements concerned a core operation of their company"); *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 201 (S.D.N.Y. 2010) (holding that because "the misstatements concerned [the company's] core operations" such facts supported a strong inference of scienter).

There is no dispute that Plaintiff's allegations concern the Company's core operations. ¶¶23, 45-64, 58-60. For instance, the Hindenburg Report provides facts relating to Chaoneng, "[t]he company's largest customer, representing ~55% of last twelve months (LTM) sales" (¶¶58-59), as well as Kandi's second largest customer, Kuke, which accounted for "11% of last quarter's sales and 9% of Kandi's LTM sales." ¶¶58, 60. Accordingly, "the fact that [the alleged fraud] involved the core operations of [the company's] business also support[s] a strong inference of

scienter." *In re Salix Pharms., Ltd.*, No. 14-CV-8925 (KMW), 2016 WL 1629341, at *16 (S.D.N.Y. Apr. 22, 2016).[5]

### 3.       Defendants' Admissions Support a Strong Inference of Scienter

Defendants' admissions add to the strong inference of scienter alleged.  "Statements by company employees may also help strengthen an inference of scienter."  *Schaeffer v. Nabriva Therapeutics plc*, No. 19 CIV. 4183 (VM), 2020 WL 7701463, at *13 (S.D.N.Y. Apr. 28, 2020); *see also Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 227 (S.D.N.Y. 2008) ("[A]dmissions of misrepresentations, coupled with defendants' continuous intimate knowledge of company affairs is enough to adequately infer scienter.").

On December 7, 2020, Kandi issued a letter from the Company's Chairman ("Chairman's Letter") that attempted to dispute the findings contained in the Hindenburg Report. ¶61.  Contrary to its intention to dispute the contentions regarding Kandi's related parties contained in the Hindenburg Report, the Chairman's Letter actually admitted facts that confirm the related nature of such entities. ¶¶62-64.  For instance, with respect to Chaoneng, the Chairman's Letter admitted, among other things, that: (1) Chaoneng rented office space from Kandi; (2) Chaoneng and Kandi previously shared the same telephone number; (3) Chaoneng is located in the same industrial park complex as Kandi, adjacent to a Kandi factory; (4) Chaoneng provides maintenance services to vehicles manufactured by Kandi in the same industrial park complex; (5) Chaoneng has Kandi's name in its signage at the industrial park complex; and (6) Chaoneng's legal representative, Hu Yiheng, was previously an executive of Kandi who resigned from Kandi in April 2011 to start

---

[5]       Defendants incorrectly suggest that Plaintiffs merely allege scienter based upon Defendants' positions. Motion at 18-19.  However, "[u]nder the core operations theory, a court may infer that a company and its senior executives have knowledge of information concerning the core operations of a business, such as events affecting a significant source of revenue." *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 37–38 (S.D.N.Y. 2019).

Chaoneng. ¶62.

Similarly, with respect to Kuke, the Chairman's Letter admitted, among other things, that: (1) Kuke was a subsidiary of Kandi until January 2008; (2) in February 2008, Kuke was spun-off from Kandi; and (3) Kuke has been the exclusive agent of Kandi's products in the United States since August 2015. ¶63. Additionally, the Chairman's Letter failed to dispute – and therefore impliedly conceded – that: (1) the Chinese government previously sanctioned Kandi and its JV partner over a scheme to collect illegitimate government subsidy payments through fake EV sales and the entity used to generate the fake sales in the scheme – Left Middle Right, Co. Ltd. – is based out of the same building as Chaoneng; (2) corporate records on QCC.com still refer to Kuke as being part of Kandi; (3) Kuke's website shows close ties to Kandi and feature the brand name Jasscol, which is a registered trademark owned by Kandi; (4) Kuke is buying from Kandi and then selling right back to undisclosed related parties of Kandi; (5) Massimo Motor Sports, an undisclosed related-party entity of Kandi America, is both a top customer and a top supplier of Kandi; (6) 52% of Kuke's historical exports were to Jass Motorsports, Inc., an entity that shared an executive with Kandi and was previously based in the same address as a branch of Kandi USA; and (7) 9% of Kuke's historical exports went to Lil Pickk Up, Inc., and entity that also leases warehouse space at Kandi America's headquarters. ¶64. Thus, "Defendants' own response to the issue contributes to an inference of scienter here." *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 708 (9th Cir. 2016); *see also Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 76-83 (1st Cir. 2002) (holding that subsequent public statements supported "an extremely reasonable inference" that the company had previously engaged in improper conduct).

**4. Defendants' SOX Certifications Support a Strong Inference of Scienter**

Defendants' SOX certifications also add to the strong inference of scienter alleged. Combined with other allegations, SOX certifications can support a strong inference of scienter. *Frank v. Dana Corp.*, 646 F.3d 954, 961-62 (6th Cir. 2011).

Here, Defendants attested to the accuracy of the Company's financial statements, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud. ¶¶29, 31, 34, 37, 39, 41. SOX certifications properly add to the scienter calculus because such certifications require executives "to access sufficient reporting information to certify that the information provided did not omit any material facts to make the report not misleading." *Bielousov v. GoPro, Inc.*, No. 16-cv-06654-CW, 2017 WL 3168522, at *7 (N.D. Cal. July 26, 2017); *see also Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, No. 1:16-CV-3591-GHW, 2020 WL 1877821, at *14 (S.D.N.Y. Apr. 14, 2020) ("The Fund has plausibly pleaded that Defendants acted with scienter by attesting to the adequacy of their internal controls in the SOX certifications."). "For these certifications to have any substance, signatories to the certifications must be held accountable for the statements." *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1189 (C.D. Cal. 2007).

**5. CFO Wang's Resignation Supports a Strong Inference of Scienter**

Coupled with the other allegations of scienter, CFO Wang's resignation also bolsters the strong inference of scienter alleged. *See, e.g.*, *comScore*, 268 F. Supp. 3d at 553 ("The timing and circumstances surrounding the resignations . . . also contribute to the inference of scienter"); *Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547, 575 (S.D.N.Y. 2012) (holding that defendant's resignation added to the strong inference of scienter alleged).

On November 14, 2016, the Company announced the abrupt resignation of Defendant Wang as the CFO. ¶45. On this news, shares of Kandi fell $0.40 per share, or more than 10%

from their previous closing price, to close at $3.50 per share on November 14, 2016, damaging investors. *Id*. CFO Wang's resignation occurred merely four months before the Company revealed that its previously-issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016, would need to be restated. ¶46. Such resignations "although not sufficient in and of themselves, add to the overall pleading of circumstantial evidence of fraud." *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 394 n.176 (S.D.N.Y. 2007).

"The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322-22 (italics in original). Under this standard, Plaintiff has adequately alleged scienter under the Exchange Act.

**D.     Plaintiff Adequately Alleges Control Person Liability**

Contrary to Defendants' assertion (Motion at 24) – and as demonstrated above – Plaintiff has adequately pled a primary violation. Plaintiff has also sufficiently alleged the Individual Defendants' control over Kandi under the Exchange Act. ¶¶11-22; 86-90. Additionally, "[b]ecause Plaintiff[] [has] pled facts sufficient to support an inference of scienter as to these Defendants, [Plaintiff has] necessarily pled facts sufficient to support culpable participation" under Section 20(a). *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 254 (S.D.N.Y. 2018).

**V.     CONCLUSION**

Accordingly, the Court should deny Defendants' Motion. Alternatively, if the Court grants any portion of the Motion, Plaintiff respectfully requests leave to amend. *See ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) ("courts typically grant plaintiffs at least one opportunity to plead fraud with greater specificity when they dismiss under Rule 9(b)").

DATED:  May 10, 2021                    **GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Ex Kano S. Sams II*

Robert V. Prongay (admitted *pro hac vice*)
Ex Kano S. Sams II (admitted *pro hac vice*)
Charles H. Linehan (admitted *pro hac vice*)
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: esams@glancylaw.com

*Counsel for Lead Plaintiff Tom Brooks and the Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel*

## PROOF OF SERVICE

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On May 10, 2021, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 10, 2021.

*s/ Ex Kano S. Sams II*
Ex Kano S. Sams II