```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
SRINIVASAN VENKATARAMAN,                                     :
                                        Plaintiff,           :
                                                             :         20 Civ. 8082 (LGS)
                -against-                                    :
                                                             :         OPINION AND ORDER
KANDI TECHNOLOGIES GROUP, INC., et al.,                      :
                                       Defendants.           :
------------------------------------------------------------ X
```

LORNA G. SCHOFIELD, District Judge:

  Plaintiff Srinivasan Venkataraman, individually and purportedly on behalf of all others similarly situated, brings this action alleging violations of (1) § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 by Defendants Xiaoming Hu, Cheng Wang, Bing Mei, Liming Chen, Jerry Lewin and Henry Yu (collectively, the "Individual Defendants") and Kandi Technologies Group, Inc. ("Kandi") and (2) § 20(a) of the Exchange Act by the Individual Defendants. Plaintiff's Revised Amended Complaint was dismissed with leave to amend. Defendants now move to dismiss the Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(2). For the reasons below, the motion is granted in part and denied in part.

**I. BACKGROUND**

  The following facts are taken from the SAC and are assumed to be true for purposes of this motion. *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020).

  Defendant Kandi, a Delaware corporation, designs, manufactures and distributes electric vehicles ("EVs") and off-road vehicles in the People's Republic of China and internationally.

Kandi's shares trade on the NASDAQ under the ticker symbol "KNDI."  The SAC asserts claims on behalf of a putative class of shareholders who purchased Kandi stock during the period June 10, 2015, to March 13, 2017 (the "Class Period").

During the Class Period, Defendant Hu was the CEO, President and Chairman of the Board at Kandi.  Defendant Wang served as Kandi's CFO from May 1, 2015, until November 14, 2016, and Defendant Mei succeeded Wang as CFO from November 14, 2016, until January 29, 2019.  Defendants Chen, Lewin and Yu each sat on Kandi's Board of Directors and served on its Audit Committee during the Class Period.

Before, during and apparently after the Class Period, Kandi's financial statements failed to disclose the full extent of Kandi's related-party transactions.  In March 2013, Kandi entered into a joint venture (the "JV") of which it owned 50%.  Kandi sold parts to the JV, which used them to manufacture EVs.  The JV then sold vehicles to Zhejiang ZuoZhongYou Electric Vehicle Service Co., Ltd. ("Service Company"), which sold and leased the vehicles.  Kandi owned 9.5% of the Service Company, and Hu owned another 13%.  At the time, the Chinese government made subsidies available to both producers and purchasers of EVs, so through the JV and Service Company, Kandi was able to "double dip."

Kandi's Form 10-K for the year ended December 31, 2014 was filed on March 16, 2015, prior to the commencement of the Class Period.  The only related-party transactions reported in the 2014 10-K were with "Kandi USA Inc. carrying trade name of Eliteway" amounting to $2,981,944, $6,906,807 and $5,297,548, for the years 2014, 2013 and 2012, respectively.  The 2014 10-K also disclosed a policy regarding the reporting of related-party transactions and stated that Kandi's internal financial reporting controls were effective.  Kandi's 2014 10-K included a certification by Hu pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") of the accuracy of the

10-K, including disclosure of any fraud or significant deficiencies or material weaknesses in internal controls.

On August 10, 2015, Kandi filed its Q2 2015 Form 10-Q with the SEC. That filing was signed by Hu and Wang and attached SOX certifications from Hu and Wang. The 2Q 2015 10-Q reported Kandi's related party transactions and stated that there were no changes in cashflow attributable to related-party transactions, nor in the company's internal controls. Kandi's 3Q 2015 10-Q, filed on November 9, 2015, included the same statements, signatures and SOX certifications.

Kandi's 2015 10-K, filed on March 14, 2016, also stated that Kandi's "internal controls over financial reporting were effective as of December 31, 2015" and included SOX certifications from Hu and Wang. Prior to that filing, in a meeting between Kandi's management and auditor, Kandi identified both Kandi USA and the Service Company as related parties. Kandi stated that it engaged in no related-party transactions with Kandi USA in 2015, but it had engaged in such transactions, mainly battery sales, with the Service Company. The only related-party transactions disclosed in the 2015 10-K, however, were the 2014 and 2013 transactions with Kandi USA, as previously reported in the 2014 10-K.

On March 22, 2016, Kandi's Audit Committee approved related-party transactions with the Service Company totaling $42,032,060 and authorized Kandi to engage in further related-party transactions with the Service Company throughout the rest of 2016. In an August 1, 2016, meeting, Kandi and its auditor discussed related-party transactions with the Service Company totaling $4 million in sales and $11 million in receivables. They also discussed the fact that the Chinese government had decided to delay subsidy payments to the JV. There was a discussion about reducing Kandi's reliance on those subsidies.

In September 2016, the Chinese government announced an end to the subsidies, after an investigation into companies structuring their operations to take advantage of subsidies for both purchasers and producers of EVs. Throughout 2016, Kandi filed its 1Q, 2Q and 3Q 10-Qs with the SEC, each of which was signed by Hu and Wang, included Hu and Wang's SOX certifications and disclosed no changes in internal controls. There is no allegation that those 10-Qs said anything about related-party transactions.

On March 13, 2017, the last day of the Class Period, Kandi filed a Form 8-K disclosing that its financial statements for 2014, 2015 and the first three quarters of 2016 would need to be restated. The 8-K reported that, while Kandi did not intend to restate its quarterly reports for 2014 and 2015, they should no longer be relied upon. The 8-K stated that Kandi's restatements would include "corrections to the classification of notes receivable and notes payable in the Company's statements of cash flow," "revisions . . . to separately identify certain related party accounts on the face of the Balance Sheets and the Consolidated Statements of Income (Loss) and Comprehensive Income (Loss)" and changes to its accounting for its equity investment in a certain joint venture company. The 8-K also stated that the restatements "will have no effect on the net income of the Company as reported in the Previously Issued Financial Statements." After the announcement of this news, Kandi's share price fell $0.30 per share, or approximately 6%, from its prior closing price. On March 16, 2017, Kandi filed its 2016 10-K, in which it restated its financial results as previously announced and admitted that there were material weaknesses in its internal controls. One year later, when Kandi filed its 2017 10-K on March 16, 2018, Kandi disclosed that the material weaknesses in financial controls had "existed as of December 31, 2015," and "had not yet been fully remediated as of December 31, 2017."

On November 30, 2020, Hindenburg Research published a report (the "Hindenburg Report") titled "Kandi:  How This China-Based NASDAQ Listed Company Used Fake Sales, EV Hype to Nab $160 Million From U.S. Investors."  The Report, among other things, opines that nearly 64% of Kandi's "last twelve months (LTM) sales have been to undisclosed related parties."  In response to the Hindenburg Report, Defendant Hu released a letter that responded to some, but not all, of the Report's opinions and assertions.

## II.   STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations."  *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] [Plaintiff's] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (first alteration in original); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  *Rich v. Fox*

*News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

To state a claim under § 10(b) and Rule 10b-5, "a plaintiff must allege that each defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021). "A complaint alleging securities fraud must also satisfy heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b) and the [PSLRA]." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 75 (2d Cir. 2021). Rule 9(b)'s heightened pleading standard requires: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The PSLRA expanded on Rule 9(b)'s pleading standard, requiring that securities fraud complaints "specify" each misleading statement, that they set forth the facts "on which [a] belief" that a statement is misleading was "formed" and that they "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1), (2). "A complaint will survive 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 212 (2d Cir. 2020) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).

"To establish scienter, a complaint may (1) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) allege facts to show that defendants had both motive and opportunity to commit fraud." *Set Cap. LLC*, 996 F.3d at 78

6

(internal quotation marks omitted). The sufficiency of a complaint's allegations of scienter are evaluated "'holistically' considering 'all of the facts alleged, taken collectively,' rather than 'any individual allegation, scrutinized in isolation.'" *Id.* (quoting *Tellabs, Inc.*, 551 U.S. at 323, 326). "For an inference of scienter to be strong, as required by the PSLRA, a reasonable person must deem it cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged." *Id.* (cleaned up). "In the securities fraud context, recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care, not merely a heightened form of negligence." *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015) (cleaned up); *accord Gray v. Alpha & Omega Semiconductor, Ltd.*, No. 20 Civ. 2414, 2021 WL 4429499, at *10 (S.D.N.Y. Sept. 27, 2021).

"Where a defendant is a corporation, this requires pleading facts that give rise to a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) (internal quotation marks omitted). "[M]ost courts look to the discrete roles played by the corporate actors who are connected to the alleged misrepresentation to determine which (if any) fall within the locus of a company's scienter." *Id.* "Under this approach, the most straightforward way to raise a strong inference of corporate scienter is to impute it from an individual defendant who made the challenged misstatement." *Id.* (internal quotation marks omitted).

"In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009); *accord In re Wells Fargo & Co. Secs. Litig.*, No. 20 Civ. 4494, 2021 WL 4482102, at *27 (S.D.N.Y. Sept. 30, 2021). "This can consist of allegations as to who possessed . . . knowledge of the fraud, when

and how they obtained [that] knowledge, or even why they should have known of the fraud." *In re DDAVP*, 585 F.3d at 695 (alteration in original) (internal quotation marks omitted).

To state a claim under § 20(a), a plaintiff must allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (internal quotation marks omitted); *accord UA Local 13 Pension Fund v. Sealed Air Corp.*, No. 19 Civ. 10161, 2021 WL 2209921, at *8 (S.D.N.Y. June 1, 2021).

Private securities fraud claims must be brought within "2 years after the discovery of the facts constituting the violation" or "5 years after such violation," whichever is earlier. 28 U.S.C. § 1658(b). "[T]he 'discovery' of facts that put a plaintiff on 'inquiry notice' does not automatically begin the running of the limitations period." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 653 (2010); *accord Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 94 (2d Cir. 2018). "[T]erms such as 'inquiry notice' and 'storm warnings' may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating. But the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' including scienter -- irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Merck*, 559 U.S. at 653; *accord Parisienne v. Scripps Media, Inc.*, No. 19 Civ. 8612, 2021 WL 3668084, at *3 (S.D.N.Y. Aug. 17, 2021).

"[E]xpiration of the statute of limitations presents an affirmative defense." *de Rothschild v. Serlin*, No. 19 Civ. 11439, 2021 WL 860227, at *4 (S.D.N.Y. Mar. 8, 2021). Such a defense, "based exclusively on dates contained within the complaint or appended materials, may be

8

properly asserted by a defendant in a Rule 12(b)(6) motion," but "in deciding such a motion, a court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Id.* (cleaned up). "[I]n ruling on a 12(b) motion to dismiss" based on an affirmative defense, "the district court [is] also permitted to consider matters of which judicial notice may be taken," even if not "apparent from the face of the pleading." *Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021) (cleaned up).

### III.   DISCUSSION

#### A.   Violation of § 10(b)

##### 1. Statute of Repose, Reliance and Falsity

All but a few of the many alleged misstatements identified in the SAC fail because they are barred by the statute of repose, or because the SAC does not allege that Plaintiff relied on them or that they were false.

First, many of the alleged statements were made before June 10, 2015. While earlier statements may provide some evidence relevant to non-time-barred statements, any claims based directly on statements before June 10, 2015, are barred by the five-year statute of repose. *See* 28 U.S.C. § 1658(b). Second, of the alleged misstatements in the class period, several appear to have been made only in internal meetings or to Kandi's auditor. The SAC does not allege that those statements were made to Plaintiff, nor that they were made publicly to the market in general. So as to these statements, the SAC does not plausibly plead reliance, even under a fraud-on-the-market theory. *Ark. Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 481 (2d Cir. 2018) (noting that a misstatement must be "publicly known" in order to trigger the presumption of reliance). Third, the statements from Kandi's 2017 and 2018 10-Ks referenced in the SAC are corrective in nature and not alleged to have been false, even though Plaintiff alleges

that they are evidence of earlier statements' falsity.[1]  Fourth, the Hindenburg Report references some potentially false statements that apparently were made within approximately one year of the report's issuance on November 30, 2020, but the SAC does not allege with specificity what those statements were, when they were made, by whom, etc.  Any claims as to those statements thus fail to meet Rule 9(b)'s pleading standard.

The only other statements in the SAC as to which Plaintiff asserts timely claims are based on Kandi's 10-Qs and 10-K from the second quarter of 2015 through the third quarter of 2016.  Within those filings, the only misstatements alleged with particularity are:  (1) statements concerning related party transactions, including both statements disclosing such transactions or stating that there had been no change in cash flow from them, buttressed by Hu's and Wang's SOX certifications attesting that the financials were accurate and all fraud was disclosed; (2) statements about internal controls over financial reporting, including SOX certifications that any significant deficiencies and material weaknesses had been disclosed and statements that there had been no change in controls.

The SAC sufficiently and specifically alleges that the statements about related-party transactions during the class period were false to the extent they concealed transactions with the Service Company.  The SAC alleges that beginning in the 2015 10-K -- which was incorporated by reference in statements in the later 10-Qs that there had been "no change" in cash flow from related parties -- the only related-party transactions Kandi disclosed were with its subsidiary Kandi USA, sometimes under the trade name Eliteway.  The SAC also alleges that Kandi had been engaging in related-party transactions with the Service Company throughout 2015 and

---

[1] Nothing in the 2016 10-K is alleged to be false in light of the disclosures of the 2017 10-K, particularly because it disclosed Kandi's inability to "provide assurance that [it] will not fail to achieve and maintain an effective internal control environment."

2016.  The more general statements in the SOX certifications about the accuracy of the financial statements and the disclosure of fraud are sufficiently alleged to be false to the same extent as the more specific misstatements (and only to that extent).

The SAC also alleges misstatements that concealed related-party transactions with Kandi USA.  Those allegations are not assumed to be true because they are contradicted by more specific allegations elsewhere in the SAC that Kandi's 2014 and 2015 10-Ks fully disclosed those very same transactions.  *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014) ("Although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted by more specific allegations in the [c]omplaint." (cleaned up)); *accord Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 216-17 (S.D.N.Y. 2021).

The SAC also specifically alleges that, beginning with the 2015 10-K, Kandi's statements about material weaknesses in internal controls were false.  *In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711, 720 (S.D.N.Y. 2019) ("Misstatements made in its certifications concerning the design and efficacy of internal controls are actionable.").  In its 2017 10-K, Kandi disclosed that newly discovered "material weaknesses existed as of December 31, 2015 and had not yet been fully remediated as of December 31, 2017."  Contrary to Defendants' argument, this is not an allegation of "fraud by hindsight," but rather an admission by Kandi that earlier statements were false when made.  *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 544 (S.D.N.Y. 2017) ("Although a restatement is not an admission of wrongdoing, the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made." (internal quotation marks omitted)).  Whether Defendants *knew* of their falsity when making the statements is the scienter question, not the falsity question.

Plaintiff's opposition to Defendants' motion suggests that other inaccuracies identified in Kandi's restatement of financial results are actionable misstatements. In restating its financials, Kandi acknowledged that it had erred in "classification of notes receivable and notes payable" and "accounting for the Company's equity investment in the JV Company." But the SAC alleges only that those issues were identified in the restatement and does not allege any of the specific, false statements about those accounting issues that the restatement addressed. That is insufficient to state a claim under Rule 9(b).

### 2. Scienter

Only two categories of alleged misstatements are sufficiently viable to require analysis of scienter: statements concerning (1) related-party transactions with the Service Company and (2) material weaknesses in internal controls. The SAC alleges facts supporting a "strong inference of scienter" with respect to the first category, related-party transactions, and the second, internal controls, to the extent material weaknesses pertained to reporting of related-party transactions. The SAC does not sufficiently allege scienter as to any other alleged material weaknesses, because the SAC does not allege what other weaknesses existed, how any person would or should have known about them or why they would seek to conceal them. *See Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, No. 16 Civ. 3591, 2020 WL 1877821, at *12 (S.D.N.Y. Apr. 14, 2020) (finding that SOX certifications "attesting to the . . . effectiveness of . . . internal controls" were actionable specifically because a company "failed to report [an] adverse material trend[ a]nd [the company's] internal controls failed to arrest, or at least require the disclosure of, the same material trend").

The SAC alleges the requisite strong inference of scienter as to each of the Defendants except for Defendant Mei. The SAC alleges that Mei joined Kandi as CFO after all the culpable

conduct of 2015 and 2016 had taken place and shortly before Kandi began the process of restating its prior financials. The SAC contains no substantive allegations about Mei whatsoever. To the extent any alleged misstatements were made on Mei's watch according to the Hindenburg Report, they are not alleged with specificity in the SAC, as discussed above.

### a. Motive and Opportunity to Commit Fraud

The SAC sufficiently pleads that Defendants Hu and Kandi had a motive and opportunity to commit fraud. Hu and Kandi each had significant ownership stakes in the Service Company. Transactions between Kandi and the Service Company allowed both companies to "double dip" into subsidies from the Chinese government to which they allegedly were not entitled. Hu and Kandi, both directly and by imputation, "benefitted in [a] concrete and personal way from the purported fraud." *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009); *accord Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 779 (S.D.N.Y. 2021); *see Jackson*, 960 F.3d at 98 (discussing imputation of corporate scienter from individual defendants' scienter). The SAC also alleges that Kandi was "investigated" and later "fined and sanctioned" by the Chinese government for collecting illegitimate subsidies. The desire to avoid detection provides an additional motive. Such specific incentives -- on the part of both Kandi and Hu personally -- to double dip and avoid government scrutiny provide a specific motive to conceal these related-party transactions, disclosure of which would have revealed the scheme. Such a specific motive raises a far stronger inference of scienter than the general motive of most corporate officers to make their companies' books look good. *ECA*, 553 F.3d at 198 ("Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to

keep stock prices high and to increase officer compensation, do not constitute 'motive' . . . ."); *accord Maloney*, 518 F. Supp. 3d at 778.

The SAC does not allege facts supporting a similar motive or opportunity as to any of the other Individual Defendants. None of the other Individual Defendants had a personal ownership stake in the Service Company, so any motives they had to boost Kandi's profitability are only those "possessed by virtually all corporate insiders." *Maloney*, 518 F. Supp. 3d at 779 (quoting *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)).

Plaintiff's other motive arguments are unpersuasive. As discussed above, Plaintiff's arguments regarding concealed related-party transactions with Kandi USA fail because those allegations are specifically contradicted within the SAC. And Plaintiff's argument about the discovery of company funds in personal bank accounts in a 2010 audit fails to connect those facts to any of the actionable conduct five years later.

### b. Circumstantial Evidence of Recklessness

The SAC pleads sufficient circumstantial evidence of recklessness or conscious misbehavior as to Defendants Chen, Lewin, Yu and Wang because the SAC plausibly alleges that they "knew facts or had access to information suggesting that their public statements were not accurate." *Set Cap.*, 996 F.3d at 79. The SAC alleges that, on March 7, 2016, Defendants Chen, Lewin, Yu and Wang attended a meeting of Kandi's Audit Committee at which "management identified two related parties" including "the Service Company," and "reported that the Company had engaged in related-party transactions with the Service Company" in 2015. The SAC also alleges that, on August 1, 2016, those same Defendants attended another Audit Committee meeting, and Wang reported to the others that "for the six months ending June 30,

2016" "sales to the Service Company totaled nearly $4 million, while receivables from the Service Company totaled nearly $11 million."

The Audit Committee's awareness of related-party transactions was consistent with the stated procedures for such transactions as represented in Kandi's 2014 10-K, issued shortly before the beginning of the Class Period. Those procedures specified that Kandi's "definition of a 'Related Party' is in line with the definition set forth in the instructions to Item 404(a) of regulation S-K promulgated by the SEC." The relevant regulatory definition, in turn, defines "[t]ransactions with related persons" as those "in which any related person had or will have a direct or indirect material interest," and a "related person" includes "[a]ny director or executive officer of the registrant." 17 C.F.R. § 229.404. Defendants do not dispute that the transactions with the Service Company, in which Defendant Hu, Kandi's CEO, held a significant stake, qualifies as a related-party transaction. The written policy makes clear that Defendants were aware of the reporting requirements for related-party transactions during the Class Period. Defendants' alleged knowledge of the existence of the transactions and of the requirements for reporting them, at the time Defendants signed off on reports omitting those transactions, is sufficient circumstantial evidence of recklessness or conscious misbehavior.

### 3. Statute of Limitations

Defendants' misstatements during the Class Period -- that is, within the applicable five-year statute of repose -- are not barred by the two-year statute of limitations. The applicable statute of limitations begins to run only "after discovery of the facts constituting the violation." 28 U.S.C. § 1658(b). One of the critical facts constituting the violation is scienter. *Merck*, 559 U.S. at 649; *accord Pearlstein v. Blackberry Ltd.*, No. 13 Civ. 7060, 2022 WL 1000314, at *6-7 (S.D.N.Y. Apr. 4, 2022) (quoting *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d

169, 175 (2d Cir. 2011)).  Therefore, the two-year limitations period does not begin "[u]ntil the plaintiff has uncovered -- or a reasonably diligent plaintiff would have uncovered -- enough information about the defendant's knowledge or intent to satisfy this pleading standard."  *City of Pontiac*, 637 F.3d at 175; *accord Pearlstein*, 2022 WL 1000314, at *5.

Defendants argue that a reasonably diligent plaintiff would have discovered all the facts constituting the alleged violation on March 16, 2017, the date on which Kandi announced the restatement of its financials and that another securities fraud action had been filed against Kandi.  *See In re Kandi Techs. Grp., Inc. Sec. Litig.*, No. 17 Civ. 1944, 2019 WL 4918649, at *3 (S.D.N.Y. Oct. 4, 2019).  But "it is Defendants' burden to show how these events did alert or should have alerted Plaintiff to discover facts with sufficient detail and particularity to demonstrate each element of the alleged violations, including the scienter of each Defendant.  The events cited by Defendants are no more than storm warnings, however.  While they may be useful, these events do not disclose information concerning Defendants' scienter, and thus plainly do not trigger the statute of limitations."  *Wash. State Inv. Bd. v. Odebrecht S.A.*, 461 F. Supp. 3d 46, 62 (S.D.N.Y. 2020) (cleaned up) (quoting *City of Pontiac*, 637 F.3d at 175; and then quoting *Merck*, 559 U.S. at 653).

Nothing about the announcement of Kandi's restatement, or the restated financials themselves, discloses anything about Defendants' scienter, such as the subsidy double-dipping scheme or the Audit Committee meetings discussed above.[2]  And the initial complaint in *In re Kandi* did not include *any* specific allegations of scienter along those lines.  *See* Complaint, *In re Kandi*, No. 17 Civ. 1944 (S.D.N.Y. Mar. 16, 2017), ECF No. 1.  Some such allegations, about

---

[2] Contrary to Defendants' claim that "the only significant difference between the [Consolidated Amended Class Action Complaint]" and the SAC is the addition of the Hindenburg Report, in fact virtually all of these material allegations relevant to scienter were newly added to the SAC.

16

purported subsidy fraud, did appear in the *In re Kandi* plaintiffs' amended complaint, which was filed on August 31, 2018, less than two years before the Complaint in this action was filed. *See* Amended Complaint, *In re Kandi*, No. 17 Civ. 1944 (S.D.N.Y. Mar. 16, 2017), ECF No. 42. Assuming the *In re Kandi* plaintiffs were "reasonably diligent," there is no evidence that they could have discovered sufficient facts to plead scienter more than two years before this case was filed.

The cases Defendants cite from before the Supreme Court's *Merck* decision in 2010 are inapposite. "Prior to *Merck*, the law of our Circuit had provided that a plaintiff was on 'inquiry notice' when public information would lead a reasonable investor to investigate the *possibility* of fraud. . . . *Merck* overruled this analysis . . . ." *City of Pontiac*, 637 F.3d at 173-74 (emphasis added).

The few post-*Merck* cases cited are easily distinguishable. The plaintiffs in *Schiro v. Cemex S.A.B. de C.V.* did not argue that they were delayed in discovering facts about scienter. 438 F. Supp. 3d 194, 202 (S.D.N.Y. 2020). Instead, the *Schiro* plaintiffs claimed that they were delayed in being able to plead "loss causation," but the *Merck* court expressly declined to address that argument, and the *Schiro* court found it unpersuasive. *Id.* at 202 n.5. In *Hopkinson v. Estate of Siegal*, the complaint that purportedly put the plaintiff on notice was virtually identical to the operative complaint. No. 10 Civ. 1743, 2011 WL 2935876, at *2 (S.D.N.Y. July 12, 2011). The original 2017 complaint in *In re Kandi*, in contrast, looks nothing like the operative SAC here. And *Gavin/Solmonese LLC v. D'Arnaud-Taylor* merely notes that "the filing of related lawsuits" may constitute "storm warnings," in the words of *Merck*, not that they are dispositive of when the limitations period begins to run. 68 F. Supp. 3d 530, 535-36 (S.D.N.Y. 2014) (cleaned up).

### B. Violation of § 20(a)

The SAC's Second Claim pleads a § 20(a) claim against Defendants Hu, Chen, Lewin, Yu and Wang in relation to the § 10(b) claim. Defendants' only arguments in opposition to the § 20(a) claim are that there is no viable primary claim and that no Individual Defendant can be a "culpable participant" in the fraud because scienter is not sufficiently pleaded. Because the SAC pleads a primary violation under § 10(b) as to Defendants Hu, Chen, Lewin, Yu and Wang, the § 20(a) claim also survives as to those Defendants. Because the SAC contains no substantive allegations about Defendant Mei's culpability, the § 20(a) claim is dismissed as to Mei.

## IV. CONCLUSION

Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's § 10(b) claim as to Defendants Kandi, Hu, Chen, Lewin, Yu and Wang survives to the extent it is based on alleged misstatements about related-party transactions, including general statements about the accuracy of financial statements, disclosure of fraud and the adequacy of internal controls only to the extent the alleged misstatements pertain to related-party transactions. Plaintiff's § 20(a) claim against Defendants Hu, Chen, Lewin, Yu and Wang survive to the same extent based on the surviving § 10(b) claim. Plaintiff's § 10(b) and § 20(a) claims are dismissed to the extent they rely on any other alleged misstatements identified in the SAC. All claims against Defendant Mei are dismissed.

The Clerk of Court is respectfully directed to close the motion at Docket Number 57 and to terminate Bing Mei as a Defendant.

Dated: September 13, 2022
New York, NY

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**