UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SRINIVASAN VENKATARAMAN, Individually, and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KANDI TECHNOLOGIES GROUP, INC., XIAOMING HU, CHENG WANG, BING MEI, LIMING CHEN, JERRY LEWIN and HENRY YU,<br><br>Defendants. | Case No. 1:20-cv-08082 (LGS)<br><br>**JOINT DISCOVERY STIPULATION AND [PROPOSED] ORDER REGARDING PRODUCTION AND PRESERVATION OF ELECTRONICALLY STORED INFORMATION** |

Pursuant to the agreement reached between Plaintiff Tom Brooks ("Plaintiff") and Defendants Kandi Technologies Group, Inc. ("Kandi" or the "Company"), Xiaoming Hu ("Hu"), Cheng Wang ("Wang"), Liming Chen ("Chen"), Jerry Lewin ("Lewin"), and Henry Yu ("Yu") (collectively, the "Defendants", and, excluding Kandi, the "Individual Defendants"), and Fed. R. Civ. P. 34, this Court adopts and orders the following Joint Discovery Stipulation and Order ("Stipulation") relating to the protocols for searching and production of documents and electronically stored information, which binds all parties and their counsel of record in this action. This ESI Protocol shall also govern productions made by any third party subpoenaed in this action unless otherwise agreed to by the Parties and the third party. Accordingly, this ESI Protocol shall be attached to any subpoena properly issued in this litigation.

**I.      DEFINITIONS**

   **A.      "Custodian"** is any individual that has possession, custody, or control of information, documents, or data sources that are likely to contain information relevant to the case. Custodian also includes any shared resources (such as shared servers, drives, and

warehouses) that may contain information relevant to the case, including any shared resources to which individual custodians have access or which store information pertaining to departments or divisions in which individual custodians work. For purposes of clarity, Custodian also includes those individuals that have control or manage shared resources that qualify as custodians.

  **B.** "**Documents**" shall have the same meaning and scope as used in Local Civil Rule 26.3 and the Federal Rules of Civil Procedure 26 and 34.

  **C.** "**Electronically Stored Information**" or "**ESI**" includes, without limitation, electronically stored information that is generated, received processed, and recorded by computers and other electronic devices, including, without limitation, system metadata (*e.g.*, author, modifying author, recipient, file creation date, file modification date) and user-generated metadata (*e.g.*, spreadsheet formulas).

  **D.** "**Extracted Text**" means the text extracted from a Native File, and includes all header, footer and document body information when available. To the extent body information cannot be extracted due to the format of the Native File, document body text will be captured using Optical Character Recognition.

  **E.** "**Load/Unitization file**" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file may also contain data relevant to the individual Documents, including extracted and user-created Metadata, coded data, as well as OCR or Extracted Text.

  **F.** "**Media**" means an object or device, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

G.    "**Metadata**" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is modified, accessed, created, printed, transmitted, deleted, or otherwise manipulated by a user of such system.

H.    "**Native File**" or "**Native data format**" means ESI in the original file format of the application in which such ESI is normally created, viewed or modified.  Except where ESI to be produced contains text that has been redacted or any metadata field that has been withheld under an assertion of privilege or other protection from disclosure, Native Files should be collected, processed, and produced (to the extent native production has been agreed to by the Parties) in a manner that does not alter the Metadata associated with those files.

I.    "**OCR**" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

J.    "**Parties**" means or refers to the named Plaintiff and the Defendants in the above captioned matter, as well as any later added plaintiffs or defendants.

K.    "**Static Image**" means a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems. Tagged Image File Format (TIFF) images and Portable Document Format (PDF) images are examples of a Static Image.

L.    "**TIFF**" means Tagged Image File Format. A TIFF is a Static Image or a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems.

II.     **GENERAL PROVISIONS**

      A.      This Stipulation shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure and the Court's orders, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation.

      B.      Nothing in this Stipulation shall be interpreted to require disclosure of materials that a party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Stipulation shall be deemed to waive or limit any party's right to object to the production of certain electronically stored information, or to move for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not reasonably accessible because of undue burden or cost, are cumulative or redundant, or on the ground that there is good cause for the documents' production.

      C.      The parties agree to alert all other parties concerning any technical problems associated with complying with this Stipulation. To the extent compliance with this Stipulation imposes an undue burden, the parties shall promptly confer in an effort to resolve the issue.

      D.      Consistent with their obligations under the Federal Rules of Civil Procedure and the Local Civil Rules for the United States District Court for the Southern District of New York, the parties will attempt to resolve, in person, in writing (including email) or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the parties are unable to resolve the dispute after a good faith effort, the parties may seek Court intervention in accordance with the Court's procedures.

      E.      The Parties may mutually modify or revise this ESI protocol by unanimous agreement as circumstances dictate. Such modifications or revisions shall be made in writing.

Should any of the Parties propose a modification or revision to this ESI Protocol to which any other of the Parties objects, and the Parties cannot resolve their differences after a good-faith attempt to do so, the Parties may raise the matter for determination by the Court.

  **F.** The Parties further reserve the right to modify any practice or procedure set forth herein by mutual agreement without order of the Court.

**III.** **CONFIDENTIALITY AND INADVERTENT PRODUCTION OF MATERIAL SUBJECT TO CLAIM OF PRIVILEGE**

  **A.** All productions made pursuant to this Stipulation are subject to the Stipulation and Protective Order entered in the above-captioned action, and any further protective orders or privilege orders entered in this proceeding including, but not limited to, those sections governing the production or privilege logs and inadvertent disclosure of privileged or work product material.

**IV.** **SOURCES OF ELECTRONICALLY STORED INFORMATION**

  **A.** Each party, in accordance with their responses and objections to the opposing party's discovery requests, shall conduct diligent searches of all reasonably accessible sources which it has reason to believe may contain electronically stored information ("ESI"). Reasonably accessible sources of ESI include, but are not limited to, computer hard drives, shared network drives, cloud drives, and email servers, business-issued computers and smartphones, text messages and other IM applications/platforms, foreign and domestic.

  **B.** Searches of personal home computers, personal email accounts, or personal smartphones may be requested if there is reason to believe that unique data relating to issues in the above-captioned case resides on such a device or computer.

  **C.** Absent good cause shown, a Party is not required to preserve, search, collect, review, or produce the following categories of ESI except when those files are relevant and attached to another file:

      i.      Backup or historic/legacy data;

      ii.      Systems created solely for the purpose of disaster recovery;

      iii.      Network system files and logs;

      iv.      Residual, deleted, fragmented, damaged, or temporary data (*e.g.*, data stored in a computer's RAM); and

      v.      Encrypted data/password protected files, where the key or password cannot be ascertained through reasonable efforts.

    **D.**    A party that in good faith relies on this Section and does not produce ESI stored in any of the sources listed in paragraphs B and C is not in breach of its discovery obligations. Upon request, however, the parties shall meet and confer to discuss the collection and production of these sources.

**V.**    **SEARCH PROTOCOL FOR ELECTRONIC DOCUMENTS**

    **A.**    The Parties agree that Documents may be produced without a prior meet-and-confer; provided, however, that at the request of the Requesting Party, the Producing Party shall meet and confer regarding the search methodologies the Producing Party shall employ to identify responsive materials in any such production of Documents.

    **B.**    Production of responsive, non-privileged Documents shall be completed on a rolling basis. If, after reviewing ESI and/or Hard Copy Materials received from the Producing Party, the Requesting Party believes that additional searches or collections may be necessary, it shall request a meet-and-confer under this paragraph, and a meet-and-confer shall be conducted promptly.

    **C.**    The Parties agree that they will cooperate with the express objective of reaching agreement on a mutually agreeable methodology for search of ESI, including the sources, custodians, data repositories, search protocol and date ranges that will be used for the production

of responsive documents.  The parties agree that any information shared in such discussions shall not be deemed to waive the attorney-client privilege, attorney work product protection, or any other privilege or protection.  The parties further agree to negotiate in good faith requests for use of additional and/or alternate protocols.

**VI.    FORMAT OF PRODUCTION**

    **A.    Native File, TIFF Productions**. The Parties shall exchange productions in Native File format or Tagged Image File Format (TIFF). Native files will be produced in a load file format with Extracted Text and reference to corresponding native files. TIFF images that are produced in lieu of Native Files with be produced with metadata and text files.  Spreadsheets, power point presentations, and desktop database files (such as Microsoft Access), multimedia audio/video files (*e.g.*, .wav, .mpeg, .avi) and ESI that cannot render TIFF images or for which rendering TIFF images is unduly burdensome will be produced in native format.

    **B.    Document Image Format**.  With the exception of: (i) structured data discussed in Section VI.L; and (ii) prior production sets discussed in Section VI.S below or unless otherwise agreed to in writing by a requesting Party, ESI must be produced electronically as a single-page Black & White GROUP IV "TIFF" image where the original document was in black and white or a Color TIFF where the original document was in color and where the color contributes to meaning, context, or content of the document.  In addition, the producing Party will honor reasonable requests made in good faith for either the production of the original document for inspection and copying or production of a color image of the document.

    **C.    Searchable Text**.  ESI produced in Native file format shall be produced with document-level searchable Extracted Text in the form of .txt files associated by links contained within the load file. For ESI that is redacted for attorney-client privilege or attorney work product or otherwise produced in TIFF, a new text file created using OCR shall be produced in lieu of

7

extracted text, and the associated load file shall contain a link to the TIFF or PDF image file containing the redactions, rather than the native file.

D. **Auto Date and Hidden Text**. When processing ESI for review and for production in TIFF format, the producing Party will instruct its vendor to force off Auto Date and force on hidden columns or rows, hidden worksheets, speaker notes, track changes, and comments. All ESI should be processed with all hidden text (*e.g.*, track changes, hidden columns, comments, markups, notes, etc.) expanded, extracted and rendered in the TIFF file, to the extent feasible. If the file cannot be expanded, the native file shall be produced with the image file.

E. **Emails and Other Attachment Ranges**. For emails with attachments and other Documents with attachments, the metadata load file will contain "begin-attachment" and "end-attachment" values representing the low and the high consecutive numbers representing the names of the files in that attachment range.

F. **Container Files**. For container or archive files (bak, zip, jar, rar, gzip, tar, etc.), all contents should be extracted from the archive with source pathing and attachment-range relationships maintained and captured. The archive container file does not need to be included in the production.

G. **Production Media**. Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), ftp site, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Each item of Production Media shall bear a label identifying: (1) the Producing Party and Production Media volume number; (2) the production date; (3) the Bates number range of the materials contained on such Production Media item; and (4) the type of material on the media (*e.g.*, "Images," "OCR Text," "Native Files," *etc*.). Each item of Production Media shall be accompanied

by a transmittal cover letter identifying the Production Volume Name of each item of Production Media included in the production and a list of the Bates ranges of the documents contained in each item of Production Media, including identification of the Bates ranges of documents that originated in physical/hard copy format, and whether the production includes Structured Data.

      **H.**    **Time Zone**.  When processing ESI, EST should be selected as the time zone and the producing Party will note the time zone used in its processing.  To the extent that a Party has already processed or produced ESI using a different time zone, the producing Party will note the time zone used in its processing.  Otherwise, Parties shall consistently produce all ESI processed using the same time zone.

      **I.**    **Production of Native Files**.  A single-page slip sheet placeholder with the phrase "File Produced Natively" branded in the center of the page must be produced in TIFF format to facilitate database referencing and Bates and confidentiality stamping. The associated Load/Unitization file shall include a link to the native item.  Embedded files will be produced as child documents to their parent documents, to the extent feasible. Native file names should be named for the Bates number for that specific record.

      If production in native format is necessary to decipher the meaning, context, or content of a document produced in TIFF, the producing Party will honor reasonable requests made in good faith for the production of the original document in native format within ten (10) business days. Documents that are to be produced in a native format, but that require redactions, will be produced as TIFF images with the relevant portions redacted, or if a TIFF image production is not practicable (*e.g.*, the file is a video or very large spreadsheet), as a copy of the native file with the relevant portions replaced with "[REDACTED]" or a similar mark, preserving the original.  Then, the extracted text shall not be delivered for that document, but rather OCR output of a TIFF image that

has been redacted will be delivered to the extent reasonably feasible. If modification of a native file is required for redaction purposes, Metadata information associated with that file should remain unchanged unless it also requires redaction.

   **J.**  **Production of Hard Copy Documents**. Documents or records which either were originally generated as or converted into ESI but now only exist in physical hard-copy format, or documents or records that were originally generated in hard-copy format, shall be subject to OCR and converted to single page image files (BLACK AND WHITE Group IV Tiff or Color TIFF) and produced following the same protocols set forth herein or otherwise agreed to by the Parties. In scanning paper documents, the unitization of the documents, attachments, folders, and binders shall be maintained as the unitization existed in the original.

   A Metadata field will be provided for each such document that will identify that document as originating in physical format (*i.e.*, "hard copy") or if the Metadata was collected prior to production in this case. In addition, the following information shall be produced in the delimited data file accompanying hard copy documents: (a) BEGBATES; (b) ENDBATES; (c) CUSTODIAN (where available); (d) CONFIDENTIALITY; and (e) OCR Text.

   **K.**  **Metadata/Production Data**. The Parties agree that Metadata will be produced for all ESI, whether produced in native or Static Image formats. The appropriate Load/Unitization file will contain the Metadata fields listed below, associated with each electronic document (or their equivalents), to the extent the fields exist as electronic Metadata associated with the original electronic documents or are created as part of the electronic data discovery process if such is provided for under this protocol. The below list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original Metadata of the document (except as otherwise provided under

10

this protocol); provided, however, the producing Party must populate the SOURCE (file path) and CUSTODIAN fields for all produced ESI, as well as paper Documents converted to electronic form, regardless of whether these fields would be generated during typical processing of such documents.  The following list identifies the metadata fields that will be produced (to the extent available; those that will be produced as to all documents are marked with an asterisk):

- Application Used to View/Access
- BeginBates (ProdBeg)*
- EndBates (ProdEnd)*
- BeginAttach*
- EndAttach*
- AttachCount
- AttachName
- BeginParent*
- EndParent*
- Title (for E-docs)
- File extension
- File Size*
- Subject (for emails)
- Sent/Date (for emails only)
- SentTime (for emails only)
- Last Modified Date and Time
- Last Saved Date and Time
- LastSavedBy
- CallStart (start date and time of calendar event or appointment)

- Participants (names included in meeting invitation)

- Created Date and Time (for E-docs)

- App Last Modified Date and Time

- App Created Date and Time (for E-docs)

- Received Date and Time (for emails only)

- Author or Sender

- Recipients

- cc:

- bcc:

- Source (file path)

- Custodian*

- Hash Value*

- Page Count

- Original File Name

- Original File Path (full path to the file at its original location)

- TextPath (the full path to the extracted text file on producing Media)

- Doc extension

- NativeLink (file path to documents produced in native)

- Production Volume Name

- Accessed Date & Time

- Last Print Date

- DedupCustodians (Field to identify additional custodians who had an exact duplicate ESI copy of the produced document; in list form separated by semicolons)

By producing Metadata, the producing Party affirms that such metadata came from its records with the exception of the fields that must be manually populated as provided under this Protocol.

Notwithstanding the foregoing, the Parties will meet and confer in good faith as necessary prior to the production of documents, with technical experts as needed, to clarify or resolve any issues (*e.g.*, definitions of metadata fields, inconsistencies, and burden) concerning the production of metadata.

**L.** **Structured Data**. Absent good cause shown, a Party is not required to preserve, search, collect, review, or produce the following categories of ESI except when those files are relevant and attached to another file: structural files not material to individual file contents that do not contain substantive content (.css, .xsl, .xml, .dtd, etc.).

**M.** **Privilege Designations and Redactions**. Documents containing privileged materials may be produced in TIFF format with redactions. If either an email or an attachment is fully withheld on account of privilege, to avoid the loss of context due to an "orphaned" email or attachment, the entire message attachment shall still be produced, with the withheld document slip-sheeted with a TIFF or PDF image. Documents that are to be produced in a native format, but that require redactions, will be produced as TIFF images with the relevant portions redacted, or if a TIFF image production is not practicable (*e.g.*, the file is a video or very large spreadsheet), as a copy of the native file with the relevant portions replaced with "[REDACTED]" or a similar mark, preserving the original. Then, the extracted text shall not be delivered for that document, but rather OCR output of a TIFF or PDF image that has been redacted will be delivered to the extent reasonably feasible. If modification of a native file is required for redaction purposes, metadata information associated with that file should remain unchanged unless it also requires redaction.

N. **Load File**. The Parties agree to meet and confer, as necessary, in advance of any production of documents, and in consultation with their respective vendors, to agree on all Load/Unitization file specifications.

O. **Encrypted or Password-Protected ESI**. For any ESI that exists in encrypted format or is password-protected, the producing Party shall undertake reasonable efforts to unlock the file prior to production, to provide the receiving Party a means to gain access to the files after production, or to meet-and-confer in an effort to supply passwords and other information that will enable the receiving Party to obtain access. A producing party has no obligation to produce passwords or engage in decryption efforts where they in good faith determine that the information is not reasonably accessible or requires undue burden or cost, subject to a motion to compel and order of the Court.

P. **Document Unitization**. For files produced as either TIFF images, each page of a document shall be electronically saved as an image file. If a document consists of more than one page, whether maintained as ESI or in physical format, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image files. For documents with affixed notes, the Parties will make reasonable efforts to image and produce such documents with all notes affixed.

The producing Party shall produce a Load/Unitization file for all produced documents in accordance with the following formatting:

Q. **Deduplication**. To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values) reside within a custodian's ESI data set, each Party may produce only a single copy of a responsive document or record ("Single Production Copy"). Exact duplicate shall mean

bit-for-bit identicality of the document content.  De-duplication may be effected by use of standard eDiscovery software protocols.

For exact duplicate documents, the producing Party will produce the Metadata described herein for the Single Production Copy, as well as any such Metadata that differs for the duplicate document(s).  Where an exact duplicate document has attachments, the attachments must also be identical.  Stand-alone Documents will not be compared to email or email attachments for deduplication.  ESI that is not an exact duplicate may not be removed; partial email families may not be removed; and hard copy materials shall not be eliminated as duplicates of responsive ESI.  No Party shall identify and/or eliminate electronic duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.  For ESI, the Parties may de-duplicate globally or across more than one custodian. Duplicate e-mails or files held in different file path locations and/or by different custodians do not need to be produced. If duplicates are excluded, the Load file must include a "CustodiansAll" metadata field that shows each custodian from whom a copy of the produced Document was collected. The Parties shall de-duplicate stand-alone Documents against stand-alone Documents and shall de-duplicate top-level email Documents against top-level email Documents.  De-duplication shall not break apart families and shall be performed at a family level. To reduce the volume of entirely duplicative content within email threads, the Parties may but are not required to use email thread suppression.

**R.      E-Mail Threading**.  Where an email chain consists of more than one segment, the Producing Party may use customary threading technology such that only the most inclusive message(s) (*i.e.*, those necessary to review the most complete text and attachments contained anywhere within the chain), any lower included emails that have attachments (if responsive), and any responsive email that includes unique content not included elsewhere in a produced email

string must be produced. Conversely, non-inclusive emails (*i.e.*, those with text and attachments that are contained in another (inclusive) email) will not be produced to the extent possible.

  **S.**  **Attachments**. Email attachments must be produced as separate documents mapped to their parent by the Document or Production number and shall be produced contemporaneously with, sequentially Bates numbered, and immediately following the parent email.

  **T.**  **Prior Production**. To the extent a response to discovery requires a Party to provide documents, or encompasses documents previously produced, from a production set from a prior or concurrent litigation, such Party will produce the documents from the production set as they were produced in the prior or concurrent litigation, with whatever metadata fields were produced in that litigation and no others. Notwithstanding this provision, the Parties retain the right to object to the production of documents from prior litigation or investigations.

**VII.** **PRIVILEGE LOGS**

  **A.**  Regardless of the search methodology used, it is expected that the responding party will conduct privilege and responsiveness reviews in addition to and following application of the search methodology. The responding party shall determine the appropriate quality controls for its search and review process.

  **B.**  The responding party will serve the requesting party with a Privilege Log or logs, at a reasonable time, identifying the ESI and, if applicable, hard copy documents the party is withholding or redacting based on attorney-client privilege, attorney work product or other privilege or protection.

  **C.**  The Privilege logs shall be produced in PDF and Excel formats.

  **D.**  Privilege logs shall contain the following information, to the extent it is reasonably available and not itself subject to a claim of privilege (and in the case of documents produced with redactions, not ascertainable from the document in the format produced):

    i.  a sequential number associated with each privilege log record;

    ii.  the beginning Production number if the document has been assigned any such document numbers;

    iii.  the date of the document;

    iv.  the identity of all persons who authored or sent the document;

    v.  the identity of all persons designated as addressees, including those carbon-copied or blind carbon-copied;

    vi.  a description of the contents of the document that, without revealing information that is itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege; and

    vii.  the type or nature of the privilege asserted (*e.g.*, attorney-client privilege; work product doctrine).

  **E.**  If a document is redacted, the extracted text shall not be delivered for that document but rather OCR output will be delivered based on the redacted images to the extent reasonably feasible.

**VIII. COST OF PRODUCTION**

  Pursuant to Federal Rule of Civil Procedure 26, the Parties generally presume that the Producing Party bears all costs of preservation, retrieval, and production of its reasonably accessible ESI. If any formatting requirements or other specifications agreed to in this ESI Protocol are later determined by the Producing Party to be not feasible, or unduly burdensome or unreasonably costly, the Producing Party, during the meet-and-confer process and as soon as the Producing Party identifies the infeasibility of the specific requirement at issue, shall: (i) describe the nature of the objection with reasonable particularity; (ii) provide the Requesting Party with the basis for its determination, including but not limited to the nature of any limitations on access,

and an estimate of costs that might be incurred in producing such ESI; and (iii) indicate whether the Producing Party is willing to offer an alternative and if so, timely provide its details and parameters. The Parties will meet and confer in order to attempt to agree upon appropriate modifications to the ESI Protocol before presenting any such issue to the Court. Notwithstanding anything contained herein to the contrary, a Producing Party shall not produce ESI in a format not provided for in this ESI Protocol, or otherwise requested or agreed to by the Requesting Party. If an issue arises, the issue may be submitted to the Court after reasonable efforts by the Parties to reach agreement by the meet and confer process.

If any issues relating to ESI arise which are not addressed in this ESI Protocol, the Parties shall promptly raise such issues with each other and meet and confer to resolve them. Such issues may be submitted to the Court after reasonable efforts by the Parties to reach agreement by the meet-and-confer process.

### IX. INCORPORATION OF SO ORDERED STIPULATION AND PROTECTIVE ORDER

The So Ordered Stipulation and Protective Order entered by the Court is expressly incorporated herein by reference including, but not limited to the paragraphs governing the inadvertent disclosure of privileged or work product material.

So Ordered.

Dated: October 26, 2022
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

[SIGNATURE PAGE TO FOLLOW]

**STIPULATED AND AGREED:**

Dated: October 26, 2022
      New York, New York

| **GLANCY PRONGAY & MURRAY LLP** | **TARTER KRINSY & DROGIN LLP** |
|---|---|
| By:   */s/Ex Kano S. Sams II* <br>     Ex Kano S. Sams II <br>     (admitted *pro hac vice*) <br>     1925 Century Park East, Suite 2100 <br>     Los Angeles, California 90067 <br>     Tel.: (310) 201-9150 <br>     Email: esams@glancylaw.com | By:   */s/Richard J.L. Lomuscio* <br>     Richard J.L. Lomuscio <br>     1350 Broadway <br>     New York, NY 10018 <br>     Tel.: (212) 216-8000 <br>     Email: rlomuscio@tarterkrinsky.com |
| *Attorneys Plaintiff* | *Attorneys for Defendants* |

    **IT IS SO ORDERED**
    Dated:

_____
        Lorna G. Schofield
       United States District Judge