UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SRINIVASAN VENKATARAMAN,
*Individually and On Behalf of All Others Similarly Situated*,

                         Plaintiff,

v.

KANDI TECHNOLOGIES GROUP, INC., *et al.*,

                         Defendants.

20 Civ. 8082 (DEH)

**OPINION AND ORDER**

---

DALE E. HO, United States District Judge:

      In this putative class action, Srinivasan Venkataraman, individually and purportedly on behalf of all others similarly situated, brings this action alleging violations of (1) § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 by Defendants Xiaoming Hu, Cheng Wang, Liming Chen, Jerry Lewin and Henry Yu (collectively, the "Individual Defendants") and Kandi Technologies Group, Inc. ("Kandi" or the "Company") and (2) § 20(a) of the Exchange Act by the Individual Defendants. *See* 2022 Opinion and Order ("2022 Opinion"), ECF No. 64. In a previous Opinion, familiarity with which is presumed, the Court granted in part and denied in part Defendants' second motion to dismiss. *See id.* Now Lead Plaintiff Tom Brooks ("Plaintiff") moves, under Rule 23 of the Federal Rules of Civil Procedure, for class certification as to their remaining claims. *See* ECF No. 94. For the reasons below, the Court **GRANTS IN PART** Plaintiff's motion for class certification.

## BACKGROUND

      Srinivasan Venkataraman commenced this action on June 10, 2020. *See* ECF No. 1. After the Court granted Defendants' first motion to dismiss, *see* ECF No. 49, Plaintiff filed the

Second Amended Complaint ("SAC") on December 3, 2021, *see* ECF No. 54. On January 7, 2022, Defendants filed a motion to dismiss the SAC. *See* ECF No. 58. On September 13, 2022, the Court granted in part and denied in part Defendants' motion to dismiss. *See generally* 2022 Opinion. Specifically, the Court held that "any claims based directly on statements before June 10, 2015" are time-barred. *Id.* at 9. But Plaintiff's § 10(b) claim survived to the extent it is based on alleged misstatements after that date, and Plaintiff's § 20(a) claim survived to the same extent based on the surviving § 10(b) claim. *Id.* at 10, 18. In relevant part, the Court noted that "the only . . . statements in the SAC as to which Plaintiff asserts timely claims" that also met applicable pleading standards "are based on Kandi's 10-Qs and 10-K from the second quarter of 2015 through the third quarter of 2016." *Id.* at 10. The earliest of those statements are from the 2015 second quarter 10-Q (the "2015 2Q 10-Q"), which is dated August 10, 2015. *Id.* at 3.

On November 10, 2023, Plaintiff filed his motion for class certification. *See* ECF No. 94. Defendants filed their opposition on March 7, 2024. *See* Defs.' Mem. in Opp'n to Pl.'s Mot. for Class Cert. ("Defs.' Opp'n"), ECF No. 100. On May 16, 2024, Plaintiff filed his reply memorandum in further support of his motion for class certification. *See* Pl.'s Reply, ECF No. 109. Notably, Defendants do not challenge the propriety of class certification. Rather, Defendants contest Plaintiff's proposed class period. *See* Defs.' Opp'n 6.

## LEGAL STANDARDS

A party seeking class certification must first show, by a preponderance of the evidence, that it has satisfied the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and second, that it meets one of the subcategories of Rule 23(b).[1]

---

[1] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

*See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 350 (2011); *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). As relevant here, under Rule 23(b)(3), a party must demonstrate (1) that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Petrobras Secs.*, 862 F.3d 250, 260 (2d Cir. 2017) (quoting Fed. R. Civ. P. 23(b)(3)).

## DISCUSSION

### I. Class Certification

#### a. Rule 23(a)

Under Rule 23(a), a case may be litigated as a class action only if the moving party satisfies the following four requirements: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1)-(4). The Court considers each requirement in turn. For each of the following Rule 23(a) and (b) requirements, Defendants do not dispute that Plaintiff's proposed class meets these requirements. *See generally* Defs.' Opp'n.

##### *1. Numerosity*

First, a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, in this Circuit, "[n]umerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014). "[C]ourts have acknowledged that numerosity in securities actions may be premised on a showing that a large number of shares were outstanding and traded during the relevant period." Pl.'s Mem. in Supp. Mot. for Class Cert. ("Pl.'s Mem.") 11, ECF No. 95 (quoting *In re NIO, Inc. Secs. Litig.*, No. 19 Civ. 1424, 2023 WL 5048615, at *5 (E.D.N.Y. Aug. 8, 2023)); *accord In re Vivendi Universal, S.A. Secs. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (collecting cases noting "the numerosity requirement may be satisfied by a showing that a large

3

number of shares were outstanding and traded during the relevant period"). Here, during the proposed class period, Kandi's weekly trading volume ranged between 232,302 and 6,491,981 shares. *See* Sams Decl. ¶ 29, ECF No. 96-1. Accordingly, the Court determines that Plaintiff has demonstrated that the proposed class meets the numerosity requirement.

### 2. *Commonality*

Next, Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Where, as here, there are common questions of the "alleged fraud [that] involves material misrepresentations and omissions in documents circulated to the investing public," the commonality requirement is satisfied. *In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015); *accord Haw. Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 212 (S.D.N.Y. 2021) (finding commonality where "nearly all questions of law and fact are common to all [p]laintiffs and class members claims, including whether Defendants made materially false and misleading statements or omissions"). Given the nature of the allegations in this case, the Court concludes the class has common questions of law and fact between class members.

### 3. *Typicality*

To satisfy the typicality requirement under Rule 23(a)(3), a moving party must demonstrate that the "claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). In the Second Circuit, the typicality analysis is inextricably tied with that of commonality. *See Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). In a securities case, where as here, the plaintiff is "alleging dissemination of allegedly false or misleading statements, the nature of the common injury generally satisfies

typicality." *Martínek v. AmTrust Fin. Servs., Inc.*, No. 19 Civ. 8030, 2022 WL 326320, at *6 (S.D.N.Y. Feb. 3, 2022). Accordingly, typicality is also satisfied.

### 4. Adequacy

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy includes the following requirements: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Nayani v. LifeStance Health Grp., Inc.*, 641 F. Supp. 3d 57, 63 (S.D.N.Y. 2022).

First, the proposed counsel, Glancy Prongay & Murray LLP is "qualified, experienced and generally able to conduct the litigation[.]" *Id.*; *see also Chauhan v. Intercept Pharms.*, No. 21 Civ. 36, 2021 WL 235890, at *7 (S.D.N.Y. Jan. 25, 2021) ("Glancy Prongay & Murray LLP" is "a firm highly experienced in securities class action litigation"); *Wilson v. LSB Indus., Inc.*, No. 15 Civ. 7614, 2018 WL 3913115, at *4 (S.D.N.Y. Aug. 13, 2018) ("find[ing] that Glancy Prongay & Murray LLP ("GPM")" "will fairly and adequately represent the interests of the class"). Second, the Plaintiff's interests are aligned with those of the proposed class members, who were all injured by the same misleading statements. *See generally* ECF Nos. 96-2, 96-3. Finally, the Plaintiff's interests are directly aligned with the interests of other proposed class members. *Id.* The Plaintiff, therefore, has satisfied the adequacy requirement.

### 5. Ascertainability

In addition to the four Rule 23(a) prerequisites, "the Second Circuit also recognizes an implicit 'ascertainability' requirement, which commands that the proposed class be defined using objective criteria that establish a membership with definite boundaries." *Martínek*, 2022 WL

326320, at *3. The Court must assess whether the class is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015). Here, the Plaintiff has objectively defined the proposed class, *see* Pl.'s Mem. 1 n.2, such that "identifying its members would not require a mini-hearing on the merits of each case." *In re Petrobras Secs.*, 862 F.3d 250, 266 (2d Cir. 2017).

In sum, all the Rule 23(a) criteria are satisfied. The Court next turns to the predominance and superiority requirements of Rule 23(b)(3).

### b. Rule 23(b)(3)

The Rule 23(b)(3) standard is more demanding than Rule 23(a). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). Defendants do not challenge that the proposed class has met the Rule 23(b)(3) criteria, *see generally* Defs.' Opp'n, but the Court considers each requirement in turn below.

#### *1. Predominance*

Predominance requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). The predominance inquiry requires a court to assess:

> (1) the elements of the claims and defenses to be litigated, (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief, and (3) whether the common issues can profitably be tried on a class-wide basis, or whether they will be overwhelmed by individual issues.

*Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020). The "Supreme Court has noted that the predominance requirement is a test readily met in certain cases alleging . . . securities fraud." *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 127 (S.D.N.Y. 2001).

6

Here, the fraud-on-the-market theory creates a presumption of class-wide reliance, which will enable Plaintiff to establish Defendants' liability using evidence common to the class. *See* Pl.'s Mem. 16-17; *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 458 (2013) ("[t]he fraud-on-the market premise is that the price of a security traded in an efficient market will reflect all publicly available information about a company"). Moreover, Plaintiff filed the Declaration of Dr. Adam Werner, who conducted a comprehensive analysis purporting to show that Kandi stock traded in an efficient market. *See* ECF No. 96-1 ¶ 8. Accordingly, the predominance test is met here, where common questions predominate and resolution of Plaintiff's claims would be achieved through "generalized proof" rather than "individualized proof." *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010).

### 2. Superiority

Rule 23(b)(3) also requires the moving party to demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The non-exhaustive list of factors a court can consider in determining whether the class action is a superior device includes: (1) the class members' interests in litigating individually in separate actions; (2) the extent and nature of any related litigation already commenced by class members; (3) the desirability of concentrating litigation of the claims in a particular forum; and (4) the manageability of the litigation as a class action. *Id.*; *see Amchem*, 521 U.S. at 615-16 (listing this criteria).

As in most securities cases, the large size of the class would make "multiple lawsuits costly and inefficient[.]" *Martínek*, 2022 WL 326320, at *19. Moreover, "although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf." *Id.; see*

*Amchem*, 521 U.S. at 617 (discussing how the "very core of the class action mechanism" is to increase the litigating power of groups of plaintiffs who might not otherwise find litigation economical).

    **II.**    **Class Period**

As noted *supra*, while Defendants do not contest the propriety of class certification *per se*, they argue that the class period should begin on a later date than what Plaintiff proposes. Specifically, while Plaintiff's proposed class period would begin on June 10, 2015, *see* Pl.'s Mem. 1 n.2, Defendants argue that the earliest date on which it may begin is August 10, 2015— i.e., the date of the 2015 2Q 10-Q, which contains the earliest actionable false statement identified in the Court's motion to dismiss Opinion. Defs.' Opp'n 6, *see also* 2022 Opinion 10 (holding that "the only . . . statements in the SAC as to which Plaintiff asserts timely claims" that also met applicable pleading standards "are based on Kandi's 10-Qs and 10-K from the second quarter of 2015 through the third quarter of 2016").

Defendants' position makes sense. Decisions granting class certification in securities cases generally start the class period on the date of the first alleged actionable false statement. *See Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262, 264 (S.D.N.Y. 2009) (class period beginning on date defendants "made misleading representations about the financial condition of the company . . . beginning with a press release issued on August 12, 2008"); *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) (class period beginning on date that a series of "misrepresentations began with an October 28, 2004 press release"). Thus, although the Court previously held that "any claims based directly on statements before June 10, 2015" are time-barred, 2022 Opinion 9, that does not mean that the class period should start as of that date. Rather, because the first actionable misstatement alleged by Plaintiff occurred on August 10, 2015 (i.e., the date of the 2015 2Q 10-Q), the class period appropriately commences on that date.

Plaintiff raises two counterarguments, both of which are unavailing. First, Plaintiff argues that a court should not weigh evidence as to the merits of a claim at the class certification stage. *See* Pl.'s Reply 6-7. That broad proposition is correct, but it does not mean that a court should simply accept a proposed class period without a sound basis. The issue here is not conflicting evidence as to when Defendants began making false statements; it is that Plaintiff does not adequately allege an actionable false statement until August 10, 2015. There is, therefore, no conflicting evidence suggesting that the Court should certify a class beginning before that date. Again, it might be a different story if Plaintiff had presented evidence, or at least some allegations (that had not been dismissed) of allegedly false statements predating the 2015 Q2 disclosure, but he does not.

That leads to Plaintiff's second argument, that his expert's testimony supports a class period beginning on June 10, 2015. *See* Pl.'s Reply 8. But that overstates the scope of Plaintiff's expert reports, which largely addressed the "*Cammer* factors," described in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989). *See* ECF No. 96-1, 110-1. In substance, the expert purports to show that trading in shares of Kandi was efficient throughout Plaintiff's proposed class period. *See id.* But such a showing of market efficiency is only a prerequisite to a claim, insofar as it is necessary to show that false statements could affect a stock's price. That is, a "fraud-on-the market premise is that the price of a security traded in an efficient market will reflect all publicly available information about a company," including the allegedly false statements underlying a claim. *Amgen Inc.*, 568 U.S. at 458. But the mere presence of an efficient market during a given time does not, by itself, establish the proper start date for a class period.

In other words, although Plaintiff's expert purports to show that trading in Kandi stock was efficient as of June 10, 2015, it does not follow that the class's injury began on that date.

Trading in shares could have been efficient since the moment a company went public, and many years before any alleged misstatements giving rise to liability under the Exchange Act—but that would not mean that the class period should start then.

The proper date for the start of a class period is no earlier than the first alleged actionable false public statement. Here, on the current record, that would be on August 10, 2015, when the 2015 2Q 10-Q statement was first published. While Plaintiff protests that the 2015 2Q 10-Q concerned the entire second quarter, which began earlier (i.e., on April 1), *see* Reply 8, that is irrelevant. What matters is when the Defendants' first alleged misstatements became public, and thereby could have begun affecting the price of Kandi stock. And the first such actionable misstatements alleged by Plaintiff occurred on the day that the 2015 2Q 10-Q was filed, i.e., on August 10, 2015. If discovery reveals any earlier misstatements (claims that are not time-barred, i.e., occurring after June 10, 2015), Plaintiff may file a motion to modify the class period.

## III. Appointment of Class Counsel and Representative

Finally, Plaintiff requests that the Court appoint him as a class representative and appoint Glancy Prongay & Murray LLP ("GPM") as class counsel. *See* Pl.'s Mem. 3, 25. Rule 23(g) states that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). The Court determines that Plaintiff and his counsel have worked diligently to prosecute this action and are adequate representatives of the proposed class. *See* Pl.'s Mem. 15 (describing, *inter alia*, how Plaintiff and counsel have filed an amended complaint, "review[ed] and analyz[ed] more than 100,000 pages of documents produced by Defendants, and t[aken] the depositions of each of the five Individual Defendants"). For substantially the same reasons the Court discussed in analyzing typicality and adequacy, *see supra*, the Court determines that Plaintiff is a suitable representative of the proposed class, and that GPM is qualified to represent

the class. Accordingly, the Court appoints Tom Brooks as class representative, and GPM as class counsel.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for class certification is **GRANTED IN PART**, with a class period start date of August 10, 2015.

The Clerk of Court is respectfully directed to terminate ECF No. 94.

SO ORDERED.

Dated: September 28, 2024
New York, New York

DALE E. HO
United States District Judge