**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SRINIVASAN VENKATARAMAN, Individually, and On Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>-against-<br><br>KANDI TECHNOLOGIES GROUP, INC., XIAOMING HU, CHENG WANG, LIMING CHEN, JERRY LEWIN and HENRY YU,<br><br>Defendants. | Civil Action No. 1:20-cv-08082-DEH |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**STINSON LLP**

Richard J.L. Lomuscio
Nicole Khalouian
100 Wall Street, Suite 201
New York, New York 10005
Phone: 646.883.7675
richard.lomuscio@stinson.com
nicole.khalouian@stinson.com

*Attorneys for Defendants Kandi Technologies Group, Inc., Xiaoming Hu, Cheng Wang, Liming Chen, Jerry Lewin, and Henry Yu*

**TABLE OF CONTENTS**

PRELMINARY STATEMENT..........................................................................................................1

SUMMARY OF UNDISPUTED FACTS ....................................................................................... 3

LEGAL STANDARD...................................................................................................................... 9

ARGUMENT ................................................................................................................................ 10

I.      PLAINTIFF FAILS TO OFFER ANY EVIDENCE DEMONSTRATING LOSS
        CAUSATION AND DAMAGES. ................................................................................... 11

        A.      Plaintiff Cannot Demonstrate That The Market Reacted Negatively To The
                Restatement................................................................................................... 12

        B.      Plaintiff Cannot Rely On A Class Certification Expert Report To Prove Loss
                Causation And Damages................................................................................ 14

        C.      Mr. Wang's Resignation As CFO Cannot Establish Loss Causation. .................. 16

II.     THE ALLEGED MISSTATEMENTS ARE NOT ACTIONABLE AS A MATTER
        OF LAW UNDER MACQUARIE. .................................................................................. 17

III.    PLAINTIFF'S SECTION 20(a) CONTROL PERSON CLAIMS FAIL ABSENT A
        PRIMARY VIOLATION. ............................................................................................... 19

CONCLUSION............................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)..................................................................................................19

*Beleson v. Schwartz*,
599 F. Supp. 2d 519 (S.D.N.Y. 2009), aff'd, 419 F. App'x 38 (2d Cir. 2011)........................10

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014)................................................................................................10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...............................................................................................................9

*In re Citigroup Sec. Litig.*,
No. 20 Civ. 9132, 2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) .........................................18

*Dalberth v. Xerox Corp.*,
766 F.3d 172 (2d Cir. 2014).................................................................................................17

*Diabat v. Credit Suisse Group AG*,
23 Civ. 5874 (CM), 23 Civ. 6023 (CM), 23 Civ. 6039 (CM), 2024 WL
4252502 (S.D.N.Y. Sept. 19, 2024)......................................................................................19

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).................................................................................................11, 12, 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)...................................................................................................12

*Goenaga v. March of Dimes Birth Defects Found.*,
51 F.3d 14 (2d Cir. 1995).......................................................................................................9

*Gordon Partners v. Blumenthal*,
No. 02 Civ. 7377(LAK), 2007 WL 1438753 (S.D.N.Y. May 16, 2007), aff'd,
293 Fed. Appx. 815 (2d Cir. 2008).......................................................................................13

*Gordon Partners v. Blumenthal*,
No. 02 Civ. 7377(LAK)(AJP), 2007 WL 431864 (S.D.N.Y. Feb. 9, 2007) ............................13

*Jackson Nat'l Life Ins. Co.* v. *Merrill Lynch & Co.*,
32 F.3d 697 (2d Cir. 1994)...................................................................................................20

*Jaffer v. Hirji*,
887 F.3d 111 (2d Cir. 2018)....................................................................................................9

*Jaramillo v. Weyerhaeuser Co.*,
    536 F.3d 140 (2d Cir. 2008)...................................................................................................9

*In re Kandi Technologies Group, Inc. Securities Litigation*,
    No. 17 CIV. 1944 (ER), 2019 WL 4918649 (S.D.N.Y. Oct. 4, 2019) (Ramos,
    J.)..............................................................................................................................5, 6, 17

*Kleinman v. Elan Corp.*,
    706 F.3d 145 (2d Cir. 2013).................................................................................................18

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) ........................................................................................10

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161, 172 (2d Cir. 2005).............................................................................10, 11, 16

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
    601 U.S. 257 (2024)..................................................................................1, 3, 11, 17, 18, 19

*McKinney v. City of Middletown*,
    49 F.4th 730 (2d Cir. 2022) ..................................................................................................9

*In re Omnicom Grp., Inc. Sec. Litig.*,
    541 F. Supp. 2d 546 (S.D.N.Y. 2008), aff'd, 597 F.3d 501 (2d Cir. 2010)......................13, 16

*In re Omnicom Grp., Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010)....................................................................................11, 12, 16

*Slayton* v. *Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010).................................................................................................20

*UA Local 13 Pension Fund v. Sealed Air Corp.*,
    No. 19 Civ. 10161, 2021 WL 2209921 (S.D.N.Y. June 1, 2021)...........................................10

*In re Vivendi Universal, S.A. Sec. Litig.*,
    634 F. Supp. 2d 352 (S.D.N.Y. 2009).......................................................................12, 13, 18

*In re Warner Communications Securities Litigation*,
    618 F. Supp. 735 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986)...................................13

**Statutes**

15 U.S.C. § 78j............................................................................1, 3, 5, 6, 8, 9, 10, 11, 13, 19, 20

15 U.S.C. § 78t....................................................................................1, 3, 6, 10, 11, 13, 19, 20

15 U.S.C. § 78u–4.................................................................................................................5, 7, 12

**Rules**

17 C.F.R. §240.10b-5.................................................................................1, 5, 9, 10, 18, 19

Fed. R. Civ. P. 9..........................................................................................................5

Fed. R. Civ. P. 12........................................................................................................5

Fed. R. Civ. P. 56.....................................................................................................1, 9

Defendants Kandi Technologies Group, Inc. ("Kandi" or the "Company"), Xiaoming Hu ("Hu"), Cheng Wang ("Wang"), Liming Chen ("Chen"), Jerry Lewin ("Lewin"), and Henry Yu ("Yu") (collectively, the "Defendants", and, excluding Kandi, the "Individual Defendants"), by and through their attorneys, Stinson LLP, respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment ("Motion") pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the reasons set forth herein, Defendants' Motion should be granted dismissing the claims brought pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) ("Section 10(b)") and 78t(a) ("Section 20(a)"), and United States Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5 ("Rule 10b-5"), by Plaintiff Tom Brooks ("Plaintiff").[1]

## PRELMINARY STATEMENT

Summary judgment should be granted in favor of Defendants because Plaintiff has failed to establish essential elements of his securities fraud claims. *First*, Plaintiff has not put forward any expert evidence to prove either loss causation or damages. This complete absence of evidence on two required elements independently warrants summary judgment. *Second*, even if Plaintiff could overcome this evidentiary deficiency, the remaining misstatements at issue are not actionable under the Supreme Court's decision in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024). Accordingly, the Court should grant summary judgment in favor of Defendants on all claims.

**_Plaintiff Fails To Prove Loss Causation Or Damages._** It is axiomatic that Plaintiff is required to prove both loss causation and damages in order to prevail on his securities fraud claims.

---

[1] Capitalized terms have the meanings ascribed to them in Defendants' Local Rule 56.1 Statement of Undisputed Material Facts ("SUMF"). Citations to "Khalouian Decl." refer to the Declaration of Nicole Khalouian.

Despite having a full and fair opportunity to do so, Plaintiff ignored the deadline for expert discovery and failed to submit any testimony or report supporting the existence of either loss causation or damages in this action.  It is impossible to establish either of these elements in a securities class action like this action without such evidence.  In fact, courts in this Circuit and across the nation routinely grant summary judgment to defendants when a plaintiff fails like here to come forward with evidence supporting loss causation or damages before the close of discovery. The same result is proper in this case.

Plaintiff's failure is made all the more glaring by the fact that he did propound an expert, Dr. Adam Werner, at the class certification stage and he is therefore apparently aware of the need for expert evidence in a securities class action.  Dr. Werner in his report and testimony notably made clear that he was retained solely to opine on market efficiency for class certification purposes.  In fact, Dr. Werner repeatedly testified that he neither conducted an analysis of loss causation or damages nor was he ever asked to perform such an examination.  Nothing in Dr. Werner's class certification analysis therefore even attempted to prove that specific misstatements actually caused an impact on Kandi's stock price or sought to or quantify Plaintiff's purported damages resulting from any purported losses.  Dr. Werner simply provided expert testimony necessary for a determination as to class certification and disavowed any role in providing proof necessary for the successful prosecution of Plaintiff's claims.

The lack of expert evidence as to loss causation and damages dooms Plaintiff's claims. Expert testimony as to loss causation and damages is indispensable in securities fraud cases. Without expert analysis, there is simply no way for a jury to determine whether the alleged misstatements – rather than countless other market factors – caused Plaintiff's claimed losses. Indeed, during the relevant period, Kandi's stock price fluctuated significantly based on various

2

market forces unrelated to the alleged fraud, and the eventual Restatement of Kandi's prior disclosures had no impact on the Company's net income. Plaintiff's decision to forego expert testimony leaves him unable to show how to isolate and quantify any fraud versus non-fraud related damages.

*Plaintiff's Claims Are Precluded By* **Macquarie**. Moreover, the few claims that survive in this action are a mere shadow of Plaintiff's original sweeping allegations of securities fraud. After the dismissal with prejudice of a virtually identical class action in 2019, and this Court's own orders dismissing the majority of Plaintiff's claims, what remains is a narrow subset of allegations spanning just 13 months. These surviving claims challenge only six SEC filings and are limited to two categories of alleged misstatements: certain omissions about related-party transactions and statements about internal controls over financial reporting. Under the Supreme Court's recent decision in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024), the alleged misstatements cannot be materially misleading as a matter of law because they constitute pure omissions, having zero impact on Kandi's revenue. In any event, the subsequent Restatement disclosed and corrected all prior misstatements and omissions, eliminating any genuine dispute about whether material weaknesses in the Company's internal controls remained.

*Plaintiff's Section 20(a) Claims Fail As A Matter of Law.* The absence of required evidence necessarily defeats Plaintiff's claims under Section 20(a), which cannot proceed without establishing a predicate Section 10(b) violation. Having failed to satisfy their evidentiary burden, Plaintiff cannot maintain any of its claims as a matter of law.

Accordingly, summary judgment should be granted in favor of Defendants.

## SUMMARY OF UNDISPUTED FACTS

*Kandi's Business*. Kandi is a NASDAQ-traded company that designs, manufactures, and distributes electric vehicles ("EV") and EV parts. (SUMF ¶¶ 1-2.) During the class period of

3

August 10, 2015 to March 16, 2017, Defendant Hu served as the Company's CEO, President, and Chairman of the Board and Defendant Wang served as CFO from May 2015 through his resignation on November 14, 2016. (SUMF ¶¶ 4-5.) Defendants Chen, Lewin, and Yu each sat on Kandi's Board of Directors and served on the Company's Audit Committee. (SUMF ¶ 6.)

In March 2013, Kandi sold EV parts it manufactured to a joint venture company (the "JV Company") in which Kandi maintained a 50% interest. (SUMF ¶ 7.) The Company also engaged in related-party transactions with Zhejiang ZhoZhongYou Electric Vehicles Services Co., Ltd. (the "Service Company"), in which Kandi held a 9.5% ownership stake. (SUMF ¶ 8.) These business relationships allowed Kandi to participate in the Chinese government's EV subsidy program through its sales to the JV Company. (SUMF ¶ 9.)

***The Restatement.*** In March 2017, Kandi restated certain financial information – by way of its 2016 10-K – contained in its Proxy statements, 10-Q forms and 10-K forms released between March 2014 and November 2016. (SUMF ¶ 14; Khalouian Decl. ¶ 10.) The Restatement included: (1) "corrections to the classification of notes receivable and notes payable in the Company's statements of cash flow"; (2) "revisions in the Company's financial statement presentation to separately identify certain related-party accounts on the face of the Balance Sheets and the Consolidated Statements of Income (Loss) and Comprehensive Income (Loss)"; (3) "certain amendments to Note 20 – Taxes of the Notes to the Company's Consolidated Financial Statements"; (4) "the adjustment of previously recorded construction-in-progress back to prepayment in Note 16 - Construction-in-Progress of the Notes to the Company's Consolidated Financial Statements"; (5) "expansions of two tables of sales to and purchases from the JV Company in Note 24 - Summarized Information of Investment in the JV Company of the Notes to the Company's Consolidated Financial Statements from two years to three years"; (6) "the removal

of "unaudited" labels from certain tables in Note 20 - Taxes of the Notes to the Company's Consolidated Financial Statements"; and (7) "separate audited financial statements for the Company's equity investment in the JV Company." (SUMF ¶ 15; Khalouian Decl. ¶ 10.) The Restatement did not have any impact of Kandi's reported net income during the restated period. (SUMF ¶ 16.)

***Dismissed Action***.  On March 16, 2017, the first of three putative class action complaints was filed against Kandi on behalf of Kandi shareholders in the United States District Court for the Southern District of New York. (SUMF ¶ 17.)  Three of the four Individual Defendants named in that action (the "Dismissed Action") were also named in this action.  The court consolidated these complaints, and a Consolidated Amended Class Action Complaint ("CAC") was filed on August 31, 2018.  *See In re Kandi Technologies Group, Inc. Securities Litigation,* No. 17 CIV. 1944 (ER), 2019 WL 4918649, at *1 (S.D.N.Y. Oct. 4, 2019) (Ramos, J.).  Like the instant action, the CAC asserted claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5, all stemming from the 2017 Restatement.  The CAC similarly alleged that Defendants made false and misleading statements about internal controls and related-party transactions—the same core allegations Plaintiff makes here.  *See id.* at *2.

On October 4, 2019, Judge Ramos granted Kandi's motion to dismiss and dismissed the CAC pursuant to Fed. R. Civ. P. 12(b)(6), 9(b) and 15 U.S.C. §78u–4(b)(2).  *See In re Kandi Techs.*, 2019 WL 4918649, at *9. The Court found that "[a]ccepting Plaintiffs' pleadings as true, they nevertheless fail to point to any specific fact that the Individual Defendants either 'knew or should have known' of the errors and omissions."  *Id.* at *6.  The Court found that no factual allegation had been made as to the "awareness of red flags regarding the misclassification in Kandi's financial reporting" by any specific defendant.  *Id.*  The Court also held that, as it pertained

5

to internal control and related party disclosures, "plaintiffs' argument that Defendants' awareness of some weak aspects of their internal controls, without more, necessarily suggest their awareness of other internal control problems and their impact on Kandi's financial statement is unpersuasive." *Id.* at *7. Additionally, the Court rejected the argument that "Kandi's restatements constitute an admission of falsity," noting that "the fact that Kandi's restatements had no impact on Kandi's corporate income severely undercuts an inference of fraud." *Id*. at *8. "As such, Plaintiffs' factual allegations have not specifically shown that Defendants were aware of any facts contradicting the statements regarding internal controls when made." *Id.* at *9. Thus, the Court "[found] that Plaintiffs have failed to plausibly allege that Defendants' statements regarding internal controls were false when made." *Id*. The CAC's claims regarding Section 20(a) were also dismissed, as "it is axiomatic that a Section 20(a) violation is derivative of liability for a Section 10(b) violation." *Id*.

***First Dismissal Order.*** Plaintiff commenced this action in June 2020. (SUMF ¶ 23.) Each of Plaintiff's pleadings has largely mirrored the Dismissed Action's allegations regarding the Restatement. Following Defendants' first motion to dismiss, this Court found its Dismissal Order ("First Dismissal Order") that these allegations were insufficient to plead scienter. (SUMF ¶ 24.) After noting that "Plaintiff concedes that the Complaint does not allege motive and opportunity," the Court found that the complaint failed to plead scienter because "the Complaint's allegations of conscious behavior or recklessness are conclusory" and "[b]ased on the dearth of alleged facts, the more compelling inference is that the errors in the financial statements were made unwittingly and without knowledge or reckless disregard that the applicable accounting rules required more or different financial disclosures." (SUMF ¶ 25.) In the First Dismissal Order, the Court further held that: the internal control deficiencies acknowledged in the Restatement alone could not support an

6

inference of scienter because the complaint lacked any allegations that "the errors were made [by Defendants] intentionally or recklessly"; the "core operations doctrine" could not raise a strong inference of scienter because there were no allegations that Defendants knew "the test for what constitutes a related party under the applicable accounting rules or what disclosure required"; the letter issued by Hu in response to a third-party investor's research report did not support a strong inference of scienter because "the alleged admissions in the letter relate to Kandi's customers and revenues in 2018 and 2019, rather than the alleged misstatements in 2014, 2015 and 2016"; there were no allegations that Defendant knew that the SOX certifications contained misstatements or were false; and there were no allegations connecting Wang's resignation as Kandi's CFO in November 2016 to a culpable state of mind. (SUMF ¶¶ 26-27.) This Court dismissed Plaintiff's complaint because Plaintiff failed to plead scienter and subsequently granted Plaintiff leave to file and serve the Second Amended Complaint without prejudice to Defendants filing a renewed motion to dismiss. (SUMF ¶ 27.)

*__Second Dismissal Order.__* Plaintiff's Second Amended Complaint ("SAC") asserts claims for damages based on purported misstatements and omissions allegedly stemming from the March 2017 Restatement. (SUMF ¶¶ 28-29.) Specifically, Plaintiff alleges that the Restatement reported in Kandi's 2016 10-K filing with the United States Securities and Exchange Commission ("SEC") rendered inaccurate certain information contained in Proxy statements, 10-Q forms and 10-K forms released between March 2014 and November 2016. (SUMF ¶ 29.) On September 13, 2022, the Court granted in part and denied in part Defendants' motion to dismiss the SAC. (SUMF ¶ 31.) The Order dismissed the majority of the SAC's allegations on the grounds that certain alleged misstatements and omissions were either barred by the statute of repose or failed to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation

7

Reform Act, 15 U.S.C. § 78u-4(b)(2) ("Second Dismissal Order").  (SUMF ¶ 31.)  The Court also dismissed Individual Defendant Bing Mei because the SAC "contained no substantive allegations about Mei whatsoever."  (SUMF ¶ 32.)  The Court's Order narrowed the scope of this action, permitting only limited claims under Section 10(b) and Section 20(a) to proceed – specifically, those addressing related-party transaction disclosures, financial statement characterizations, and internal control assertions during the timeframe of April 2015 through September 2016.  (SUMF ¶¶ 33-35.)

*__Class Certification__*. Plaintiff moved to certify a class of shareholders who acquired Kandi securities from June 10, 2015 through March 13, 2017.  (SUMF ¶ 36.)  Although Plaintiff sought to certify an overly broad class period spanning from June 10, 2015 through March 13, 2017 (SUMF ¶ 39), the Court had already substantially limited the actionable timeframe in its Motion to Dismiss Order to statements made "from the second quarter of 2015 through the third quarter of 2016."  Given that the earliest actionable statement identified in the surviving claims was Kandi's August 10, 2015 Form 10-Q (SUMF ¶ 40), the Court appropriately granted class certification only from that date forward.

*__Alleged Actionable Financial Statements__.*  As a result of the Court's ruling limiting the class period, Plaintiff's claims are now restricted to just six SEC filings.  These "Actionable Financial Statements" consist of Kandi's 2015 Form 10-K filed on March 14, 2016, and five quarterly reports: Form 10-Q filings dated August 10, 2015 (Q2 2015), November 9, 2015 (Q3 2015), May 10, 2016 (Q1 2016), August 9, 2016 (Q2 2016), and November 9, 2016 (Q3 2016).  (SUMF ¶¶ 10-13; Khalouian Decl. ¶¶ 4-9.)

*__Lack of Evidence on Damages__.*  All discovery in this matter has concluded.  The fact discovery period closed on September 15, 2023, followed by the completion of Defendants' expert

8

discovery on March 7, 2024, and Plaintiff's expert discovery on May 16, 2024. (SUMF ¶¶ 41-43.) Throughout the discovery period, Plaintiff presented only one expert, Dr. Adam Werner ("Dr. Werner"), whose testimony addressed market efficiency for class certification purposes. (SUMF ¶¶ 37-38.) As Dr. Werner confirmed in his deposition, his analysis was limited to examining whether a methodology could potentially exist to assess loss causation on a class-wide basis; he did not identify any specific methodology or attempt to determine actual loss causation or damages. (SUMF ¶ 38.) No additional expert evidence regarding loss causation or damages has been presented during the discovery period and discovery has closed.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant 'bears the initial burden of showing that there is no genuine dispute as to a material fact.'" *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018)). "But 'where the burden of proof at trial would fall on the nonmoving party,' the moving party can shift the initial burden by pointing to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaffer*, 887 F.3d at 114. Because Defendants do not bear the burden of proof at trial, Defendants' burden will be satisfied if they "can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Summary judgment is required when the non-moving party lacks "admissible evidence" raising a triable issue on each essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 327 (1986); *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

"In cases involving publicly traded securities and purchases or sales in public securities markets, the elements of a securities fraud claim for violation of Section 10(b) and Rule 10b–5

9

are: (1) a material misrepresentation or omission; (2) scienter, *i.e.,* a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets [] as transaction causation; (5) economic loss; and (6) loss causation, *i.e.,* a causal connection between the material misrepresentation and the loss." *Lapin v. Goldman Sachs & Co.,* 254 F.R.D. 168, 180-81 (S.D.N.Y. 2008).  A failure to establish any of the elements of a securities fraud claim will result in dismissal of the case. *See Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 172 (2d Cir. 2005) (affirming dismissal and addressing only the misstatement or omission element because the failure to establish any single element defeats a securities fraud claim).

To state a claim under Section 20(a), a plaintiff must allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC,* 750 F.3d 227, 236 (2d Cir. 2014) (internal quotation marks omitted); *accord UA Local 13 Pension Fund v. Sealed Air Corp.,* No. 19 Civ. 10161, 2021 WL 2209921, at *8 (S.D.N.Y. June 1, 2021).  Absent primary liability under Section 10(b), the control person claim under Section 20(a) also fails.  *Beleson v. Schwartz*, 599 F. Supp. 2d 519, 527 (S.D.N.Y. 2009), *aff'd*, 419 F. App'x 38 (2d Cir. 2011).

## **ARGUMENT**

Summary judgment should be granted in favor of Defendants for two independent reasons. First, it is well-established that a plaintiff must prove both loss causation and damages to prevail on securities fraud claims under Sections 10(b), 20(a), and Rule 10b-5. Despite having a full opportunity for discovery, Plaintiff has failed to offer any expert testimony or evidence establishing either of these elements; a fatal deficiency in a securities class action where courts routinely require expert analysis to distinguish fraud-related losses from other market factors

affecting stock price. [2]   Second, the few surviving claims following the Second Dismissal Order are not actionable as a matter of law because they constitute pure omissions that had no impact on Kandi's net revenue.   Under the Supreme Court's recent decision in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024), such omissions cannot support securities fraud liability absent evidence they rendered other statements misleading.   As Plaintiff cannot overcome either of these grounds for summary judgment, his Section 20(a) claims fail as well.   Accordingly, the Court should grant summary judgment to the Defendants, dismissing this action in its entirety.

## I.   PLAINTIFF FAILS TO OFFER ANY EVIDENCE DEMONSTRATING LOSS CAUSATION AND DAMAGES.

Plaintiff's failure to proffer evidence of loss causation and damages – two essential elements under Sections 10(b) and 20(a) – is fatal to Plaintiff's claims.   Without evidence of both actual economic loss and a causal connection between the alleged misrepresentation and that loss, Plaintiff's claims must fail as a matter of law.   *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005).   Plaintiff has not identified any market impact resulting from the alleged misstatements and omissions sufficient to establish loss causation.   The Court should grant summary judgement if it finds that the evidence does not show loss causation through one of two established methods: (1) demonstrating the market reacted negatively to a corrective disclosure, or (2) showing that the materialization of risks concealed by the alleged misrepresentations or omissions proximately caused Plaintiff's loss.   *See In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511-12 (2d Cir. 2010); *Lentell v. Merrill Lynch & Co., Inc.,* 396 F.3d at 175.   The present case does not involve the materialization of undisclosed risks.   Therefore, Plaintiff bears the burden

---

[2] While Defendants maintain that Plaintiff cannot establish other elements of his claims under Sections 10(b) and 20(a), including scienter, materiality, and reliance, this Motion focuses on Plaintiff's complete failure to offer evidence of loss causation and damages; deficiencies that are independently dispositive of all claims.

of establishing that the market reacted negatively to a corrective disclosure – specifically, the Restatement. "A corrective disclosure is traditionally an admission by the company that one or more of its previous statements were false or misleading followed by a corrected, truthful and complete version of those statements." *In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 363 (S.D.N.Y. 2009). Because Plaintiff has failed to demonstrate this essential causal link between the Restatement and any market reaction, summary judgment must be granted in Defendants' favor.

**A.     Plaintiff Cannot Demonstrate That The Market Reacted Negatively To The Restatement.**

Plaintiff has not provided this Court with *any* evidence as to what their true damages are and therefore cannot show actual damages or loss causation. Loss causation is a necessary element of a securities fraud claim. Plaintiff bears the burden of showing not only that he suffered an economic loss in connection with their purchase of Kandi stock, but also that the loss was proximately caused by the Defendants' alleged fraud. This requirement exists because private securities fraud actions are available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d at 510. To establish loss causation, Plaintiff has "the burden of proving that the act or omission of the defendant alleged to violate [the securities laws] caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u–4(b)(4). The "logical link between [an] inflated share purchase price" resulting from an alleged misstatement "and any later economic loss is not invariably strong" because "that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions or other events." *Dura,* 544 U.S. at 342–43; *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir.

12

2009). Accordingly, to prove loss causation, Plaintiff must distinguish the stock price effect of the alleged fraud from the "tangle of [other] factors" that affect a stock's price. *Dura,* 544 U.S. at 343.

Without any evidence of loss causation or damages, Plaintiff's claims necessarily fail, as "[p]roving actual loss is crucial to a plaintiff's case". *Gordon Partners v. Blumenthal*, No. 02 Civ. 7377(LAK)(AJP), 2007 WL 431864, at *13 (S.D.N.Y. Feb. 9, 2007), *report and recommendation adopted*, 2007 WL 1438753 (S.D.N.Y. May 16, 2007), *aff'd*, 293 Fed. Appx. 815 (2d Cir. 2008). Plaintiff has offered no evidence whatsoever to establish either requirement, both of which are essential elements of a Sections 10(b) and 20(a) claims that Plaintiff must prove to defeat summary judgment. *See Gordon Partners v. Blumenthal,* No. 02 Civ. 7377(LAK), 2007 WL 1438753, at *2 (S.D.N.Y. May 16, 2007), *aff'd*, 293 Fed. Appx. 815 (2d Cir. 2008) (granting summary judgment where plaintiffs presented no evidence to "show whether any loss (and if so how much) was caused by defendants' conduct as opposed to other market factors").

In securities fraud cases, plaintiffs typically rely on expert evidence and analytical studies to develop a methodology proving these elements, given the complexity of establishing that fraud rather than other market factors caused their losses. Courts in this district have acknowledged that relying on event studies to prove loss causation is "almost obligatory". *In re Vivendi Universal, S.A. Sec. Litig*., 634 F. Supp. 2d at 364. Similarly, the Second Circuit recognizes that expert analysis is usually necessary to establish both the existence and amount of damages because without competent expert testimony, there is "simply no way for a juror to determine whether the alleged fraud caused any portion of Plaintiff['s] loss." *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554-55 (S.D.N.Y. 2008), aff'd, 597 F.3d 501 (2d Cir. 2010); *see also In re Warner Communications Securities Litigation*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) ("Undoubtedly,

13

expert testimony would be needed to fix not only the amount, but the existence, of actual damages."), aff'd, 798 F.2d 35 (2d Cir. 1986)).

Here, the Court previously found at class certification that Plaintiff demonstrated market efficiency, and thus, that false statements could theoretically affect Kandi's stock price. This threshold showing, however, does nothing to establish the actual methodology for proving damages. As the Court explained, market efficiency merely shows that "false statements could affect a stock's price" because "the price of a security traded in an efficient market will reflect all publicly available information." (*See* ECF 115, Class Cert. Order at 9.) But the mere potential for price impact is fundamentally different from proving that specific misstatements actually caused concrete losses and quantifying those losses with reasonable certainty. The *ability* of false statements to affect price in an efficient market says nothing about *how* to isolate and measure the precise impact of any particular misstatement, especially when separating fraud-related declines from the myriad other factors that influence stock prices. Here, during the relevant Class Period, Kandi's stock fluctuated greatly based on a host of market and other factors unrelated to the purported misstatements and omissions identified by Plaintiff. Significantly, and as Plaintiff concedes and the Company disclosed, the Restatement's revisions had no impact on Kandi's net income. (SUMF ¶ 16.) Plaintiff offers no evidence or even a reliable methodology for making the required showing of loss causation and damages. Absent such evidence, Plaintiff cannot establish essential elements of its securities fraud claims and summary judgment is therefore warranted.

**B.    Plaintiff Cannot Rely On A Class Certification Expert Report To Prove Loss Causation And Damages.**

The report and testimony provided by Dr. Werner in connection with class certification fails to create a genuine issue of material fact as to loss causation and damages. Dr. Werner

repeatedly admitted that he did not analyze these necessary components of Plaintiff's claims. Throughout his deposition, Dr. Werner explicitly stated that he was only retained to opine on market efficiency and the theoretical existence of a common damages methodology, not actual loss causation or specific damages calculations. (SUMF ¶ 38; Khalouian Decl. ¶ 3, Werner Dep. at 38:4-8 ("my opinion in this case is on market efficiency and whether or not a general damage methodology exists. I believe the question you're asking refers to loss causation and specific damages.").) Dr. Werner repeatedly emphasized that he "ha[s] not been asked to opine on loss causation and specific damages calculations" (SUMF ¶ 38; Khalouian Decl. ¶ 3, Werner Dep. at 62:20-23) and acknowledged that he had not reviewed all information necessary to reach such opinions because "discovery hasn't been completed" (SUMF ¶ 38, Khalouian Decl. ¶ 3, Werner Dep. at 64:7-9). Dr. Werner admitted, however, that if stock price declines were caused by non-fraud factors rather than alleged misstatements, there would be no damages to Kandi shareholders. (SUMF ¶ 38; Khalouian Decl. ¶ 3, Werner Dep. at 50:23-51:21.) Yet, despite this crucial distinction, Plaintiff has not presented any analysis or methodology to determine what Plaintiff's actual losses are in this case. The absence of any such evidence is particularly significant given that during the relevant period, Kandi's stock fluctuated greatly based on numerous market and other factors unrelated to the alleged misstatements, and given that the Restatement ultimately had no impact on Kandi's net income. (SUMF ¶ 16.)

Plaintiff has now allowed all discovery deadlines to pass without presenting any evidence of loss causation and damages. Fact discovery closed on September 15, 2023, followed by the completion of Defendants' expert discovery on March 7, 2024, and Plaintiff's expert discovery on May 16, 2024. (SUMF ¶¶ 41-43.) Throughout this extensive period, Plaintiff presented Dr.

15

Werner's opinion which was limited to market efficiency for class certification purposes. (SUMF ¶¶ 37-38.)  No additional expert evidence regarding loss causation or damages has been offered.

Neither Plaintiff nor his expert have identified any market impact resulting from the alleged misstatements and omissions sufficient to establish loss causation.  There has been no event study or other analysis demonstrating that the Restatement had any impact on Kandi's stock price. The only opinion offered to date by Plaintiff is that there *could* be a methodology for assessing loss causation on a class-wide basis.  An expert opinion merely confirming that damages could theoretically be calculated, without actually analyzing causation or quantifying damages, cannot create a genuine issue of material fact sufficient to defeat summary judgment. *See In re Omnicom Group, Inc. Securities Litig.*, 597 F.3d at 512 (requiring proof of causal connection between misrepresentations and economic losses).

### C.    Mr. Wang's Resignation As CFO Cannot Establish Loss Causation.

Contrary to Plaintiff's suggestion, loss causation cannot be established through CFO Wang's resignation because any negative market reaction to that event was unrelated to the accounting errors later disclosed in the Restatement. (*See* ECF 60, Plaintiff's Opposition to Defendants' Motion to Dismiss the SAC at 18-19.)  As courts have held, a director or officer's resignation only serves as a corrective disclosure when it explicitly reveals information about the alleged fraud.  *See In re Omnicom Grp., Inc. Sec. Litig.*, 541 F.Supp.2d at 553 (citing *In re Buca Inc. Sec. Litig.*, No. 05 Civ. 1762(DWF) (AJB), 2006 WL 3030886, at *9 (D. Minn. Oct. 16, 2006) (finding that a press release announcing a director's resignation did not constitute a corrective disclosure because it "mentioned no investigation or accounting issues and thus disclosed nothing of the alleged fraud")). The resignation of Mr. Wang as CFO in November 2016, four months prior to the filing of the Restatement, does not constitute a corrective disclosure as a matter of law. Plaintiff's claims must therefore fail because "the absence of a corrective disclosure [is] 'fatal

16

under Second Circuit precedent'[.]" *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F.Supp.2d 546, 551 (S.D.N.Y 2008) (quoting *Lentell,* 396 F.3d at 173-75)).

Even assuming that the market was negatively impacted by Mr. Wang's resignation, such an event is entirely distinct from the accounting irregularities revealed in the March 2017 Restatement. The fact that the Restatement ultimately disclosed accounting errors that existed during Wang's tenure cannot transform his resignation into a corrective disclosure for purposes of establishing loss causation. To hold otherwise would permit Plaintiff to demonstrate loss causation by conflating two separate events that have no causal connection: a market reaction to a resignation allegedly tied to a related-party transaction, and the subsequent disclosure of accounting errors in the Restatement. Such post hoc reasoning cannot satisfy the legal requirement that a corrective disclosure actually reveal the alleged fraud to the market. *See Dalberth v. Xerox Corp.,* 766 F.3d 172, 188 (2d Cir. 2014) (rejecting corrective disclosures that attribute an improper purpose to previously disclosed facts). Accordingly, because Plaintiff cannot establish any causal link between Mr. Wang's resignation and the Restatement's disclosures without supporting expert testimony, summary judgment should in Defendants' favor is proper.

## II.    THE ALLEGED MISSTATEMENTS ARE NOT ACTIONABLE AS A MATTER OF LAW UNDER *MACQUARIE*.

Summary judgment should be granted because the few surviving claims following the Court's motion to dismiss order do not create a genuine issue of material fact under the Supreme Court's recent decision in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.,* 601 U.S. 257 (2024). After multiple dismissal motions, this action has been dramatically narrowed in scope. In October 2019, Judge Ramos dismissed with prejudice a virtually identical class action involving the same Restatement period and allegations. *See In re Kandi Techs.*, 2019 WL 4918649, at *9. In this case, the Court's First and Second Dismissal Order have further stripped away the majority

17

of Plaintiff's claims, leaving only a fraction of the original allegations. The only claims left to proceed are limited to those addressing related-party transaction disclosures, financial statement characterizations, and internal control assertions during the timeframe of August 2015 through September 2016. (SUMF ¶ __). As a result, Plaintiff's claims are now restricted to just six SEC filings: Kandi's 2015 Form 10-K and five quarterly reports filed between August 2015 and November 2016 (SUMF ¶ __), and are limited to two categories of alleged misstatements: (1) omissions concerning related-party transactions with the Service Company, statements about cash flow, and SOX certifications about financial accuracy, and (2) statements about internal controls over financial reporting solely as they pertained to related-party transactions. (SUMF ¶ __.)

Given the Supreme Court's recent decision in *Macquarie*, which established a heightened standard for misleading omissions, these remaining claims now fail as a matter of law. Rule 10b-5(b) makes it unlawful to "omit material facts in connection with buying or selling securities when that omission renders statements made misleading." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.,* 601 U.S. at 259. The Second Circuit has made clear that "'[t]he test for whether a statement or omission is materially misleading' . . . is not whether the statement is misleading in and of itself, but 'whether the defendants' representations, taken together and in context, would have misled a reasonable investor.'" *In re Vivendi S.A. Sec. Litig.*, 838 F.3d at 250 (quoting *Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d Cir. 2004)). Rule 10b-5 does not "create an affirmative duty to disclose any and all material information . . . ." *In re Citigroup Sec. Litig.*, No. 20 Civ. 9132, 2023 WL 2632258, at *12 (S.D.N.Y. Mar. 24, 2023) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)). Instead, absent an independent duty to speak, disclosure is required "only when necessary 'to make statements made, in the light of the circumstances under which they were made, not misleading.'" *Kleinman v. Elan Corp.*, 706 F.3d

18

145, 152-53 (2d Cir. 2013) (quoting *Matrixx Initiatives*, 563 U.S. at 44).  The Supreme Court recently emphasized in *Macquarie* that "Rule 10b-5(b) does not proscribe pure omissions," but rather targets "half-truths" by "requiring disclosure of information necessary to ensure that statements already made are clear and complete." *Macquarie,* 601 U.S. at 264.

The alleged omissions in the remaining actionable financial statements did not create any such "half-truths".  The alleged misstatements concerning related-party transactions, change in cash flow, and material weaknesses in internal controls only to the extent those material weaknesses pertained to reporting of related-party transactions, may have provided details Kandi's operation, but they did not impact the accuracy of the Company's financials.  Indeed, the Restatement ultimately had no impact on Kandi's reported revenue or net income. (SUMF ¶ 16.) If the Restatement had revealed a "half-truth", the market would have reacted accordingly.  Even assuming Kandi had a general "duty to disclose" additional details about these financials, such a duty "does not automatically render silence misleading under Rule 10b-5(b)," and in any event, all disclosures were made when the Company filed the Restatement.  *Macquarie,* 601 U.S. at 265; *see Diabat v. Credit Suisse Group AG*, 23 Civ. 5874 (CM), 23 Civ. 6023 (CM), 23 Civ. 6039 (CM), 2024 WL 4252502, at *16 (S.D.N.Y. Sept. 19, 2024) (holding that statements omitting that there existed material weakness in the Company's internal control over financial reporting are not actionable).  Because these omissions did not transform Kandi's reporting of its financial results, they cannot be considered actionable misstatements as a matter of law.

III.     **PLAINTIFF'S SECTION 20(a) CONTROL PERSON CLAIMS FAIL ABSENT A PRIMARY VIOLATION.**

Summary judgment is also warranted on Plaintiff's claims under Section 20(a).  Section 20(a) of the Exchange Act provides for control person liability "to the same extent as" the controlled entity that committed the violation. 15 U.S.C. § 78t(a).  Because Plaintiff's claims under

Section 20(a) rely on their ability to prove a primary violation under Section 10(b), Defendants are entitled to summary judgment on Plaintiff's Sections 20(a) claims as well. *See, e.g., ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (dismissing control-person claim under Section 20(a) for lack of a primary violation under Section 10(b)); *Jackson Nat'l Life Ins. Co.* v. *Merrill Lynch & Co.*, 32 F.3d 697, 703 (2d Cir. 1994) (Section 20A claim requires a "predicate violation" under the Exchange Act); *Slayton* v. *Am. Express Co.*, 604 F.3d 758, 778 (2d Cir. 2010) (affirming dismissal of Section 20(a) claim following dismissal of primary violation). Accordingly, Plaintiff's Section 20(a) claims against the Individual Defendants also fail as a matter of law and must be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's claims.

Dated: New York, New York
       February 13, 2025

Respectfully submitted,

Richard J.L. Lomuscio
Nicole Khalouian
**STINSON LLP**
100 Wall Street, Suite 201
New York, New York 10005
Phone: 646.883.7675
richard.lomuscio@stinson.com
nicole.khalouian@stinson.com

*Attorneys for Defendants Kandi Technologies Group, Inc., Xiaoming Hu, Cheng Wang, Liming Chen, Jerry Lewin, and Henry Yu*

## CERTIFICATE OF COMPLIANCE

I, Richard J.L. Lomuscio, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c), that the foregoing Memorandum of Law was prepared using Microsoft Word, contains 6,293 words in accordance with Local Rule 7.1(c), and does not exceed 25 pages as required by Rule 4c.ii. of Judge Ho's Individual Rules and Practices in Civil Cases.

Dated: New York, NY
        February 13, 2025

_____