**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Srinivasan Venkataraman, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> vs.<br><br><br>Kandi Technologies Group, Inc., Xiaoming Hu, Cheng Wang, Bing Mei, Liming Chen, Jerry Lewin, and Henry Yu,<br><br>    Defendants. | Civil Action No. 20 CIV. 8082 (DEH)<br><br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................... 2

III.   PROCEDURAL HISTORY.................................................................................. 7

IV.   STANDARD OF REVIEW .................................................................................. 9

V.   ARGUMENT...................................................................................................... 10

   A.   Summary Adjudication is Warranted Because Plaintiff Has Demonstrated Falsity.................................................................................................................. 11

   B.   Summary Adjudication is Warranted Because Plaintiff Has Demonstrated Loss Causation............................................................................................................. 13

      1.   Financial Economic Principles Compel a Conclusion of Loss Causation...................................................................................................... 14

      2.   Empirical Analysis Compels a Conclusion of Loss Causation................. 15

      3.   Damages.................................................................................................... 18

   C.   Summary Adjudication is Warranted Because Plaintiff Has Demonstrated Scienter .............................................................................................................. 19

      1.   Plaintiff Has Demonstrated that the Individual Defendants Acted With Scienter ..................................................................................................... 19

      2.   Plaintiff Has Demonstrated that Kandi Acted With Scienter ................... 21

VI.   CONCLUSION................................................................................................... 22

# TABLE OF AUTHORITIES

<u>CASES</u>

*380544 Canada, Inc. v. Asspen Tech. Inc.*,
  544 F. Supp. 2d 199 (S.D.N.Y. 2008)................................................................................ 12

*Desvarieux v. Axiom Holdings, Inc.*,
  No. 17CIV4756JPCGWG, 2022 WL 1467973 (S.D.N.Y. May 10, 2022)............................. 18

*Dragan v. Valladolid*,
  No. CV 18-448-MWF (FFMX), 2021 WL 1034841 (C.D. Cal. Feb. 11, 2021) ..................... 21

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
  268 F. Supp. 3d 526 (S.D.N.Y. 2017)....................................................................... 8, 9, 12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)............................................................................................... 11

*In re Celestica Inc. Sec. Litig.*,
  No. 07 CIV. 0312 GBD, 2014 WL 4160216 (S.D.N.Y. Aug. 20, 2014)............................... 11

*In re Grupo Televisa Sec. Litig.*,
  368 F. Supp. 3d 711 (S.D.N.Y. 2019)........................................................................... 8

*In re Moody's Corp. Sec. Litig.*,
  599 F. Supp. 2d 493 (S.D.N.Y.)................................................................................. 21

*In re Sonus Networks, Inc. Sec. Litig.*,
  No. Civ.A.04-0294-DPW, 2006 WL 1308165 (D. Mass. May 10, 2006)............................. 22

*In re VEON Ltd. Sec. Litig.*,
  No. 15-CV-08672 (ALC), 2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017)............................. 22

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985)............................................................................... 22

*In re WorldCom, Inc. Sec. Litig.*,
  294 F. Supp. 2d 392 (S.D.N.Y. 2003)........................................................................... 21

*Jackson v. Abernathy*,
  960 F.3d 94 (2d Cir. 2020)................................................................................... 21, 22

*Ley v. Visteon Corp.*,
  543 F.3d 801 (6th Cir. 2008) .................................................................................. 11

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)..................................................................................................... 11

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*,
    782 F. Supp. 2d 1047 (C.D. Cal. 2011) ..................................................................... 10

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
    531 F. 3d 190 (2d Cir. 2008).................................................................................... 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)........................................................................................... 10, 19

*Venkataraman v. Kandi Techs. Grp., Inc.*,
    No. 20 CIV. 8082 (LGS), 2022 WL 4225562 (S.D.N.Y. Sept. 13, 2022)........................ 8, 9, 20

STATUTES

15 U.S.C. §78j(b) ............................................................................................................. 10

15 U.S.C. §78u-4(b)(1)(B)................................................................................................ 11

15 U.S.C. §78u-4(b)(2) .................................................................................................... 19

15 U.S.C. §78u-4(b)(4) .................................................................................................... 13

RULES

Fed. R. Civ. P. 56(a) ....................................................................................................... 10

REGULATIONS

17 C.F.R. §240.10b-5(b) .................................................................................................. 10

17 C.F.R. § 229.404 ..................................................................................................... 9, 19

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Lead Plaintiff Tom Brooks ("Plaintiff") hereby moves for summary judgment and/or summary adjudication of Plaintiff's claims brought pursuant to the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.[1]

## I.     INTRODUCTION

This action asserts claims against Kandi and certain of its current and former officers for making false and misleading statements, omissions, and/or half-truths between August 10, 2015 and March 13, 2017, inclusive ("Class Period").  Throughout the Class Period, Kandi misled market participants about its ability to remediate internal control weaknesses and material weaknesses in the Company's financial reporting and oversight system.  Specifically, in March 2014, Defendants announced the existence of material weaknesses in the Company's financial reporting and oversight system.  These weaknesses included a lack of oversight by the Company's Audit Committee and a lack of internal controls for related-party transactions.  During the Class Period, Defendants claimed that the Company had remediated these problems.

Defendants, however, had failed to do so.  Indeed, in March 2017, Defendants announced that the Company needed to restate its preceding three years of financial statements.  Specifically, Defendants announced that the Company lacked: (1) sufficient expertise relating to technical knowledge of Generally Accepted Accounting Principles ("GAAP") and SEC disclosure regulations; (2) sufficient expertise to ensure the completeness of the disclosure of financial statements for equity investments; (3) sufficient expertise to ensure the proper disclosure of

---

[1] Unless otherwise stated, all Rules references are to the Federal Rules of Civil Procedure. Defendants are: (1) Kandi Technologies Group, Inc. ("Kandi" or the "Company"); (2) Xiaoming Hu ("Hu"); (3) Cheng Wang ("Wang"); (4) Liming Chen ("Chen"); (5) Jerry Lewin ("Lewin"); and (6) Henry Yu ("Yu") (collectively "Defendants").  Defendants Hu, Wang, Chen, Lewin, and Yu are collectively the "Individual Defendants."

1

related-party transactions; (4) effective controls to ensure the proper classification and reporting of certain cash and non-cash activities related to accounts receivable, accounts payable, and notes payable; and (5) sufficient expertise to ensure the accuracy of the accounting and reporting of income taxes and related disclosures.

Defendants partially revealed the truth about Kandi's inability to remediate its internal control weaknesses and its material weaknesses in its financial reporting and oversight system on November 14, 2026, when the Company announced the sudden resignation of Chief Financial Officer ("CFO") Wang. Defendants ultimately corrected their misrepresentations on March 13, 2017, when Kandi announced that the Company would restate its financial results. The Company's investors suffered significant losses when Defendants made each of these disclosures.

## II.    STATEMENT OF FACTS

Throughout the Class Period, Kandi was a designer, manufacturer, and distributor of electric vehicles and parts. *See* Declaration of Ex Kano S. Sams II in Support of Plaintiff's Motion for Summary Judgment and/or Summary Adjudication ("Sams Decl."), Exhibit ("Ex.") 1 (Loss Causation and Damages Declaration of Dr. Adam Werner") at ¶10. Headquartered in China but incorporated in the U.S., the Company described its "primary business operations" as "the design, development, manufacturing and commercialization of electric vehicles, electric vehicle parts and off-road vehicles, which are distributed in China and global markets." *Id*.

Kandi operated its business through a subsidiary, Kandi Vehicles, which then operated the business through another 15 subsidiaries, including a mix of partially-owned and wholly-owned entities. *Id*. Among those subsidiaries was Geely Automobile Holdings Ltd. ("Geely"), with which Kandi worked through a 50/50 joint venture agreement. *Id*. Under the agreement, Kandi sold electric vehicle parts to Geely while Geely manufactured the vehicles. *Id*. As a result, and as Kandi explained in its Form 10-K, "beginning in 2015, the majority of the Company's revenue

and profit were generated from the sale of EV parts." *Id.* As of December 31, 2016, the Company reported total sales revenue of $129.5 million with 96% of sales occurring in China. *Id.* at ¶11.

On August 10, 2015, Kandi announced its financial results for 2Q 2015. *Id.* at ¶17. In its earnings press release, the Company reported total revenues of $48 million for 2Q 2015 and net income of $5.4 million, or $0.12 per share. *Id.* According to CFO Wang, the Company's 2Q 2015 financial results aligned with the Company's own expectations. *Id.*[2] The previous day, Kandi filed its Form 10-Q for the quarter ended June 30, 2015, wherein the Company reported no revenues from related party transactions during 2Q 2015. *Id.* at ¶18. In the same filing, Defendants represented that Kandi's disclosure controls and procedures were effective. *Id.* at ¶19.

On November 9, 2015, Kandi announced its financial results for 3Q 2015. *Id.* at ¶20. In Kandi's earnings press release, the Company reported total revenues of $50.5 million for 2Q 2015 and net income of $2.3 million, or $0.05 per share. *Id.* CFO Wang also commented that the Company's financial results were within its expectations. *Id.* On the same day, Kandi also filed its Form 10-Q for the quarter ended September 30, 2015, wherein the Company again reported no revenues from related party transactions. *Id.* at ¶21. In the same filing, Defendants also reiterated Kandi's conclusion that the Company's internal controls over financial reporting were effective and that there had been no changes to its internal controls over financial reporting since the previous quarter. *Id.* at ¶22.

A week prior to filing its FY 2015 financial results, Kandi's Audit Committee held an internal teleconference meeting to "review[], discuss[], and approv[e]" the Company's Form 10-K for the fiscal year ended December 31, 2015. *Id.* at ¶23. During this meeting, the Audit

---

[2] Chinese names are different from Western names, in that they start with the family name followed by the given name.

Committee spoke on Kandi's classification and treatment of related party transactions and identified two related parties – Kandi USA and the Service Company.  *Id.*

On March 14, 2016, Kandi announced its financial results for 4Q 2015 and FY 2015.  *Id.* at ¶24.  For the fourth quarter, the Company reported revenues of $58.8 million and net income of $0.8 million, or $0.02 per share.  *Id.*  CFO Wang also stated that the Company's FY 2015 financial results and performance met its own expectations.  *Id.*  On the same day, Kandi also filed its Form 10-K, in which it made certain representations regarding related party transactions.  *Id.* at ¶25.  In the same filing, Kandi represented that its internal controls and procedures were effective as of December 31, 2021, pursuant to an annual review that it conducted.  *Id.* at ¶26.  Defendants also reiterated that there had been no changes in Kandi's internal control over financial reporting since the previous quarter.  *Id.* at ¶27.

On March 22, 2016, an internal Company e-mail was sent to Kandi's Audit Committee members explaining that transactions made with Zhejiang ZuoZhongYou Electric Vehicle Service Co. would now be considered a related party transaction and that Kandi's FY 2015 and FY 2016 transactions with said company shall be ratified by the Audit Committee.  *Id.* at ¶28.

On April 13, 2016, the Company filed a Form 8-K announcing that it had dismissed AWC Limited as its independent registered public accounting firm and had instead engaged BDO China Shu Lu Pan Certified Public Accountants LLP ("BDO China").  *Id.* at ¶29.

On May 10, 2016, Kandi announced its financial results for 1Q 2016.  *Id.* at ¶30.  For the quarter, the Company reported revenues of $58.8 million and net income of $0.1 million, or $0.00 per share.  *Id.*  CFO Wang commented that despite the Company's strong revenue performance, its net income figures suffered from a "lack of EV products sales by our JV Company in this quarter."  *Id.*

That same day, Kandi filed its Form 10-Q with the SEC. *Id.* at ¶31. In this Form 10-Q, other than a $3.2 million transaction with its Service Company, again related to the Service Company's "needs to buy battery for the speed upgrade and also EV parts for the repairing and maintenance for its operating electric vehicles," Kandi reported no other related party transactions. *Id.* Defendants, however, continued to represent that Kandi's internal controls were effective and that there had been no changes in its internal control procedures since the last quarter. *Id.* at ¶32.

On August 9, 2016, Kandi announced its financial results for 2Q 2016. *Id.* at ¶33. For the quarter, the Company reported revenues of $55.2 million and net income of $2.8 million, or $0.06 per share. *Id.* Additionally, CFO Wang touted the Company's financial results. *Id.* Kandi filed its Form 10-Q with the SEC on the same day. *Id.* at ¶34. In the filing, Kandi reported no related party transactions other than a $769,065 sale to its Service Company related to "the Service Company needs to buy battery for the speed upgrade and also EV parts for the repairing and maintenance for its operating electric vehicles." *Id.* No other related party transactions were reported. *Id.* In the same filing, Kandi also represented that its internal controls were effective and that there had been no changes to its internal controls since the latest quarter. *Id.* at ¶35.

On November 9, 2016, Kandi announced its financial results for 3Q 2016. *Id.* at ¶36. For the quarter, the Company reported revenues of $6.4 million and a net loss of $0.6 million, or -$0.01 per share. *Id.* Defendants explained that the dramatic decline in revenue from previous quarters was due to the Chinese government's hold on subsidy payments pending a government review of the EV manufacturing sector. *Id.*

On the same day, Kandi also filed its Form 10-Q with the SEC. *Id.* at ¶37. The Company reported a negative sales figure for related party transactions to its Service Company of ($26,490). *Id.* Defendants explained that the negative related party sales figure was a result of "the exchange

5

loss due to Chinese currency depreciation compared to US Dollar in the third quarter of 2016" and reported no other related party transactions. *Id.* Again, Kandi also reaffirmed the effectiveness of its internal controls and that there had been no changes to its internal controls. *Id.*

On November 14, 2016, the Company issued a press release announcing that, effective immediately, CFO Wang would be resigning from the position to become the Company's new Chief Strategy Officer. *Id.* at ¶38. On this news, the price of Kandi stock fell from its previous closing price of $3.90 per share on November 11, 2016 to close at $3.50 per share on November 14, 2016, a decline of $0.40 per share or -10.26%. *Id.* at ¶39.

On March 13, 2017, after the close of trading, Kandi filed a Form 8-K with the SEC titled "Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review". *Id.* at ¶40. The Form 8-K explained that, during Kandi's internal review of its upcoming annual report and Form 10-K, management had "identified certain areas in the Company's previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 (the 'Previously Issued Financial Statements'), that require adjustment . . . ." *Id.*

Defendants explained that because of these required adjustments, the Company's board of directors, audit committee, and management have "concluded that the Company's Previously Issued Financial Statements should no longer be relied upon" and that a restatement would be filed alongside its fiscal year 2016 Form 10-K. *Id.* at ¶41. The Company highlighted the following areas that would be affected by the restatement:

> "The Restatements will include separate audited financial statements for the Company's equity investment in the JV Company, corrections to the classification of notes receivable and notes payable in the Company's statements of cash flow, revisions in the Company's financial statement presentation to separately identify certain related party accounts on the face of the Balance Sheets and the Consolidated Statements of Income (Loss) and Comprehensive Income (Loss),

6

certain amendments to Note 20 – Taxes of the Notes to the Company's Consolidated Financial Statements, the adjustment of previously recorded construction-in-progress back to prepayment in Note 16 – Construction-in-Progress of the Notes to the Company's Consolidated Financial Statements, expansions of two tables of sales to and purchases from the JV Company in Note 24 – Summarized Information of Investment in the JV Company of the Notes to the Company's Consolidated Financial Statements from two years to three years, and the removal of 'unaudited" labels from certain tables in Note 20 – Taxes of the Notes to the Company's Consolidated Financial Statements.

*Id*.

Defendants also explained that because of requiring these restatements, the Company would be "reassessing its internal controls over its financial reporting and compliance programs" and further warned that "The result of this reassessment could lead the Company to conclude that there were deficiencies in its internal controls over financial reporting that constitute material weaknesses." *Id*. at ¶42. Moreover, there were no new Company-specific developments on March 15, 2017. *Id*. at ¶43.

When Kandi ultimately filed its Form 10-K for the fiscal year ended December 31, 2016 on March 16, 2017, the Company also included within this filing the restated financial statements for FY 2015 and 1Q-3Q of 2016. *Id*. at ¶44. In each restated financial statement, the corrected distribution between related party transaction revenues and non-related party transaction revenues contrasted with what Defendants represented throughout the Class Period – that there were either no or *de minimis* amounts of related party transactions. *Id*. For example, in FY 2015, where Kandi had previously represented that there were no related party transactions, the restated financial statements show that of the $201,069,173 in total revenues reported for FY 2015 $194,279,14, or over 96%, were actually from "JV Company and related parties." *Id*.

## III.    PROCEDURAL HISTORY

After Defendants filed a motion to dismiss the operative Complaint, Judge Schofield issued an order on September 13, 2022, largely denying Defendants' motion. ECF No. 64; *see also*

*Venkataraman v. Kandi Techs. Grp., Inc.*, No. 20 CIV. 8082 (LGS), 2022 WL 4225562 (S.D.N.Y.

Sept. 13, 2022) ("Order").  In the Order, Judge Schofield held that:

> The SAC sufficiently and specifically alleges that the statements about related-party transactions during the class period were false to the extent they concealed transactions with the Service Company. The SAC alleges that beginning in the 2015 10-K -- which was incorporated by reference in statements in the later 10-Qs that there had been "no change" in cash flow from related parties -- the only related-party transactions Kandi disclosed were with its subsidiary Kandi USA, sometimes under the trade name Eliteway. The SAC also alleges that Kandi had been engaging in related-party transactions with the Service Company throughout 2015 and 2016. The more general statements in the SOX certifications about the accuracy of the financial statements and the disclosure of fraud are sufficiently alleged to be false to the same extent as the more specific misstatements (and only to that extent).

> \* \* \*

> The SAC also specifically alleges that, beginning with the 2015 10-K, Kandi's statements about material weaknesses in internal controls were false. *In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711, 720 (S.D.N.Y. 2019) ("Misstatements made in its certifications concerning the design and efficacy of internal controls are actionable."). In its 2017 10-K, Kandi disclosed that newly discovered "material weaknesses existed as of December 31, 2015 and had not yet been fully remediated as of December 31, 2017." Contrary to Defendants' argument, this is not an allegation of "fraud by hindsight," but rather an admission by Kandi that earlier statements were false when made. *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 544 (S.D.N.Y. 2017) ("Although a restatement is not an admission of wrongdoing, the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made." (internal quotation marks omitted)).

*Id*. at \*5–6. Judge Schofield also ruled that "[t]he SAC alleges facts supporting a 'strong inference of scienter' with respect to the first category, related-party transactions, and the second, internal controls, to the extent material weaknesses pertained to reporting of related-party transactions." *Id*. at \*6.  Specifically, the Court determined that "[t]he SAC alleges the requisite strong inference of scienter as to each of the Defendants except for Defendant Mei."  *Id*. at \*7. Judge Schofield held that "the SAC sufficiently pleads that Defendants Hu and Kandi had a motive

and opportunity to commit fraud." *Id*.  Regarding the scienter of the other Defendants, Judge

Schofield ruled that:

> The SAC pleads sufficient circumstantial evidence of recklessness or conscious misbehavior as to Defendants Chen, Lewin, Yu and Wang because the SAC plausibly alleges that they "knew facts or had access to information suggesting that their public statements were not accurate." *Set Cap.*, 996 F.3d at 79. The SAC alleges that, on March 7, 2016, Defendants Chen, Lewin, Yu and Wang attended a meeting of Kandi's Audit Committee at which "management identified two related parties" including "the Service Company," and "reported that the Company had engaged in related-party transactions with the Service Company" in 2015. The SAC also alleges that, on August 1, 2016, those same Defendants attended another Audit Committee meeting, and Wang reported to the others that "for the six months ending June 30, 2016" "sales to the Service Company totaled nearly $4 million, while receivables from the Service Company totaled nearly $11 million."
>
> The Audit Committee's awareness of related-party transactions was consistent with the stated procedures for such transactions as represented in Kandi's 2014 10-K, issued shortly before the beginning of the Class Period. Those procedures specified that Kandi's "definition of a 'Related Party' is in line with the definition set forth in the instructions to Item 404(a) of regulation S-K promulgated by the SEC." The relevant regulatory definition, in turn, defines "[t]ransactions with related persons" as those "in which any related person had or will have a direct or indirect material interest," and a "related person" includes "[a]ny director or executive officer of the registrant." 17 C.F.R. § 229.404. Defendants do not dispute that the transactions with the Service Company, in which Defendant Hu, Kandi's CEO, held a significant stake, qualifies as a related-party transaction. The written policy makes clear that Defendants were aware of the reporting requirements for related-party transactions during the Class Period. Defendants' alleged knowledge of the existence of the transactions and of the requirements for reporting them, at the time Defendants signed off on reports omitting those transactions, is sufficient circumstantial evidence of recklessness or conscious misbehavior.

> *Id*. at *7-*8.

On September 30, 2024, the Court granted Plaintiff's motion for class certification.  ECF

No. 115.  In the order, the Court certified a class period of between August 10, 2015 and March

13, 2017, inclusive ("Class Period").

## IV.    STANDARD OF REVIEW

Rule 56 provides the following:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).  Additionally, "[u]nder Rule 56(d), now codified as Federal Rules of Civil Procedure, Rule 56(g), if the Court does not grant all the relief requested by the motion, it may enter an order stating any material fact, including an item of damages or other relief, that is not genuinely in dispute and treating the fact as established in the case."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047, 1052 (C.D. Cal. 2011).  "Under Federal Rules of Civil Procedure, Rule 56(g), partial summary judgment or summary adjudication is appropriate as to specific issues if it will narrow the issues for trial."  *Id.*

## V.    ARGUMENT

Section 10(b) of the Exchange Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. §78j(b).[3]  SEC Rule 10b-5 implements this provision by making it unlawful to, among other things, "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."  17 C.F.R. §240.10b-5(b).  Section 10(b) "affords a right of action to purchasers or sellers of securities injured by its violation."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318 (2007).

---

[3] Unless otherwise indicated, all emphasis is added, all internal quotations and citations are omitted.

To state a claim, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).  As demonstrated below, summary adjudication is warranted for the elements of falsity, loss causation, and scienter. Summary adjudication is also appropriate for the issues of class-wide reliance, a connection between the misrepresentations and the purchase of a security, and economic loss.[4]

**A.      Summary Adjudication is Warranted Because Plaintiff Has Demonstrated Falsity**

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA'), which is applicable to Exchange Act claims, a plaintiff adequately demonstrates falsity by "specify[ing] each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. §78u-4(b)(1)(B).   Here, the Company's restatement constitutes an admission of falsity.  "By definition . . . a restatement says that the prior financial statement was false." *Ley v. Visteon Corp.*, 543 F.3d 801, 812-13 (6th Cir. 2008), *abrogated on other grounds by Matrixx*, 131 S. Ct. at 1323-25.  Additionally, under GAAP, restatements are proper only to

---

[4] Falsity, loss causation, and scienter are the most-commonly disputed elements in class action securities litigation.  With respect to reliance, the Court previously held that "here, the fraud-on-the-market theory creates a presumption of class-wide reliance, which will enable Plaintiff to establish Defendants' liability using evidence common to the class."  ECF No. 115 at 7.  Plaintiff has done so through Dr. Werner's previous report.  *See* ECF No. 96-1 at 9-48, which is incorporated herein by reference. *See In re Celestica Inc. Sec. Litig.*, No. 07 CIV. 0312 GBD, 2014 WL 4160216, at \*12 (S.D.N.Y. Aug. 20, 2014) ("Plaintiffs, having put forth unrebutted evidence that Celestica securities traded on an efficient market, are entitled to the application of the fraud on the market presumption. Summary judgment is accordingly granted in Plaintiffs favor on the issue of class-wide reliance.").   It is also undisputed this case involves "a connection between the misrepresentation or omission and the purchase or sale of a security" and that Plaintiff suffered an economic loss.  *See* ECF No. 11-2 and 11-3, which are incorporated by reference herein.

correct *material* errors in financial statements that existed *at the time the statements were issued*. *See, e.g.*, *Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 549 (S.D.N.Y. 2017) ("The very fact of the restatement and thus [the company's] conclusion that the financials were materially misstated at the time [defendant] made alleged misrepresentations belies any suggestion that any misstatement or omission was not material."); *see also 380544 Canada, Inc. v. Asspen Tech. Inc*., 544 F. Supp. 2d 199, 217 (S.D.N.Y. 2008) ("The Individual Defendants do not, and cannot, dispute the actual falsity of the financial statements that were contained in Aspen's press releases and SEC filings for the thirteen quarters at issue and were subsequently restated in the Amended Form 10-K.").

As noted above, on March 13, 2017, Kandi filed a Form 8-K titled "Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review." Sams Decl., Ex. 1 at ¶40.  The Form 8-K explained that, during Kandi's internal review of its upcoming annual report and Form 10-K, management had "identified certain areas in the Company's previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 (the 'Previously Issued Financial Statements'), that require adjustment . . . ." *Id*.  Because of these required adjustments, Kandi "concluded that the Company's Previously Issued Financial Statements should no longer be relied upon" and that a restatement would be filed with its 2016 Form 10-K.  *Id*. at ¶41.

Additionally, when Kandi ultimately filed its Form 10-K for the fiscal year ended December 31, 2016 on March 16, 2017, the Company also included within this filing the restated financial statements for FY 2015 and 1Q-3Q of 2016.  *Id*. at ¶44.  In each restated financial statement, the corrected distribution between related party transaction revenues and non-related party transaction revenues contrasted with what Defendants represented throughout the Class

12

Period: that there were either no or *de minimis* amounts of related party transactions. *Id*. For example, in FY 2015, where Kandi had previously represented that there were no related party transactions, the restated financial statements show that of the $201,069,173 in total revenues reported for FY 2015 $194,279,14, or over 96%, were actually from "JV Company and related parties." *Id*. Thus, summary adjudication is warranted because Plaintiff has demonstrated falsity.

**B.      Summary Adjudication is Warranted Because Plaintiff Has Demonstrated Loss Causation**

The PSLRA provides that "the plaintiff shall have the burden of proving that the act or omission of the defendant alleged . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. §78u-4(b)(4). To assess loss causation, the empirical behavior of a subject security following the revelation of the information alleged to have been concealed is important for determining whether the alleged misrepresentation and omissions had inflated the security price, and if the corrective disclosure caused the security price to decline. Sams Decl., Ex. 1 at 45. One typically conducts an event study to determine whether such revelatory events were a substantial cause of a security price decline. *Id*. An event study focused on residual returns, which exclude and control for the effects of market and sector factors, measures how much a security price rises or falls in response to new information. *Id*. That is, an event study is essentially a controlled experiment that allows one to observe the market's valuation of the security with and without the information at issue. *Id*.

Once the event study has established a security price reaction to a company-specific disclosure, one may remove the effects of potentially company-specific non-fraud-related (*i.e*., confounding) information, if any, to determine whether the allegation-related information was a substantial cause of the residual security price decline. *Id*. at 46. Valuation tools can be used to remove the effect of confounding information from the price decline, if any. *Id*. After controlling

for company-specific non-fraud-related information, if any, one can determine whether the disclosures and ramifications correcting the alleged misrepresentations and omissions were a substantial cause of the residual security price decline. *Id*. Additional elements of loss causation analysis may include applying fundamental valuation principles, examining Company statements, and reviewing comments from market participants to assess whether the subject matter of the alleged misrepresentations and omissions is economically material – that is, valuation relevant and important to investors. *Id*. at 47.

### 1. Financial Economic Principles Compel a Conclusion of Loss Causation

Dr. Adam Werner, a renowned expert in this field, opined that according to fundamental principles of finance and valuation, a Company's revenues are a key determinant of a company's value and the value of a company's stock. *Id*. at 48. Dr. Werner found that for Kandi, related party transactions were a major part of its reported financial results during the Class Period, but this fact was misrepresented and omitted to investors. *Id*. By misrepresenting the actual source of its revenues (and therefore also earnings and cash flows), Kandi, in turn, misrepresented to investors the sustainability and prospects of these revenues. *Id*. That revenue, and the ability for investors to rely on accurate revenue figures, is an important determinant of a company's value and consequently the value of a company's securities is generally accepted and well-grounded in the finance literature. *Id*. at 49.

Additionally, it is a fundamental principle of financial economics that valuation is forward looking. *Id*. at 50. Value and market price are functions of expectations of future performance. *Id*. Therefore, sustainability is key. *Id*. If investors are equipped with the knowledge that lofty past performance is not sustainable, by virtue of it being derived from illegal accounting behavior, for example, then the security price in question will be lower. *Id*. As Dr. Werner found, when unsustainability of revenue is concealed, as Plaintiff alleges here because Kandi concealed that the

majority of its revenues were not to real customers but rather to related parties, that concealment would artificially inflate the Company's stock price according to these financial valuation principles. *Id.* That sustainability is a key determinant of value is presented in introductory and authoritative texts. *Id.* at 51.

It is also well-established that the reliability of internal controls is an important factor that affects the value of a company's securities. *Id.* at 52. With higher internal quality controls, comes lower assessed risk, and in turn, a lower cost of capital. *Id.* Additionally, as Dr. Werner opined, it is a generally accepted principle that management departures signal to investors the existence of potential undisclosed problems at a company. *Id.* at 53. Indeed, management departures are recognized "trigger events" that signal potential problems relating to financial misrepresentations. *Id.* at 53-54.

## 2.   Empirical Analysis Compels a Conclusion of Loss Causation

To determine whether the alleged misrepresentations, omissions, and half-truths, and their subsequent corrective disclosure, caused losses to investors, Dr. Werner conducted an event study. *Id.* at 55. An event study examines whether a security price reacts to the release of new information. *Id.* A statistically significant stock price reaction in response to the release of new information indicates that the new information caused the price change. *Id.* Event study analysis is one of the most-commonly used analytic methodologies employed by finance researchers. *Id.* at 56-57.

Following his review of the Complaint, news articles, press releases, equity analyst reports, and SEC filings regarding Kandi, Dr. Werner identified two corrective disclosure events: (1) on November 14, 2016, Kandi announced that, effective immediately, CFO Wang would be resigning from the position to instead become the Company's new Chief Strategy Officer; and (2) on March 13, 2017, after the close of trading, Kandi issued a press release stating that, during Kandi's internal

15

review of its upcoming annual report and Form 10-K, the Company's management had "identified certain areas in the Company's previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 (the 'Previously Issued Financial Statements'), that require adjustment … ." *Id*. at 58.  In addition, Kandi explained that, as a result of requiring these restatements, the Company would be "reassessing its internal controls over its financial reporting and compliance programs" and further warned that "The result of this reassessment could lead the Company to conclude that there were deficiencies in its internal controls over financial reporting that constitute material weaknesses." *Id*.  No Company-specific developments occurred on March 15, 2017.  *Id*.  One day later, on March 16, 2017, Kandi filed its restated financials with the SEC in a Form 10-K wherein the Company revealed that the vast majority of its previously reported revenues were related party transactions. *Id*.

As Dr. Werner explained, Kandi's November 14, 2016 announcement that, effective immediately, CFO Wang would be resigning from the position to instead become the Company's new Chief Strategy Officer represented a trigger event that signaled a potential link between and the departure and the fraud alleged here – a link that was bolstered by Kandi's poor financial performance preceding the disclosure.  *Id*. at 59.  Additionally, Dr. Werner found that the subsequent announcement on March 13, 2017 possess all the hallmarks of a corrective disclosure. *Id*. at 60.  As Dr. Werner explained, this was the event by which market participants learned the truth: that Kandi's internal controls were deficient, that a restatement of financial results was necessary, and that all the financial results market participants had been relying on since the start of FY 2015 were no longer reliable.  *Id*.  All of the information market participants received via

16

this disclosure directly relates to (and corrects) Plaintiff's allegations of misrepresentations, omissions, and/or half-truths. *Id.*

As Dr. Werner further explained, the full impact of this disclosure was not limited to only one trading day. *Id.* Indeed, just two days later, Kandi filed restated financial statements that sought to correct the previous accounting errors, and these new financial statements revealed the full extent of the Company's previous accounting misdeeds. *Id.* That is, where the March 13, 2017 disclosure (after the close of trading) revealed the existence of internal control weaknesses and accounting fraud, the March 16, 2017 Form 10-K filing detailed the economic extent of both. *Id.* Thus, to appropriately capture the full extent of the alleged corrective disclosure, Dr. Werner considered both the initial disclosure and the later more substantive disclosure. *Id.*

Based upon this analysis, Dr Werner found that the entirety of the residual decline on November 14, 2016 was caused by negative signals communicated via the sudden CFO departure, demonstrating that the alleged fraud caused investor losses. *Id.* at 74, 81. Dr. Werner found further that the residual return was statistically significant at the 90%, 95%, and 99% confidence level, indicating that the abnormal return was too severe to have been a random fluctuation and thereby demonstrating that the abnormal stock return was statistically significant. *Id.* at 72. For Kandi's stock decline from March 14-16, 2017, Dr. Werner concluded that the cumulative residual return from March 14-16, 2017 was similarly statistically significant at the 90%, 95%, and 99% confidence level and also demonstrated that the alleged fraud caused investor losses. *Id.* at 78, 80, 81.[5] Thus, summary judgment is warranted because Plaintiff has demonstrated loss causation.

---

[5] Dr. Werner's conclusions, moreover, are grounded in sound financial and accounting principles. For example, the use of both single day and multi-day event windows is appropriate in an event study. *Id.* at 61. Additionally, Dr. Werner isolated the impact of Company-specific information in reaching his conclusions. *Id.* at 64-70, 73-74. Dr. Werner also assessed the valuation impact,

### 3.    Damages

In addition to demonstrating loss causation, Plaintiff has also demonstrated damages. Specifically, Plaintiff has quantified that loss on a per share basis attributable to investors who purchased Kandi stock during the Class Period.    *Id*. at 82-94.  For this matter, Dr. Werner calculated per share damages using the "out-of-pocket" framework.  *Id*. at 83.  The out-of-pocket measure of per share damages traditionally applied in securities cases is the difference between the actual purchase price of the security and what the purchase price of the security would have been were there no alleged fraud.  *Id*.  Based on his analysis, Dr. Werner found that out-of-pocket damages per share here range from $0 to $1.10 per share, excluding prejudgment interest.  *Id*. at 94.  Dr. Werner also performed an aggregate damages calculation for the two corrective disclosures on November 14, 2016 and March 14, 2017.  *See* Sams Decl., Ex. 2 at 2 (Table entitled "Residual Declines").[6]  Dr. Werner calculated the aggregate damages for the November 14, 2016 disclosure at $5.9 million, and the cumulative damages for the March 14, 2017 disclosure at $9.8 million, for a two-trader aggregate damages calculation of $15.5 million for the damages in this case.  *Id*.[7] Thus, Plaintiff has demonstrated that summary adjudication is warranted for loss causation and has provided evidence demonstrating damages.

---

if any, of potentially confounding information that may have impacted the declines associated with the identified corrective disclosures. *Id*. at 73, 79.

[6] As Dr. Werner explains, the results of the regression analysis are robust to an alternative estimation period beginning on August 10, 2015, which is the start of the current Class Period. Ex. 1 at 34 n.97.  According to Dr. Werner, as there was no econometric basis for shortening the Class Period to begin on August 10, 2015 instead of June 10, 2015, Dr. Werner applied the same regression estimation period as his market efficiency analysis for consistency.  *Id*.

[7] A two-trader model is a commonly applied model "to simulate the activities of market participants during the class period and to determine the amount of class-wide damages based on the per-share damages figure."  *Desvarieux v. Axiom Holdings, Inc.*, No. 17CIV4756JPCGWG, 2022 WL 1467973, at *4 (S.D.N.Y. May 10, 2022), *report and recommendation adopted,* No. 17CIV4756JPCGWG, 2022 WL 1689395 (S.D.N.Y. May 26, 2022).

**C.** **Summary Adjudication is Warranted Because Plaintiff Has Demonstrated Scienter**

Summary adjudication is also warranted because Plaintiff has demonstrated that Defendants acted with scienter.  The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. §78u-4(b)(2); *Tellabs*, 551 U.S. at 314.

**1.** **Plaintiff Has Demonstrated that the Individual Defendants Acted With Scienter**

Plaintiff has demonstrated that the Individual Defendants acted with scienter.  As Judge Schofield held in largely denying Defendants' motion to dismiss – as noted above:

> The SAC pleads sufficient circumstantial evidence of recklessness or conscious misbehavior as to Defendants Chen, Lewin, Yu and Wang because the SAC plausibly alleges that they "knew facts or had access to information suggesting that their public statements were not accurate." *Set Cap.*, 996 F.3d at 79. The SAC alleges that, on March 7, 2016, Defendants Chen, Lewin, Yu and Wang attended a meeting of Kandi's Audit Committee at which "management identified two related parties" including "the Service Company," and "reported that the Company had engaged in related-party transactions with the Service Company" in 2015. The SAC also alleges that, on August 1, 2016, those same Defendants attended another Audit Committee meeting, and Wang reported to the others that "for the six months ending June 30, 2016" "sales to the Service Company totaled nearly $4 million, while receivables from the Service Company totaled nearly $11 million."

> The Audit Committee's awareness of related-party transactions was consistent with the stated procedures for such transactions as represented in Kandi's 2014 10-K, issued shortly before the beginning of the Class Period. Those procedures specified that Kandi's "definition of a 'Related Party' is in line with the definition set forth in the instructions to Item 404(a) of regulation S-K promulgated by the SEC." The relevant regulatory definition, in turn, defines "[t]ransactions with related persons" as those "in which any related person had or will have a direct or indirect material interest," and a "related person" includes "[a]ny director or executive officer of the registrant." 17 C.F.R. § 229.404. Defendants do not dispute that the transactions with the Service Company, in which Defendant Hu, Kandi's CEO, held a significant stake, qualifies as a related-party transaction. The written policy makes clear that Defendants were aware of the reporting requirements for related-party transactions during the Class Period. Defendants' alleged knowledge of the existence of the transactions and of the requirements for reporting them, at the time Defendants signed off on reports omitting those transactions, is sufficient circumstantial evidence of recklessness or conscious misbehavior.

19

*Venkataraman*, 2022 WL 4225562 at \*7-\*8.

The evidence in this case, moreover, confirms Judge Schofield's decision. For instance, on March 7, 2016, a week prior to filing its FY 2015 financial results, Kandi's Audit Committee held an internal teleconference meeting to "review[], discuss[], and approv[e]" the Company's Form 10-K for the fiscal year ended December 31, 2015. Sams Decl., Ex. 1 at ¶23 (citing KANDI-SDNY_00063348-50).[8]  During this meeting, which was attended by Defendants Yu, Lewin, Chen, and Wang, the participants spoke about Kandi's classification and treatment of related party transactions and identified two related parties – Kandi USA and the Service Company. *Id*. Similarly, on August 1, 2016, these same Defendants attended another Audit Committee meeting, and CFO Wang reported to the others that "for the six months ending June 30, 2016" "sales to the Service Company totaled nearly $4 million, while receivables from the Service Company totaled nearly $11 million." (KANDI-SDNY_0008280-784).  Additionally, on March 22, 2016, an internal Company e-mail was sent to Kandi's Audit Committee members explaining that transactions made with Zhejiang ZuoZhongYou Electric Vehicle Service Co. ("ZZY") would now be considered a related party transaction and that Kandi's FY 2015 and FY 2016 transactions with said company shall be ratified by the Audit Committee. Sams Decl., Ex. 1 at ¶28 (citing KANDI-SDNY_00063340).  The evidence also demonstrates that Defendants Lewin, Chen, and Wang, were aware of internal control issues as described by Defendants Yu as of August 21, 2015.

---

[8] Pursuant to Rule 6 of the Court's Individual Rules and Practices in Civil Cases, Plaintiff intends to confer with Defendants to discuss whether the documents referenced within Plaintiff's motion (as well as any necessary for Plaintiff's response to any motion filed by Defendants) require redactions or filing under seal.  Plaintiff then intends to submit such documents either unredacted on the date the Court designated for consolidated responses and replies (March 28, 2025) or, if necessary, will seek Court approval for redactions and/or sealing pursuant to the Court's Individual Rules and Practices.

(KANDI-SDNY_00006153-154; Deposition transcript of Henry Yu at 56-61).   Additionally, an investor presentation dated August 2016 included information regarding related party sales, such as sales related to ZZY, an entity in which Defendant Hu admitted Kandi had an ownership interest. (KANDI-SDNY_00009346-381; Deposition transcript of Cheng Wang at 131-33; Deposition transcript of Xiaoming Hu at 49-50, 69-71, 117-120).   Thus, summary judgment is warranted because "[t]his undisputed evidence is sufficient to satisfy the scienter requirement because it shows an intent to deceive, manipulate, or defraud." *Dragan v. Valladolid*, No. CV 18-448-MWF (FFMX), 2021 WL 1034841, at \*7 (C.D. Cal. Feb. 11, 2021), *aff'd,* No. 21-55387, 2022 WL 779911 (9th Cir. Mar. 14, 2022), and *aff'd,* No. 21-55387, 2022 WL 779911 (9th Cir. Mar. 14, 2022).[9]

### 2.   Plaintiff Has Demonstrated that Kandi Acted With Scienter

Additionally, Plaintiff has also demonstrated that Kandi acted with scienter.   First, "the most straightforward way to raise a strong inference of corporate scienter is to impute it from an individual defendant who made the challenged misstatement." *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020); *see also In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 516 (S.D.N.Y.), *opinion corrected on denial of reconsideration,* 612 F. Supp. 2d 397 (S.D.N.Y. 2009) ("scienter by management-level employees is generally sufficient to attribute scienter to corporate defendants").   As demonstrated above, because the Individual Defendants acted with scienter, their scienter is imputed to Kandi.

Second, as the Second Circuit has declared, "it is possible to raise the required inference with regard to a corporate defendant without doing so with regard to a specific individual

---

[9] This evidence also shows that Plaintiff has demonstrated control person liability under Section 20(a) of the Exchange Act. *In re WorldCom, Inc. Sec. Litig*., 294 F. Supp. 2d 392, 414 (S.D.N.Y. 2003).

defendant." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc*., 531 F. 3d 190, 195 (2d Cir. 2008); *Jackson*, 960 F.3d at 98-99. Indeed, the argument that "Plaintiffs must allege that the individuals whose state of mind is imputed to the corporate defendant are the same individuals who made the relevant misstatements or omissions" has been "rejected by numerous other district courts when presented to them." *In re VEON Ltd. Sec. Litig.*, No. 15-CV-08672 (ALC), 2017 WL 4162342, at *10 (S.D.N.Y. Sept. 19, 2017); *see also In re Sonus Networks, Inc. Sec. Litig*., No. Civ.A.04-0294-DPW, 2006 WL 1308165, at *23-*24 (D. Mass. May 10, 2006) (holding that scienter was adequately pled against the corporation where management "failed to have a structure that would insure the dissemination of correct information in an environment where [the officer with scienter] encouraged accounting fraud"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 752 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) (to demonstrate scienter for a company, plaintiffs need only show either "that one or more members of top management knew of material information . . . but failed to stop the issuance of misleading statements" or where "management had recklessly failed to set up a procedure that insured the dissemination of correct information"). Such is the case here, where Plaintiff has not only demonstrated the scienter of the Individual Defendants, but has also shown that Kandi recklessly failed to establish a procedure that ensured the dissemination of correct information. Indeed, on March 13, 2017, Defendants admitted that in addition to the restatements that Kandi was force to make, the Company would be "reassessing its internal controls over its financial reporting and compliance programs" and further warned that "The result of this reassessment could lead the Company to conclude that there were deficiencies in its internal controls over financial reporting that constitute material weaknesses." *See* Sams Decl., Ex. 1 at ¶42.

## VI.     CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion.

DATED:  February 13, 2025

**GLANCY PRONGAY & MURRAY LLP**

By:   *s/ Ex Kano S. Sams II*

Robert V. Prongay (admitted *pro hac vice*)
Ex Kano S. Sams II (admitted *pro hac vice*)
Charles H. Linehan (admitted *pro hac vice*)
Pavithra Rajesh (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: clinehan@glancylaw.com

*Counsel for Lead Plaintiff Tom Brooks and the Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel*

23

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(c)**

I, Ex Kano S. Sams II, declare that pursuant to Local Civil Rule 7.1(c), that excluding captions, indices, table of contents, table of authorities, and signature blocks, this brief contains 7,524 words. I further declare that Local Civil Rule 7.1(c) states that the provisions for the length of memoranda of law provided therein govern except "as otherwise directed by the court," and that in a memo endorsement dated November 27, 2024 (ECF No. 117), the Court provided that the parties may use up to 25 pages for this brief.

*s/Ex Kano S. Sams II*
Ex Kano S. Sams II

24

## PROOF OF SERVICE

I hereby certify that on this 13th day of February, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Ex Kano S. Sams II*
Ex Kano S. Sams II

25