**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SRINIVASAN VENKATARAMAN, Individually, and On Behalf of All Others Similarly Situated

Plaintiff,

-against-

KANDI TECHNOLOGIES GROUP, INC., XIAOMING HU, CHENG WANG, LIMING CHEN, JERRY LEWIN and HENRY YU,

Defendants.

Civil Action No. 1:20-cv-08082-DEH

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**STINSON LLP**

Richard J.L. Lomuscio
Nicole Khalouian
100 Wall Street, Suite 201
New York, New York 10005
Phone: 646.883.7675
richard.lomuscio@stinson.com
nicole.khalouian@stinson.com

*Attorneys for Defendants Kandi Technologies Group, Inc.. Xiaoming Hu, Cheng Wang, Liming Chen, Jerry Lewin, and Henry Yu*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

COUNTER-STATEMENT OF FACTS ..................................................................................... 4

LEGAL STANDARD................................................................................................................ 7

ARGUMENT ............................................................................................................................. 8

I.      PLAINTIFF FAILS TO DEMONSTRATE LOSS CAUSATION AND DAMAGES. ..... 8

        A.      Plaintiff Cannot Rely On The Belated Werner Declaration .................................. 9

        B.      Plaintiff's Theory Of Loss Causation And Damages Fail As A Matter Of Law
                Regardless Of The Werner Declaration's Admissibility ..................................... 13

                1.      Mr. Wang's Transition from Kandi's Chief Financial Officer to Chief
                        Strategy Officer Is Not Connected To The Alleged Fraud ....................... 15

                2.      The Restatement's Announcement Does Not Definitively Show Impact
                        On Kandi's Stock Price.............................................................................. 16

II.     PLAINTIFF'S THEORY OF RELIANCE IS FUNDAMENTALLY FLAWED. ........... 20

III.    THERE IS NO EVIDENCE THAT KANDI MADE A FALSE STATEMENT OR
        OMISSION OF MATERIAL FACT ............................................................................... 21

IV.     PLAINTIFF DOES NOT DEMONSTRATE CONSCIOUS MISBEHAVIOR OR
        RECKLESSNESS SUFFICIENT TO PROVE SCIENTER ........................................... 22

V.      PLAINTIFF'S CONTROL PERSON LIABILITY CLAIMS UNDER SECTION
        20(a) FAIL ....................................................................................................................... 24

CONCLUSION........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Analytics, Inc. v. Citigroup Cap. Mkts., Inc.*,
  301 F.R.D. 31 (S.D.N.Y. 2014) ........................................................................................11, 12

*Basic v. Levinson*,
  485 U.S. 224 (1988)..............................................................................................................21

*In re Bear Stearns Companies, Inc. Sec.*,
  2016 WL 4098385 (S.D.N.Y. July 25, 2016) ........................................................................16

*In re Buca Inc. Sec. Litig.*,
  2006 WL 3030886 (D. Minn. Oct. 16, 2006) ........................................................................15

*Caruso v. Bon Secours Charity Health System, Inc.*
  703 Fed. Appx. 31 (2d Cir. 2017)..........................................................................................10

*Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*,
  769 F.Supp.2d 269 (S.D.N.Y. 2011).......................................................................................10

*In re Celestica Inc. Sec. Litig.*,
  2014 WL 4160216 (S.D.N.Y. Aug. 20, 2014)........................................................................20

*China Mobile Games & Ent. Grp., Ltd Sec. Litig.*
  2016 WL 922711 (S.D.N.Y. Mar. 7, 2016) ...........................................................................23

*City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen.
  Hldngs. Corp.*,
  2021 WL 212337 (S.D.N.Y. Jan. 21, 2021) ..........................................................................23

*DeLuca v. Bank of Tokyo–Mitsubishi UFJ, Ltd.*,
  2008 WL 857492 (S.D.N.Y. Mar. 29, 2008) ...........................................................................9

*DeMarco v. Lehman Bros., Inc.*,
  222 F.R.D. 243 (S.D.N.Y. 2004) ...........................................................................................17

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir. 2006)...................................................................................................10

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)....................................................................................................13, 16, 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009).....................................................................................................16

*Franconero v. UMG Recordings, Inc.*,
 542 Fed. Appx. 14 (2d Cir. 2013)........................................................................................10

*Frydman v. Verschleiser*,
 2017 WL 1155919 (S.D.N.Y. Mar. 27, 2017) .......................................................................11

*Gordon Partners v. Blumenthal*,
 2007 WL 1438753 (S.D.N.Y. May 16, 2007) .......................................................................19

*Gordon Partners v. Blumenthal*,
 2007 WL 431864 (S.D.N.Y. Feb. 9, 2007)............................................................................19

*Gordon Partners v. Blumenthal*,
 293 Fed. Appx. 815 (2d Cir. 2008)........................................................................................19

*In re IBM Sec. Litig.*,
 163 F.3d 102 (2d Cir. 1998)....................................................................................................21

*In re Initial Public Offerings Securities Litigation*,
 471 F.3d 24 (2d Cir. 2006).....................................................................................................20

*Kalnit v. Eichler*,
 264 F.3d 131 (2d Cir. 2001)....................................................................................................23

*Kelly v. Beliv LLC*,
 2024 WL 1076217 (S.D.N.Y Mar. 12, 2024) ....................................................................9, 13

*In re Kreta Shipping, S.A.*,
 181 F.R.D. 273 (S.D.N.Y.1998) ...............................................................................................9

*Lanza v. Drexel & Co.*,
 479 F.2d 1277 (2d Cir. 1973)..................................................................................................22

*Lapin v. Goldman Sachs & Co.*,
 254 F.R.D. 168 (S.D.N.Y. 2008) ...............................................................................................7

*Lentell v. Merrill Lynch & Co.*,
 396 F.3d 161 (2d Cir. 2005)........................................................................................7, 14, 24

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
 26 F.Supp.3d 278 (S.D.N.Y. 2014) ........................................................................................21

*McCarthy v. Dun & Bradstreet Corp.*,
 482 F.3d 184 (2d Cir. 2007).....................................................................................................7

*Novak v. Kasaks*,
 216 F.3d 300 (2d Cir. 2000).....................................................................................................21

iii

*NRG Power Mktg., Inc. v. Detroit Edison Co.*,
    2009 WL 10739541 (S.D.N.Y. Feb. 6, 2009)............................................................10

*In re Omnicom Grp., Inc. Sec. Litig.*,
    541 F.Supp.2d 546, 553 (S.D.N.Y. 2008) .............................................................15

*In re Omnicom Grp., Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010).................................................................................14

*Outley v. City of New York*,
    837 F.2d 587 (2d Cir. 1988).................................................................................10

*Patterson v. Balsamico*,
    440 F.3d 104 (2d Cir. 2006).................................................................................10

*Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco, Inc.*,
    2011 WL 1198712 (S.D.N.Y. Mar. 30, 2011) .......................................................21

*Point Prods. A.G. v. Sony Music Ent., Inc.*,
    2004 WL 345551 (S.D.N.Y. Feb. 20, 2004)...........................................................11

*SEC v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996)............................................................................1, 24

*Setzer v. Omega Healthcare Invs., Inc.*,
    968 F.3d 204 (2d Cir. 2020).................................................................................23

*Silivanch v. Celebrity Cruises, Inc.*,
    171 F.Supp.2d 241 (S.D.N.Y. 2001).....................................................................11

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
    118 F.3d 955 (2d Cir. 1997)............................................................................10, 11

*Sutera v. Schering Corp.*,
    73 F.3d 13 (2d Cir. 1995)........................................................................................7

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008).................................................................................20

*Valdes v. Kandi Technologies Group, Inc.*,
    2024 WL 1348697 (E.D.N.Y. Mar. 29, 2024)........................................................23

*In re Vivendi Universal, S.A. Sec. Litig.*,
    634 F. Supp. 2d 352 (S.D.N.Y. 2009)...................................................................14

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011)...................................................................24

*Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 511–12 (S.D.N.Y. 2018) .....................................22

**Statutes**

15 U.S.C. §78j...........................................................................................4, 6, 7, 8, 12, 19, 24

15 U.S.C. § 78t.........................................................................................4, 6, 8, 12, 19, 24, 25

15 U.S.C. § 78u-4 .......................................................................................................6, 16

**Rules**

17 C.F.R. §240.10b-5......................................................................................................8, 12

Fed. R. Civ. P. 23..........................................................................................................3, 19, 20

Fed. R. Civ. P. 26..........................................................................................................9, 10

Fed. R. Civ. P. 37..........................................................................................................9, 10

Fed. R. Civ. P. 56..........................................................................................................7, 8, 23

Defendants Kandi Technologies Group, Inc. ("Kandi" or the "Company"), Xiaoming Hu ("Hu"), Cheng Wang ("Wang"), Liming Chen ("Chen"), Jerry Lewin ("Lewin"), and Henry Yu ("Yu") (collectively, the "Defendants", and, excluding Kandi, the "Individual Defendants"), by and through their attorneys, Stinson LLP, respectfully submit this Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, filed on February 13, 2025 ("Plaintiff's Motion").  (ECF No. 125.)  For the reasons set forth herein, Plaintiff's Motion should be denied.[1]

## **PRELIMINARY STATEMENT**

Plaintiff's Motion suffers from at least four fatal flaws.  First, Plaintiff's Statement of "Undisputed" Facts rests almost exclusively on the Declaration of Dr. Adam Werner ("Werner Declaration") – an expert *opinion* misapplying relevant economic analysis and raising contested factual issues as to loss causation and damages inappropriate for resolution on summary judgment. Second, the Werner Declaration is inadmissible because Plaintiff introduced it for the first time with his Motion in violation of the schedule ordered by this Court.  Third, Plaintiff cites to only six documents and fragments of deposition testimony – an astonishingly inadequate evidentiary basis for the sweeping relief Plaintiff seeks.  Finally, and even if the Court were to disregard these procedural and evidentiary failures, Plaintiff's Motion falls woefully short of establishing the essential elements of securities fraud.  Accordingly, Plaintiff's Motion should be denied, while Defendants' Motion should be granted.

***Plaintiff Cannot Demonstrate Loss Causation and Damages.***  In moving for summary judgment, Plaintiff improperly attempts to ambush Defendants with expert evidence that was never

---

[1] Unless otherwise noted, all capitalized and undefined terms have the same meaning as in Defendants' Response to Plaintiff's Local Rule 56.1 Statement filed herewith or in Defendants' Memorandum of Law in support of their Motion for Summary Judgment ("Defendants' Motion"). (ECF No. 122.).  Citations to "Supp. Khalouian Decl." refers to the Supplemental Declaration of Nicole Khalouian, filed herewith.

disclosed during discovery.  The cornerstone of Plaintiff's Motion, Dr. Adam Werner's ("Dr. Werner") expert report on loss causation and damages, makes its first appearance in this litigation as an attachment to Plaintiff's summary judgment papers.  (*see* ECF Nos. 126-1, 126-2.)  This tactical maneuver violates both the Federal Rules of Civil Procedure and this Court's scheduling order, requiring exclusion of the Werner Declaration and denial of Plaintiff's Motion.

Even if the Court were to consider Dr. Werner's inadmissible report, Plaintiff's theory of loss causation fails as a matter of law.  The report rests on fundamentally flawed methodology that cannot establish any causal connection between the alleged misrepresentations and Plaintiff's claimed losses.  Defendants submit with this opposition the limited expert declaration of Dr. David Tabak ("Tabak Declaration"), which, despite its constrained scope given Defendants' lack of opportunity to engage in full expert discovery, nevertheless identifies critical methodological deficiencies in Plaintiff's approach to loss causation and damages.  Dr. Werner inexplicably employs inconsistent event windows, fails to isolate confounding factors, and improperly includes price movements unrelated to any corrective disclosure.  Plaintiff's attempt to characterize Mr. Wang's transition from Kandi's Chief Financial Offer ("CFO") to Chief Strategy Officer ("CSO") as a corrective disclosure defies both common sense and established securities law.  This internal position change, not a resignation or termination, revealed nothing about the alleged fraud, and Plaintiff presents no evidence that the market interpreted it as signaling financial improprieties.  Critically, Plaintiff's analysis disregards this Court's Second Dismissal Order, which limited actionable claims to "alleged misstatements about related-party transactions."  The Werner Declaration makes no effort to separate the effects of actionable and non-actionable parts of the Restatement, rendering his entire analysis irrelevant to the narrow claims that survived dismissal.

The record before this Court contains not a single piece of admissible evidence establishing the essential elements of loss causation and damages.

*__Plaintiff Misapplies This Court's Class Certification Ruling__*.  The Court's finding that "the fraud-on-the-market theory creates a presumption of class-wide reliance" was never intended to be a free pass on proving liability, it merely established that common questions predominated for purposes of Federal Rule of Civil Procedure 23 ("Rule 23").  Nevertheless, Plaintiff now presents this procedural determination as if it conclusively resolves the reliance element, a position that directly contravenes Second Circuit authority cautioning against mistaking class certification standards for merits determinations.  This misapplication suggests a misapprehension of the evidentiary requirements at summary judgment.  Having failed to develop admissible evidence on securities liability elements during the discovery period, Plaintiff inappropriately attempts to circumvent procedural requirements by introducing new expert analysis after discovery has concluded.  The Court should not permit Plaintiff to substitute procedural findings for the substantive evidence required at this stage of litigation.

*__The Restatement Is Not Dispositive Evidence Of Falsity__*.  Despite this Court's limitation of potential falsity to statements concealing transactions with the Service Company, Plaintiff offers no evidence on this critical point.  Instead, Plaintiff improperly relies on the mere existence of the Restatement, which involved reclassifications between revenue categories and had no impact on Kandi's overall income, as dispositive evidence of falsity.  This misunderstands the applicable legal standard, where at summary judgement, actual evidence is required.  Plaintiff erroneously applies pleading-stage inference standards to summary judgment, where conclusive evidence, not mere allegations, is required to demonstrate the absence of genuine issues of material fact.  Plaintiff has failed to meet this burden.

***The Record Evidence Fails To Establish Scienter.***   Despite having the burden of establishing that Defendants acted with intent to deceive, manipulate, or defraud, or with recklessness amounting to an extreme departure from the standards of ordinary care, Plaintiff relies on only six documents that demonstrate appropriate corporate conduct rather than satisfy the high proof standard for scienter.  The sparse documentary evidence demonstrates, at most, that Kandi was aware of the Service Company's existence (an undisputed fact) and took appropriate remedial actions upon discovering reporting issues.  Notably absent is any evidence that Defendants understood they had a disclosure obligation regarding these transactions and deliberately concealed them.  The law requires far more than what Plaintiff has presented, and no reasonable jury could find that this limited evidence meets the demanding (and contested) scienter requirement as a matter of law.

***Plaintiff's Control Person Liability Claims Are Insufficient***.   Plaintiff's claims under Section 20(a) cannot be sustained in the absence of an established primary violation.  The statutory structure of control person liability requires a predicate Section 10(b) violation as a necessary legal foundation.  Given Plaintiff's failure to present sufficient admissible evidence to establish the essential elements of their primary securities fraud claim, their Section 20(a) claims against the Individual Defendants fail as a matter of law.  The evidentiary deficiencies that undermine Plaintiff's Section 10(b) allegations equally prevent recovery under the control person provisions of the Exchange Act.

Without such evidence, Plaintiff cannot sustain his burden at summary judgment. Plaintiff's Motion should be denied.

## COUNTER-STATEMENT OF FACTS

Defendants respectfully refer to their response to Plaintiff's Rule 56.1 Statement for a full cataloguing of their responses to Plaintiff's asserted factual basis.  Defendants limit their

discussion here to addressing some of the more significant factual mischaracterizations that fundamentally undermine the foundation of Plaintiff's Motion.

***Discovery Has Concluded.***    Plaintiff's Statement of Facts rests nearly entirely on inadmissible evidence that cannot be considered in support of Plaintiff's Motion.  All discovery in this matter has concluded.  The fact discovery period closed on September 15, 2023, followed by the completion of Defendants' expert discovery on March 7, 2024, and Plaintiff's expert discovery on May 16, 2024.  (SUMF ¶¶ 41-43.)  Throughout the discovery period, Plaintiff presented only one expert, Dr. Werner, whose testimony was expressly limited to market efficiency for class certification purposes. (SUMF ¶¶ 37-38.)  As Dr. Werner himself confirmed in his deposition, his analysis was limited to examining whether a methodology could potentially exist to assess loss causation on a class-wide basis; he did not identify any specific methodology or attempt to determine actual loss causation or damages. (SUMF ¶ 38.)  No additional expert evidence regarding loss causation or damages was presented during the discovery period.  Plaintiff's Motion introduces Dr. Werner's analysis on loss causation and damages for the first time, nearly a year after the close of discovery.  Thus, the Werner Declaration impermissibly forms the basis for virtually all of Plaintiff's purported material facts.

***The Restatement And Second Dismissal Order.***  Plaintiff's theory relies on the entirety of the Restatement without accounting for the allegations that have been explicitly dismissed from this case.  In March 2017, by way of its 2016 10-K, Kandi restated certain financial information, contained in its Proxy statements, 10-Q forms and 10-K forms released between March 2014 and November 2016.  (SUMF ¶ 14; Khalouian Decl. ¶ 10.)  The Restatement included: (1) "corrections to the classification of notes receivable and notes payable in the Company's statements of cash flow"; (2) "revisions in the Company's financial statement presentation to separately identify

5

certain related-party accounts on the face of the Balance Sheets and the Consolidated Statements of Income (Loss) and Comprehensive Income (Loss)"; (3) "certain amendments to Note 20 – Taxes of the Notes to the Company's Consolidated Financial Statements"; (4) "the adjustment of previously recorded construction-in-progress back to prepayment in Note 16 - Construction-in-Progress of the Notes to the Company's Consolidated Financial Statements"; (5) "expansions of two tables of sales to and purchases from the JV Company in Note 24 - Summarized Information of Investment in the JV Company of the Notes to the Company's Consolidated Financial Statements from two years to three years"; (6) "the removal of "unaudited" labels from certain tables in Note 20 - Taxes of the Notes to the Company's Consolidated Financial Statements"; and (7) "separate audited financial statements for the Company's equity investment in the JV Company."  (SUMF ¶ 15; Khalouian Decl. ¶ 10.)  The Restatement did not have any impact of Kandi's reported net income during the restated period.  (SUMF ¶ 16.)

On September 13, 2022, the Court granted in part and denied in part Defendants' motion to dismiss the SAC.  (SUMF ¶ 31.)  The Order dismissed the majority of the SAC's allegations on the grounds that certain alleged misstatements and omissions were either barred by the statute of repose or failed to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(2) ("Second Dismissal Order").  (SUMF ¶ 31.)  In particular, the Court held that the Plaintiff failed to allege any of the "specific, false statements" about the Restatement's corrections to "classification of notes receivable and notes payable" and "accounting for the Company's equity investment in the JV Company".  (ECF No. 64, Order at 12.)  The Court's Order narrowed the scope of this action, permitting only limited claims under Section 10(b) and Section 20(a) to proceed – specifically, those addressing related-

6

party transaction disclosures, financial statement characterizations, and internal control assertions. (SUMF ¶¶ 33-35.)

*Mr. Wang's "Resignation".*  Plaintiff similarly misstates the record in asserting that Mr. Wang's resignation from Kandi's CFO represented a trigger event that signaled fraud.  (*See* ECF No. 127,  Plaintiff's SOF ¶ 23.)  The record reflects that Mr. Wang did not depart from Kandi, but instead assumed a new role as CSO.  There is no evidence to suggest that Mr. Wang's change in executive position signaled a link between his transition and the alleged fraud.

## LEGAL STANDARD

A court may grant summary judgment only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted).  A fact is "material" if it "might affect the outcome of the suit under governing law", and a "genuine issue" exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "A party opposing a motion for summary judgment must have had the opportunity to discover information that is essential to his opposition to the motion."  *Sutera v. Schering Corp.*, 73 F.3d 13, 18 (2d Cir. 1995); *see* Fed. R. Civ. P. 56(d).

Plaintiffs bear the burden of establishing a genuine issue of fact with respect to each of the six elements of their claims, all ultimately arising under Section 10(b) of the Exchange Act: "(1) a material misrepresentation or omission; (2) scienter, *i.e.,* a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public

securities markets [] as transaction causation; (5) economic loss; and (6) loss causation, *i.e.,* a causal connection between the material misrepresentation and the loss." *Lapin v. Goldman Sachs & Co.,* 254 F.R.D. 168, 180-81 (S.D.N.Y. 2008). A failure to establish any of the elements of a securities fraud claim will result in dismissal of the case. *See Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 172 (2d Cir. 2005). Plaintiff has not met this burden so as to overcome Defendants' motion for summary judgment, much less to sustain his own burden of establishing entitlement to summary judgment.

## ARGUMENT

Plaintiff's Motion should be denied. First, it is well-established that a plaintiff must prove both loss causation and damages to prevail on securities fraud claims under Sections 10(b), 20(a), and Rule 10b-5. Here, Plaintiff cannot prove these elements through any admissible evidence. Plaintiff's Motion improperly relies on expert testimony that was never disclosed during discovery, misapplies the Court's class certification ruling as if it resolved merits issues, presents a fundamentally flawed loss causation analysis that ignores the Court's prior limitations on actionable claims, and fails to disentangle the impact of alleged fraud from other market factors affecting Kandi's stock price. Further, material factual disputes exist regarding falsity and scienter. Without having established these essential elements, Plaintiff's Section 10(b) claims necessarily fail, as do their derivative Section 20(a) control person claims which cannot exist absent a primary violation.

## I.    PLAINTIFF FAILS TO DEMONSTRATE LOSS CAUSATION AND DAMAGES.

Plaintiff's Motion is procedurally unsound and wholly lacks merit because it attempts to rely on facts that are inherently in dispute. In violation of Rule 56, which requires the absence of any genuine issue of material fact, Plaintiff's Statement of Undisputed Facts is built entirely on suppositions from an expert report that Defendants only saw for the first time when this motion

8

was filed. Even if this Court were to credit the Werner Declaration, the evidence presented suffers from multiple fatal defects. Plaintiff improperly relies on expert testimony never disclosed during discovery, advances a legally flawed theory of loss causation even if that testimony, mischaracterizes personnel changes within Kandi's management as evidence of fraud, and fails to reliably connect stock price movements to the alleged misrepresentations. These evidentiary and analytical shortcomings preclude summary judgment in Plaintiff's favor.

### A.    Plaintiff Cannot Rely On The Belated Werner Declaration.

In moving for summary judgment, Plaintiff relies on expert evidence that was not disclosed during the discovery period. The foundation of Plaintiff's Motion is the Werner Declaration on loss causation and damages, which appears for the first time in connection with Plaintiff's summary judgment papers. (*See* ECF No. 126-1, 126-2.) Plaintiff's submission violates both the Federal Rules of Civil Procedure and this Court's scheduling order, necessitating exclusion of the expert report and denial of Plaintiff's Motion.

Rule 26 of the Federal Rules of Civil Procedure ("Rule 26") requires a party seeking to use an expert witness to disclose the expert's identity. Fed. R. Civ. P. 26(a)(2)(A). If that expert has been "retained or specially employed to provide expert testimony in the case," the party's disclosure "must be accompanied by a written report" that contains, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). The purpose of Rule 26 is to prevent the ambushing an opposing party with new evidence. *See Kelly v. Beliv LLC,* 21-cv-8134 (LJL), 2024 WL 1076217, at *5 (S.D.N.Y Mar. 12, 2024); *DeLuca v. Bank of Tokyo–Mitsubishi UFJ, Ltd.*, No. 06 Civ. 5474(JGK), 2008 WL 857492, at *12 (S.D.N.Y. Mar. 29, 2008).

Pursuant to Federal Rule of Civil Procedure 37 ("Rule 37"), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use

that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *See In re Kreta Shipping, S.A.,* 181 F.R.D. 273, 275 (S.D.N.Y. 1998) ("[e]xpert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1)."). Rule 37 applies at the summary judgment stage. *See NRG Power Mktg., Inc. v. Detroit Edison Co.*, 06 Civ. 4097 (SCR), 2009 WL 10739541, at *2 (S.D.N.Y. Feb. 6, 2009). "A district court has wide discretion to impose sanctions, including severe sanctions" under Rule 37. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006).

In determining whether to preclude evidence, courts look to four factors: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (citing *Outley v. City of New York*, 837 F.2d 587, 590–91 (2d Cir.1988)); *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). The Second Circuit and courts in this district have specifically rejected the practice of submitting new expert opinions at the summary judgment stage. For example, in *Franconero v. UMG Recordings, Inc.,* the Court held that where an expert affidavit submitted in opposition to a summary judgment motion contained an opinion not included in the expert's earlier report, and there was no justification for the omissions, the new opinion was not admissible by means of the expert's later affidavit. 542 Fed. Appx. 14, 16-17 (2d Cir. 2013). Similarly, in *Caruso v. Bon Secours Charity Health System, Inc.,* the Second Circuit affirmed the district court's exclusion of expert testimony introduced for the first time in opposition to the Defendants' motion for summary judgment, noting that experts "recruited to provide expert opinion testimony" are "required to

10

produce a report under Rule 26(a)(2)(B)." 703 Fed. Appx. 31, 33-34 (2d Cir. 2017). It is clear that "[c]ourts will not admit supplemental expert evidence following the close of discovery when it expound[s] a wholly new and complex approach designed to fill a significant and logical gap in the first report, as doing so would eviscerate the purpose of the expert disclosure rules." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.,* 769 F.Supp.2d 269, 279 (S.D.N.Y. 2011) (internal quotation marks omitted); *see Advanced Analytics, Inc. v. Citigroup Cap. Mkts., Inc.,* 301 F.R.D. 31, 39-42 (S.D.N.Y. 2014) (excluding expert report designed to fill a significant and logical gap in past reports where report was served more than a year after initial disclosures were due and was based on materials the plaintiff had in its possession for years); *Silivanch v. Celebrity Cruises, Inc.,* 171 F.Supp.2d 241, 256 (S.D.N.Y. 2001) (precluding expert testimony that was not disclosed during expert discovery).

Taking the *Softel* factors in turn, here, Plaintiff propounded Dr. Werner at the class certification stage over a year ago and withheld his expert report on loss causation and damages until filing for summary judgment. Plaintiff has offered zero justification for this tactical delay. Fact discovery closed on September 15, 2023, followed by the completion of Defendants' expert discovery on March 7, 2024, and Plaintiff's expert discovery on May 16, 2024. (SUMF ¶¶ 41-43.) The parties jointly requested this discovery schedule and Plaintiff even agreed that that "expert discovery [would] run concurrently with the briefing on class certification." (ECF No. 99.) Incredibly, Plaintiff completely ignores the fact that he missed this Court's ordered deadline for expert discovery. There is no justification for Plaintiff's failure to timely disclose. *See Frydman v. Verschleiser*, 14–cv–5903 (JGK)(JLC), 2017 WL 1155919, at *3 (S.D.N.Y. Mar. 27, 2017) (stating that "plaintiffs were perfectly capable of engaging their experts long before [the expert disclosure deadline], and of making their expert disclosures by that deadline").

11

The second *Softel* factor also weighs in favor of precluding the Werner Declaration. A party's late filing of an expert report that is critical to a party's case "only serves to underscore the inexcusable quality of its delayed submission." *Point Prods. A.G. v. Sony Music Ent., Inc.*, 2004 WL 345551, at *11 (S.D.N.Y. Feb. 20, 2004). Plaintiff concedes in his Motion that the question of loss causation and damages, requiring expert empirical analysis, are vital to prove Plaintiff's claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5. (*See* ECF No. 125, Plaintiff's Motion at 13-18.) Plaintiff's failure to gather evidence to substantiate his claims, followed by his neglect to disclose that evidence in advance of the expert disclosure deadline, cannot be justified.

Similarly, the third and fourth factors support preclusion. Throughout his deposition, Dr. Werner explicitly stated that he was only retained to opine on market efficiency and the theoretical existence of a common damages methodology, not actual loss causation or specific damages calculations. (SUMF ¶ 38; Khalouian Decl. ¶ 3, Werner Dep. at 38:4-8 ("my opinion in this case is on market efficiency and whether or not a general damage methodology exists. I believe the question you're asking refers to loss causation and specific damages.").) Dr. Werner repeatedly emphasized that he "ha[s] not been asked to opine on loss causation and specific damages calculations," (SUMF ¶ 38; Khalouian Decl. ¶ 3, Werner Dep. at 62:20-23), and acknowledged that he had not reviewed all information necessary to reach such opinions because "discovery hasn't been completed" (SUMF ¶ 38, Khalouian Decl. ¶ 3, Werner Dep. at 64:7-9). Should the Court permit the Werner Declaration to remain or reopen discovery, Defendants would be substantially prejudiced. Defendants would have to designate a rebuttal witness, develop rebuttal evidence, conduct and defend depositions, and engage in additional motion practice, all at substantial expense. The summary judgment briefing would need to be entirely redone. *See*

12

*Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. at 41, *objections overruled*, 301 F.R.D. 47 (S.D.N.Y. 2014) ("Absent preclusion, discovery will need to be re-opened in order to provide Defendants with an opportunity to explore [an expert's] new 'revelations' that were not previously advanced, 'rendering [Defendants' summary judgment] motion, addressed in good faith to the theories and evidence that had been disclosed, an expensive waste of effort.'").  Moreover, a continuance would be inappropriate because discovery is closed and it would otherwise incentivize other counsel to violate the Federal Rules and court orders.  *See Kelly v. Beliv LLC*, 21-cv-8134 (LJL), 2024 WL 1076217, at *8.

Plaintiff's calculated disregard for procedural rules and this Court's directives has prejudiced Defendants by introducing previously undisclosed evidence on the critical elements of loss causation and damages without any opportunity for examination.  Plaintiff's last-minute expansion of Dr. Werner's opinions on topics that he explicitly disavowed during his deposition cannot be permitted.  The untimely disclosure cannot be deemed substantially justified or harmless, as it has deprived Defendants of their fundamental right to depose Dr. Werner in order to more fully respond to these undisclosed opinions.  Accordingly, Plaintiff's Motion must be denied as relying on inadmissible evidence that should be excluded from the record.

**B.     Plaintiff's Theory Of Loss Causation And Damages Fail As A Matter Of Law Regardless Of The Werner Declaration's Admissibility.**

Plaintiff's argument regarding loss causation and damages merely recites the Werner Declaration without independent analysis.  (*See* ECF No. 125, Plaintiff's Motion at 14-18.)  Even if this Court were to consider the Werner Declaration, which it should not, the analysis fails to establish that the Restatement, much less the portions of the Restatement that survived the Second Dismissal Order, had any actual impact on Kandi's stock price.  Because Plaintiff cannot

13

demonstrate both economic loss and a causal connection between the alleged misrepresentation and that loss, their claims fail on the essential elements of loss causation and damages.

Without evidence of both actual economic loss and a causal connection between the alleged misrepresentation and that loss, Plaintiff's claims must fail as a matter of law. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005). Plaintiff bears the burden of demonstrating loss causation through one of two established methods: (1) demonstrating the market reacted negatively to a corrective disclosure, or (2) showing that the materialization of risks concealed by the alleged misrepresentations or omissions proximately caused Plaintiff's loss. *See In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511-12 (2d Cir. 2010); *Lentell v. Merrill Lynch & Co., Inc.,* 396 F.3d at 175. The present case does not involve the materialization of undisclosed risks. Therefore, Plaintiff is required to establish that the market reacted negatively to a corrective disclosure. "A corrective disclosure is traditionally an admission by the company that one or more of its previous statements were false or misleading followed by a corrected, truthful and complete version of those statements." *In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 363 (S.D.N.Y. 2009).

Here, Plaintiff identifies two purported corrective disclosures (*See* ECF No. 125, Plaintiff's Motion at 14-15) but fails to establish either one's validity or market impact. First, the November 14, 2016 transition of Mr. Wang Cheng from CFO to CSO position neither qualifies as a corrective disclosure nor demonstrably affected Kandi's stock price. Second, Plaintiff provides no evidence that the March 13, 2017 Restatement had any measurable impact on the Company's stock value. Without establishing these critical causal connections, Plaintiff has failed to prove both loss causation and damages, rendering summary judgment appropriate.

14

### 1.    Mr. Wang's Transition from Kandi's Chief Financial Officer to Chief Strategy Officer Is Not Connected To The Alleged Fraud.

Plaintiff's attempt to establish loss causation based on Mr. Wang's change in position from CFO to CSO fails as a matter of law.  The evidence presented through the Werner Declaration relies on mischaracterized academic literature, ignores critical facts, and fails to consider alternative explanations for any stock price movement.

The announcement of Mr. Wang's transition from CFO to CSO does not constitute a corrective disclosure.  A director or officer's resignation only serves as a corrective disclosure when it explicitly reveals information about the alleged fraud.  *See In re Omnicom Grp., Inc. Sec. Litig.*, 541 F.Supp.2d 546, 553 (S.D.N.Y) (citing *In re Buca Inc. Sec. Litig.*, No. 05 Civ. 1762(DWF) (AJB), 2006 WL 3030886, at *9 (D. Minn. Oct. 16, 2006) (finding that a press release announcing a director's resignation did not constitute a corrective disclosure because it "mentioned no investigation or accounting issues and thus disclosed nothing of the alleged fraud")).  Here, Mr. Wang's role change mentioned no investigation, accounting issues, or any other revelations about the alleged fraud.

Even if Mr. Wang's change in position could somehow qualify as a corrective disclosure, Plaintiff has not shown that the market interpreted this internal position change as revealing fraud. Significantly, Mr. Wang did not resign or depart from Kandi, but rather assumed a new executive role within the same company.  This position change bears no resemblance to the "Forced termination," "Resigned or retired," or "Death" categories analyzed in the very academic literature Dr. Werner cites.  (Supp. Khalouian Decl. Ex. A, Tabak Decl. ¶ 17.)  As Dr. Tabak points out, the academic source cited by Dr. Werner does not even include a category for internal position changes, suggesting such transitions are not considered signals of fraud.  (*See* Supp. Khalouian Decl. Ex. A, Tabak Decl. ¶ 17.)  Moreover, the Werner Declaration fails to identify any

15

contemporaneous news stories or analyst reports connecting Mr. Wang's transition to financial improprieties, much less to the specific allegations concerning the Restatement that survived the Court's Second Dismissal Order.  (*See* Supp. Khalouian Decl. Ex. A, Tabak Decl. ¶ 18.)  Finally, Dr. Werner neglects to consider obvious alternative explanations for any stock price movement, such as market concerns about Mr. Wang's strategic direction or effectiveness in his new role. (*See* Supp. Khalouian Decl. Ex. A, Tabak Decl. ¶ 19.)

Without evidence that the market actually interpreted this internal position change as revealing fraud, rather than reacting to legitimate business considerations, Plaintiff cannot establish the required causal connection between the announcement and any subsequent stock price decline.  Thus, Plaintiff has failed to meet its burden of producing admissible evidence sufficient to create a genuine issue of material fact regarding loss causation for this event.

### 2. The Restatement's Announcement Does Not Definitively Show Impact On Kandi's Stock Price.

Plaintiff has failed to establish the critical elements of loss causation and actual damages, relying instead on the fundamentally flawed Werner Declaration that falls far from short of admissible expert evidence.  Plaintiff bears the burden of demonstrating not only economic loss connected to their Kandi stock purchase but also that such loss was proximately caused by Defendants' alleged fraud.  To establish loss causation, Plaintiff must prove "that the act or omission of the defendant alleged to violate [the securities laws] caused the loss for which the plaintiff seeks to recover damages."  15 U.S.C. § 78u–4(b)(4).  The Supreme Court recognized in *Dura*, 544 U.S. at 342–43, that the "logical link between [an] inflated share purchase price" and subsequent economic loss is not automatically strong, as price fluctuations may reflect numerous factors unrelated to alleged misrepresentations.  Plaintiff, in reliance on the Werner Declaration, fails to disentangle these factors, offering no scientifically reliable method to distinguish the

16

alleged fraud's impact from the "tangle of [other] factors" affecting Kandi's stock price. *Dura*, 544 U.S. at 343; *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009) (holding that expert testimony that fails to separate out the impact of industry-wide or other non-fraud factors in insufficient to establish loss causation); *In re Bear Stearns Companies, Inc. Sec.*, 09 Civ. 8161 (RWS), 2016 WL 4098385, at *10 (S.D.N.Y. July 25, 2016) (rejecting methodology that "fail[ed] to adequately account for the impact of non-fraud related information and effects" and noting that "[a]n event study that fails to disaggregate the effects of [those] confounding factors must be excluded"); *DeMarco v. Lehman Bros., Inc.*, 222 F.R.D. 243, 249 (S.D.N.Y. 2004) (excluding expert testimony that did "not distinguish between the effect on the market price of . . . confounding news").

Initially, Plaintiff inexplicably fails to account for the Court's Second Dismissal Order that explicitly limited claims to "alleged misstatements about related-party transactions" and other statements "only to the extent the alleged misstatements pertain to related party-transactions." (ECF No. 64, Order at 12,18.)  In particular, the Court held:

> "Plaintiff's opposition to Defendants' motion suggests that other inaccuracies identified in Kandi's restatement of financial results are actionable misstatements. In restating its financials, Kandi acknowledged that it had erred in *'classification of notes receivable and notes payable'* and *'accounting for the Company's equity investment in the JV Company.'* But the SAC alleges only that those issues were identified in the restatement and does not allege any of the specific, false statements about those accounting issues that the restatement addressed. That is insufficient to state a claim under Rule 9(b)." (ECF No. 64, Order at 12.)

Plaintiff's oversight goes to the heart of the loss causation analysis.  As a result, the Werner Declaration makes no effort to separate out the effects of the actionable and non-actionable parts of the Restatement Announcement, as required by *Dura*.  This failure alone renders the Werner

17

Declaration incapable of reliably presenting any opinion on loss causation or damages for the March 13, 2017 announcement.

Further, and as explained by Dr. Tabak, Plaintiff's methodological deficiencies extend to its inconsistent application of event windows. (*See* Supp. Khalouian Decl. Ex. A, Tabak Decl. ¶ 5, 29, 38-42.) Plaintiff relies on Dr. Werner's application of a one-day event window for the November 14, 2016 announcement but a three-day window for the March 13, 2017 Restatement Announcement. (*See* ECF No. 125, Plaintiff's Motion at 17.) This inconsistency is not merely arbitrary; it appears designed to produce a specific result. As raised by Dr. Tabak, had Dr. Werner applied a three-day window to the November 14, 2016 news, he would have found that the cumulative price movement was not statistically significant.[2] (*See* Supp. Khalouian Decl. Ex. A, Tabak Decl. 41.)

Further undermining the Plaintiff's analysis on loss causation is its inclusion of Kandi's stock-price decline on March 15, 2017, despite the absence of any alleged corrective disclosure on this date. (*See* ECF No. 125, Plaintiff's Motion at 17.) This directly contradicts Dr. Werner's own prior statement in his Class Certification Declaration that "the appropriate test date for measuring Kandi's stock price reaction to [the March 13, 2017] information would be the next trading day, March 14, 2017." (ECF No. 96-1, Class Cert. Declaration ¶ 55.) The Werner Declaration provides no explanation for this inconsistency, nor does it present any evidence, such as news stories or analyst reports, demonstrating that Kandi's stock price movement on March 15, 2017 was tied to the Restatement Announcement. (*See* Supp. Khalouian Decl. Ex. A, Tabak Decl. ¶ 29-32.)

---

[2] The Werner Declaration supports its use of a multi-day window, in part, through relying on an authority that was authored by Dr. Tabak. (Werner Declaration ¶61 ("In securities fraud cases, many experts have adopted the convention of looking at one-day, two-day, or five-day periods following an announcement.").) The Tabak Declaration explains that Dr. Werner misconstrues the application of this principle.

Similarly problematic is the Werner Declaration's analysis of March 16, 2017, which fails to account for Kandi's earnings announcement on this date as potential confounding news. (*See* Supp. Khalouian Decl. Ex. A, Tabak Decl. ¶ 36.) This omission is particularly striking given that in his Class Certification Declaration, Dr. Werner explicitly recognized that earnings announcements could cause potentially abnormal returns. (*See* Supp. Khalouian Decl. Ex. A, Tabak Decl. ¶ 36.) Moreover, neither this price decline nor the associated news event (Kandi's 2016 10-K) is included in the Second Amended Complaint's "Loss Causation" section and is therefore not properly considered in the Werner Declaration's loss causation analysis.

Finally, Dr. Tabak explains that the Werner Declaration also employs an incorrect constant-dollar inflation approach, erroneously claiming that "[t]hroughout the Class Period, the price of Kandi stock was falling." (*See* Supp. Khalouian Decl. Ex. A, Tabak Decl. ¶ 43-44; Werner Declaration ¶ 91.) Contrary to this assertion, Kandi's stock price both rose and fell during the Class Period, with 39 days where the stock price was lower than immediately preceding the March 13, 2017 Restatement. (*See* Supp. Khalouian Decl. Ex. A, Tabak Decl. ¶ 45.) This error leads to a failure to properly analyze inflation over time, resulting in overstated inflation and damages. (*See* Supp. Khalouian Decl. Ex. A, Tabak Decl. ¶ 46-47.)

Without reliable expert evidence establishing loss causation or damages, Plaintiff's claims necessarily fail, as "[p]roving actual loss is crucial to a plaintiff's case." *Gordon Partners v. Blumenthal*, No. 02 Civ. 7377(LAK)(AJP), 2007 WL 431864, at *13 (S.D.N.Y. Feb. 9, 2007), *adopting report and recommendation*, No. 02 Civ. 7377(LAK), 2007 WL 1438753 (S.D.N.Y. May 16, 2007), *aff'd*, 293 Fed. Appx. 815 (2d Cir. 2008). The Werner Declaration's methodological deficiencies, including its failure to conduct a proper event study, reliance on cherry-picked data points, and inability to isolate confounding factors, render it inadmissible. Plaintiff has not thus

19

offered any sufficient admissible evidence to establish either requirement, both of which are essential elements of Sections 10(b) and 20(a) claims that Plaintiff must prove to defeat summary judgment. *Id*. at \*14 (granting summary judgment where plaintiffs presented no evidence to "show whether any loss (and if so how much) was caused by defendants' conduct as opposed to other market factors")).

## II.    PLAINTIFF'S THEORY OF RELIANCE IS FUNDAMENTALLY FLAWED.

Plaintiff's reliance on the Court's class certification ruling misunderstands the distinction between class certification standards and summary judgment requirements. (*See* ECF No. 125, Plaintiff's Motion at 11, fn. 4.)  The Court's statement that "the fraud-on-the-market theory creates a presumption of class-wide reliance, which will enable Plaintiff to establish Defendants' liability using evidence common to the class" (ECF No. 115, Class Cert. Order at 7) merely addressed the predominance requirement of Rule 23(b)(3) for class certification purposes.  This threshold showing, however, does nothing to establish the actual methodology for proving damages.  This ruling determined only that reliance could theoretically be proven on a class-wide basis, not that reliance (or any other element of securities fraud) had actually been established.

Plaintiff incorrectly conflates the Court's finding that common issues predominate with an actual determination on the merits.  At class certification, the Court was not tasked with deciding whether plaintiff had in fact established reliance or any other element of liability; only whether such elements could be proven with common evidence.  The Second Circuit has repeatedly cautioned against conflating class certification standards with merits determinations. *See, e.g., In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (class certification is not the appropriate time for a merits inquiry); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc*., 546 F.3d 196, 202 (2d Cir. 2008) (preponderance of the evidence standard applies to evidence proffered to establish Rule 23 requirements).

20

Furthermore, Plaintiff's reliance on *In re Celestica* is misplaced.  Unlike here, the *Celestica* court had before it proper, timely disclosed expert evidence that remained unrebutted at the summary judgment stage.  *See In re Celestica Inc. Sec. Litig.,* No. 07 CIV. 0312 GBD, 2014 WL 4160216, at \*12 (S.D.N.Y. Aug. 20, 2014).  Here, Dr. Werner's previous report addressed only market efficiency for class certification purposes, as he confirmed during his deposition.  Despite the Court's observation that common evidence could theoretically establish liability, Plaintiff has failed to present any admissible expert evidence on the substantive elements of liability during discovery, instead attempting to improperly introduce an entirely new expert report on loss causation and damages nearly a year after discovery has closed.

### III.   THERE IS NO EVIDENCE THAT KANDI MADE A FALSE STATEMENT OR OMISSION OF MATERIAL FACT.

Plaintiff's reliance on the Restatement as dispositive evidence of falsity misconstrues the legal standard at summary judgment.  (*See* ECF No. 125, Plaintiff's Motion at 11-12.)  The mere existence of a Restatement – one involving only adjustments between related and non-related party revenues – falls short of establishing the material falsity element required for securities fraud.

Establishing the first element of material misstatement or omission requires evidence that a reasonable juror could conclude "prove[d] [defendants] made a false statement or omission of material fact."  *In re IBM Sec. Litig.*, 163 F.3d 102, 106–07 (2d Cir. 1998).  A statement is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *Basic v. Levinson*, 485 U.S. 224, 231–32 (1988).

As Plaintiff concedes, the Restatement merely involved "adjustments" and "corrected distribution" between transaction categories.  (ECF No. 125, Plaintiff's Motion at 12.)  Crucially, these accounting reclassifications had no impact whatsoever on Kandi's overall corporate income.

The Second Circuit has explicitly held that "accounting irregularities, standing alone, are insufficient to state a securities fraud claim." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). Multiple courts within this Circuit have similarly rejected securities fraud claims predicated on modest restatements. *See e.g., In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F.Supp.3d 278, 295 (S.D.N.Y. 2014) (finding restatements of modest impact insufficient to establish falsity); *Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco, Inc.*, No. 09 Civ. 6966(JGK), 2011 WL 1198712, at *22 (S.D.N.Y. Mar. 30, 2011) (holding that GAAP violations do not establish scienter "especially [] in light of the modest size of the restatement").

Other than conclusively relying on the Restatement itself, the only evidence cited by Plaintiff fails to address the specific falsity that survived dismissal. Plaintiff points to a modification to 2015 revenues from the "JV Company and related parties". (ECF No. 125, Plaintiff's Motion at 13.) This Court limited Plaintiff's claims to statements that were false "**to the extent** they concealed transactions with the **Service Company**." (ECF No. 64, Order at 10) (emphasis added). Despite this directive, Plaintiff has produced no evidence that any statement was false specifically with respect to the Service Company. Finally, Plaintiff improperly attempts to apply the pleading-stage standard to summary judgment.[3] While allegations might create an inference of falsity sufficient to survive a motion to dismiss, summary judgment demands actual evidence establishing material falsity. Plaintiff has offered none.

## IV. PLAINTIFF DOES NOT DEMONSTRATE CONSCIOUS MISBEHAVIOR OR RECKLESSNESS SUFFICIENT TO PROVE SCIENTER.

Plaintiff's Motion for summary judgment on the element of scienter must be denied because Plaintiff has failed to adduce evidence establishing that Defendants acted with the

---

[3] This confusion of legal standards permeates Plaintiff's entire motion, repeatedly substituting pleading-stage inferences for the required summary judgment evidence.

22

requisite state of mind.  The record before this Court fails to come close to proving that Kandi had an intent to deceive, manipulate, or defraud through concealing related-party transactions.

Scienter is a mental state "embracing intent to deceive, manipulate, or defraud." *Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 511–12 (S.D.N.Y. 2018).  To survive summary judgment on the element of scienter, a plaintiff must adduce evidence tending to show that the challenged statement or omission was made either with knowledge or with "willful, deliberate, or reckless disregard for the truth that is the equivalent of knowledge." *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1305 (2d Cir. 1973).  Evidence tending to show only "a heightened form of negligence" fails to establish scienter in a manner sufficient to survive a Rule 56 motion.  *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 213 (2d Cir. 2020).  Recklessness or reckless conduct is conduct that, beyond just unreasonable, is "highly unreasonable, and amounts to 'an extreme departure from the standards of ordinary care.'" *City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Hldngs. Corp.*, 19-CV-10825 (JPO), 2021 WL 212337, at *8 (S.D.N.Y. Jan. 21, 2021) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).

Plaintiff's purported evidence of scienter consists of six documents that, individually and collectively, fail to establish that Defendants knowingly or recklessly made false statements. Plaintiff relies on two Audit Committee meeting minutes and an investor presentation, which merely establish that Kandi knew the Service Company existed; a fact that has never been in dispute.  This evidence neither suggest nor establishes as a matter of law, that Defendants understood they had a duty to disclose certain information about the Service Company and intentionally failed to do so. (*See* Deposition of Xiaoming Hu at 69:6-9 ("I think the ownership interest in [the Service Company] was discussed at our board meetings … [t]his is no secret.") The mere awareness that a related party exists does not constitute evidence of an intent to deceive

23

investors about the nature of transactions with that party. *See Valdes v. Kandi Technologies Group, Inc*., 20-cv-6042 (LDH) (AYS), 2024 WL 1348697, at *7 (E.D.N.Y. Mar. 29, 2024) (quoting *China Mobile Games & Ent. Grp., Ltd Sec. Litig*, 4-CV-4471 (KMW), 2016 WL 922711, at *8 (S.D.N.Y. Mar. 7, 2016)).  Contrary to Plaintiff's characterization, the email from Mr. Henry Yu regarding Kandi's change of auditors in no way connects Kandi's decision to change auditors with the specific statements about related parties in Kandi's financial statements. (*See* ECF No. 125, Plaintiff's Motion at 20-21.)  The email states that Kandi sought to retain a "very experienced and high-caliber CPA firm" even though their "current auditor... ha[d] done a good job."  (KANDI-SDNY_00006153.)  Mr. Yu's testimony confirmed that the transition was motivated by a desire for "a bigger CPA firm [with] more experience" to implement improvements of financial reporting, not because Defendants were "aware of internal control issues".  (Deposition of Henry Yu at 57:22-28:8; ECF No. 125, Plaintiff's Motion at 20.)  Similarly, the March 22, 2016 email to the Audit Committee acknowledging that Service Company transactions would be would be treated as related-party transactions demonstrates only that the Company addressed the matter upon discovery, rather than evidencing any prior wrongdoing. (*See* KANDI-SDNY_00063340; ECF No. 125, Plaintiff's Motion at 20.)  Plaintiffs have failed to present evidence meeting their burden on summary judgment to establish that Defendants were aware of any requirement to disclose the related party transactions, let alone that Defendants intentionally concealed them.

## V.    PLAINTIFF'S CONTROL PERSON LIABILITY CLAIMS UNDER SECTION 20(a) FAIL.

Plaintiff's Motion on their Section 20(a) claims must be denied as Plaintiff has failed to establish a primary violation under Section 10(b).  The statutory language of Section 20(a) expressly limits control person liability "to the same extent as" the controlled entity that committed the underlying violation.  15 U.S.C. § 78t(a).  Without proof of a primary violation, no control

person liability can exist.  This prerequisite for Section 20(a) liability is established in this Circuit. *See Lentell v. Merrill Lynch & Co.*, 396 at 177-78 (denying Section 20(a) claims where plaintiffs failed to establish a primary violation); *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1472-73 (2d Cir. 1996) (requiring a primary violation as a predicate for control person liability); *In re Vivendi Universal, S.A. Sec. Litig.,* 765 F. Supp. 2d 512, 545 (S.D.N.Y. 2011) (noting that Section 20(a) claims are "necessarily predicated on a primary violation").  As demonstrated throughout this opposition, Plaintiff has failed to establish the requisite elements of a Section 10(b) violation through admissible evidence. Without this foundation, the Section 20(a) claims against the Individual Defendants have no legal basis.  Therefore, the Court should deny Plaintiff's Motion for Summary Judgment on the Section 20(a) claims.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Summary Judgment.

Dated: New York, New York          Respectfully submitted,
      March 28, 2025

         */s/ Richard J.L. Lomuscio*
         Richard J.L. Lomuscio
         Nicole Khalouian
         **STINSON LLP**
         100 Wall Street, Suite 201
         New York, New York 10005
         Phone: 646.883.7675
         richard.lomuscio@stinson.com
         nicole.khalouian@stinson.com

         *Attorneys for Defendants Kandi Technologies Group, Inc. et. al.*

## CERTIFICATE OF COMPLIANCE

I, Richard J.L. Lomuscio, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c), that the foregoing Memorandum of Law was prepared using Microsoft Word, contains 7,641 words in accordance with Local Rule 7.1(c), and does not exceed 25 pages as required by Rule 4c.ii. of Judge Ho's Individual Rules and Practices in Civil Cases.

Dated: New York, NY
        March 28, 2025

*/s/ Richard J.L. Lomuscio*

26