# EXHIBIT A

**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr>
<td>
SRINIVASAN VENKATARAMAN,<br/>
Individually, and On Behalf of All Others<br/>
Similarly Situated,<br/><br/>
Plaintiff, <br/>
-against- <br/>
KANDI TECHNOLOGIES GROUP, INC.,<br/>
XIAOMING HU, CHENG WANG, LIMING<br/>
CHEN, JERRY LEWIN and HENRY YU,<br/><br/>
Defendants.
</td>
<td>
Civil Action No. 1:20-cv-08082-DEH
</td>
</tr>
</table>

# DECLARATION OF DAVID I. TABAK, PH.D.

## I.    SCOPE OF ANALYSIS AND SUMMARY OF FINDINGS

1.    This declaration concerns a securities action brought on behalf of purchasers of the stock of Kandi Technologies Group, Inc. ("Kandi") for a Class Period from August 10, 2015 through March 13, 2017.[1]  On February 13, 2025, the parties filed various motions, and Plaintiffs included a declaration by Adam Werner on loss causation and damages ("Werner Declaration") as part of their filings.  I have been asked by counsel for Defendants to review the Werner Declaration and to determine whether it lays out

---

[1] See Opinion and Order dated September 28, 2024 ("Class Cert Order"), p. 11, for the start date of the Class Period and Opinion and Order dated September 13, 2022 ("MTD Order"), p. 4, for the end date of the Class Period.

reliable analyses for assessing loss causation and for quantifying damages, if any, in this matter.  My assessment is limited in scope and should not be construed as a response to every claim made in the Werner Declaration.

2.    As discussed below, I find that the Werner Declaration's analyses are fatally flawed and cannot demonstrate loss causation or quantify damages.  The Werner Declaration purports to examine two corrective disclosures.

3.    For the first alleged corrective disclosure, the November 14, 2016 transition of Mr. Wang Cheng from CFO to Chief Strategy Officer of Kandi, the Werner Declaration's support for loss causation is that one academic article "states that management *departures* are recognized 'trigger events' that signal *potential* problems relating to financial misrepresentations"[2] and that one opinion piece in a news publication "observe[s] that unexpected management *departures* signal *potential* fraud concealed at a company."[3]  Even if a "signal" of "potential" fraud were generally sufficient to find loss causation, the Werner Declaration fails to account for the fact that Mr. Wang did not "depart[]" from management but assumed a new role within management at Kandi.  Dr. Werner also provides no evidence from any news source or analyst report that any market participant tied Mr. Wang's change of management position to potential financial misrepresentations.

4.    The second alleged corrective disclosure is a March 13, 2017 statement by Kandi that it would restate certain financial statements.[4]  The Werner Declaration's quotation

---

[2] Werner Declaration, ¶53. Emphasis added.

[3] Werner Declaration, ¶54. Emphasis added.

[4] The Werner Declaration also includes the March 16, 2017 Form 10-K as a corrective event even though this statement is not pled in the Loss Causation section of the Second Amended Complaint dated December 3, 2021 (¶¶99-105).  I take no position on the legal question of whether the Complaint can effectively be overridden or amended by the Werner Declaration and my analysis of the March 16, 2017 restatement in response to the Werner Declaration should not be taken as implying anything one way or the other about the legal appropriateness of a damages analysis that does not correspond to the operative complaint.

from this statement begins, "The Restatements will include separate audited financial statements for *the Company's equity investment in the JV Company*, corrections to the *classification of notes receivable and notes payable* in the Company's statements of cash flow, … ."[5] The material that I highlighted in this quote has been dismissed from the case. See MTD Order, p. 12 (emphases added): "Plaintiff's opposition to Defendants' motion suggests that other inaccuracies identified in Kandi's restatement of financial results are actionable misstatements. In restating its financials, Kandi acknowledged that it had erred in *'classification of notes receivable and notes payable'* and *'accounting for the Company's equity investment in the JV Company.'* But the SAC alleges only that those issues were identified in the restatement and does not allege any of the specific, false statements about those accounting issues that the restatement addressed. That is insufficient to state a claim under Rule 9(b)." Despite this, the Werner Declaration makes no effort to account for the dismissed portions of the restatement.

5.     Next, the Werner Declaration quotes from one of my publications as an authority on the use of event windows but then proceeds in a manner directly contrary to the quotation it uses. This deviation from accepted practice means that at least one of the four days of price declines for which the Werner Declaration finds loss causation and damages is improperly included in its analyses.

6.     Finally, the Werner Declaration assumes that inflation would be a constant value during the Class Period.[6] There are (at least) two reasons why this is erroneous. *First*, the Werner Declaration discusses the information allegedly revealed in the March 2017 disclosures and argues that "the price decline in response to such a disclosure would be higher"[7] earlier when the stock price was higher, ignoring that there were 39 days in the Class Period where Kandi's stock price was lower than it was immediately before the

---

[5] Werner Declaration, ¶41. Emphasis added.

[6] Werner Declaration, ¶91.

[7] Werner Declaration, ¶91.

March 2017 disclosures.  Following the logic of the Werner Declaration, on those days the inflation would have to be lower than that listed in the Werner Declaration.  *Second*, the assumption that inflation is unchanging over the Class Period is inconsistent with the changing quantities of related-party transactions across the financial reporting periods.

7.    These findings are discussed in more detail in this declaration.

## II.    QUALIFICATIONS AND REMUNERATION

8.    I received Bachelor's degrees in Physics and in Economics from the Massachusetts Institute of Technology and a Master's degree and a Ph.D. in Economics from Harvard University.  I have appeared as an expert in federal district courts; state trial courts; bankruptcy court; and in arbitration forums, including the National Association of Securities Dealers, the International Chamber of Commerce International Court of Arbitration, and the American Arbitration Association.  I have published in my fields of expertise on subjects such as market efficiency, loss causation, statistics, and the analysis of stock price movements.

9.    National Economic Research Associates ("NERA") was established in 1961 and now employs approximately 500 people in over twenty offices worldwide.  NERA provides consulting for economic matters to parties for their internal use, to parties in litigation, and to governmental and regulatory authorities.  I have worked at NERA for over twenty years and am a senior managing director in NERA's securities and finance practice.  My work entails providing analyses for parties in litigation and consulting for parties in non-litigation settings.  I have served as a speaker at events providing CLE credits for attorneys and at academic conferences on areas related to securities litigation. I have provided reports and/or testimony for plaintiffs and defendants in numerous securities class actions.

10.    My curriculum vitae, which sets forth in further detail my publications and prior testimony experience, is attached to this declaration as Exhibit 1.

11.    NERA is being compensated on a non-contingent basis for out-of-pocket costs and at our usual rates for time.  My billing rate is $1,250 per hour.  I have been assisted by a number of individuals at NERA working at my direction who are billing at their standard rates.

### III.    MATERIALS CONSIDERED

12.    Materials considered for the purposes of this declaration are listed in Exhibit 2.

### IV.    THE WERNER DECLARATION DOES NOT ACCOUNT FOR THE ALLEGATIONS DISMISSED IN THE MTD ORDER

13.    Before turning to each of the corrective-disclosure dates, it is worth noting that in *none* of its analyses does the Werner Declaration mention, much less even attempt to account for, the allegations that have been dismissed from this case.

14.    In particular, the Werner Declaration fails to note that the MTD Order explicitly dismissed allegations related to some of these areas and further limited claims to "alleged misstatements about related-party transactions" and other statements "only to the extent the alleged misstatements pertain to related party-transactions."[8]  The MTD Order further states on p. 12 (emphases added): "Plaintiff's opposition to Defendants' motion suggests that other inaccuracies identified in Kandi's restatement of financial results are actionable misstatements. In restating its financials, Kandi acknowledged that it had erred in *'classification of notes receivable and notes payable'* and *'accounting for the Company's equity investment in the JV Company.'* But the SAC alleges only that those issues were identified in the restatement and does not allege any of the specific, false statements about those accounting issues that the restatement addressed. That is insufficient to state a claim under Rule 9(b)."

---

[8] MTD Order, p. 12 on the explicit dismissal of certain claims and p. 18 on the two quotations.

15.    As discussed below in more detail, the Werner Declaration's failure to even consider this ruling affects *all* of its loss-causation analyses, rendering them all fatally flawed.

### V.    THE WERNER DECLARATION DOES NOT DEMONSTRATE LOSS CAUSATION FOR THE NOVEMBER 14, 2016 ANNOUNCEMENT OF MR. WANG'S CHANGE OF POSITION AT KANDI

16.    The analysis of loss causation for the November 14, 2016 announcement that Mr. Wang would move from being the CFO to the Chief Strategy Officer is found in ¶¶53-54 of the Werner Declaration.[9]  The Werner Declaration cites two sources of support for its finding of loss causation.  First, it argues that an academic article "states that management departures are recognized 'trigger events' that *signal potential* problems relating to financial misrepresentations."[10]  Second, it claims that a *Wall Street Journal*

---

[9] Here, I discuss only the Werner Declaration's attempt to tie Mr. Wang's change in position to the allegations in this case.  I will turn to his empirical analysis of this date in Section VIII of this declaration.

[10] Werner Declaration, ¶53. Emphasis added.  Dr. Werner also mischaracterizes the academic article, which looks at SEC and DOJ enforcement actions and finds the "trigger event" for each investigation.  If one expands the quotation from the article found in the Werner Declaration to include the prior sentence in the article, that quotation would begin: "Enforcement actions often follow a conspicuous announcement related to the firm that draws the SEC's scrutiny. These trigger events …"  That is, the article is discussing "trigger events" for government enforcement actions rather than market reactions.

The flaw in Dr. Werner's interpretation can be seen in that the last entry in the quote from the article in ¶53 of the Werner Declaration is "routine investigations by the SEC." While a routine investigation may uncover something that triggers an enforcement action, it is not a potential signal of financial fraud.  In fact, the academic article never "states that … 'trigger events signal' potential problems relating to financial misrepresentations[,]" as the Werner Declaration claims, nor does it use language suggesting the same.  This is, at best, Dr. Werner's gloss on the academic article.

opinion piece "observe[s] that unexpected management departures *signal potential* fraud concealed at a company."[11]

17.    The Werner Declaration never explains how signaling a *potential* for financial misrepresentations or fraud allows for a finding of loss causation.  But, even putting that aside, the "signal" of potential financial misrepresentations or fraud would be particularly weak in this case.  As noted above, Mr. Wang did not "depart[]" from Kandi.  Instead, he took on a new role, that of Chief Strategy Officer.  This would eliminate a signal that the CFO was found to be untrustworthy or to have been engaged in activities that put the company at risk.  In fact, the academic article that the Werner Declaration cites has a table listing reasons for employment termination, including "Forced termination," "Resigned or retired," and "Death."[12]  There is no listing for moving to another position at the same company, which one would expect if there was any reasonable number of resignations for that reason.[13]  Quite simply, any "signal" from Mr. Wang's change of position is not comparable to the "signal" that would be associated with the overwhelming bulk, if not all, of the resignations considered in the academic source cited by the Werner Declaration.

18.    The Werner Declaration also cites no news stories or analyst reports linking Mr. Wang's change of position to any potential financial wrongdoing, much less the specific allegations at issue in this case, meaning those that remain in the case after the MTD Order.

---

[11] Werner Declaration, ¶54. Emphasis added.

[12] Karpoff, Jonathan D., D. Scott Lee, and Gerald S. Martin, "The Consequences to Managers for Financial Misrepresentation," *Journal of Financial Economics*, 2008, p. 205, Table 5.

[13] The "Death" category accounts for 0.3% to 0.6% of observations, depending on the category (e.g., CEO or all executives) examined in the paper.  Thus, the authors were willing to break out a category that had accounted for a very small number of observations but did not create a category for changing positions within the company.

19.    Finally, the Werner Declaration fails to consider alternative explanations for any stock-price decline following the announcement of management changes at Kandi.  For example, the market may have been concerned about the direction that Mr. Wang would pursue as Kandi's Chief Strategy Officer or about his ability to be effective in that position.  Without any data from news stories or analyst reports, the Werner Declaration provides no basis for believing that some potential signal of accounting issues was actually being considered by the market, much less that that unconfirmed potential signal related to the allegations remaining in this case or that any such potential signal was the cause of any portion of Kandi's stock-price decline on November 14, 2016.  In short, the Werner Declaration does not even come close to proving loss causation for this news event.

## VI.    THE WERNER DECLARATION DOES NOT DEMONSTRATE LOSS CAUSATION FOR MARCH 14, 2017, THE FIRST TRADING DAY AFTER THE MARCH 13, 2017 RESTATEMENT ANNOUNCEMENT

20.    On March 13, 2017, after the close of trading, Kandi announced that it had found certain areas of its previously issued financial statements that required adjustment.  The Werner Declaration states that in the press release ("Restatement Announcement"), Kandi "highlighted the following areas that would be affected by the restatement"[14] and quotes the Kandi press release as follows:

> The Restatements will include separate audited financial statements for the Company's equity investment in the JV Company, corrections to the classification of notes receivable and notes payable in the Company's statements of cash flow, revisions in the Company's financial statement presentation to separately identify certain related party accounts on the face of the Balance Sheets and the Consolidated Statements of Income (Loss) and Comprehensive Income (Loss), certain amendments to Note 20 – Taxes of the Notes to the Company's Consolidated Financial

---

[14] Werner Declaration, ¶13.

Statements, the adjustment of previously recorded construction-in-progress back to prepayment in Note 16 - Construction-in-Progress of the Notes to the Company's Consolidated Financial Statements, expansions of two tables of sales to and purchases from the JV Company in Note 24 – Summarized Information of Investment in the JV Company of the Notes to the Company's Consolidated Financial Statements from two years to three years, and the removal of "unaudited" labels from certain tables in Note 20 - Taxes of the Notes to the Company's Consolidated Financial Statements.

The Company will also amend its unaudited quarterly data for the first three quarters ended December 31, 2016, as set forth in its upcoming Annual Report on Form 10-K for the year ended December 31, 2016.

21.    As previously noted, the Werner Declaration fails to even mention that the MTD Order explicitly dismissed allegations related to some of these areas and further limited claims to "alleged misstatements about related-party transactions" and other statements "only to the extent the alleged misstatements pertain to related party-transactions."[15]  In particular, the MTD Order states on p. 12 (emphases added): "Plaintiff's opposition to Defendants' motion suggests that other inaccuracies identified in Kandi's restatement of financial results are actionable misstatements. In restating its financials, Kandi acknowledged that it had erred in *'classification of notes receivable and notes payable'* and '*accounting for the Company's equity investment in the JV Company.'* But the SAC alleges only that those issues were identified in the restatement and does not allege any of the specific, false statements about those accounting issues that the restatement addressed. That is insufficient to state a claim under Rule 9(b)."

22.    Below, I reproduce the first paragraph the Kandi press release quoted in the Werner Declaration, using a *green italics* font color for any areas that appear to remain in the case and a red font color for any areas that appear to be dismissed based on my reading of the MTD Order:

---

[15] MTD Order, p. 12 on the explicit dismissal of certain claims and p. 18 on the two quotations.

The Restatements will include separate audited financial statements for the Company's equity investment in the JV Company, corrections to the classification of notes receivable and notes payable in the Company's statements of cash flow, *revisions in the Company's financial statement presentation to separately identify certain related party accounts on the face of the Balance Sheets and the Consolidated Statements of Income (Loss) and Comprehensive Income (Loss)*, certain amendments to Note 20 – Taxes of the Notes to the Company's Consolidated Financial Statements, the adjustment of previously recorded construction-in-progress back to prepayment in Note 16 - Construction-in-Progress of the Notes to the Company's Consolidated Financial Statements, expansions of two tables of sales to and purchases from the JV Company in Note 24 – Summarized Information of Investment in the JV Company of the Notes to the Company's Consolidated Financial Statements from two years to three years, and the removal of 'unaudited' labels from certain tables in Note 20 - Taxes of the Notes to the Company's Consolidated Financial Statements.

23.    The Werner Declaration has made no effort to separate out the effects of the actionable and non-actionable parts of the Restatement Announcement, whether through any financial analysis or through a review of news stories and/or analyst reports.  It is my understanding that the Second Circuit has held a loss-causation analysis should (at least attempt to) account for confounding or non-allegation-related news.[16]

24.    It may not be surprising that Dr. Werner made no attempt to account for the non-actionable portions of the Restatement Announcement, since the Werner Declaration does not list the MTD Order in its Exhibit-2, "Documents and Other Information Considered[.]"[17]  The Werner Declaration also does not list any assumptions such as that

---

[16] See *Atlantica v. Sovereign Wealth Fund Samruk-Kazyna JSC*, Second Circuit (January 18, 2022). ("Specifically, proof of loss causation requires that plaintiffs 'disaggregate' losses caused by 'disclosures of the truth behind the alleged misstatements' from losses that result from other factors, such as 'changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events.'" Citation omitted.)

[17] While Dr. Werner apparently did not consider the MTD Order for the Werner Declaration, he previously stated the following in his rebuttal declaration on class
(continued)

any of the allegations were dismissed or that all of the allegations in the Complaint are still actionable.[18]

25.    Had Dr. Werner attempted to account for the dismissed allegations he may have recognized that the first two items in the paragraph he quoted were explicitly dismissed in the MTD Order.

26.    Moreover, the areas in green font in the quoted paragraph above refers to "revisions in … presentation[.]"  On its face, the discussion of this potentially actionable area appears to suggest merely changes in presentation.  In contrast, the red-font areas include "corrections," "amendments," and an "adjustment" in addition to apparently cosmetic changes such as "the removal of 'unaudited' labels."  Again, this indicates that

certification, dated April 1, 2024, ¶9: "I reviewed and considered the entirety of the Order on Motion to Dismiss. Contrary to Defendants' claims, I do not accept Defendants' representation that this Order on Motion to Dismiss limits the Class Period to excluding the period from June 10, 2015 through August 9, 2015 (inclusive). Read correctly, there is nothing inconsistent about Court's Order on Motion to Dismiss and the Plaintiff's decision to begin the Class Period on June 10, 2015."  See also Dr. Werner's deposition in the class-certification phase of this case, 58:3-59:7, in which Dr. Werner reviewed the last page of the MTD Order and agreed that certain claims were dismissed from this case.

[18] In ¶¶79-80, the Werner Declaration states, "I examined all of the Company-related news that emerged from March 13, 2017 (after the close of trading) through March 16, 2017 and assessed the valuation impact, if any, of potentially confounding information. Based on my review of the information mix, there was no other Company-specific news that would reasonably have contributed to the -17.18% cumulative residual decline from March 14-16, 2017 other than the restatement announcement after the close of trading on March 13, 2017, the Form 10-K filing on March 16, 2017 containing Kandi's restated financials for past fiscal periods, and the ramifications associated therewith. [paragraph break] I therefore conclude that the entirety of the residual decline on March 14-16, 2017 was caused by corrective disclosures. This finding demonstrates that the alleged fraud caused investor losses."

While Dr. Werner may be correct in attributing the residual price declines to the March 13 Restatement Announcement and the March 16 10-K, because he has not recognized that portions of those announcements included explicitly dismissed accounting issues as well as other accounting issues not dealing with related-party transactions (and therefore also dismissed), his conclusion that the price declines were "caused by corrective disclosures" is incorrect.

the Restatement Announcement may have suggested to the market that there was little to no economic importance of those areas that ultimately were not dismissed from this case.[19]

27.    Because the Werner Declaration has no analysis of confounding news for the March 13, 2017 announcement, it cannot reliably present any opinion on loss causation or damages for that date.[20]

## VII.    THE WERNER DECLARATION DOES NOT DEMONSTRATE LOSS CAUSATION FOR MARCH 15, 2017

28.    The Werner Declaration includes damages not just for Kandi's stock-price decline not only on March 14, 2017 but also on March 15, 2017 even though there is no alleged corrective disclosure corresponding to March 15.  The Werner Declaration argues that it

---

[19] Without a more thorough analysis, which Dr. Werner did not even begin, one cannot say whether this would hold.  However, given the wording in the Restatement Announcement, there is reason to believe that the market would have associated the portions of the restatement associated with the remaining allegations in this case to be merely presentation issues while the portions of the restatement associated with dismissed allegations could have been viewed as more financially important.

[20] It is my view that when an expert for plaintiffs cannot reliably disaggregate a price reaction to news that contains both allegation-related material and confounding news, they should accept that they cannot reliably measure inflation for that event.  When serving as an expert for plaintiffs in securities litigations, I have followed this view when quantifying damages.  See, for example, Expert Report of David I. Tabak dated March 11, 2022, ECF 355-12, in *Sjunde AP Fonden* et al. *v. General Electric Company and Jeffrey S. Bornstein*, Case No. 1:17-cv-8457-JMF in the Southern District of New York, ¶80 ("To date, I have not seen sufficient evidence to allow me to disaggregate the portion of the dividend cut that relates Plaintiffs' claims from other causes for the dividend reduction. Therefore, I conservatively attribute no inflation to that disclosure.") and ¶84 ("One of the two topics of one of the two SEC investigations related to the allegations in this matter. However, the public disclosure by GE did not provide evidence to evaluate the relative risks of the two SEC investigations nor of the two components of the SEC investigation that included issues related to deferred monetization. Thus, to be conservative, I attribute no inflation to this disclosure.").

is entitled to use a cumulative event window to capture all of the price declines (net of market and industry) over the three-day period of March 14 through March 16, 2017.

29.    I will address this argument in more detail in Section VIII of this declaration.  For now, I will preview my analysis in Section VIII by pointing out that the Werner Declaration provides no reason why it uses a three-day window for March 14-16, 2017, but only a one-day window for November 14, 2016.  As discussed in Section VIII, the Werner Declaration could have used three-day windows for both, in which case the stock-price decline in the three-day window from November 14 through November 16, 2016 would not have been statistically significant.  Alternatively, the Werner Declaration could have used one-day windows for each event day, in which case it would not have even considered March 15, 2017.  At bottom, the inclusion of Kandi's stock-price decline on March 15, 2017 rests on an inconsistent application of the event-study approach in the Werner Declaration, making its results statistically invalid.

30.    The Werner Declaration also provides no evidence, such as through news stories or analyst reports, that Kandi's stock price's failure to increase on March 15, 2017 was tied to the Restatement Announcement.[21]  It also does not account for why Kandi's trading volume on March 15, 2017 was *lower* than on March 10 and March 13, the two trading days before the post-market March 13 Restatement Announcement.[22]

31.    Finally, on November 10, 2023, Dr. Werner submitted a declaration examining market efficiency ("Werner Class-Cert Declaration") as part of the class-certification phase of this case.  In that declaration, Dr. Werner stated, "Because the March 13, 2017 event occurred after the close of trading, the appropriate test date for measuring Kandi's

---

[21] Kandi's stock price close on March 15, 2017 was the same as it was on March 14, 2017.  The Werner Declaration claims that there was a negative residual price movement because Kandi's stock price did not increase to match its prediction based on market and industry indices.

[22] In contrast, the trading volume on March 14, 2017 was higher than that of any prior trading day after January 25, 2017.

stock price reaction to this information would be the next trading day, March 14, 2017."[23] Dr. Werner has provided no explanation for why "the appropriate test date" for the Restatement Announcement is now no longer March 14, 2017, but extends to include March 15, 2017 and potentially March 16, 2017.

32.   Overall, there is no reason to include Kandi's purported residual stock-price decline on March 15, 2017 in an analysis of loss causation or damages.

## VIII.  THE WERNER DECLARATION DOES NOT DEMONSTRATE LOSS CAUSATION FOR MARCH 16, 2017

33.   Before my economic analysis of the Werner Declaration's analysis of March 16, 2017, I note that neither that price decline nor the news event associated with it (i.e., the actual restatement) is included in the Complaint's "Loss Causation" section.  Even the Werner Declaration recognizes that "Lead Plaintiff further alleges that the truth about Kandi's inability to remediate its internal control weaknesses nor its material weaknesses in its financial reporting and oversight system was first partially corrected on November 14, 2016 when Kandi announced the sudden resignation of its CFO and ***ultimately corrected via the Company's March 13, 2017 press release*** disclosing that Kandi would be restating past financial results."[24]

34.   I offer no legal opinion, but it is my experience that loss-causation and damages experts attempt to have their analyses correspond to the theory of the case.  My further analysis of the Werner Declaration's opinions regarding March 16, 2017 should not be taken to mean that I either agree or disagree with the legal propriety of Dr. Werner's

---

[23] Werner Class-Cert Declaration, ¶55.

[24] Werner Declaration, ¶9. Emphasis added. Closing footnote omitted.  In describing Plaintiffs' allegations in its summary of the case, the Werner Declaration does not have a similar discussion regarding any correction of the amounts restated (i.e., the additional information disclosed on March 16, 2017).

decision to analyze an event (i.e., the actual restatement) that is not included as a loss-causing disclosure in the Complaint.[25]

35.    The Werner Declaration's analysis of the market's reaction to the March 16, 2017 10-K suffers from the same issues as the March 13 Restatement Announcement—i.e., its failure to disaggregate the effects of the dismissed portions of the restatement from the remaining allegations.

36.    In addition, on March 16, 2017, Kandi announced its earnings for FY17 (and, effectively, for 4Q17).[26]  It is not clear how Dr. Werner can claim to have "examined all of the Company-related news that emerged from March 13, 2017 (after the close of trading) through March 16, 2017"[27] and not considered an earnings announcement to contain potential confounding news.  Notably, the Werner Declaration points out that it uses the same regression analysis to control for market and industry effects that was used in the Werner Class-Cert Declaration.[28]  In the Werner Class-Cert Declaration, Dr. Werner points out that he "used dummy variables to control for potentially abnormal returns on earnings announcement dates[.]"[29]  There is no explanation about why earnings announcements could cause potentially abnormal returns (i.e., stock-price movements) in the Werner Class-Cert Declaration but the March 16, 2017 earnings

---

[25] It is also my understanding from counsel for Defendants that Plaintiffs had not informed them of their desire to include a new corrective disclosure in their loss-causation and damages analysis prior to the February 13, 2025 filings including the Werner Declaration.

[26] "Kandi Technologies Reports Full Year 2016 Financial Results," *Kandi Technologies*, March 16, 2017, mentioning an upcoming pre-market conference call on March 16, available at http://ir.kandigroup.com/newsinfo?id=2840.  See also "Kandi Technologies Reports Full Year 2016 Financial Results," *Newsfile Corp.*, March 16, 2017 3:00 AM.

[27] Werner Declaration, ¶79.

[28] Werner Declaration, ¶70 and fn. 97.

[29] Werner Class-Cert Declaration, ¶65. Closing footnote omitted.

announcement was not even considered as potential confounding news in the Werner Declaration.[30]

37.     Because the Werner Declaration has not accounted for confounding news on March 16, 2017, even if it were permissible for Dr. Werner to include an analysis of loss causation and damages for an event not in the operative complaint or any other pleading prior to the filings associated with the Werner Declaration, its analysis would be insufficient to demonstrate loss causation for March 16, 2017, much less to quantify any inflation associated with the allegedly corrective portions of the restatement issued on that date.

## IX.     THE WERNER DECLARATION'S USE OF INCONSISTENT EVENT WINDOWS RENDERS ITS STATISTICAL RESULTS UNRELIABLE

38.     As noted above, the Werner Declaration uses inconsistent event windows (i.e., periods over which the price response to an event is measured) in its analyses.  For the November 14, 2016 announcement about Mr. Wang's change of position, the Werner Declaration considers only a single day for its event window, November 14, 2016.  But for the March 13, 2017 after-market Restatement Announcement, the Werner Declaration considers a three-day window encompassing March 14, 15, and 16, 2017.  Even if that latter time period were considered to include two events (i.e., the March 13 Restatement Announcement and the March 17 restatement in the 10-K), the Werner Declaration would then have one event with a two-day window (March 14 and 15 for the Restatement Announcement) and one event with a one-day window (March 16 for the 10-K).  This inconsistency causes the statistical results in the Werner Declaration to be unreliable.

---

[30] If actual earnings data are not material confounding news, then it would follow that any misstatements would necessarily not be material.  While I do not endorse this ultimate conclusion, it shows how the analysis in the Werner Declaration, which does not treat an earnings announcement as confounding news yet claims that misstatements in earnings were material, is inconsistent and unreliable.

39.    The Werner Declaration supports its use of a multi-day window in part through the following quote: "In securities fraud cases, many experts have adopted the convention of looking at one-day, two-day, or five-day periods following an announcement."[31] There is no source provided for this quote in the Werner Declaration. Fortunately, I recognized the quoted material, as I wrote it.[32]

40.    What is important is that the quote discusses experts "adopt[ing a] convention" for event-window lengths. A convention can mean "a: usage or custom especially in social matters[,] b: a rule of conduct of behavior[,] … d: an established technique, practice, or device (as in the theater)[.]"[33] All of these definitions imply following a particular rule or practice. When I wrote that statement, there were experts who consistently used one-day, two-day, or five-day event windows. Choosing to have a one-day window for November 2016 and either a three-day window or else a two-day and a one-day window for the disclosure(s) in March 2017 without any basis is not the result of "adopt[ing a] convention."[34]

---

[31] Werner Declaration, ¶61.

[32] Dr. Werner has previously acknowledged this. See, for example, footnote 11 in the Rebuttal Declaration of Dr. Adam Werner dated April 29, 2019 ECF366-3 in *Nibur* et al. *v. Sandridge Mississippian Trust I* et al. in the Western District of Oklahoma ("See, e.g., 'In securities fraud cases, many experts have adopted the convention of looking at one-day, two-day, or five-day periods following an announcement,' Werner Loss Causation Declaration, ¶108, citing 'Materiality and Magnitude: Event Studies in the Courtroom,' David I. Tabak and Frederick C. Dunbar in Litigation Services Handbook, The Role of the Financial Expert, 3rd ed., edited by Roman L. Weil, Michael J. Wagner, and Peter B. Frank, John Wiley & Sons, Inc., 2001, p. 19.4.")

[33] *Convention,* MERRIAM-WEBSTER (last visited February 24, 2025), https://www.merriam-webster.com/dictionary/convention.

[34] To be clear, a convention need not be a specific number of days in the event window. I have long used the convention of continuing an event window through each consecutive day in which there is a statistically significant daily return. Should I ever deviate from that convention, I note the deviation and apply an appropriate statistical penalty to the new analysis.

(continued)

41.    Had Dr. Werner applied a three-day window to the November 14, 2016 news, he would have found that the cumulative price movement was not statistically significant. In fact, the residual returns on the second and third day summed to a positive 11.39%, which is greater in absolute value than the negative 10.64% sum of the residual returns for the second and third days of the March 13, 2017 news.[35]  Not only that, but the positive 11.39% price increase over November 15 and 16, 2016 is larger than the negative 11.04% price decline on November 14, 2016, meaning that the cumulative stock-price movement over those three days would be slightly (+0.25%) positive.

42.    If, alternatively, one wanted to use the one-day event window that the Werner Declaration used for November 2016 as the baseline, then March 15, 2017 should be excluded from the loss-causation and damages analyses, and March 16, 2017 should also be excluded if its inclusion is based solely on a continuing reaction to the March 13, 2017 Restatement Announcement (i.e., the allegedly corrective event actually pled in the Complaint).

---

See also my recent working paper "p-Hacking and Event Studies in Securities Litigation," dated April 12, 2023, available at https://www.nera.com/content/dam/nera/publications/2023/PUB_p-Hacking_and_Event_Studies.pdf. ("[W]hen an expert does not follow some convention regarding how to determine the length of an event window but instead has flexibility in choosing the length of an event window, the reported level of statistical significance of their results may be biased toward showing desired levels of statistical significance." p. 1. Closing footnote omitted.)

[35] November 2016 residual returns of 5.84% and 5.55% taken from Exhibit 8 of the Werner Class-Cert Declaration and March 2017 residual returns of -1.50% and -9.14% taken from Exhibit 6 of the Werner Declaration.  These returns are in logarithms, meaning that simple addition is the proper way to cumulate returns, as noted in footnote 6 of Exhibit 6 of the Werner Declaration.  As the 5.84% return on November 15, 2016 is larger in magnitude than the -1.50% return on March 15, 2017, if anything, there is even more of a reason to believe that the November 2016 event had an extended reaction time than the March 2017 event did.

## X.    THE WERNER DECLARATION'S USE OF A CONSTANT-DOLLAR INFLATION IS INCORRECT AND RESULTS IN INCORRECT DAMAGES FIGURES

43.    In this section I assume, contrary to what has been demonstrated above, that Dr. Werner may have correctly calculated the inflation removed from Kandi's stock price on the alleged disclosure days.  The Werner Declaration then takes the dollar amount of the residual stock-price declines on the disclosure dates and treats those dollar figures at constant amounts of inflation earlier in the Class Period.  For example, the $0.69 in claimed inflation as a result of the March 14-16, 2017 events is held constant back to November 14, 2016.[36]

44.    Dr. Werner states, "[I]t is my opinion that measuring artificial inflation as a constant value during the Class Period using the residual declines on the corrective disclosures is a conservative approach."[37]  The reason that this is said to be conservative is due to the Werner Declaration's claim that "[t]hroughout the Class Period, the price of Kandi stock was falling[,]"[38] which implies that Kandi's stock price was always higher than before the final corrective disclosure.  The Werner Declaration then discusses the information allegedly revealed in the March 2017 disclosures and argues that "the price decline in response to such a disclosure would be higher"[39] earlier when the stock price was higher.  In other words, the Werner Declaration argues that when the stock price was higher, there would have been a larger effect from the misrepresentations, and by not using that higher figure, it is being conservative.

45.    But the Werner Declaration is wrong when it states that that "[t]hroughout the Class Period, the price of Kandi stock was falling[.]"[40]  "Throughout" would mean that

---

[36] Werner Declaration, Exhibit 8.

[37] Werner Declaration, ¶91.

[38] Werner Declaration, ¶91.

[39] Werner Declaration, ¶91.

[40] Werner Declaration, ¶91.

the stock price was always falling.[41]  But that is not true.  Kandi's stock price rose and fell during the Class Period.  This is not just a semantic issue, because on 39 days in the Class Period, Kandi's stock price was *lower* than it was immediately preceding the March 13, 2017 Restatement Announcement.  See Exhibit 3, in which I overlay Kandi's March 13, 2017 price on ECF 126-2, a graph of Kandi's stock price during the Class Period prepared by Dr. Werner and submitted with Plaintiff's February 13, 2025 filing.  The graph clearly shows that around November 2016, there was a period when Kandi's stock price was below its March 13, 2017 close.  Thus, to the extent that the Werner Declaration is correct that its analysis is a "conservative approach" when the Kandi's stock price was above its March 13, 2017 close, its analysis is an aggressive approach wen Kandi's stock price was below its March 13, 2017 close.[42]

---

[41] See *F.T.C. v. Fleetcor Techs., Inc.*, 620 F. Supp. 3d 1268, n.7 (N.D. Ga. 2022). ("Defendants' footnote argument that advertising discounts as available 'throughout' the Fuelman Network should be understood to advertise rebates only at some locations strains credulity. The Court notes that the dictionary definition of 'throughout' is 'in or to every part of' or 'all the way from one end to the other of.' *Throughout,* MERRIAM-WEBSTER (last visited June 15, 2022), https://www.merriam-webster.com/dictionary/throughout.")

[42] It would be incorrect to argue that on net the analysis in the Werner Declaration is conservative because there are more days when Kandi's stock price is above its March 13, 2017 close than below.  This is because there are two limitations on damages: (1) the amount of inflation paid and (2) the stock-price decline at the time of the corrective disclosure(s).  The second of these limitations is sometimes referred to as a *Dura* cap, based on the Supreme Court's ruling in *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005).

When serving as an expert for plaintiffs in a securities class action, I have applied the *Dura* cap such that allowable damages are less than inflation.  See, for example, Expert Report of David Tabak, dated July 12, 2013, in *In re Merck & Co., Inc. Securities, Derivative, and "ERISA" Litigation,* Civil Action No. 05-2367 (SRC) in the District of New Jersey, ECF 658-25, ¶142. ("In addition to determining the inflation due to the lost future sales, the final column of these exhibits shows the allowable damages for an investor who purchases and retains shares on any starting date in the Class Period. This is lower than the inflation due to an implication of the Supreme Court's decision in *Dura*. In particular, because it is my understanding that based upon *Dura¸* losses are limited to declines in price suffered as a proximate result of a corrective disclosure (including
(continued)

46.     A second reason why the constant-dollar inflation in the Werner Declaration is incorrect is because it results in an inconsistent form of market reliance on Kandi's financial statements.  To see this, start with the first alleged misrepresentations, on August 10, 2015, the start of the Class Period.  The Werner Declaration attributes all of the measured later price declines related to the allegations (or what Dr. Werner believed were the allegations) to inflation.  However, there were similar alleged misstatements in Kandi's financial statements before the start of the Class Period that are no longer part of this case due to the statute of repose.  The only way that the entirety all of the later stock-price declines can be included in artificial inflation immediately following the August 10, 2015 financial statements is if the market set Kandi's price based solely on the most recent financial statements (i.e., those of August 10, 2015) and put no weight on any prior financial statements.  It then follows that the analysis in the inflation in Kandi's stock price on any given date be based solely on the alleged misrepresentations in the most recently published financial statements as of that date.  If not, the market would be changing its behavior because of a class period that did not yet exist.

47.     But if the amount of inflation is based only on Kandi's most recently published financial statements, then the amount of inflation would vary based on the amount of related-party transactions improperly included in the most recent financial statements.  The Werner Declaration never considers these issues and therefore has not performed a complete or proper analysis of inflation over time, even if its analysis of inflation

potentially leakage into the market), I cap damages at the share of Merck's stock price decline due to lost future sales.")

Notably, despite referencing the *Dura* decision in the Werner Class-Cert Declaration, Dr. Werner did not even know what the holding that he was referencing was when asked in his deposition. ("Q[:] What is the holding in Dura Pharmaceuticals that you reference here? [Objection to form.] A[:] As I -- as I sit here today, I would need to take a look at the Dura opinion to refresh my recollection as to exactly what that states." Deposition of Adam Werner on January 22, 2024, 48:21-49:3.)  Without his knowing what the *Dura* decision that was cited in his own class-certification declaration's section on damages states and how that affects damages, Dr. Werner's claim that his analysis is conservative is baseless and, in fact, incorrect.

removed from Kandi's stock on the disclosure dates were correct (which it is not as described earlier in this declaration).

## XI.    CONCLUSION

48.    The numerous flaws in the Werner Declaration render its conclusions on loss causation and damages unreliable.  Most prominent among these flaws are (1) the Werner Declaration's lack of support for Mr. Wang's change of position within Kandi management being, at best, a "potential" "signal" of fraud (based on references to situations of executive departures from a company) and (2) Dr. Werner's failure to recognize and account for the fact that allegations related to numerous and prominent components of Kandi's restatement have already been dismissed from this case.  Due to these and other reasons discussed in this declaration, the conclusions regarding loss causation and damages in the Werner Declaration are fatally flawed and unreliable.

I reserve the right to modify or extend my opinion in light of any new information, including submissions by any experts for Plaintiffs, that becomes available to me.

David I. Tabak
March 24, 2025



**David I. Tabak**
Senior Managing Director

National Economic Research Associates, Inc.
1166 Avenue of the Americas
New York, New York 10036
+1 212 345 2176
david.tabak@nera.com
www.nera.com.

# EXHIBIT 1
# DAVID I. TABAK
## SENIOR MANAGING DIRECTOR

Dr. Tabak earned his Ph.D. and M.A. degrees in Economics from Harvard University and his B.S. in Economics and B.S. in Physics from the Massachusetts Institute of Technology. While at Harvard, Dr. Tabak participated in teaching courses in micro- and macroeconomics and American economic policy at the undergraduate and graduate levels and in the creation of an undergraduate textbook and accompanying software package.

Dr. Tabak has appeared as an expert in state, federal, Delaware Chancery, and bankruptcy courts, and before arbitration panels, including the National Association of Securities Dealers, the American Arbitration Association, the International Dispute Resolution Centre, and the International Chamber of Commerce International Court of Arbitration. He has published in his areas of expertise in forums such as *St. John's Law Review* and *Shannon Pratt's Business Valuation Update*, and has published peer-reviewed articles in *Litigation Economics Review* and the *Journal of Forensic Economics*. Dr. Tabak is also the author of book chapters and has served as a member of *BV Q&A Update's* expert author panel and as a referee for peer-reviewed journals. His publications have covered topics such as commercial disputes, economic analysis of market efficiency, valuation discounts for lack of marketability, and the application of statistics in litigation analyses. Dr. Tabak has been an invited presenter at the Securities and Exchange Commission and has spoken at forums that provide continuing legal education credits or continuing professional education credits for accountants and valuation professionals.

Dr. Tabak has been retained as an expert to address issues including allegations of valuations, contract disputes, commercial damages, and disputes between brokers and customers. His non-litigation work has included developing a risk-scoring model for a reinsurance company, assisting financial institutions in new product development, analysis of potential insider trading for a financial institution, and interpretation of statistical analyses of treatment effectiveness for a program for at-risk youth.

David I. Tabak

## Education

**Harvard University**
Ph.D., Economics, 1996
M.A., Economics, 1992

**Massachusetts Institute of Technology**
B.S., Economics, 1990
B.S., Physics, 1990

## Professional Experience

**NERA Economic Consulting**

2005-    *Senior Managing Director (f/k/a Managing Director, f/k/a Senior Vice President)*
Provide written and oral testimony. Conduct and supervise economic analyses, with a focus on securities litigation and valuation cases.

2001-2005    *Vice President*

1998-2001    *Senior Consultant*

1996-1998    *Senior Analyst*

**Harvard University**

1991-1996    *Teaching Fellow in Economics*
Participated in teaching various courses from introductory principles of economics to graduate macroeconomics. Ran coursewide tutorial program for the largest class at Harvard for two academic years, with a staff of over fifty part-time employees.

**Worth Publishers**

1991, 1993    *Research Assistant/Independent Contractor*
Worked on data collection, software analysis, and creation of a problem bank for an educational economics software package.

**National Bureau of Economic Research**

1991    *Research Assistant*
Performed data collection and econometric analysis for a project on comparisons of international growth rates.

## Honors and Professional Activities

Member, American Economic Association, 1993-present

Referee, *Journal of Forensic Economics*, 2005, 2006, 2008, 2009, 2011, 2012, 2015

David I. Tabak

Referee, *Litigation Economics Review*, 2002, 2003, 2004

William M. Mercer Securities Corporation, Registered Representative, Series 7 and 63, 2000 - 2002

Marsh & McLennan Securities Corporation, Registered Representative, Series 7 and 63, 1998 - 2000

Adjunct Member, Committee on International Trade, Association of the Bar of the City of New York, 1998 – 2001

Harvard University Scholarship, 1990-1992

Derek Bok Teaching Award, 1993, 1994, 1995, and 1996

Allyn Young Teaching Award, 1996

David I. Tabak

## Expert Reports and Testimony

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Northern District of Illinois, Eastern Division in *In re The Boeing Company Aircraft Securities Litigation*, February 7, 2025.

Expert Report of David I. Tabak, Ph.D. before the Supreme Court of the State of New York, County of New York in *Employees Retirement System for the City of Providence v. Urs Rohner,* et al., December 13, 2024.

Deposition Testimony before the Eastern District of New York in *Shane Lavin v. Virgin Galactic Holdings, Inc. et al.*, November 20, 2024.

Expert Report of David I. Tabak, Ph.D. before the Eastern District of New York in *Shane Lavin v. Virgin Galactic Holdings, Inc. et al.*, October 11, 2024.

Expert Reply Report of David I. Tabak, Ph.D. before the Northern District of California in *Guiseppe Pampena v. Elon Musk*, September 16, 2024.

Expert Reply Report of David I. Tabak, Ph.D. before the Eastern District of Pennsylvania in *In re Chester Vanguard Funds Litigation*, September 5, 2024.

Deposition Testimony before the Northern District of California in *Guiseppe Pampena v. Elon Musk*, August 9, 2024.

Deposition Testimony before the Eastern District of Pennsylvania in *In re Chester Vanguard Funds Litigation*, June 17, 2024.

Expert Report of David I. Tabak, Ph.D. before the Eastern District of Pennsylvania in *In re Chester Vanguard Funds Litigation*, May 29, 2024.

Expert Report of David I. Tabak, Ph.D. before the Northern District of California in *Guiseppe Pampena v. Elon Musk*, May 22, 2024.

Deposition Testimony before the Southern District of New York in *Daniel Lee v. Richard Golaszewski and Stephen Swentzel*, May 9, 2024.

Expert Sur-Reply Report of David I. Tabak, Ph.D. before the United States District Court for the Central District of California in *Charles Larry Crews et al. v. Rivian Automotive, Inc et al.*, April 26, 2024.

Expert Reply Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of New York in *In re Alibaba Group Ltd. Securities Litigation*, April 19, 2024.

Deposition Testimony before the United States District Court for the Central District of California in *Charles Larry Crews et al. v. Rivian Automotive, Inc et al.*, April 11, 2024.

David I. Tabak

Expert Rebuttal Report of David I. Tabak, Ph.D. before the Southern District of New York in *Daniel Lee v. Richard Golaszewski and Stephen Swentzel*, April 10, 2024.

Deposition Testimony before the United States District Court for the Southern District of California in *In re Qualcomm Incorporated Securities Litigation*, February 29, 2024.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Central District of California in *Charles Larry Crews et al. v. Rivian Automotive, Inc et al.*, February 27, 2024.

Expert Reply Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of California in *In re Qualcomm Incorporated Securities Litigation*, February 2, 2024.

Expert Reply Report of David I. Tabak, Ph.D. before the United States District Court for the Northern District of Ohio in *Ohio Public Employees Retirement System v. Federal Home Loan Mortgage Corporation*, February 2, 2024.

Deposition Testimony before the United States District Court for the Northern District of Ohio in *Ohio Public Employees Retirement System v. Federal Home Loan Mortgage Corporation*, December 20, 2023.

Declaration of David I. Tabak, Ph.D. before the United States District Court for the Southern District of California in *In re Qualcomm Incorporated Securities Litigation*, November 20, 2023.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Northern District of Ohio in *Ohio Public Employees Retirement System v. Federal Home Loan Mortgage Corporation*, November 16, 2023.

Deposition Testimony before the United States District Court for the Eastern District of New York in *In re Vale S.A. Securities Litigation*, November 8, 2023.

Deposition Testimony before the United States District Court for the Southern District of New York in *In re Alibaba Group Ltd. Securities Litigation*, November 2, 2023.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Eastern District of New York in *In re Vale S.A. Securities Litigation*, October 17, 2023.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of New York in *In re Alibaba Group Ltd. Securities Litigation*, October 5, 2023.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of California in *In re Qualcomm Incorporated Securities Litigation*, September 12, 2023.

Deposition Testimony before the United States District Court for the District of New Jersey in *In re Celgene Securities Litigation*, November 9, 2022.

David I. Tabak

Expert Reply Report of David I. Tabak, Ph.D. before the United States District Court for the District of New Jersey in *In re Celgene Securities Litigation*, October 12, 2022.

Deposition Testimony before the United States District Court for the Southern District of California in *In re Qualcomm Incorporated Securities Litigation*, September 23, 2022.

Reply Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of California in *In re Qualcomm Incorporated Securities Litigation*, August 22, 2022.

Reply Expert Report of David I. Tabak, Ph.D. before the Northern District of Illinois in *In re Kraft Heinz Securities Litigation*, July 19, 2022.

Deposition Testimony before the United States District Court for the Southern District of New York in *In re Grupo Televisa Securities Litigation*, July 8, 2022.

Deposition Testimony before the Southern District of New York in *Sjunde AP-Fonden* et al. *v. General Electric Company* et al., July 1, 2022.

Reply Expert Report of David I. Tabak, Ph.D. before the Southern District of New York in *Sjunde AP-Fonden* et al. *v. General Electric Company* et al., June 9, 2022.

Expert Rebuttal Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of New York in *In re Grupo Televisa Securities Litigation*, May 25, 2022.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of California in *In re Qualcomm Incorporated Securities Litigation*, May 19, 2022.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of New Jersey in *In re Celgene Securities Litigation*, May 11, 2022.

Deposition Testimony before the Northern District of Illinois in *In re Kraft Heinz Securities Litigation*, May 5, 2022.

Supplement to Expert Report of David I. Tabak, Ph.D. before the Southern District of New York in *Sjunde AP-Fonden* et al. *v. General Electric Company* et al., April 29, 2022.

Expert Report of David I. Tabak, Ph.D. before the Northern District of Illinois in *In re Kraft Heinz Securities Litigation*, March 28, 2022.

Expert Report of David I. Tabak, Ph.D. before the Southern District of New York in *Sjunde AP-Fonden* et al. *v. General Electric Company* et al., March 11, 2022.

Testimony before the American Arbitration Association Commercial Panel in *Honeywell International, Inc. v. Rheem Sales Company, Inc.,* January 13, 2022.

Updated Expert Report of David. I Tabak, Ph.D. before the American Arbitration Association Commercial Panel in *Honeywell International, Inc. v. Rheem Sales Company, Inc.,* January 12, 2022.

Updated Expert Report of David. I Tabak, Ph.D. before the American Arbitration Association Commercial Panel in *Honeywell International, Inc. v. Rheem Sales Company, Inc.,* January 8, 2022.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of Arizona in *David G. Lowthorp v. Mesa Air Group Incorporated, et al.*, January 3, 2022.

Deposition Testimony before the United States District Court for the Northern District of California in *In re Oracle Securities Litigation*, November 23, 2021.

Deposition Testimonh before the American Arbitration Association Commercial Panel in *Honeywell International, Inc. v. Rheem Sales Company, Inc.,* October 28, 2021.

Expert Report of David. I Tabak, Ph.D. before the American Arbitration Association Commercial Panel in *Honeywell International, Inc. v. Rheem Sales Company, Inc.,* October 15, 2021.

Expert Report of David. I Tabak, Ph.D. before the United States District Court for the Northern District of California in *In re Oracle Securities Litigation*, October 6, 2021.

Reply Report of David I. Tabak, Ph.D. (on damages) before the United States District Court for the District of Connecticut in *In re Teva Securities Litigation*, September 20, 2021.

Rebuttal Report of David I. Tabak, Ph.D. (on negative causation) before the United States District Court for the District of Connecticut in *In re Teva Securities Litigation*, September 20, 2021.

Deposition Testimony before the United States District Court for the District of Connecticut in *In re Teva Securities Litigation*, September 1, 2021.

Reply Expert Report of David I. Tabak, Ph.D. before the Southern District of New York in *Sjunde AP-Fonden v. General Electric Company*, August 16, 2021.

Rebuttal Report of David I. Tabak, Ph.D. before the United States District Court for the District of Connecticut in *In re Teva Securities Litigation*, August 4, 2021.

Testimony before the Court of Chancery of the State of Delaware in *In re CVR Refining, LP Unitholder Litigation*, July 27, 2021.

Deposition Testimony before the United States District Court for the District of Connecticut in *In re Teva Securities Litigation*, June 22, 2021.

Deposition Testimony before the Court of Chancery of the State of Delaware in *In re CVR Refining, LP Unitholder Litigation*, June 17, 2021.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of Connecticut in *In re Teva Securities Litigation*, May 28, 2021.

David I. Tabak

Expert Reports of David I. Tabak, Ph.D. before the Southern District of New York in *Sjunde AP-Fonden v. General Electric Company*, May 21, 2021.  (Two reports submitted simultaneously.)

Expert Report of David I. Tabak , Ph.D. before the Court of Chancery of the State of Delaware in *In re CVR Refining, LP Unitholder Litigation*, March 16, 2021.

Deposition Testimony before the United States District Court for the District of Connecticut in *In re Teva Securities Litigation*, December 14, 2020.

Rebuttal Expert Report before the United States District Court for the District of Connecticut in *In re Teva Securities Litigation*, December 2, 2020.

Deposition Testimony before the United States District Court for the Eastern District of Virginia, Alexandria Division, in *In re Willis Towers Watson Proxy Litigation*, August 7, 2020.

Rebuttal Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Eastern District of Virginia, Alexandria Division, in *In re Willis Towers Watson Proxy Litigation*, August 5, 2020.

Rebuttal Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of New Jersey in *In re Celgene Securities Litigation*, July 30, 2020.

Deposition Testimony before the United States District Court for the District of Connecticut in *In re Teva Securities Litigation*, July 28, 2020.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of Connecticut in *In re Teva Securities Litigation*, June 18, 2020.

Deposition Testimony before the United States District Court for the District of New Jersey in *In re Celgene Securities Litigation*, June 11, 2020.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Eastern District of Virginia, Alexandria Division, in *In re Willis Towers Watson Proxy Litigation*, June 9, 2020.

Deposition Testimony before the United States District Court for the Southern District of New York in *In re Grupo Televisa Securities Litigation*, May 13, 2020.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of New Jersey in *In re Celgene Securities Litigation*, April 30, 2020.

Deposition Testimony before the United States Bankruptcy Court for the District of Delaware in *In re: Paragon Offshore PLC, Debtor* and *Paragon Litigation Trust v. Noble Corporation PLC, et al.*, April 28, 2020.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of New York in *In re Grupo Televisa Securities Litigation*, April 25, 2020.

David I. Tabak

Deposition Testimony before the United States District Court for the District of New Jersey in *Bing Li* et al. v. *Aeterna Zentaris* et al., January 17, 2020.

Expert Report of David I. Tabak, Ph.D. in the United States Bankruptcy Court for the District of Delaware in *In re: Paragon Offshore PLC, Debtor* and *Paragon Litigation Trust v. Noble Corporation PLC, et al.*, January 15, 2020.

Affidavit of David I. Tabak before the United States District Court for the Northern District of Illinois, Eastern Division in *In re Akorn, Inc. Data Integrity Securities Litigation*, October 18, 2019.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of New Jersey in *Bing Li* et al. v. *Aeterna Zentaris* et al., September 23, 2019.

Supplemental Rebuttal Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of New York in *In re Vale S.A. Securities Litigation*, August 21, 2019.

Deposition Testimony before the United States District Court for the Northern District of Georgia in *In re HD Supply Holdings, Inc. Securities Litigation*, July 11, 2019.

Expert Report of David I. Tabak before the United States District Court for the Northern District of Illinois, Eastern Division in *In re Akorn, Inc. Data Integrity Securities Litigation*, June 25, 2019.

Expert Report of David I. Tabak before the United States District Court for the Northern District of Georgia in *In re HD Supply Holdings, Inc. Securities Litigation*, June 17, 2019.

Expert Affidavit of David I. Tabak before the United States District Court for the Northern District of Illinois in *George Hedick Jr. v. The Kraft Heinz Company, et al.* and in *Iron Workers District Council (Philadelphia and vicinity) Retirement and Pension Plan v. The Kraft Heinz Company, et al.*, May 15, 2019.

Rebuttal Expert Report of David I. Tabak before the United States District Court for the Central District of California in *Trevor Mild v. PPG Industries et al.*, April 8, 2019.

Deposition Testimony before the United States District Court for the Southern District of New York in *In re Alibaba Group Holding Limited Securities Litigation*, March 29, 2019.

Deposition Testimony before the United States District Court for the Central District of California in *Trevor Mild v. PPG Industries et al.*, March 27, 2019.

Deposition Testimony before the United States District Court for the District of Puerto Rico in *The Financial Oversight and Management Board for Puerto Rico as representative of The Commonwealth of Puerto Rico et al.*, March 20, 2019.

Expert Report of David I. Tabak before the United States District Court for the Central District of California in *Trevor Mild v. PPG Industries et al.*, March 8, 2019.

David I. Tabak

Rebuttal Expert Report of David I. Tabak before the United States District Court for the Southern District of New York in *In re Alibaba Group Holding Limited Securities Litigation*, March 7, 2019.

Expert Declaration of David I. Tabak before the United States District Court for the District of Puerto Rico in *The Financial Oversight and Management Board for Puerto Rico as representative of The Commonwealth of Puerto Rico et al.*, February 25, 2019.

Expert Report of David I. Tabak before the United States District Court for the Southern District of New York in *In re Alibaba Group Holding Limited Securities Litigation*, February 11, 2019.

Testimony before JAMS Arbitration in *John Mariani, Jr.* et al. *v. James Mariani* et al., June 12, 2018.

Testimony before the Court of Chancery of the State of Delaware in *A. Schulman, Inc.,* et al. *v. Citadel Plastics Holdings, LLC,* et al., June 4-5, 2018.

Deposition Testimony before the Court of Chancery of the State of Delaware in *A. Schulman, Inc.,* et al. *v. Citadel Plastics Holdings, LLC,* et al., May 14, 2018.

Deposition Testimony before the United States District Court for the Southern District of New York in *In re Alibaba Group Holding Limited Securities Litigation*, April 6, 2018.

Deposition Testimony before the Court of Chancery of the State of Delaware in *A. Schulman, Inc.,* et al. *v. Citadel Plastics Holdings, LLC,* et al., March 23, 2018.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of New York in *In re Alibaba Group Holding Limited Securities Litigation*, March 9, 2018.

Expert Report of David I. Tabak, Ph.D. before JAMS Arbitration in *John Mariani, Jr.* et al. *v. James Mariani* et al., February 21, 2018.

Expert Report of David I. Tabak, Ph.D. before the Court of Chancery of the State of Delaware in *A. Schulman, Inc.,* et al. *v. Citadel Plastics Holdings, LLC,* et al., February 16, 2018.

Rebuttal Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of New York in *In re Vale S.A. Securities Litigation*, November 17, 2017.

Deposition Testimony before the United States District Court for the Southern District of New York in *In re Vale S.A. Securities Litigation*, October 26, 2017.

Report of David I. Tabak, PhD in *Babscay Pty Ltd v. Slater & Gordon Limited*, Federal Court Proceeding VID 659 / 2017, Australia, October 26, 2017.

Deposition Testimony before the Supreme Court of the State of New York, County of Westchester, in *Paraco Gas Corporation v. Ferrellgas, L.P.*, September 28, 2017.

David I. Tabak

Rebuttal Expert Report of David I. Tabak, Ph.D. before the Supreme Court of the State of New York, County of Westchester, in *Paraco Gas Corporation v. Ferrellgas, L.P.*, September 20, 2017.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of New York in *In re Vale S.A. Securities Litigation*, September 14, 2017.

Expert Report of David I. Tabak, Ph.D. before the Supreme Court of the State of New York, County of Westchester, in *Paraco Gas Corporation v. Ferrellgas, L.P.*, August 24, 2017.

Supplement to Reply Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of Vermont in *Louisiana Municipal Police Employees' Retirement System* et al. *v. Green Mountain Coffee Roasters, Inc.* et al., August 9, 2017.

Deposition Testimony before the United States District Court for the District of Vermont in *Louisiana Municipal Police Employees' Retirement System* et al. *v. Green Mountain Coffee Roasters, Inc.* et al., August 1, 2017.

Reply Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of Vermont in *Louisiana Municipal Police Employees' Retirement System* et al. *v. Green Mountain Coffee Roasters, Inc.* et al., June 15, 2017.

Sur-Reply Expert report of David I. Tabak, Ph.D. before the United States District Court for the District of New Jersey in *Bing Li* et al. v. *Aeterna Zentaris* et al., May 31, 2017.

Reply Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of Vermont in *Louisiana Municipal Police Employees' Retirement System* et al. *v. Green Mountain Coffee Roasters, Inc.* et al., May 26, 2017.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of South Carolina in *Edna Selan Epstein* et al. *vs. World Acceptance Corporation* et al., May 8, 2017.

Deposition Testimony before the United States District Court for the District of New Jersey in *Bing Li* et al. v. *Aeterna Zentaris* et al., April 21, 2017.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of Vermont in *Louisiana Municipal Police Employees' Retirement System* et al. *v. Green Mountain Coffee Roasters, Inc.* et al., April 13, 2017.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of New Jersey in *Bing Li* et al. v. *Aeterna Zentaris* et al., March 23, 2017.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of South Carolina in *Edna Selan Epstein* et al. *vs. World Acceptance Corporation* et al., March 16, 2017.

David I. Tabak

Supplement to Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Northern District of California in *In re Rocket Fuel, Inc. Securities Litigation*, February 21, 2017.

Deposition Testimony before the United States District Court for the Middle District of Florida, Jackson Division in *In re Rayonier Inc. Securities Litigation*, February 8, 2017.

Expert Rebuttal Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of New York in *In re Salix Pharmaceuticals*, January 17, 2017.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Middle District of Florida, Jackson Division in *In re Rayonier Inc. Securities Litigation*, December 12, 2016.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the District of Vermont in *Louisiana Municipal Police Employees' Retirement System* et al. *v. Green Mountain Coffee Roasters, Inc.* et al., December 9, 2016.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Northern District of California in *In re Rocket Fuel, Inc. Securities Litigation*, December 8, 2016.

Deposition Testimony before the United States District Court for the Southern District of New York in *In re Salix Pharmaceuticals*, November 3, 2016.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of New York in *In re Salix Pharmaceuticals*, October 7, 2016.

Rebuttal Expert Report of David Tabak, Ph.D. before the United States District Court for the District of Minnesota in *Första AP-Fonden and Danke Invest Management A/S et al. v. St. Jude Medical, Inc. et al.*, May 6, 2016.

Deposition Testimony before the United States District Court for the District of Minnesota in *Första AP-Fonden and Danke Invest Management A/S et al. v. St. Jude Medical, Inc. et al.*, February 11, 2016.

Deposition Testimony before the United States District Court for the Eastern District of Virginia in *In re Genworth Securities Litigation*, February 9, 2016.

Rebuttal Report of David Tabak, Ph.D. before the United States District Court for the Eastern District of Virginia in *In re Genworth Securities Litigation*, February 3, 2016.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Western District of Texas in *KB Partners I v. Pain Therapeutics, Inc. et al.*, January 29, 2016.

Expert Report of David Tabak, Ph.D. before the Securities and Exchange Commission in *In the Matter of Arthur F. Jacob, CPA and Innovative Business Solutions, LLC,* January 29, 2016.

Deposition Testimony before the United States District Court for the Eastern District of New York in *In re Symbol Technologies, Inc. Securities Litigation*, January 28, 2016.

David I. Tabak

Expert Report of David Tabak, Ph.D. before the United States District Court for the District of Minnesota in *Första AP-Fonden and Danke Invest Management A/S et al. v. St. Jude Medical, Inc. et al.*, December 23, 2015.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Eastern District of Virginia in *In re Symbol Technologies, Inc. Securities Litigation*, December 11, 2015.

Expert Report of David Tabak, Ph.D. before the United States District Court for the Eastern District of Virginia in *In re Genworth Securities Litigation*, December 2, 2015.

Rebuttal Report of David Tabak, Ph.D. before the United States District Court for the District of Minnesota in *Första AP-Fonden and Danke Invest Management A/S et al. v. St. Jude Medical, Inc. et al.*, November 16, 2015.

Expert Report of David I. Tabak, Ph.D. in the United States District Court for the Western District of Texas in *KB Partners I v. Pain Therapeutics, Inc. et al.*, November 12, 2015.

Deposition Testimony before the United States District Court for the District of Minnesota in *Första AP-Fonden and Danke Invest Management A/S et al. v. St. Jude Medical, Inc. et al.*, September 2, 2015.

Deposition Testimony before the United States District Court for the Southern District of California in *In re Bridgepoint Securities Litigation*, July 20, 2015.

Rebuttal Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of California in *In re Bridgepoint Securities Litigation*, June 15, 2015.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of California in *In re Bridgepoint Securities Litigation*, June 1, 2015.

Expert Report of David I. Tabak, Ph.D. before the Supreme Court of the State of New York, Nassau County, in *John M. Ferolito* et al. against *AriZona Beverages USA LLC et al.*, March 30, 2015.

Declaration of David I. Tabak, Ph.D. before the United States District Court for the Southern District of New York in *George Byrun et al. v. Salix Pharmaceuticals et al.*, 30 January 2015.

Expert Report of David Tabak, Ph.D. before the United States District Court for the District of Minnesota in *Första AP-Fonden and Danke Invest Management A/S et al. v. St. Jude Medical, Inc. et al.*, January 13, 2015.

Expert Report of David Tabak before the Securities and Exchange Commission in the matter of *Airtouch Communications, Inc., Hideyuki Kanakubo, and Jerome Kaiser, CPA*, December 16, 2014.

Expert Report of David Tabak, Ph.D. before the United States District Court for the Southern District of New York in *In re Puda Coal Securities et al. Litigation*, November 13, 2014.

Deposition Testimony before the United States District Court for the Southern District of Ohio, Western Division (at Dayton) in *Antioch Litigation Trust, W. Timothy Miller, Trustee,* against *McDermott Will & Emery LLP*, July 2, 2014.

Testimony before the Supreme Court of the State of New York, Nassau County, in *John M. Ferolito* et al. against *AriZona Beverages USA LLC et al.*, June 16, 2014.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of Ohio, Western Division (at Dayton) in *Antioch Litigation Trust, W. Timothy Miller, Trustee,* against *McDermott Will & Emery LLP*, June 11, 2014.

Supplemental Expert Report of David I. Tabak, Ph.D. before the Supreme Court of the State of New York, Nassau County, in *John M. Ferolito* et al. against *AriZona Beverages USA LLC et al.*, June 3, 2014.

Deposition before the Supreme Court of the State of New York, Nassau County, in *John M. Ferolito* et al. against *AriZona Beverages USA LLC et al.*, March 31, 2014.

Cross Examination in the Matter of the Companies' Creditors Arrangement Act and in the Matter of a Plan of Compromise or arrangement of Nortel Networks Corporation et al. before the Ontario Superior Court of Justice (Commercial List), March 19, 2014.

Report of David I. Tabak, Ph.D. before the Supreme Court of the State of New York, Nassau County, in *John M. Ferolito* et al. *against AriZona Beverages USA LLC et al.*, March 11, 2014.

Report of David I. Tabak in the Matter of the Companies' Creditors Arrangement Act and in the Matter of a Plan of Compromise or arrangement of Nortel Networks Corporation *et al.* before the Ontario Superior Court of Justice (Commercial List), February 28, 2014.

Deposition Testimony before the United States District Court for the District of New Jersey in *In re Merck & Co, Inc. Securities, Derivative & "ERISA" Litigation*, November 8, 2013.

Rebuttal Report of David Tabak, Ph.D. before the United States District Court for the District of New Jersey in *In re Merck & Co, Inc. Securities, Derivative & "ERISA" Litigation*, September 4, 2013.

Expert Report of David Tabak, Ph.D. before the United States District Court for the District of New Jersey in *In re Merck & Co, Inc. Securities, Derivative & "ERISA" Litigation*, July 12, 2013.

Deposition Testimony before the United States District Court for the Southern District of California in *In re Novatel Wireless Securities Litigation*, June 27, 2013.

Deposition Testimony before the United States District Court for the Western District of Texas in *KB Partners I v. Pain Therapeutics, Inc. et al.*, May 10, 2013.

Expert Report of David Tabak, Ph.D. before the United States District Court for the Southern District of California in *In re Novatel Wireless Securities Litigation*, April 11, 2013.

Declaration of David I. Tabak, Ph.D. in the United States District Court for the Western District of Texas in *KB Partners I v. Pain Therapeutics, Inc. et al.*, March 21, 2013.

Reply Declaration of David Tabak, Ph.D. before the United States District Court for the District of New Jersey in *In re Merck & Co, Inc. Securities, Derivative & "ERISA" Litigation*, November 8, 2012.

Expert Report of David Tabak, Ph.D. before the United States District Court for the Southern District of New York in *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, November 6, 2012.

Deposition Testimony before the United States District Court for the District of New Jersey in *In re Merck & Co, Inc. Securities, Derivative & "ERISA" Litigation*, July 12, 2012.

Testimony before the United States Bankruptcy Court for the Southern District of New York in *In re: Adelphia Communications Corp.* and *Adelphia Recovery Trust vs. FPL Group*, May 3, 2012.

Written Direct Testimony of David Tabak, Ph.D. before the United States Bankruptcy Court for the Southern District of New York in *In re: Adelphia Communications Corp.* and *Adelphia Recovery Trust vs. FPL Group*, April 17, 2012.

Declaration of David Tabak, Ph.D. before the United States District Court for the District of New Jersey in *In re Merck & Co, Inc. Securities, Derivative & "ERISA" Litigation*, April 10, 2012.

Rebuttal Report before the Supreme Court of Victoria at Melbourne in *Pathway Investments Pty Ltd and Doystoy Pty Ltd vs. National Australia Bank Limited*, January 30, 2012.

Expert Report before the Supreme Court of Victoria at Melbourne in *Pathway Investments Pty Ltd and Doystoy Pty Ltd vs. National Australia Bank Limited*, December 5, 2011.  (Affidavits testifying to the report executed on December 9, 2011 and December 20, 2011.)

Deposition Testimony before the United States Bankruptcy Court for the Southern District of New York in *In re: Adelphia Communications Corp.* and *Adelphia Recovery Trust vs. FPL Group*, August 1, 2011.

Expert Report of David Tabak, Ph.D. before the United States Bankruptcy Court for the Southern District of New York in *In re: Adelphia Communications Corp.* and *Adelphia Recovery Trust vs. FPL Group*, July 8, 2011.

Deposition Testimony before the United States District Court for the Southern District of California in *In re Novatel Wireless Securities Litigation*, February 3, 2011.

Expert Report of David Tabak, Ph.D. before the United States District Court for the Southern District of California in *In re Novatel Wireless Securities Litigation*, January 11, 2011.

Expert Report of David Tabak, Ph.D. before the United States District Court for the District of New Jersey in *Securities and Exchange Commission v. Alfred S. Teo, et al.*, November 4, 2010.

David I. Tabak

Declaration of David Tabak, Ph.D. before the United States District Court for the District of Massachusetts in *In re Smith and Wesson Holding Corp. Securities Litigation*, October 29, 2010.

Deposition Testimony before the United States District Court for the District of Massachusetts in *In re Smith and Wesson Holding Corp. Securities Litigation*, October 7, 2010.

Expert Rebuttal Report of David Tabak, Ph.D. before the United States District Court for the District of Massachusetts in *In re Smith and Wesson Holding Corp. Securities Litigation*, September 16, 2010.

Expert Report of David Tabak, Ph.D. before the United States District Court for the District of Massachusetts in *In re Smith and Wesson Holding Corp. Securities Litigation*, August 30, 2010.

Rebuttal Declaration of David Tabak, Ph.D. before the United States District Court for the Southern District of California in *Maureen Bakke,* et al. *vs. Novatel Wireless,* et al., April 25, 2010.

Declaration of David Tabak, Ph.D. before the United States District Court for the Southern District of California in *Maureen Bakke,* et al. *vs. Novatel Wireless,* et al., March 12, 2010.

Testimony before the International Dispute Resolution Centre *in the matter of an arbitration and in the matter of the Arbitration Acts 1950-1979 between Motorola, Inc. and Ace Bermuda Insurance, Ltd*., November 6, 2009.

Expert Rebuttal Report of David Tabak, Ph.D., before the International Dispute Resolution Centre *in the matter of an arbitration and in the matter of the Arbitration Acts 1950-1979 between Motorola, Inc. and Ace Bermuda Insurance, Ltd*., October 19, 2009.

Expert Report of David Tabak, Ph.D., before the United States District Court for the Central District of California in *Donald Johnson v. James D. Aljian, Kirk Kerkorian, and Tracinda Corporation*, September 17, 2009.

Expert Report of David Tabak, Ph.D., before the International Dispute Resolution Centre *in the matter of an arbitration and in the matter of the Arbitration Acts 1950-1979 between Motorola, Inc. and Ace Bermuda Insurance, Ltd*., September 10, 2009.

Rebuttal Expert Report of David Tabak, Ph.D., before the District Court for the Northern District of Georgia in *In re NetBank Securities Litigation*, July 16, 2009.

Declaration of David Tabak before the District Court for the Northern District of Texas in *Fluor Corporation v. Citadel Equity Fund Ltd.*, July 13, 2009.

Rebuttal Expert Report of David Tabak, Ph.D., before the District Court for the Northern District of Texas in *Fluor Corporation v. Citadel Equity Fund Ltd.*, June 26, 2009.

Deposition Testimony before the District Court for the Northern District of Georgia in *In re NetBank Securities Litigation*, June 16, 2009.

Declaration and Expert Report of David Tabak, Ph.D., before the District Court for the Northern District of Georgia in *In re NetBank Securities Litigation*, May 29, 2009.

Deposition Testimony before the District Court for the Northern District of Texas in *Fluor Corporation v. Citadel Equity Fund Ltd.*, May 6, 2009.

Expert Report of David Tabak, Ph.D., before the District Court for the Northern District of Texas in *Fluor Corporation v. Citadel Equity Fund Ltd.*, April 15, 2009.

Deposition Testimony before the Supreme Court of the State of New York, County of New York, in *Herbert Feinberg against Jerome S. Boros; Robinson, Silverman, Pearce, Aronsohn & Berman and Bryan Cave*, February 17, 2009.

Declaration of David Tabak, Ph.D., before the United States District Court for the Central District of California in *Donald Johnson v. James D. Aljian, Kirk Kerkorian, and Tracinda Corporation*, January 5, 2009.

Expert Report of David Tabak, Ph.D., before the Supreme Court of the State of New York, County of New York, in *Herbert Feinberg against Jerome S. Boros; Robinson, Silverman, Pearce, Aronsohn & Berman and Bryan Cave*, December 15, 2008.

Declaration of David Tabak, Ph.D., before the District Court for the Northern District of Texas in *Fluor Corporation v. Citadel Equity Fund Ltd.*, November 7, 2008.

Deposition Testimony before the District Court for the Southern District of New York in *In Re American International Group Inc. Securities Litigation,* October 31, 2008.

Declaration of David Tabak, Ph.D., before the District Court for the Southern District of New York in *In Re American International Group Inc. Securities Litigation,* September 23, 2008.

Cross-Examination before the Superior Court of Justice, Ontario, in *Peter McCann v. CP Ships Limited, Raymond Miles, Frank Halliwell, and Ian Weber*, June 23, 2008.

Surrebuttal Report of David Tabak before the New York Stock Exchange in *Ronald G. Pettengill, et al. v. Robertson Stephens, Inc. et al.*, January 11, 2008.

Affidavit of David I. Tabak before the Superior Court of Justice, Ontario, in *Peter McCann v. CP Ships Limited, Raymond Miles, Frank Halliwell, and Ian Weber*, December 19, 2007.

Rebuttal Report of David Tabak before the New York Stock Exchange in *Ronald G. Pettengill, et al. v. Robertson Stephens, Inc. et al.*, December 19, 2007.

Report of David Tabak before the New York Stock Exchange in *Ronald G. Pettengill, et al. v. Robertson Stephens, Inc. et al.*, December 3, 2007.

Deposition Testimony before the District Court for the Northern District of Georgia in *Carpenters Health & Welfare Fund, et al. vs. The Coca-Cola Company*, August 23, 2007.

David I. Tabak

Deposition Testimony before the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Ada in *Holmes Lundt et al. v. Fenwick & West, LLP and Robert A. Freedman*, June 13, 2007.

Expert Report of David Tabak before the District Court for the Northern District of Georgia in *Carpenters Health & Welfare Fund,* et al. *vs. The Coca-Cola Company*, May 30, 2007.

Deposition Testimony before the United States District Court for the Southern District of New York in *In re Omnicom Group Inc. Securities Litigation*, April 27, 2007.

Expert Report of David Tabak before the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Ada in *Holmes Lundt et al. v. Fenwick & West, LLP and Robert A. Freedman*, April 4, 2007.  (Amended report, June 25, 2007.)

Rebuttal Report of David Tabak before the United States District Court for the Southern District of New York in *In re Omnicom Group Inc. Securities Litigation*, January 18, 2007.

Expert Report of David Tabak before the United States District Court for the Southern District of New York in *In re Omnicom Group Inc. Securities Litigation*, December 18, 2006.

Deposition Testimony before the United States District Court for the District of Colorado in *Genesis Insurance Company v. Daniel D. Crowley, Arlin M. Adams, National Union Fire Insurance Company of Pittsburgh PA*, November 9, 2006.

Deposition Testimony before the United States District Court for the Eastern District of Michigan in *In re CMS Energy Securities Litigation*, October 13, 2006.

Affidavit of David I. Tabak before the United States District Court for the District of Colorado in *In re Rhythms Securities Litigation*, October 11, 2006.

Rebuttal Report before the United States District Court for the Eastern District of Michigan in *In re CMS Energy Securities Litigation*, October 4, 2006.

Expert Report before the United States District Court for the District of Colorado in *Genesis Insurance Company v. Daniel D. Crowley, Arlin M. Adams, National Union Fire Insurance Company of Pittsburgh PA*, October 4, 2006.

Deposition Testimony before the United States District Court for the Eastern District of Michigan in *In re CMS Energy Securities Litigation*, September 15, 2006.

Expert Report before the United States District Court for the Eastern District of Michigan in *In re CMS Energy Securities Litigation*, August 25, 2006.

Deposition Testimony before the United States District Court for the District of Colorado in *In re Rhythms Securities Litigation*, July 20, 2006.

Deposition Testimony before the United States District Court for the Southern District of Texas in *In re Enron Corporation Securities Litigation*, May 25, 2006.

NERA Economic Consulting

18

Affidavit before the United States District Court for the Northern District of Oklahoma in *In re Williams Securities Litigation (WCG Subclass)*, April 14, 2006.

Deposition Testimony before the United States District Court for the Northern District of Oklahoma in *In re Williams Securities Litigation (WCG Subclass)*, March 24, 2006.

Rebuttal Expert Report of David Tabak before the United States District Court for the Southern District of Texas in *In re Enron Corporation Securities Litigation*, March 17, 2006.

Rebuttal Expert Report of David Tabak before the United States District Court for the Northern District of Oklahoma in *In re Williams Securities Litigation (WCG Subclass)*, March 9, 2006.

Expert Report of David Tabak before the United States District Court for the District of Colorado in *In re Rhythms Securities Litigation*, February 13, 2006.

Expert Report of David Tabak before the United States District Court for the Northern District of Oklahoma in *In re Williams Securities Litigation (WCG Subclass)*, February 1, 2006.

Rebuttal Report of David Tabak, Ph.D. before the American Arbitration Association in *Warren N. Lieberfarb v. Warner Home Video Inc.*, November 30, 2005.

Deposition Testimony before the American Arbitration Association in *Warren N. Lieberfarb v. Warner Home Video Inc.*, November 9, 2005.

Expert Report of David Tabak, Ph.D. before the American Arbitration Association in *Warren N. Lieberfarb v. Warner Home Video Inc.*, October 3, 2005.

Expert Report of David Tabak, Ph.D. before the United States District Court for the Eastern District of Pennsylvania in *Sean Fitzpatrick v. Michael Queen, Thomas McGreal, Joseph W. Luter, IV, Michael H. Cole, Smithfield Foods, Inc., Showcase Foods, Inc., and Pennexx Foods, Inc.*, March 25, 2005.

Deposition Testimony before the United States District Court for the Northern District of Georgia, Atlanta Division in *In re CryoLife, Inc. Securities Litigation*, February 24, 2005.

Rebuttal Report of David Tabak, Ph.D. before the United States District Court for the Northern District of Georgia, Atlanta Division in *In re CryoLife, Inc. Securities Litigation*, February 18, 2005.

Affidavit of David Tabak, Ph.D. and Stephanie Plancich, Ph.D. before the United States District Court for the Northern District of Illinois, Eastern Division in *Doug Sutton and Prescott Nottingham v. Robert F. Bernard, Robert T. Clarkson, and Bert B. Young*, January 11, 2005.

Deposition Testimony before the United States District Court for the Northern District of Georgia, Atlanta Division in *In re CryoLife, Inc. Securities Litigation*, January 5, 2005.

Expert Report of David I. Tabak before the United States District Court for the Eastern District of New York in *Phoenician Trading Partners, L.P. v. Blue Water Fund Ltd., et al.*, January 3, 2005.

David I. Tabak

Affidavit of David Tabak, Ph.D. before the United States District Court for the Northern District of Georgia, Atlanta Division in *David Jones and Susan Jones v. InfoCure Corporation, et al.*, December 14, 2004.

Expert Report of David Tabak, Ph.D. before the United States District Court for the Northern District of Georgia, Atlanta Division in *In re CryoLife, Inc. Securities Litigation*, December 10, 2004.

Deposition Testimony before the United States District Court for the Northern District of Georgia, Atlanta Division in *David Jones and Susan Jones v. InfoCure Corporation, et al.*, October 4, 2004.

Rebuttal Report of David Tabak, Ph.D. before the United States District Court for the Northern District of Georgia, Atlanta Division in *David Jones and Susan Jones v. InfoCure Corporation, et al.*, September 22, 2004.

Deposition Testimony before the United States District Court for the Northern District of Illinois, Eastern Division in *Richard C. Snyder, et al. v. Thomas and Betts Corporation*, September 9, 2004.

Expert Report of David Tabak, Ph.D. before the United States District Court for the Northern District of Illinois, Eastern Division in *Richard C. Snyder, et al. v. Thomas and Betts Corporation*, August 20, 2004.

Further Additional Statement of David Tabak before the New York Stock Exchange in *Robert Belau et al. v. FleetBoston Financial Corporation et al.*, July 30, 2004.

Expert Report of David Tabak, Ph.D. before the United States District Court for the Northern District of Georgia, Atlanta Division in *David Jones and Susan Jones v. InfoCure Corporation, et al.*, June 30, 2004.

Testimony before the United States Bankruptcy Court for the District of Delaware in *In Re Coram Healthcare Corp. and Coram, Inc.*, April 7, 2004.

Deposition Testimony before the United States Bankruptcy Court for the District of Delaware in *In Re Coram Healthcare Corp. and Coram, Inc.*, April 2, 2004.

Expert Report of David Tabak before the United States Bankruptcy Court for the District of Delaware in *In Re Coram Healthcare Corp. and Coram, Inc.*, March 31, 2004.

Statement of David Tabak, Ph.D. before the United States District Court for the Southern District of New York in *United States of America v. Morris Weissman*, February 10, 2004.

Additional Statement of David Tabak before the New York Stock Exchange in *Robert Belau et al. v. FleetBoston Financial Corporation et al.*, December 17, 2003.

Expert Report of David Tabak, Ph.D. before the United States District Court for the Southern District of Ohio Eastern District (at Columbus) in *Barry F. Bovee, et al. v. Coopers & Lybrand, et al.*, December 16, 2003.

David I. Tabak

Deposition Testimony before the United States District Court for the District of South Carolina in *In Re Safety-Kleen Stockholders Litigation* and in *In Re Safety-Kleen Rollins Shareholders Litigation*, October 23, 2003.

Statement of David Tabak before the New York Stock Exchange in *Robert Belau et al. v. FleetBoston Financial Corporation et al.*, October 1, 2003.

Expert Report of David Tabak, Ph.D. before the United States District Court for the District of South Carolina in *In Re Safety-Kleen Stockholders Litigation*, August 28, 2003.

Expert Report of David Tabak, Ph.D. before the United States District Court for the District of South Carolina in *In Re Safety-Kleen Rollins Shareholders Litigation*, August 28, 2003.

Testimony before the NASD in *Ralph Rubenstein, JANT Foundation, et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* June 19, 2003.

Affidavit of David Tabak, Ph.D. and Ramzi Zein, Ph.D. in Support of Norwegian Cruise Line's Opposition to Proposed Rule before the Federal Maritime Commission, May 30, 2003.

Testimony before the Circuit Court of Maryland for Baltimore City in *Carnegie International Corporation, et al. vs. Grant Thornton, LLP., et al.*, March 11 and 12, 2003.

Declaration of David I. Tabak in Support of Defendant's Motion in Opposition to Appointment of Additional Lead Plaintiffs and Class Certification before the United States District Court for the District of Columbia in *In Re Baan Company Securities Litigation*, June 21, 2002.

Affidavit before the United States District Court for the District of Rhode Island in *George Kinney et al. v. Metro Global Media, Inc., et al.* May 15, 2002.

Testimony before the American Arbitration Association in *Beth Kaplan v. Rite Aid Corporation; Rite Aid Corporation v. Beth Kaplan and Bruce Sholk*, May 2-3, 2002.

Expert Report of David I. Tabak before the United States District Court for the District of Idaho in *Pippin v. ICF Kaiser International, et. Al, Wood v. Edwards et al.*, February 11, 2002.

Deposition Testimony before the United States District Court for the District of Columbia in *In Re Baan Company Securities Litigation*, February 7, 2002.

Deposition Testimony before the United States District Court for the Eastern District of Pennsylvania in *In Re Equimed Securities, Inc. Litigation*, January 17, 2002.

Affidavit before the United States District Court for the District of Columbia in *In Re Baan Company Securities Litigation*, January 10, 2002.

Expert Report of David I. Tabak before the United States District Court for the Eastern District of Pennsylvania in *In Re Equimed Inc. Securities Litigation*, December 28, 2001.

Expert Report of David I. Tabak before the United States District Court for the Southern District of New York in *Castle Creek Technology Partners LLC against Cellpoint Inc.*, December 13, 2001.

Deposition Testimony before the United States District Court for the Southern District of New York in *Morgens, Waterfall, Vintiadis & Co., Inc. et al. against Donaldson, Lufkin & Jenrette Securities Corporation et al.*, October 11, 2001.

Deposition Testimony before the Circuit Court of Maryland for Baltimore City in *Carnegie International Corporation, et al. vs. Grant Thornton, LLP., et al.*, September 25, 2001.

Expert Report of David I. Tabak, Ph.D. before the Circuit Court of Maryland for Baltimore City in *Carnegie International Corporation, et al. vs. Grant Thornton, LLP., et al.*, September 17, 2001.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of New York in *Morgens, Waterfall, Vintiadis & Co., Inc. et al. against Donaldson, Lufkin & Jenrette Securities Corporation et al.*, September 6, 2001.

Testimony before the United States District Court for the Eastern District of New York in *United States of America against Harry Shuster*, July 30, 2001.

Declaration before the United States District Court for the Eastern District of New York in *United States of America against Roy Ageloff, et al.*, July 23, 2001.

Testimony before the National Association of Securities Dealers in *In the Matter of the Arbitration Between Michael A. Brownlee, M.D. against Marc Keller, Schroder & Co., Inc. and Sanfrey Securities, Inc.*, May 29, 2001.

Opinion Letter before the United States District Court for the Eastern District of New York in *United States of America against Roy Ageloff, et al.*, May 24, 2001.

Testimony before the United States District Court for the Southern District of New York in *Oscar Gruss & Son, Inc. against Yossie Hollander*, May 22, 2001.

Testimony before the Supreme Court of the State of New York, County of New York in *Robert Klein against 5B Technologies Corporation f/k/a Paramount Financial Corporation and Deltaforce Personnel Services, Inc.*, May 17, 2001.

Expert Report of David I. Tabak, Ph.D. before the National Association of Securities Dealers in *In the Matter of the Arbitration Between Michael A. Brownlee, M.D. against Marc Keller, Schroder & Co., Inc. and Sanfrey Securities, Inc.*, April 25, 2001.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Central District of California in *In Re Imperial Credit Industries, Inc. Securities Litigation*, April 5, 2001.

Affidavit before the United States District Court for the Southern District of New York in *Oscar Gruss & Son, Inc. against Yossie Hollander*, February 8, 2001.

David I. Tabak

Deposition Testimony before the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida in *U.S. Diagnostic, Inc. and Diversified Therapy Corporation vs. Bachner, Tally, Polevoy & Misher, LLP and Michael Karsch*, January 19, 2001.

Expert Report of David I. Tabak before the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida in *U.S. Diagnostic, Inc. and Diversified Therapy Corporation vs. Bachner, Tally, Polevoy & Misher, LLP and Michael Karsch*, January 11, 2001.

Supplemental Expert Report of David I. Tabak before the State of Minnesota, County of Hennepin District Court, Fourth Judicial District in *Irving P. Knelman v. Investment Advisers, Inc.*, September 13, 2000.

Expert Report of David I. Tabak before the United States District Court for the Eastern District of New York in *Martin R. Lautman v. The Loewen Group Inc., et al.*, September 6, 2000.

Supplemental Affidavit of David I. Tabak before the Circuit Court of Franklin County, Alabama in *James Taff, individually and on behalf of all others similarly situated, vs. CareMark Rx, Inc and PNC Bank, Kentucky Inc.,* May 25, 2000.

Affidavit of David I. Tabak and Christoph Muelbert before the Circuit Court of Franklin County, Alabama in *James Taff, individually and on behalf of all others similarly situated, vs. CareMark Rx, Inc and PNC Bank, Kentucky Inc.,* May 23, 2000.

Expert Report of David I. Tabak before the State of Minnesota, County of Hennepin District Court, Fourth Judicial District in *Irving P. Knelman v. Investment Advisers, Inc.*, April 28, 2000.

Testimony before the American Arbitration Association in *Roderick Covlin against C.S. Block New York, LLC, Dr. Sharaif Amanat, Omar Amanat*, March 30, 2000.

Expert Report of David I. Tabak before the National Association of Securities Dealers Office of Dispute Resolution in *Brooks, Houghton & Company, Inc. Private Corporate Advisors, Inc., and Brooks, Houghton Securities, Inc. against BIG Entertainment, Inc.*, March 17, 2000.

Declaration of David I. Tabak before the United States District Court for the Southern District of New York in *GST Telecommunications, Inc., GST USA, Inc., and GST Telecom Inc. v. Stephen Irwin, David Adler, and Olshan Grundman Frome & Rosenzweig LLP,* February 21, 2000.

Expert Report of David I. Tabak before the United States District Court for the Southern District of New York in *The Klass Report LLC and Christopher M. Klass against Telemation, Inc.*, December 15, 1999.

Expert Report of David I. Tabak, Ph.D. before the United States District Court for the Southern District of New York in *GST Telecommunications, Inc., GST USA, Inc., and GST Telecom Inc. v. Stephen Irwin, David Adler, and Olshan Grundman Frome & Rosenzweig LLP,* November 26, 1999.

Expert Report of David I. Tabak, Ph.D. before the National Association of Securities Dealers in *A.R. DiGima, Inc. vs. A.G. Edwards & Sons, Inc. and Eugene Damico*, November 5, 1999.

David I. Tabak

Deposition Testimony before the United States District Court for the Southern District of New York in *Oscar Gruss & Son, Inc. against Yossie Hollander*, October 22, 1999.

Expert Report of David I. Tabak before the United States District Court for the Southern District of New York in *Oscar Gruss & Son, Inc. against Yossie Hollander*, September 16, 1999.

Expert Report of Frederick C. Dunbar and David I. Tabak before the United States District Court for the Northern District of Alabama, Southern Division in *MedPartners, Inc. v. Dun & Bradstreet, Inc*, July 28, 1999.

Testimony before the International Chamber of Commerce International Court of Arbitration in *Hanbo Engineering and Construction Co., Ltd. and Hanbo Corporation v. CE Casecnan Water and Energy Company, Inc.*, April 13, 1998.

Expert Witness Statement of David I. Tabak before the International Chamber of Commerce, International Court of Arbitration in *Hanbo Engineering and Construction Co., Ltd. and Hanbo Corporation v. CE Casecnan Water and Energy Company, Inc.*, March 13, 1998.

David I. Tabak

## Publications

"*p*-Hacking and Event Studies in Securities Litigation," *NERA Working Paper*, April 12, 2023.

"How COVID-19 Impact Analysis May Shape MAE Disputes," (with Edward Flores), *Law360*, June 29, 2020.

COVID-19-related NERA webpages: (1) "S&P 500 Index: Daily Price Movements" (with Edward Flores), May 1, 2020 with updates; (2) "COVID-19, MAEs, and Preliminary Evidence of Disproportionate Impacts Within Industries" (with Edward Flores), June 9, 2020;  (3) "How COVID-19 Impact Analysis May Shape MAE Disputes") (with Edward Flores) reprint of article on Law360, June 29, 2020.

"Economic and Financial Analyses in Australian Securities Litigation in the Wake of *TPT Patrol Pty Limited as trustee for Amies Superannuation Fund v Myer Holdings Limited*," (with William S. Taylor), NERA Working Paper, January 2020.

"Testing Securities Market Efficiency With Cammer Factors," *Law360.com*, February 5, 2019.

"Securities Class Actions Appear to Be Largely 'Price-Maintenance' and Omissions Cases," *NERA Working Paper*, April 10, 2017.

"Further Insight into 'What Should We Expect When Testing for Price Response to News in Securities Litigation?'," *Oxford Business Law Blog*, September 27, 2016.

"Gauging Share-Price Response to News in Securities Litigation," *The CLS Blue Sky Blog, Columbia Law School's Blog on Corporations and the Capital Markets*, September 8, 2016.

"What Should We Expect When Testing for Price Response to News in Securities Litigation?" *NERA Working Paper*, August 11, 2016.

"Should Solvency Tests Give the Same Answer?"  *NERA Working Paper*, July 28, 2015

"Implications for Market Efficiency and Damages Analysis of Plaintiff Interpretations of *Halliburton II's* Statement that 'market efficiency is a matter of degree,'" *Loyola University Chicago Law Journal*, Spring 2015.

"The Solvency Two-Step," Guest Post on the Weil Bankruptcy Blog.  March 2013.

"Do Courts Count *Cammer* Factors?" NERA Working Paper, republished in the Harvard Law School Forum on Corporate Governance and Financial Regulation.  Also published in modified form as "Counting Cammer Factors – A Review of Case Law" at Law360.com, August 2012.

"Settlement reasonableness from negotiations to coverage disputes," *Litigation and Dispute Resolution 2012 Global Reference* Guide.  A prior version of this was published as a NERA Working Paper, February 2012.

David I. Tabak

"Guesstimating Loss for Sentencing," published in Law360.com, February 2012. (Originally published with the title "Estimating Loss For Sentencing Purposes." Retitled by Law360.com after initial publication on its website.)

"Economic Analysis of Loss in the United States Sentencing Commission's Proposed Methodologies," NERA Working Paper, February 2012.

"Guideline Companies in Valuation: A Careful View of the Market Approach," *Journal of Business Valuation*, 2011 Volume 1. (A previous version appeared as a NERA working paper entitled "Guideline Companies in Valuation: The Economist's View of the Market Approach" in October 2008.)

"The Matrixx of Materiality and Statistical Significance in Securities Fraud Cases," (co-authored with Frederick Lee of Boies, Schiller & Flexner) NERA Working Paper, December 2010.

"Materiality and Statistical Significance Explained" (co-authored with Frederick Lee of Boies, Schiller & Flexner), published in Law360.com, December 2010.

"Satisfying Fiduciary Duty Under ERISA," *Employment Law Strategist*, June 2010.

"Use and Misuse of Event Studies to Examine Market Efficiency," NERA Working Paper, April 2010. (A previous version appeared in September 2009, and a condensed version appeared as a Guest Column, "On the Misuse of Event Studies to Examine Market Efficiency," in May 2010 on www.securitiesdocket.com.)

 "Comment: 'A Closer Look at Correction for False Discovery Bias When Making Multiple Comparisons," *Journal of Forensic Economics*, December 2009.

Book Review of *Business Valuation: In Integrated Theory (Second Edition)* in *Valuation Strategies,* November/December 2008.

Guest Author/Respondent, *BVUpdate*, published by Business Valuation Resources, LLC, *Special Report:* What Will the Wall Street Meltdown Mean to the BV Profession? (with Raymund Wong), November 2008.

 "Inflation and Damages in a Post-*Dura* World," NERA Working Paper, September 2007.

"Multiple Comparisons and the Known or Potential Error Rate," *Journal of Forensic Economics,"* Volume XIX, Number 2, published March 2007.

"Making Assessments About Materiality Less Subjective Through The Use of Content Analysis," NERA Working Paper, March 2007.

"Risk Disclosures and Damages Measurement in Securities Fraud Cases," published in the *Securities Reform Act Litigation Reporter*, April 2006. (Previously published as a NERA Working Paper.)

Guest Author/Respondent, *BV Q&A Update*, published by Business Valuation Resources, LLC., January, March, June, and July 2004; February, May, August, and September 2005.

David I. Tabak

"Loss Causation and Damages in Shareholder Class Actions: When it Takes Two Steps to Tango," in *Securities Litigation & Enforcement Institute 2004,* published by the Practising Law Institute.  (Previously published as a NERA Working Paper.)

"The 'Less Than' Efficient Capital Markets Hypothesis: Requiring More Proof From Plaintiffs in Fraud-On-The-Market Cases" (with Paul A. Ferrillo and Frederick C. Dunbar), *St. John's Law Review,* Winter 2004.  (Previously published as a working paper by NERA and Weil, Gotshal & Manges, LLP.)

"Determination of the Appropriate Event Window Length in Individual Stock Event Studies" (with Dmitry Krivin, Robert Patton, and Erica Rose), NERA Working Paper, November 4, 2003.

"Inflation Methodologies in Securities Fraud Cases: Theory and Practice" (with Chudozie Okongwu), published in *Securities Litigation & Enforcement Institute 2003,* by the Practising Law Institute.  (Previously published as a NERA Working Paper.)

"Hedging and the Estimation of Marketability Discounts," in *Shannon Pratt's Business Valuation Update*, published by Business Valuation Resources, LLC, August 2003.  (Also reprinted in *BVR's Guide to Discounts for Lack of Marketability*, 2007.)

 "Shareholders' Suit against Corporation," in *Litigation Support Report Writing: Accounting, Finance, and Economic Issues*, edited by Jack P. Friedman and Roman L. Weil, published by John Wiley & Sons, Inc., 2003.

"A CAPM-Based Approach to Calculating Illiquidity Discounts," NERA Working Paper, November 2002.

"A Proposed Methodology to Measure Damages for Option Traders Alleging Securities Fraud" (with Svetlana Starykh and Marc Shotland), *Litigation Economics Review*, Vol. 5, No. 2, Winter 2001 (printed July 2002).

"Intraday Trading Rates in Shareholder Class Actions," *NERA Securities and Finance Insights*, June 2002.

"Materiality and Magnitude: Event Studies in the Courtroom" (with Frederick C. Dunbar), *Litigation Services Handbook: The Role of the Financial Expert, Third Edition, 2001*, edited by Roman L. Weil, Michael J. Wagner and Peter B. Frank, published by John Wiley & Sons, Inc. (Previous versions appeared in the 2000 Supplement to the *Litigation Services Handbook* and as a NERA Working Paper.)

"Are Investors Signalling You About Your Y2K Risk?" (with Vinita M. Juneja and Denise N. Martin), *Y2K Marketwatch*, December 1999.

"What Does the Market Think About Your Y2K Exposure?" (with Vinita M. Juneja and Denise N. Martin), *Viewpoint*, Issue No. 2, November 1999.

"Economic Analysis and Identification of Class Conflicts in Securities Fraud Litigation," NERA Working Paper, June 1998.

**Exhibit 2**
**Kandi Technologies Group, Inc.**
**Materials Considered**

### *Academic Literature*

Karpoff, Jonathan D., D. Scott Lee, and Gerald S. Martin, "The Consequences to Managers for Financial Misrepresentation," *Journal of Financial Economics*, 2008.

"Materiality and Magnitude: Event Studies in the Courtroom," David I. Tabak and Frederick C. Dunbar in Litigation Services Handbook, The Role of the Financial Expert, 3rd ed., edited by Roman L. Weil, Michael J. Wagner, and Peter B. Frank, John Wiley & Sons, Inc., 2001.

### *Case Law*

*Atlantica v. Sovereign Wealth Fund Samruk-Kazyna JSC*, Second Circuit.

*Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005).

*F.T.C. v. Fleetcor Techs., Inc.*, 620 F. Supp. 3d 1268, n.7 (N.D. Ga. 2022).

### *Declarations in this Matter*

Declaration of Dr. Adam Werner dated November 8, 2023.

Loss Causation and Damages Declaration of Dr. Adam Werner dated February 12, 2025.

Rebuttal Declaration of Dr. Adam Werner dated April 1, 2024.

### *Depositions in this Matter*

Deposition of Dr. Adam Werner dated January 22, 2024.

### *Expert Reports in Other Matters*

Expert Report of David I. Tabak dated March 11, 2022 ECF 355-12, in *Sjunde AP Fonden* et al. *v. General Electric Company and Jeffrey S. Bornstein*, Case No. 1:17-cv-8457-JMF in the Southern District of New York.

Expert Report of David Tabak, PhD. in *In re Merck & Co., Inc. Securities, Derivative, and "ERISA" Litigation,* Civil Action No. 05-2367 (SRC) in the District of New Jersey, ECF 658-25.

Rebuttal Declaration of Dr. Adam Werner dated April 29, 2019 ECF366-3 in *Nibur* et al. *v. Sandridge Mississippian Trust I* et al. in the Western District of Oklahoma.

### *News Stories*

"Kandi Technologies Reports Full Year 2016 Financial Results," *Kandi Technologies*, March 16, 2017.

**Exhibit 2**
**Kandi Technologies Group, Inc.**
**Materials Considered**

*News Stories (cont.)*

"Kandi Technologies Reports Full Year 2016 Financial Results," *Newsfile Corp.*, March 16, 2017.

*Pleadings in this Matter*

Opinion and Order dated September 28, 2024.

Opinion and Order dated September 13, 2022.

Second Amended Complaint for Violations of the Federal Securities Laws dated December 3, 2021.

*Other Materials*

*Convention,* MERRIAM-WEBSTER (last visited February 24, 2025), https://www.merriam-webster.com/dictionary/convention.

"p-Hacking and Event Studies in Securities Litigation" dated April 12, 2023, available at https://www.nera.com/content/dam/nera/publications/2023/PUB_p-Hacking_and_Event_Studies.pdf.

**Exhibit 3**
**Kandi Technologies Group, Inc.**
**March 13, 2017 Closing Price Overlaid on ECF 126-2**



# Aggregate Damages Estimate: KNDI
## KNDI price and volume
### August 10, 2015 through June 13, 2017

Price on end
of Class
Period (March
13, 2017)

*PSLRA 90-Day: $4.05*

PRELIMINARY | SUBJECT TO FURTHER REVIEW AND EVALUATION