**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SRINIVASAN VENKATARAMAN, Individually, and On Behalf of All Others Similarly Situated | Civil Action No. 1:20-cv-08082-DEH |
| Plaintiff, | |
| -against- | |
| KANDI TECHNOLOGIES GROUP, INC., XIAOMING HU, CHENG WANG, LIMING CHEN, JERRY LEWIN and HENRY YU, | |
| Defendants. | |

**DEFENDANTS' RESPONSE TO**
**PLAINTIFF'S LOCAL RULE 56.1 STATEMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of this Court, Defendants, by and through their undersigned counsel, respectfully submit this Response to the Local Rule 56.1 Statement ("SOF") filed by Lead Plaintiff Tom Brooks ("Plaintiff") (ECF No. 127).

In responding to the Plaintiff's SOF, Defendants neither waive nor intend to waive, but expressly intend to preserve and reserve, and hereby do preserve and reserve (a) any and all objections as to the authenticity, relevance, competency, materiality or admissibility at any proceeding, including the trial of this matter, of any information, testimony or documents cited as

exhibits by Plaintiff and (b) all rights to object on any grounds to the use of any information set forth in the SOF in any proceeding, including at trial.

In responding to this SOF, Defendants do not concede that Plaintiff has "produce[d] admissible evidence to support the fact[s]" cited as required by Federal Rule of Civil Procedure 56(c) and reserve all rights relating thereto.

For purposes of this Response, each numbered paragraph below corresponds to the same numbered paragraph in Plaintiff's SOF.  The full text of each paragraph is reprinted below.

| ITEM NUMBER | UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 1 | On August 9, 2015, Kandi filed its Form 10-Q for the quarter ended June 30, 2015, wherein the Company reported no revenues from related party transactions during 2Q 2015. In the same filing, Defendants represented that Kandi's disclosure controls and procedures were effective.<br><br>**Response**: Disputed.  The documents cited reflect that Kandi filed its Form 10-Q for the quarter ending June 30, 2015 on August 10, 2015.  The paragraph mischaracterizes the document cited by omitting the complete sentence regarding controls and procedures. The full statement provides that Defendants' disclosure controls and procedures are designed to provide only "reasonable assurance of achieving their objectives and management [] applies its judgment in evaluating the cost-benefit relationship of possible controls and procedures." | Declaration of Ex Kano S. Sams II in Support of Plaintiff's Motion for Summary Judgment and/or Summary Adjudication ("Sams Decl."), Exhibit ("Ex.") 1 (Loss Causation and Damages Declaration of Dr. Adam Werner") at ¶¶18-19. |
| 2 | On August 10, 2015, Kandi announced its financial results for 2Q 2015. In its earnings press release, the Company reported total revenues of $48 million for 2Q 2015 and net income of $5.4 million, or $0.12 per share. According to CFO Wang, the Company's 2Q 2015 financial results aligned with the Company's own expectations.<br><br>**Response**:  Undisputed. | Sams Decl., Ex 1 at ¶17. |
| 3 | On November 9, 2015, Kandi announced its financial results for 3Q 2015.  In Kandi's earnings press release, the Company reported total revenues of $50.5 million for 2Q 2015 and net income of $2.3 million, or $0.05 per share. CFO Wang also | Sams Decl., Ex 1 at ¶20. |

| ITEM NUMBER | UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | commented that the Company's financial results were within its expectations.<br><br>**Response**: Disputed. The document cited mischaracterizes Mr. Wang's comment which instead stated that "[b]oth sales and gross margin were in line with [the] [Company's] expectations". | |
| 4 | On the same day, Kandi also filed its Form 10-Q for the quarter ended September 30, 2015, wherein the Company again reported no revenues from related party transactions. In the same filing, Defendants also reiterated Kandi's conclusion that the Company's internal controls over financial reporting were effective and that there had been no changes to its internal controls over financial reporting since the previous quarter.<br><br>**Response**: Disputed. The paragraph mischaracterizes the document cited by omitting the complete sentence regarding internal controls. The full statement provides that there had been no changes that "have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting" which clearly establishes that there are limitations on the Company's financial reporting disclosures. | Sams Decl., Ex 1 at ¶¶21-22. |
| 5 | A week prior to filing its FY 2015 financial results, Kandi's Audit Committee held an internal teleconference meeting to "review[], discuss[], and approv[e]" the Company's Form 10-K for the fiscal year ended December 31, 2015. During this meeting, the Audit Committee spoke on Kandi's classification and treatment of related party transactions and identified two related parties – Kandi USA and the Service Company.<br><br>**Response**: Disputed. The documents cited do not support the assertion that the Audit Committee spoke on the "classification and treatment" of related party transaction, which is vague and ambiguous and is not susceptible of response. | Sams Decl., Ex 1 at ¶23; KANDI-SDNY-00063348-50 |
| 6 | On March 14, 2016, Kandi announced its financial results for 4Q 2015 and FY 2015. For the fourth quarter, the Company reported revenues of $58.8 million and net income of $0.8 million, or $0.02 per share. CFO Wang also stated that the Company's FY 2015 financial results and performance met its own expectations. | Sams Decl., Ex 1 at ¶24. |

| ITEM NUMBER | UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | **Response**: Undisputed. | |
| 7 | On March 14, 2016, Kandi also filed its Form 10-K, in which it made certain representations regarding related party transactions. In the same filing, Kandi represented that its internal controls and procedures were effective as of December 31, 2021, pursuant to an annual review that it conducted. Defendants also reiterated that there had been no changes in Kandi's internal control over financial reporting since the previous quarter.<br><br>**Response**: Disputed. The documents cited reflect that Kandi filed its Form 10-K for the financial year ending December 31, 2015. The paragraph mischaracterizes the document cited by omitting the complete sentence regarding internal controls. The full statement provides that there had been no changes that "have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting" which clearly establishes that there are limitations on the Company's financial reporting disclosures. | Sams Decl., Ex 1 at ¶¶25-27. |
| 8 | On March 22, 2016, an internal Company e-mail was sent to Kandi's Audit Committee members explaining that transactions made with Zhejiang ZuoZhongYou Electric Vehicle Service Co. would now be considered a related party transaction and that Kandi's FY 2015 and FY 2016 transactions with said company shall be ratified by the Audit Committee.<br><br>**Response**: Undisputed. | Sams Decl., Ex 1 at ¶28; KANDI-SDNY_00063340 |
| 9 | On April 13, 2016, the Company filed a Form 8-K announcing that it had dismissed AWC Limited as its independent registered public accounting firm and had instead engaged BDO China Shu Lu Pan Certified Public Accountants LLP ("BDO China").<br><br>**Response**: Disputed. The paragraph mischaracterizes the document cited to the extent it suggests the Company dismissed AWC due to issues with the accounting firm's accounting principles, financial statement disclosure, or auditing practices. The cited document states "there were no disagreements with AWC on any matter of accounting principles or practices, financial statement disclosure, or auditing scope or procedure." | Sams Decl., Ex 1 at ¶29. |

| ITEM NUMBER | UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 10 | On May 10, 2016, Kandi announced its financial results for 1Q 2016.  For the quarter, the Company reported revenues of $58.8 million and net income of $0.1 million, or $0.00 per share.  CFO Wang commented that despite the Company's strong revenue performance, its net income figures suffered from a "lack of EV products sales by our JV Company in this quarter." <br><br> **Response**: Disputed.  The paragraph mischaracterizes the document cited.  The actual quote from Mr. Wang states: "Despite the lack of EV product sales by our JV Company, Kandi still has revenue growth … [h]owever, our net profit has been significantly impacted by the JV Company's net profit during the quarter". The paragraph further omits that Mr. Wang believed the Company can still "achieve good financial performance in line with the revenue growth from the JC Company for the rest of 2016". | Sams Decl., Ex 1 at ¶30. |
| 11 | On May 10, 2016, Kandi filed its Form 10-Q with the SEC. In this Form 10-Q, other than a $3.2 million transaction with its Service Company, again related to the Service Company's "needs to buy battery for the speed upgrade and also EV parts for the repairing and maintenance for its operating electric vehicles," Kandi reported no other related party transactions. Defendants, however, continued to represent that Kandi's internal controls were effective and that there had been no changes in its internal control procedures since the last quarter. <br><br> **Response**: Disputed.  The paragraph's assertion that "Kandi reported no other related party transactions" is incorrect and mischaracterizes the document cited.  The Form 10-Q, filed May 10, 2016, reported transactions with the JV Company in addition to the Service Company.  The paragraph further mischaracterizes the document cited by linking to distinct concepts: (i) the reporting of related party transactions and (ii) the effectiveness of internal controls.  Kandi's knowledge of related-party transactions and belief that it's internal controls were effective are not mutually exclusive.  Further, the paragraph mischaracterizes the document cited by omitting the complete sentence regarding internal controls. The full statement provides that there had been no changes that "have materially affected, or are reasonably likely to materially affect, our internal control over financial | Sams Decl., Ex 1 at ¶¶31-32. |

| ITEM NUMBER | UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | reporting" which clearly establishes that there are limitations on the Company's financial reporting disclosures. | |
| 12 | On August 9, 2016, Kandi announced its financial results for 2Q 2016. For the quarter, the Company reported revenues of $55.2 million and net income of $2.8 million, or $0.06 per share. Additionally, CFO Wang touted the Company's financial results.<br><br>**Response:** Disputed. The paragraph mischaracterizes the document cited, which does not suggest that Mr. Wang "touted" the results. Rather, Mr. Wang commented that the Company "performed very well financially" in the quarter. | Sams Decl., Ex 1 at ¶33. |
| 13 | On August 9, 2016, Kandi filed its Form 10-Q with the SEC. In the filing, Kandi reported no related party transactions other than a $769,065 sale to its Service Company related to "the Service Company needs to buy battery for the speed upgrade and also EV parts for the repairing and maintenance for its operating electric vehicles." No other related party transactions were reported. In the same filing, Kandi also represented that its internal controls were effective and that there had been no changes to its internal controls since the latest quarter.<br><br>**Response**: Disputed. The paragraph's assertion that "Kandi reported no other related party transactions" is incorrect and mischaracterizes the document cited. The Form 10-Q, filed August 9, 2016, reported transactions with the JV Company in addition to the Service Company. The paragraph further mischaracterizes the document cited by linking to distinct concepts: (i) the reporting of related party transactions and (ii) the effectiveness of internal controls. Kandi's knowledge of related-party transactions and belief that it's internal controls were effective are not mutually exclusive. Further, the paragraph mischaracterizes the document cited by omitting the complete sentence regarding internal controls. The full statement provides that there had been no changes that "have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting" which clearly establishes that there are limitations on the Company's financial reporting disclosures. | Sams Decl., Ex 1 at ¶¶34-35. |
| 14 | On November 9, 2016, Kandi announced its financial results for 3Q 2016. For the quarter, the Company reported revenues of $6.4 million and a net loss of $0.6 million, or -$0.01 per share. Defendants explained that the dramatic | Sams Decl., Ex 1 at ¶36. |

| ITEM NUMBER | UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
|  | decline in revenue from previous quarters was due to the Chinese government's hold on subsidy payments pending a government review of the EV manufacturing sector.<br><br>**Response**: Disputed. The document cited does not support the assertion that the "dramatic decline in revenue" was due to the hold on subsidy payments. Rather, the Company explained that the hold on subsidy payment impacted the JV Company's production and EV parts sales, but that the Company has "accomplished lots of fundamental business growth." |  |
| 15 | On November 9, 2016, Kandi also filed its Form 10-Q with the SEC. The Company reported a negative sales figure for related party transactions to its Service Company of ($26,490). Defendants explained that the negative related party sales figure was a result of "the exchange loss due to Chinese currency depreciation compared to US Dollar in the third quarter of 2016" and reported no other related party transactions. Again, Kandi also reaffirmed the effectiveness of its internal controls and that there had been no changes to its internal controls.<br><br>**Response**: Disputed. The paragraph's assertion that Kandi "reported no other related party transactions" is incorrect and mischaracterizes the document cited. The Form 10-Q, filed November 9, 2016, reported transactions with the JV Company in addition to the Service Company. The paragraph further mischaracterizes the document cited by linking to distinct concepts: (i) the reporting of related party transactions and (ii) the effectiveness of internal controls. Kandi's knowledge of related-party transactions and belief that it's internal controls were effective are not mutually exclusive. Further, the paragraph mischaracterizes the document cited by omitting the complete sentence regarding internal controls. The full statement provides that there had been no changes that "have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting" which clearly establishes that there are limitations on the Company's financial reporting disclosures. | Sams Decl., Ex 1 at ¶37. |
| 16 | On November 14, 2016, the Company issued a press release announcing that, effective immediately, CFO Wang would be resigning from the position to become the Company's new Chief Strategy Officer. On this news, the price of Kandi | Sams Decl., Ex 1 at ¶¶38-39. |

| ITEM NUMBER | UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | stock fell from its previous closing price of $3.90 per share on November 11, 2016 to close at $3.50 per share on November 14, 2016, a decline of $0.40 per share or -10.26%.<br><br>**Response:**  Disputed.  The document cited does not support the assertion that Mr. Wang's transition to Company CSO would be "effective immediately".  The paragraph mischaracterizes the announcement which stated that Mr. Wang would be resigning as CFO "in order to assume the position of Chief Strategy Officer" and "will be responsible for driving Kandi's corporate strategy and implementing investment decisions."  The Plaintiff's assertion that Kandi's stock fell from its previous closing price is not supported by any documents or evidence. | |
| 17 | On March 13, 2017, after the close of trading, Kandi filed a Form 8-K with the SEC titled "Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review".  The Form 8-K explained that, during Kandi's internal review of its upcoming annual report and Form 10-K, management had "identified certain areas in the Company's previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 (the 'Previously Issued Financial Statements'), that require adjustment . . . ."  Defendants explained that because of these required adjustments, the Company's board of directors, audit committee, and management have "concluded that the Company's Previously Issued Financial Statements should no longer be relied upon" and that a restatement would be filed alongside its fiscal year 2016 Form 10-K.<br><br>**Response:**  Undisputed. | Sams Decl., Ex 1 at ¶¶40-41. |

| ITEM NUMBER | UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 18 | On March 13, 2017, Kandi stated the following: "The Restatements will include separate audited financial statements for the Company's equity investment in the JV Company, corrections to the classification of notes receivable and notes payable in the Company's statements of cash flow, revisions in the Company's financial statement presentation to separately identify certain related party accounts on the face of the Balance Sheets and the Consolidated Statements of Income (Loss) and Comprehensive Income (Loss), certain amendments to Note 20 – Taxes of the Notes to the Company's Consolidated Financial Statements, the adjustment of previously recorded construction-in-progress back to prepayment in Note 16 – Construction-in-Progress of the Notes to the Company's Consolidated Financial Statements, expansions of two tables of sales to and purchases from the JV Company in Note 24 – Summarized Information of Investment in the JV Company of the Notes to the Company's Consolidated Financial Statements from two years to three years, and the removal of 'unaudited' labels from certain tables in Note 20 – Taxes of the Notes to the Company's Consolidated Financial Statements." <br><br> **Response:** Undisputed. | Sams Decl., Ex 1 at ¶41. |
| 19 | Defendants also explained that because of requiring these restatements, the Company would be "reassessing its internal controls over its financial reporting and compliance programs" and further warned that "The result of this reassessment could lead the Company to conclude that there were deficiencies in its internal controls over financial reporting that constitute material weaknesses." Moreover, there were no new Company-specific developments on March 15, 2017. <br><br> **Response:** Disputed. The paragraph mischaracterizes the document cited, which states that "in conjunction" with the Restatements, the Company is reassessing its internal controls, not "because of" the Restatements. Further, the document cited does not reflect that Kandi ever administered a "warning", but rather simply informed that the results could lead the Company to conclude that there were deficiencies. The paragraph's assertion of "Company-specific developments" is vague and ambiguous and is not susceptible of response. | Sams Decl., Ex 1 at ¶¶42-43. |

| ITEM NUMBER | UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 20 | When Kandi ultimately filed its Form 10-K for the fiscal year ended December 31, 2016 on March 16, 2017, the Company also included within this filing the restated financial statements for FY 2015 and 1Q-3Q of 2016.  In each restated financial statement, the corrected distribution between related party transaction revenues and non-related party transaction revenues contrasted with what Defendants represented throughout the Class Period – that there were either no or *de minimis* amounts of related party transactions. For example, in FY 2015, where Kandi had previously represented that there were no related party transactions, the restated financial statements show that of the $201,069,173 in total revenues reported for FY 2015 $194,279,14, or over 96%, were actually from "JV Company and related parties."<br><br>**Response:**  Disputed.  The paragraph mischaracterizes the restatement by suggesting that the corrected distribution between related party and non-related party revenues significantly contrasted with prior representations. The Restatement did not change the Company's net income figures, indicating that the corrections were related to classification of revenue sources rather than a material misrepresentation of financial performance.  Further, the paragraph's use of a single example to characterize the entire Restatement, is a generalization and cannot accurately represent the full scope of the Restatement across the entire Class Period. | Sams Decl., Ex 1 at ¶44. |
| 21 | Plaintiff has provided unrebutted evidence that Kandi's stock traded in an efficient market during the Class Period, and therefore is entitled to summary judgment on the issue of class-wide reliance<br><br>**Response:**  Disputed.  The cited documents do not support the assertion that Plaintiff has proved class-wide reliance, as the Court's Class Certification Order found that "the fraud-on-the-market theory creates a presumption of class-wide reliance, *which will enable* Plaintiff to establish Defendants' liability using evidence common to the class" (ECF No. 115, Class Cert. Order at 7).  The ruling determined only that reliance could be proven on a class-wide basis, not that reliance had been established. | ECF No. 115 at 7; ECF No. 96-1 at 9-48. |
| 22 | This case involves "a connection between the misrepresentation or omission and the purchase or sale of a security" and Plaintiff suffered an economic loss. | ECF No. 11-2 and 11-3. |

| ITEM NUMBER | UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | **Response**: Disputed.  The quoted language does not appear in the documents cited by Plaintiff.  The documents cited show Lead Plaintiff's sworn certification and attached transactions, which differs from Plaintiff's characterization. | |
| 23 | Kandi's November 14, 2016 announcement that, effective immediately, CFO Wang would be resigning from the position to instead become the Company's new Chief Strategy Officer represented a trigger event that signaled a potential link between and the departure and the fraud alleged here – a link that was bolstered by Kandi's poor financial performance preceding the disclosure.<br><br>**Response**: Disputed.  The paragraph relies on the Werner Declaration, which is inadmissible as evidence because: (i) Plaintiff failed to disclose this expert during the discovery period in violation of Fed. R. Civ. P. 26(a)(2), and (ii) expert opinions constitute opinions rather than facts and create genuine issues of material fact, contradicted by Defendants' expert, Dr. Tabak.  The document relied upon only considers "Forced termination," "Resigned or retired," or "Death" categories as signals of fraud, not internal position changes within management.  (Tabak Decl. ¶ 17-18.) | Sams Decl., Ex 1 at ¶59. |
| 24 | Kandi's announcement on March 13, 2017 possess all the hallmarks of a corrective disclosure because this was the event by which market participants learned the truth: that Kandi's internal controls were deficient, that a restatement of financial results was necessary, and that all the financial results market participants had been relying on since the start of FY 2015 were no longer reliable.  All of the information market participants received via this disclosure directly relates to (and corrects) Plaintiff's allegations of misrepresentations, omissions, and/or half-truths.<br><br>**Response:**  Disputed.  The characterization of Kandi's March 13, 2017 "corrective disclosure" constitutes an improper legal conclusion, not a fact.  Whether the announcement qualifies as a corrective disclosure is a complex legal determination requiring analysis of causation, materiality and prior knowledge.  Plaintiff further mischaracterizes both the content and impact of the announcement, which made corrections and adjustments only to the distribution of related party transactions without changing the Company's overall financial results.  The | Sams Decl., Ex 1 at ¶60. |

| ITEM NUMBER | UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | announcement's connection to prior statements and its market impact remain disputed issues of fact and demonstrate that market movements following the announcement were influenced by multiple factors unrelated to the disclosure itself.  (Tabak Decl. ¶ 21-27, 45.) | |
| 25 | The full impact of Kandi's March 13, 2017 disclosure was not limited to only one trading day. Indeed, just two days later, Kandi filed restated financial statements that sought to correct the previous accounting errors, and these new financial statements revealed the full extent of the Company's previous accounting misdeeds. That is, where the March 13, 2017 disclosure (after the close of trading) revealed the existence of internal control weaknesses and accounting fraud, the March 16, 2017 Form 10-K filing detailed the economic extent of both.<br><br>**Response:**  Disputed.  The paragraph relies on the Werner Declaration, which is inadmissible as evidence because: (i) Plaintiff failed to disclose this expert during the discovery period in violation of Fed. R. Civ. P. 26(a)(2), and (ii) expert opinions constitute opinions rather than facts and create genuine issues of material fact, contradicted by Defendants' expert, Dr. Tabak.  The event window used by Dr. Werner is inconsistent and produces a faulty result.  (Tabak Decl. ¶ 5, 29, 38-42.) | Sams Decl., Ex 1 at ¶60. |
| 26 | The entirety of the residual decline on November 14, 2016 was caused by negative signals communicated via the sudden CFO departure, demonstrating that the alleged fraud caused investor losses.   The residual return was statistically significant at the 90%, 95%, and 99% confidence level, indicating that the abnormal return was too severe to have been a random fluctuation and thereby demonstrating that the abnormal stock return was statistically significant.<br><br>**Response:**  Disputed.  The paragraph relies on the Werner Declaration, which is inadmissible as evidence because: (i) Plaintiff failed to disclose this expert during the discovery period in violation of Fed. R. Civ. P. 26(a)(2), and (ii) expert opinions constitute opinions rather than facts and create genuine issues of material fact, contradicted by Defendants' expert, Dr. Tabak.   The inconsistent event window methodology undermines the paragraph's assertions, as it relies on Dr. Werner's application of a one-day event window for the November 14, 2016 announcement but a | Sams Decl., Ex 1 at ¶¶72, 74, 81. |

| ITEM NUMBER | UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | three-day window for the March 13, 2017 Restatement Announcement.  Had Dr. Werner applied the same three-day window to the November 14, 2016 news, the cumulative price movement would have been a positive 0.25% and therefore, not statistically significant.  (Tabak Decl. ¶ 41.) | |
| 27 | For Kandi's stock decline from March 14-16, 2017, the cumulative residual return from March 14-16, 2017 was statistically significant at the 90%, 95%, and 99% confidence level and also demonstrated that the alleged fraud caused investor losses.<br><br>**Response:**  The paragraph relies on the Werner Declaration, which is inadmissible as evidence because: (i) Plaintiff failed to disclose this expert during the discovery period in violation of Fed. R. Civ. P. 26(a)(2), and (ii) expert opinions constitute opinions rather than facts and create genuine issues of material fact, contradicted by Defendants' expert, Dr. Tabak.  Dr. Werner's analysis fails to isolate the impact of the related-party transaction disclosures from other accounting issues that were dismissed from this case. (Tabak Decl. ¶ 24.)  Dr. Werner's methodology is inconsistent as applying a three-day window to the March 2017 event while using a one-day window for the November 14, 2016 event, which produces unreliable results. (Tabak Decl. ¶ 29, 41.) There is also no evidence of any corrective disclosure on March 15, 2017, and notably, Kandi's stock price remained unchanged between March 14 and March 15, 2017 (Tabak Decl. ¶ 30), contrary to the claim of investor losses during this period. | Sams Decl., Ex 1 at ¶¶78, 80-81. |
| 28 | Out-of-pocket damages per share here range from $0 to $1.10 per share, excluding prejudgment interest.<br><br>**Response:**  The paragraph relies on the Werner Declaration, which is inadmissible as evidence because: (i) Plaintiff failed to disclose this expert during the discovery period in violation of Fed. R. Civ. P. 26(a)(2), and (ii) expert opinions constitute opinions rather than facts and create genuine issues of material fact, contradicted by Defendants' expert, Dr. Tabak.   The Werner Declaration employs a flawed constant-dollar inflation approach, erroneously claiming that the price of Kandi stock was falling (Tabak Decl. ¶ 43-44; Werner Declaration ¶ 91), when in fact Kandi's stock price rose and fell, with 39 days where the stock price was lower than immediately preceding the March 13, 2017 Restatement | Sams Decl., Ex 1 at ¶94. |

| ITEM NUMBER | UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | (Tabak Decl. ¶ 45). This methodological error leads to overstated inflation and damages calculations. (Tabak Decl. ¶ 46-47.) | |
| 29 | Aggregate damages for the November 14, 2016 disclosure were $5.9 million, and the cumulative damages for the March 14, 2017 disclosure were $9.8 million, for a two-trader aggregate damages calculation of $15.5 million for the damages in this case.<br><br>**Response**: Disputed.  The paragraph relies on the Werner Declaration, which is inadmissible as evidence because: (i) Plaintiff failed to disclose this expert during the discovery period in violation of Fed. R. Civ. P. 26(a)(2), and (ii) expert opinions constitute opinions rather than facts and create genuine issues of material fact, contradicted by Defendants' expert, Dr. Tabak.  The Werner Declaration employs a flawed constant-dollar inflation approach, erroneously claiming that the price of Kandi stock was falling (Tabak Decl. ¶ 43-44; Werner Declaration ¶ 91), when in fact Kandi's stock price rose and fell, with 39 days where the stock price was lower than immediately preceding the March 13, 2017 Restatement (Tabak Decl. ¶ 45).  This methodological error leads to overstated inflation and damages calculations. (Tabak Decl. ¶ 46-47.) | Sams Decl., Ex 2 at 2. |
| 30 | On August 1, 2016, Defendants Yu, Lewin, Chen, and Wang attended another Audit Committee meeting, and CFO Wang reported to the others that "for the six months ending June 30, 2016" "sales to the Service Company totaled nearly $4 million, while receivables from the Service Company totaled nearly $11 million."<br><br>**Response:** Undisputed. | KANDI-SDNY_0008280-784. |
| 31 | Defendants Lewin, Chen, and Wang, were aware of internal control issues as described by Defendants Yu as of August 21, 2015.  (KANDI-SDNY_00006153-154; Deposition transcript of Henry Yu at 56-61).<br><br>**Response:** Disputed.  The paragraph's assertion that Lewin, Chen, and Wang were aware of internal control issues as of August 21, 2015 is not supported by the cited documents.  Rather, the document cited indicates that Kandi sought to retain an experienced auditor to implement improvements of financial reporting.  (KANDI-SDNY_00006153-154.)  The testimony of Henry Yu confirms that the change in auditor | KANDI-SDNY_00006153-154; Deposition transcript of Henry Yu at 56-61. |

| ITEM NUMBER | UNDISPUTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | was to retain "a bigger CPA firm [with] more experience." (Yu Dep. at 57:22-28:8.) | |
| 32 | An investor presentation dated August 2016 included information regarding related party sales, such as sales related to ZZY, an entity in which Defendant Hu admitted Kandi had an ownership interest.<br><br>**Response:**   Disputed. To the extent that the paragraph suggests Hu "admitted" Kandi had an ownership interest, the documents cited establish that the ownership interest was "no secret."  (Hu Dep. at 69:6-9.) | KANDI-SDNY_00009346-381; Deposition transcript of Cheng Wang at 131-33; Deposition transcript of Xiaoming Hu at 49-50, 69-71, 117-120. |

Dated: New York, New York
       March 28, 2025

Respectfully submitted,


 */s/ Richard J.L. Lomuscio*
Richard J.L. Lomuscio
Nicole Khalouian
**STINSON LLP**
100 Wall Street, Suite 201
New York, New York 10005
Phone: 646.883.7675
richard.lomuscio@stinson.com
nicole.khalouian@stinson.com

*Attorneys for Defendants Kandi Technologies Group, Inc., Xiaoming Hu, Cheng Wang, Liming Chen, Jerry Lewin, and Henry Yu*

15