**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Srinivasan Venkataraman, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>Kandi Technologies Group, Inc., Xiaoming Hu, Cheng Wang, Bing Mei, Liming Chen, Jerry Lewin, and Henry Yu,<br><br>Defendants. | Civil Action No. 20 CIV. 8082 (DEH)<br><br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   DEFENDANTS' MOTION SHOULD BE DENIED......................................................... 2

     A.    The Court Should Deny Defendants' Motion Because Plaintiff Has Demonstrated Loss Causation ................................................................................................ 2

     B.    The Court Should Deny Defendants' Motion Because Plaintiff Has Demonstrated Damages........................................................................................................ 6

     C.    *Macquarie* Has No Impact on this Case Because Plaintiff's Claims Are Not Based Upon Pure Omissions ...................................................................................... 7

     D.    The Court Cannot Grant Summary Judgment in Favor of Defendants on the Issue of Whether CFO Wang's Resignation Contributes to Loss Causation................... 9

     E.    The Deadlines to Which Defendants Refer for Expert Discovery Were Submitted in the Context of Class Certification....................................................................... 11

     F.    Plaintiff's Section 20(a) Control Person Claims.................................................. 11

III.  CONCLUSION................................................................................................. 11

## TABLE OF AUTHORITIES

CASES

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
  556 F. Supp. 3d 100 (D. Conn. 2021)..................................................................... 10

*Dalberth v. Xerox Corp.*,
  766 F.3d 172 (2d Cir. 2014)..................................................................................... 10

*Desvarieux v. Axiom Holdings, Inc.*,
  No. 17CIV4756JPCGWG, 2022 WL 1467973 (S.D.N.Y. May 10, 2022)................................. 6

*Gruber v. Gilbertson*,
  628 F. Supp. 3d 472 (S.D.N.Y. 2022)..................................................................... 11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)................................................................................................. 2

*In re Buca Inc. Sec. Litig.*,
  No. 05-1762 DWFAJB, 2006 WL 3030886 (D. Minn. Oct. 16, 2006) ................................... 10

*In re Omnicom Grp., Inc. Sec. Litig.*,
  541 F. Supp. 2d 546 (S.D.N.Y. 2008)..................................................................... 10

*In re Stillwater Cap. Partners Inc. Litig.*,
  858 F. Supp. 2d 277 (S.D.N.Y. 2012)..................................................................... 10

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
  601 U.S. 257 (2024)............................................................................................. 1, 9

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)................................................................................................... 2

*Moab Partners, L.P. v. Macquarie Infrastructure Corp.*,
  No. 21-2524, 2024 WL 4356386 (2d Cir. Oct. 1, 2024)............................................. 7

*Pub. Emps. Ret. Sys. of Mississippi, Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*,
  769 F.3d 313 (5th Cir. 2014) ................................................................................... 10

*Universal Health Servs., Inc. v. United States*,
  579 U.S. 176 (2016)............................................................................................. 7, 8

STATUTES

15 U.S.C. §78u-4(b)(4) ........................................................................................... 2

RULES

Fed. R. Civ. P. 56 .............................................................................................................. 1

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Lead Plaintiff Tom Brooks ("Plaintiff") hereby opposes Defendants' motion for summary judgment ("Motion").[1]

## I.    INTRODUCTION

The Court should deny Defendants' Motion for several reasons. First, Defendants' primary argument is that Plaintiff purportedly has not presented evidence demonstrating loss causation or damages. Plaintiff, however, has done so. Indeed, Plaintiff previously submitted the Loss Causation and Damages Declaration of Dr. Adam Werner ("Werner Declaration"). ECF No. 126-1. The findings and conclusions reached in the Werner Declaration demonstrate that Plaintiff has established loss causation and damages.

Second, Defendants also contend that they are entitled to summary judgment because Defendants' misrepresentations are purportedly not actionable as a matter of law after the Supreme Court's decision in *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257 (2024). As demonstrated below, however, Defendants' argument fails because Plaintiff's claims are not based purely upon omissions.

Finally, Defendants assert that summary judgment is warranted for Plaintiff's control person claims brought pursuant to Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") because summary judgment is purportedly warranted for Plaintiff's primary claims under Section 10(b) of the Exchange Act. But since summary judgment is unwarranted for

---

[1] Unless otherwise stated, all Rules references are to the Federal Rules of Civil Procedure. Defendants are: (1) Kandi Technologies Group, Inc. ("Kandi" or the "Company"); (2) Xiaoming Hu ("Hu"); (3) Cheng Wang ("Wang"); (4) Liming Chen ("Chen"); (5) Jerry Lewin ("Lewin"); and (6) Henry Yu ("Yu") (collectively "Defendants"). Defendants Hu, Wang, Chen, Lewin, and Yu are collectively the "Individual Defendants." Unless otherwise indicated, all emphasis is added, all internal quotations and citations are omitted.

Plaintiff's primary claims, it is also unwarranted for Plaintiff's control person claims. Accordingly, the Court should deny Defendants' motion.[2]

## II.    DEFENDANTS' MOTION SHOULD BE DENIED

To state a claim under the Exchange Act, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).   Defendants' Motion focuses upon the elements of loss causation and damages.[3]

### A.    The Court Should Deny Defendants' Motion Because Plaintiff Has Demonstrated Loss Causation

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), which applies to Exchange Act claims, provides that "the plaintiff shall have the burden of proving that the act or omission of the defendant alleged . . . caused the loss for which the plaintiff seeks to recover damages."  15 U.S.C. §78u-4(b)(4).  The Werner Declaration sets forth evidence that precludes granting Defendants' Motion.

---

[2] Defendants repeatedly reference events that occurred in different cases involving Kandi.  Motion at 5-6, 17.  However, the outcome of different cases have no bearing on the propriety of the claims alleged here.

[3] Within Plaintiff's motion for summary adjudication, Plaintiff referenced certain documents that were potentially subject to the protective order in the case.  Counsel for Plaintiff has conferred with counsel for Defendants regarding such documents, and counsel for Defendants consents to the filing of such documents without sealing.  *See* Declaration of Ex Kano S. Sams II in Support of Plaintiff's Response to Defendants Motion for Summary Judgment ("Sams Declaration"), Exhibits 1-8.  Additionally, Plaintiff submits the document Bates stamped KANDI-SDNY_082779 in place of the reference to KANDI-SDNY_0008280 in Plaintiff's motion for summary adjudication as the substance of the document and the proffered proposition (without quotations) is the same.

Specifically, Dr. Werner found that financial economic principles compel a conclusion of loss causation in this case.  ECF No. 126-1 at 48.  Among other things, Dr. Adam Werner opined that according to fundamental principles of finance and valuation, a Company's revenues are a key determinant of a company's value and the value of a company's stock.  *Id*. at 48.  Dr. Werner found that for Kandi, related party transactions were a major part of its reported financial results during the Class Period, but this fact was misrepresented to investors.  *Id*.  By misrepresenting the actual source of its revenues (and therefore also earnings and cash flows), Kandi, in turn, misrepresented to investors the sustainability and prospects of these revenues.  *Id*.  That revenue, and the ability for investors to rely on accurate revenue figures, is an important determinant of a company's value, and consequently the value of a company's securities is generally accepted and well-grounded in finance literature.  *Id*. at 49-54.

Further, Dr. Werner found that empirical analysis also compels a conclusion of loss causation.  *Id*. at 55-81.  To determine whether the alleged misstatements, and their subsequent corrective disclosure, caused losses to investors, Dr. Werner conducted an event study. *Id*. at 55. Following his review of the Complaint, news articles, press releases, equity analyst reports, and filings with the Securities and Exchange Commission ("SEC") regarding Kandi, Dr. Werner identified two corrective disclosure events: (1) on November 14, 2016, Kandi announced that, effective immediately, Chief Financial Officer ("CFO") Wang would be resigning from the position to instead become the Company's new Chief Strategy Officer; and (2) on March 13, 2017, after the close of trading, Kandi issued a press release stating that, during Kandi's internal review of its upcoming annual report and Form 10-K, the Company's management had "identified certain areas in the Company's previously issued financial statements for the years ended December 31,

3

2015 and 2014, and the first three quarters for the year ended December 31, 2016 (the 'Previously Issued Financial Statements'), that require adjustment … ." *Id*. at 58.

In addition, Kandi explained that, because of requiring these restatements, the Company would be "reassessing its internal controls over its financial reporting and compliance programs" and further warned that "[t]he result of this reassessment could lead the Company to conclude that there were deficiencies in its internal controls over financial reporting that constitute material weaknesses." *Id*. No Company-specific developments occurred on March 15, 2017. *Id*. One day later, on March 16, 2017, Kandi filed its restated financials with the SEC in a Form 10-K wherein the Company revealed that most of its previously reported revenues were related party transactions. *Id*.

As Dr. Werner explained, Kandi's November 14, 2016 announcement that, effective immediately, CFO Wang would be resigning from the position to instead become the Company's new Chief Strategy Officer represented a trigger event that signaled a potential link between and the departure and the fraud alleged here – a link that was bolstered by Kandi's poor financial performance preceding the disclosure. *Id*. at 59. Additionally, Dr. Werner found that the subsequent announcement on March 13, 2017 possess all the hallmarks of a corrective disclosure. *Id*. at 60. As Dr. Werner explained, this was the event by which market participants learned the truth: that Kandi's internal controls were deficient, that a restatement of financial results was necessary, and that all the financial results market participants had been relying on since the start of FY 2015 were no longer reliable. *Id*.

As Dr. Werner further explained, the full impact of this disclosure was not limited to only one trading day. *Id*. Indeed, just two days later, Kandi filed restated financial statements that sought to correct the previous accounting errors, and these new financial statements revealed the

full extent of the Company's previous accounting misdeeds. *Id*. That is, where the March 13, 2017 disclosure (after the close of trading) revealed the existence of internal control weaknesses and accounting fraud, the March 16, 2017 Form 10-K filing detailed the economic extent of both. *Id*.

Based upon this analysis, Dr Werner found that the entirety of the residual decline on November 14, 2016 was caused by negative signals communicated via the sudden CFO departure, demonstrating that the alleged fraud caused investor losses. *Id*. at 74, 81. Dr. Werner found further that the residual return was statistically significant at the 90%, 95%, and 99% confidence level, indicating that the abnormal return was too severe to have been a random fluctuation and thereby demonstrating that the abnormal stock return was statistically significant. *Id*. at 72. For Kandi's stock decline from March 14-16, 2017, Dr. Werner concluded that the cumulative residual return from March 14-16, 2017 was similarly statistically significant at the 90%, 95%, and 99% confidence level and also demonstrated that the alleged fraud caused investor losses. *Id*. at 78, 80, 81.[4] Thus, summary judgment in Defendants' favor is unwarranted because Plaintiff has demonstrated loss causation.[5]

---

[4] Dr. Werner's conclusions, moreover, are grounded in sound financial and accounting principles. For example, the use of both single day and multi-day event windows is appropriate in an event study. *Id*. at 61. Additionally, Dr. Werner isolated the impact of Company-specific information in reaching his conclusions. *Id*. at 64-70, 73-74. Dr. Werner also assessed the valuation impact, if any, of potentially confounding information that may have impacted the declines associated with the identified corrective disclosures. *Id*. at 73, 79.

[5] Defendants repeatedly contend that the "eventual Restatement of Kandi's prior disclosures had no impact on the Company's net income" and purportedly had "zero impact on Kandi's revenue." Motion at 3, 11, 14. However, as Dr. Werner opined, in each of the Company's restated financial statements, the corrected distribution between related party transaction revenues and non-related party transaction revenues contrasted with what Kandi had been representing throughout the Class Period, that there were either no or *de minimis* amounts of related party transactions. ECF No. 126-1 at 21-22. For example, in FY 2015, where Kandi had previously represented that there were no related party transactions, the restated financial statements show that of the $201,069,173 in total revenues reported for FY 2015 $194,279,14, or over 96%, were actually from "JV Company and related parties. *Id*. Defendants, moreover, ignore all of the other financial metrics important

5

**B.**     **The Court Should Deny Defendants' Motion Because Plaintiff Has Demonstrated Damages**

In addition to demonstrating loss causation, Plaintiff has also demonstrated damages. Specifically, Plaintiff has quantified that loss on a per share basis attributable to investors who purchased Kandi stock during the Class Period.  *Id*. at 82-94.  Based on his analysis, Dr. Werner found that out-of-pocket damages per share here range from $0 to $1.10 per share, excluding prejudgment interest.  *Id*. at 94.  Dr. Werner also performed an aggregate damages calculation for the two corrective disclosures on November 14, 2016 and March 14, 2017.  ECF No. 126-2 at 2 (Table entitled "Residual Declines").[6]  Dr. Werner calculated the aggregate damages for the November 14, 2016 disclosure at $5.9 million, and the cumulative damages for the March 14, 2017 disclosure at $9.9 million, for a two-trader aggregate damages calculation of $15.7 million for the damages in this case.  *Id*.[7]  Thus, summary judgment in Defendants' favor is also unwarranted because Plaintiff has demonstrated damages.

---

to investors, including those that rendered Defendants' statements false and that required restatement.

[6] As Dr. Werner explains, the results of the regression analysis are robust to an alternative estimation period beginning on August 10, 2015, which is the start of the current Class Period. ECF No. 126-1 at 34 n.97.  According to Dr. Werner, as there was no econometric basis for shortening the Class Period to begin on August 10, 2015 instead of June 10, 2015, Dr. Werner applied the same regression estimation period as his market efficiency analysis for consistency. *Id*.

[7] A two-trader model is a commonly applied model "to simulate the activities of market participants during the class period and to determine the amount of class-wide damages based on the per-share damages figure." *Desvarieux v. Axiom Holdings, Inc.*, No. 17CIV4756JPCGWG, 2022 WL 1467973, at *4 (S.D.N.Y. May 10, 2022), *report and recommendation adopted,* No. 17CIV4756JPCGWG, 2022 WL 1689395 (S.D.N.Y. May 26, 2022).

**C.    *Macquarie* Has No Impact on this Case Because Plaintiff's Claims Are Not Based Upon Pure Omissions**

Defendants also contend that they are entitled to summary judgment because Defendants' misrepresentations are purportedly not actionable as a matter of law after the Supreme Court's decision in *Macquarie*.  Motion at 17-19.  Defendants are wrong.

*Macquarie* has no impact on Plaintiff's claims because the misstatements alleged constitute misrepresentations and half-truths, not pure omissions.  The Supreme Court in *Macquarie* held that Rule 10b–5(b) "covers half-truths, not pure omissions."  *Id*. at 264.  On remand, the Second Circuit held that "the [Supreme] Court did not disturb our previous analysis with respect to the claims under Rule 10b-5(b) resting on a 'half-truth' theory."  *Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, No. 21-2524, 2024 WL 4356386, at *2 (2d Cir. Oct. 1, 2024).  Half-truths "state the truth only so far as it goes, while omitting critical qualifying information . . . ."  *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 188 (2016).  "[A] statement that contains only favorable matters and omits all reference to unfavorable matters is as much a false representation as if all the facts stated were untrue."  *Id*. at 190 n.4.

Defendants' own characterization of the misstatements at issue in the case demonstrates that Plaintiff's claims are not based upon pure omissions.  For example, Defendants concede that the Company's restatement included: (1) "corrections to the classification of notes receivable and notes payable in the Company's statements of cash flow"; (2) "revisions in the Company's financial statement presentation to separately identify certain related-party accounts on the face of the Balance Sheets and the Consolidated Statements of Income (Loss) and Comprehensive Income (Loss)"; (3) "certain amendments to Note 20 – Taxes of the Notes to the Company's Consolidated Financial Statements"; (4) "the adjustment of previously recorded construction-in-progress back to prepayment in Note 16 - Construction-in-Progress of the Notes to the Company's Consolidated

7

Financial Statements"; (5) "expansions of two tables of sales to and purchases from the JV

Company in Note 24 - Summarized Information of Investment in the JV Company of the Notes to

the Company's Consolidated Financial Statements from two years to three years"; (6) "the removal

of 'unaudited' labels from certain tables in Note 20 - Taxes of the Notes to the Company's

Consolidated Financial Statements"; and (7) "separate audited financial statements for the

Company's equity investment in the JV Company." Motion at 4-5. Defendants also concede that

Plaintiff's claims encompass statements made within the Company's financial statements,

including Kandi's 2015 Form 10-K filed on March 14, 2016, and five quarterly reports: Form 10-

Q filings dated August 10, 2015 (Q2 2015), November 9, 2015 (Q3 2015), May 10, 2016 (Q1

2016), August 9, 2016 (Q2 2016), and November 9, 2016 (Q3 2016). Motion at 8.

These misrepresentations are not pure omissions. Indeed, these misstatements involved

representations that Defendants made to investors regarding the Company's operations, financial

results, and prospects. And logically, the fact that the Company was forced to restate its financial

results means that there were misrepresentations that Defendants made that required correction.

Such would not be the case if Plaintiff's claims were based upon pure omissions. Additionally,

Dr. Werner identified Defendants' misstatements as misrepresentations, omissions, and/or half-

truths. ECF No. 126-1 at 3.[8]    Accordingly, Defendants' misstatements constitute

misrepresentations and half-truths that are actionable and unaffected by the decision in

*Macquarie*.[9]

---

[8] As noted above, half-truths by definition contain an element of omission because they "state the truth only so far as it goes, while omitting critical qualifying information . . . ." *Universal Health Servs.*, 579 U.S. at 188.

[9] Defendants claim that *Macquarie* "established a heightened standard for misleading omissions." Motion at 18. Defendants are incorrect. The PSLRA established a heightened pleading standard for alleging claims pursuant to the Securities Exchange Act of 1934 ("Exchange Act"). *Macquarie* did not elevate this standard. Rather, *Macquarie* clarified whether half-truths and pure omissions

**D.**     **The Court Cannot Grant Summary Judgment in Favor of Defendants on the Issue of Whether CFO Wang's Resignation Contributes to Loss Causation**

Defendants also argue that "loss causation cannot be established through CFO Wang's resignation because any negative market reaction to that event was unrelated to the accounting errors later disclosed in the Restatement." Motion at 16-17. Defendants are again mistaken.

First, Plaintiff has presented evidence establishing the contrary. Specifically, Dr. Werner has opined that "sudden executive departures can be a signal of concealed problems." ECF No. 126-1 at 26. Dr. Werner explained that "[i]t is a generally accepted principle in the published finance literature that management departures signal to investors the existence of potential undisclosed problems at a company." *Id*. at 26-27. Dr. Werner continued by stating that "[a]n article by Karpoff, Lee and Martin in the *Journal of Financial Economics* states that management departures are recognized 'trigger events' that signal potential problems relating to financial misrepresentations.

> "These trigger events generally are firm-initiated disclosures of potential problems. Common trigger events include self-disclosures of malfeasance, restatements, auditor departures, and unusual trading. Investigations by other federal agencies such as the Department of Defense and Environmental Protection Agency are another source of trigger events, along with delayed SEC filings, management departures, whistleblower charges, and routine reviews by the SEC."

*Id*. at 27.

Dr. Werner further opined that "[a]cademic researchers are not the only ones to observe that unexpected management departures signal potential fraud concealed at a company." *Id*. Dr. Werner observed that "a *Wall Street Journal* opinion column about the Enron experience makes this point[:]

---

were actionable pursuant to the Exchange Act and the Securities Act of 1933 ("Securities Act"). *Macquarie*, 601 U.S. at 264.

"I feel a need to examine what lessons those of us who slog it out daily in the corporate trenches might gain from Enron's spectacular collapse. … Beware of, and question, unexpected executive resignations."

*Id*. Dr. Werner then found that CFO Wang's resignation contributed to a finding of loss causation. *Id*. at 27-43. This evidence alone defeats Defendants' argument.

Second, case law also demonstrates that Defendants are incorrect. As courts have recognized, executive resignations can contribute to loss causation in cases brought pursuant to the Exchange Act. *See, e.g.*, *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 140 (D. Conn. 2021) (loss causation can be established by events constructively disclosing the alleged fraud, including "personnel changes"); *In re Stillwater Cap. Partners Inc. Litig.*, 858 F. Supp. 2d 277, 288–89 (S.D.N.Y. 2012) (holding that facts that showed a 40.8% decline in the company's stock price "after announcements regarding executive resignations" contributed to establishing loss causation); *see also Pub. Emps. Ret. Sys. of Mississippi, Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 322–23 (5th Cir. 2014) ("While nothing in the resignation announcement alone reveals the truth behind earlier misstatements or provides notice to the Defendants of what the causal connection might be between the relevant economic loss and the misrepresentations . . . this too may constitute a portion of the totality that we must consider."). These authorities also render Defendants' argument meritless.[10] Thus, the Court cannot grant summary judgment in Defendants' favor on this issue.

---

[10] Defendants' cases, moreover, do not support their position. In *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546 (S.D.N.Y. 2008), *aff'd,* 597 F.3d 501 (2d Cir. 2010), the court held that a director's resignation *in that case* did not contribute to loss causation because it was unrelated to the alleged fraud. *Id*. at 553. Similarly, in *In re Buca Inc. Sec. Litig.*, No. 05-1762 DWFAJB, 2006 WL 3030886 (D. Minn. Oct. 16, 2006), the court found that the resignation *in that case* did not relate to the alleged fraud. *Id*. at *9. These cases did not hold, as Defendants argue here, that a resignation cannot relate to loss causation *as a matter of law*. Indeed, Defendants cite no cases that stand for this proposition. Defendants also cite *Dalberth v. Xerox Corp.*, 766 F.3d 172 (2d Cir. 2014), but *Xerox* did not address the issue of whether resignations can contribute to loss causation,

**E.      The Deadlines to Which Defendants Refer for Expert Discovery Were Submitted in the Context of Class Certification**

Defendants contend that Plaintiff "ignored" the deadline for expert discovery. Motion at 2. Defendants, however, are incorrect. When this case was originally assigned to Judge Schofield, the Court issued an Amended Civil Case Management Plan and Scheduling Order that set a deadline for expert discovery. ECF No. 86. On October 20, 2023, however, the case was reassigned to Judge Ho. On November 6, 2023, the parties proposed an extended schedule related to expert discovery in the context of class certification. ECF No. 93; *See* Sams Declaration; ¶10. As set forth within the Sams Declaration, it was counsel for Plaintiff's understanding that these proposed dates were made within the context of class certification, and that the related expert discovery was discovery within the context of class certification. *Id*.

**F.      Plaintiff's Section 20(a) Control Person Claims**

Finally, Defendants claim that summary judgment is warranted for Plaintiff's control person claims pursuant to Section 20(a) of the Exchange Act. Motion at 19-20. For the reasons noted above, however, summary judgment on Defendants' Motion is inappropriate for Plaintiff's primary claims under Section 10(b). Accordingly, summary judgment on Defendants' Motion is also unwarranted for Plaintiff's control person claims pursuant to Section 20(a). *Gruber v. Gilbertson*, 628 F. Supp. 3d 472, 491 (S.D.N.Y. 2022).

**III.    CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion.

---

and Defendants' generic attribution ("rejecting corrective disclosures that attribute an improper purpose to previously disclosed facts"), has no bearing here, particularly since Plaintiff has produced evidence that CFO Wang's resignation contributed to a finding of loss causation. Doc. 126-1 at 27-43.

DATED:  March 28, 2025

**GLANCY PRONGAY & MURRAY LLP**

By:    _s/ Ex Kano S. Sams II_

Robert V. Prongay (admitted _pro hac vice_)
Ex Kano S. Sams II (admitted _pro hac vice_)
Charles H. Linehan (admitted _pro hac vice_)
Pavithra Rajesh (admitted _pro hac vice_)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: clinehan@glancylaw.com

_Counsel for Lead Plaintiff Tom Brooks and the Class_

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

_Additional Counsel_

12

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(c)**

I, Ex Kano S. Sams II, declare that pursuant to Local Civil Rule 7.1(c), that excluding captions, indices, table of contents, table of authorities, and signature blocks, this brief contains 3,571 words.  I further declare that Local Civil Rule 7.1(c) states that the provisions for the length of memoranda of law provided therein govern except "as otherwise directed by the court," and that in a memo endorsement dated November 27, 2024 (ECF No. 117), the Court provided that the parties may use up to 20 pages for this brief.

*s/Ex Kano S. Sams II*
Ex Kano S. Sams II

13

## **PROOF OF SERVICE**

I hereby certify that on this 28th day of March, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Ex Kano S. Sams II*
Ex Kano S. Sams II