# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------X
SRINIVASAN VENKATARAMAN, Individually and
on behalf of all others similarly situated,

                              PLAINTIFFS,

          -against-    Civil Action No.:

                        20 CIV 8082(LGS)


KANDI TECHNOLOGIES GROUP, INC., XIAOMING
HU, CHENG WANG, BING MEI, LIMING CHEN,
JERRY LEWIN and HENRY YU,

                              DEFENDANTS.
----------------------------------------------X

                    DATE:  August 16, 2023
                    TIME:  9:26 A.M.



        VIDEOTAPED DEPOSITION of the
Defendant, HENRY YU, taken by the
Plaintiffs, pursuant to a Notice and to the
Federal Rules of Civil Procedure, held at
the offices of Veritext Legal Solutions,
7 Times Square, 16th Floor, New York,
New York 10036, before Amanda Tartaglia, a
Notary Public of the State of New York,

1

                                        Page 1

H. YU

launch in Kunming 250 -- 2,500 EVs and also the contract signed with Zhejiang Shikong for 2,500 EVs delivered before the -- the end of year and also the agreement with Luzhou City to launch MTP program for more than 1,000 EVs.  So Mr. Hu is confident to achieve the target."

Q.    And this item references ZZY again; is that correct?

A.    Yes.

Q.    And, specifically, it refers to sales to ZZY; is that correct?

A.    Yes.

Q.    When did these sales occur?

A.    Did not remember.

Q.    Was ZZY a related party to Kandi at the time of these sales?

A.    I did not remember.

COUNSELOR SAMS II:  I'd like to mark this next document as Exhibit 8.

(Whereupon, an E-mail Chain was marked as Plaintiff's Exhibit 8 for identification as of this date by the reporter.)

56

Page 56

H.  YU

COUNSELOR SAMS II:  For the record, this document is Bates stamped KANDI-SDNY6153 through 54.

Q.    Mr. Yu, have you seen this document before?

A.    Yes.

Q.    What is this document?

A.    I guess, pertaining to recommendation to make outside audit firm changes.

Q.    This was an e-mail that you wrote, correct?

A.    Yes.

Q.    Can you please read the first sentence of your e-mail?

A.    "On behalf of Audit Committee members, Mr. Lewin and Mr. Chen, our Audit Committee strongly recommend that we change auditor right away, replacing Albert Wong and Company."

Q.    Why did you make that recommendation?

A.    To my knowledge, that was the need to have a -- a bigger CPA firm, more

57

Page 57

H. YU

experience and also time for us to make a change because after all, the audit firms, ever since I joined in July 2011, is -- is about four years, so it's time to really look for a better CPA firm that would be -- that -- that I would perceive as improvement.

Q.    Were there any other reasons that you would make that recommendation?

A.    Other than that, what I just described.

Q.    Did you have any issues with AWC as the Company's auditor at that time?

A.    To my recollection, no.

Q.    Was your recommendation followed by Kandi?

A.    Yes.

Q.    When was it followed?

A.    God, has been so long.  I believe we subsequently change audit firm. I forget what year.

Q.    Was the change made immediately?

A.    I cannot remember.

58

Page 58

H. YU

Q.   I would like to direct your attention to the sentence that starts at the end of Page 1 and continues to Page 2; do you see that sentence?

A.   Yes.  It is equal important that we engage --

Q.   The sentence after that.

A.   Okay.  Okay.

Q.   Can you read that, please.

A.   Improvement -- "we do expect improvement from our new auditor BDO on issues such as financial reporting, compliance, audit and internal controls."

Q.   What issues did you have with financial reporting as you described in this sentence?

A.   I do not remember.

Q.   What issues did you have with compliance as described in this sentence?

A.   Not that I'm aware of.  Sorry. Did not remember.

Q.   What issues did you have with auditing as described in this sentence?

A.   Cannot remember.

59

Page 59

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

H. YU

Q.    What issues did you have with internal controls as described in this sentence?

A.    There are no -- actually, that, to my knowledge, is just needs improvement, continuous improvement on internal control.

Q.    How so?

A.    Cannot remember in terms of specifics.

Q.    Were the Audit Committee members aware of these issues, to your knowledge?

COUNSELOR LOMUSCIO:  Objection to form.

A.    Probably.

Q.    What's the basis for that statement?

A.    The basis was the statement simply reflects the need to make improvements as suggested by us, by the Audit Committee members.

Q.    So to your knowledge, Mr. Lewin and Mr. Chen would have been aware of the issues that you described in this sentence,

60

Page 60

H. YU

correct?

COUNSELOR LOMUSCIO:   Objection to form.

A.   They were aware of it. Certainly.

Q.   Was Mr. Hu aware of it?

COUNSELOR LOMUSCIO:   Objection to form.

A.   Not that I can remember.

Q.   Was Mr. Wang aware of these issues?

A.   Repeat the question.

Q.   Yes.  Was Mr. Wang aware of these issues?

COUNSELOR LOMUSCIO:   Objection to form.

A.   To my knowledge, yes.

Q.   During this time frame and by "time frame," I mean -- I mean August of 2015, was Mr. Wang asking investors to invest in ZZY on behalf of Mr. Hu?

COUNSELOR LOMUSCIO:   Objection to form.

A.   No idea.  Don't know.  Cannot

61

Page 61

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127