**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Srinivasan Venkataraman, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>  vs.<br><br>Kandi Technologies Group, Inc., Xiaoming Hu, Cheng Wang, Bing Mei, Liming Chen, Jerry Lewin, and Henry Yu,<br><br>       Defendants. | Civil Action No. 20 CIV. 8082 (DEH)<br><br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINITFF'S MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION** |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Lead Plaintiff Tom Brooks ("Plaintiff") submits this reply in support of Plaintiff's Motion for Summary Judgment and/or Summary Adjudication ("Motion").  ECF No. 124 and ECF No. 125.[1]

## I.   INTRODUCTION

Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Opposition") demonstrates why the Court should grant Plaintiff's Motion.  First, the Court should strike Defendants' Opposition because it exceeds the number of pages that the Court permitted for responses.  Specifically, on November 27, 2024, the Court issued an order stating that the parties shall file responses "***not to exceed 20 pages each***."  ECF No. 117.  Defendants' Opposition, however, is 25 pages long.  ECF No. 128.  As demonstrated below, courts routinely strike briefs that exceed the applicable page limits.

Second, even if the Court were to consider the arguments Defendants make, Defendants' Opposition merely confirms that the Court should grant Plaintiff's Motion.  Indeed, Defendants fail to make any showing to rebut Plaintiff's evidence establishing that summary judgment or summary adjudication is warranted for Plaintiff's claims brought pursuant to the Securities Exchange Act of 1934 ("Exchange Act").  Accordingly, the Court should grant Plaintiff's Motion.

## II.   STANDARD OF REVIEW

Rule 56 provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[1] On March 28, 2025, the parties submitted a letter to the Court requesting the submission of reply briefs in support of their respective motions. ECF No. 131.  If the Court grants the parties' request, Plaintiff hereby submits this reply.  Unless otherwise stated, all Rules references are to the Federal Rules of Civil Procedure. Defendants are: (1) Kandi Technologies Group, Inc. ("Kandi" or the "Company"); (2) Xiaoming Hu ("Hu"); (3) Cheng Wang ("Wang"); (4) Liming Chen ("Chen"); (5) Jerry Lewin ("Lewin"); and (6) Henry Yu ("Yu") (collectively "Defendants").  Defendants Hu, Wang, Chen, Lewin, and Yu are collectively the "Individual Defendants."  Unless otherwise indicated, all emphasis is added and all internal quotations and citations are omitted.

1

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is material for these purposes if it might affect the outcome of the suit under the governing law[,] [while] an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Konikoff v. Prudential Ins. Co. of Am.,* 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-50 (1986)). Pursuant to Rule 56(a), summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be entered "as to an entire case … [or] as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Anderson,* 477 U.S. at 256). The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999). "If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (quoting *Anderson,* 477 U.S. at 249-50).

III.    **THE COURT SHOULD GRANT PLAINTIFF'S MOTION BECAUSE DEFENDANTS HAVE FAILED TO MAKE A SHOWING OF SPECIFIC FACTS DEMONSTRATING THERE ARE GENUINE ISSUES FOR TRIAL**

A.    **The Court Should Strike or Disregard Defendants' Opposition Because It Exceeds the Number of Pages That the Court Permitted for Responses**

As an initial matter, the Court should strike or disregard Defendants' Opposition because it exceeds the number of pages that the Court permitted for responses. Specifically, on November 27, 2024, the Court issued an order stating that the parties' responses shall "***not to exceed 20 pages each***." ECF No. 117. Defendants' Opposition, however, is 25 pages long. ECF No. 128. Courts routinely strike briefs that exceed the applicable page limits, as Defendants' Opposition does here. *See, e.g.*, *Wozar v. Campbell*, No. 3:24-CV-851 (VDO), 2025 WL 227645, at *16 n.3 (D. Conn. Jan. 17, 2025) ("Consistent with the Court's inherent authority to manage its docket and to enforce the Local Rules, the Court strikes Plaintiff's filing at ECF No. 154 for circumventing the page limits prescribed by Local Rule 7."); *Century Sur. Co. v. Prince Plaza, LLC*, No. 14CV6869DLIJO, 2016 WL 11472253, at *3 (E.D.N.Y. Feb. 16, 2016) (striking a brief that exceed the court's applicable page limits). Thus, the Court should strike or disregard Defendants' Opposition because it fails to comply with the Court's Order regarding page limits.

B.    **The Court Should Grant Plaintiff's Motion Because Plaintiff Has Satisfied All of the Elements Under the Exchange Act**

Even if the Court were to consider Defendants' overlength Opposition that violates the Court's Order, Defendants have failed to make a showing of specific facts demonstrating there are genuine issues for trial. To state a claim under the Exchange Act, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v.*

*Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).  As demonstrated below, Plaintiff has demonstrated that summary judgement is warranted for all of these elements.[2]

### 1.    Plaintiff Has Demonstrated That Summary Judgement is Warranted for the Element of Falsity

Defendants have failed to demonstrate that there are specific facts showing that there are genuine issues for trial with respect to the element of falsity.  Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which is applicable to Exchange Act claims, a plaintiff adequately demonstrates falsity by "specify[ing] each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading."  15 U.S.C. §78u-4(b)(1)(B).

As noted within Plaintiff's opening brief (ECF No. 125), it is undisputed that Kandi's restatement constitutes an admission of falsity.  Indeed, under Generally Accepted Accounting Principles ("GAAP"), restatements are proper only to correct ***material*** errors in financial statements that existed ***at the time the statements were issued***.  *See, e.g.*, *Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 549 (S.D.N.Y. 2017) ("The very fact of the restatement and thus [the company's] conclusion that the financials were materially misstated at the time [defendant] made alleged misrepresentations belies any suggestion that any misstatement or omission was not material."); *SEC v. Kelly*, 663 F. Supp. 2d 276, 285 (S.D.N.Y. 2009) (under GAAP, "a restatement issues only when errors are material").

Here, on March 13, 2017, Kandi filed a Form 8-K titled "Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review."  ECF No. 126-1 at ¶40.  The Form 8-K explained that, during Kandi's internal review of its upcoming annual

---

[2]  In the alternative, Plaintiff seeks partial summary judgment and/or summary adjudication for those elements that the Court deems summary adjudication is warranted.  Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment.

report and Form 10-K, management had "identified certain areas in the Company's previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 (the 'Previously Issued Financial Statements'), that require adjustment . . . ."  *Id*.  Because of these required adjustments, Kandi "concluded that the Company's Previously Issued Financial Statements should no longer be relied upon" and that a restatement would be filed with its 2016 Form 10-K.  *Id*. at ¶41.  Additionally, when Kandi ultimately filed its Form 10-K for the fiscal year ended December 31, 2016 on March 16, 2017, the Company also included within this filing the restated financial statements for FY 2015 and 1Q-3Q of 2016.  *Id*. at ¶44.  In each restated financial statement, the corrected distribution between related party transaction revenues and non-related party transaction revenues contrasted with what Defendants represented throughout the Class Period: that there were either no or *de minimis* amounts of related party transactions.  *Id*.; *see also* Declaration of Ex Kano S. Sams II in Support of Plaintiff's Reply in Support of Plaintiff's Motion for Summary Judgment and/or Summary Adjudication ("Sams Declaration") Exhibit ("Ex.") 1 at ¶2.  Thus, "Defendants do not, and cannot, dispute the actual falsity of the financial statements that were contained in [the company's] press releases and SEC filings for the . . . quarters at issue and were subsequently restated."  *380544 Canada, Inc. v. Asspen Tech. Inc*., 544 F. Supp. 2d 199, 217 (S.D.N.Y. 2008).

Defendants fail to produce any ***evidence*** to rebut Plaintiff's showing.  Opposition at 21-22.  Instead, Defendants merely rely upon conclusory arguments, not facts.  *Id*.  However, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."  *Bickerstaff*, 196 F.3d at 452.  Additionally, the arguments Defendants raise are wrong.  For example, Defendants attempt to downplay Kandi's restatement by characterizing it as involving mere "adjustments" and "corrected

distribution[s]" that purportedly "had no impact whatsoever on Kandi's overall corporate income." Opposition at 21. However, Plaintiff's evidence demonstrates that Plaintiff's case is not focused on one singular line-item within Kandi's financial statements, or one particular financial statement, being incorrect. Sams Declaration, Ex. 1 at ¶38. Rather, the price declines following the corrective disclosures reflect the holistic view that Kandi did not have accurate financial statements, did not have reliable internal controls to timely detect and correct inaccuracies, and that, as a result, Kandi's business prospects had been misrepresented to the market. *Id*. Similarly unavailing is Defendants' contention that "Plaintiff fails to address the specific falsity that survived dismissal." Opposition at 22. Plaintiff has, in fact, provided such evidence. *See, e.g.*, Sams Declaration, Ex. 1 at ¶¶10-14. And contrary to Defendants' suggestion (Opposition at 22 n.3), Plaintiff does not rely upon the allegations of his complaint – rather, Plaintiff comes forward with evidence to support his claims. *See, e.g.*, ECF No. 126-1; Sams Declaration, Ex. 1.[3] Because Defendants have failed to demonstrate that there are specific facts – as opposed to mere conclusory arguments – showing that there are genuine issues for trial with respect to the element of falsity, summary judgment is warranted.

---

[3] Defendants' cases, moreover, are no substitute for facts, and Defendants' reliance upon them is unavailing in any event. Although the court in *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) held that "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim," the court was merely restating the uncontested proposition that the Exchange Act also requires a demonstration of scienter. *Id*. at 309. The court in *Novak* did not address the use of a restatement to establish falsity. Defendants' other cases similarly speak to scienter. *See, e.g.*, *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 295 (S.D.N.Y. 2014) (discussing an "inference of fraud"); *Plumbers & Pipefitters Loc. Union No. 719 Pension Tr. Fund v. Conseco Inc.*, No. 09 CIV. 6966 JGK, 2011 WL 1198712, at *22 (S.D.N.Y. Mar. 30, 2011) (discussing scienter).

**2.      Plaintiff Has Demonstrated That Summary Judgement is Warranted for the Element of Class-Wide Reliance**

Defendants have also failed to demonstrate that there are specific facts showing that there are genuine issues for trial with respect to class-wide reliance. Where, as here, a plaintiff alleges fraud-on-the-market, reliance is established if: "(1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276-78 (2014) ("*Halliburton II*"). Indeed, the Supreme Court has repeatedly held that "courts may presume that investors trading in efficient markets indirectly rely on public, material misrepresentations through their reliance on the integrity of the price set by the market." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 462 (2013); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988) ("Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b–5 action."); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011) ("*Halliburton I*") ("Under *Basic*'s fraud-on-the-market doctrine, an investor presumptively relies on a defendant's misrepresentation if that information is reflected in [the] market price of the stock at the time of the relevant transaction.").

Here, there is no dispute that the false and misleading statements alleged in this case were publicly known, that Kandi's stock traded in an efficient market (indeed, Defendants completely failed to dispute this issue at class certification), and that Plaintiff and members of the Class purchased the Company's stock between when the misrepresentations were made and when the truth was revealed. Additionally, there is no dispute that Defendants made false and misleading statements that were publicly disseminated. *See, e.g.*, ECF No. 121-2-121-8; ECF No. 126-1 at 8-

7

22; Sams Declaration, ¶¶10-29.  Moreover, it is also undisputed that Kandi's stock traded in an efficient market.  Defendants failed to dispute this issue (as well as the issue of price impact) at class certification.  *See, e.g.*, *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 126 (2021) ("the defendant bears the burden of persuasion to prove a lack of price impact" and "the defendant must carry that burden by a preponderance of the evidence").  As a result, in granting class certification, the Court ruled that "the fraud-on-the-market theory creates a presumption of class-wide reliance, which will enable Plaintiff to establish Defendants' liability using evidence common to the class."  ECF No. 115 at 7.  Plaintiff has done so through Dr. Werner's previous report.  *See* ECF No. 96-1 at 9-48.

Finally, Plaintiff has shown that he and members of the class traded Kandi's stock between when the misrepresentations were made and when the truth was revealed.  *See, e.g.*, ECF No. 11-2-11-3; *see also* ECF No. 115 (order granting class certification).  Because this is a certified class action, there is no dispute that class members purchased Kandi stock between the time of the misrepresentations and the disclosure of the truth.

Defendants, moreover, have presented ***no evidence*** to dispute these facts.  Indeed, Defendants' only response is a conclusory and self-serving argument that is no substitute for facts.  Specifically, Defendants claim that "Plaintiff incorrectly conflates the Court's finding the common issues predominate with an actual determination on the merits."  Opposition at 20.  Defendants, however, fail to address the standard that states that where a plaintiff, as Plaintiff here, alleges fraud-on-the-market, reliance is established if: "(1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed."  *Halliburton II*, 573 U.S. at 276-78 (2014).  Defendants do not dispute that Plaintiff has,

in fact, established these factors here. *See, e.g.*, *Fresno*, 268 F. Supp. 3d at 549 ("The very fact of the restatement and thus [the company's] conclusion that the financials were materially misstated at the time [defendant] made alleged misrepresentations belies any suggestion that any misstatement or omission was not material."); *Kelly*, 663 F. Supp. 2d at 285 (under GAAP, "a restatement issues only when errors are material").  Additionally, Defendants' attempt to avoid the evidence submitted through Dr. Werner's loss causation and damages report (ECF No. 126-1) fails for the reasons Plaintiff previously identified.  ECF No. 133 at ¶10.  Thus, summary judgment is warranted on this element. *See, e.g.*, *In re Celestica Inc. Sec. Litig.*, No. 07 CIV. 0312 GBD, 2014 WL 4160216, at *12 (S.D.N.Y. Aug. 20, 2014) ("Plaintiffs, having put forth unrebutted evidence that [the company securities traded on an efficient market, are entitled to the application of the fraud on the market presumption. Summary judgment is accordingly granted in Plaintiffs favor on the issue of class-wide reliance."); *Hsingching Hsu v. Puma Biotechnology, Inc.*, No. SACV1500865AGJCGX, 2018 WL 4945703, at *5 (C.D. Cal. Oct. 5, 2018) (because "there is no material dispute on the issues of public knowledge, market efficiency, and Plaintiffs' trading during the relevant period, the Court treats those issues as established in Plaintiffs' favor for the fraud-on-the-market presumption.").

### 3.    Plaintiff Has Demonstrated That Summary Judgment is Warranted for the Element of Loss Causation

Plaintiff has also demonstrated that summary judgment is warranted for the element of loss causation.  As previously demonstrated, Dr. Werner found that financial economic principles compel a conclusion of loss causation (ECF No. 126-1 at 48) and that empirical analysis also compels a conclusion of loss causation. *Id*. at 55-81.

Defendants subsequently submitted the expert report of Dr. David Tabak to purportedly refute some of Dr. Werner's conclusions.  ECF No. 129-1; *see also* Opposition at 13-20.  As Dr.

Werner explains in response, however, Dr. Tabak's report does nothing to change the fact that Plaintiff has demonstrated that summary judgment is warranted in Plaintiff's favor on the issue of loss causation.  Sams Declaration, Ex. 1.

Specifically, Dr. Werner found that: (1) contrary to Dr. Tabak's assertion, Dr. Werner did, in fact, consider the Court's motion to dismiss order in his analysis, and that Dr Tabak errs in assuming that the Court's motion to dismiss order is an appropriate proxy that can substitute an economic assessment of confounding information (*Id.* at ¶¶10-14); (2) Dr. Tabak's critiques of Dr. Werner's loss causation analysis for the November 2016 disclosure rely on Dr. Tabak's unfounded assertion that the academic literature Dr. Werner cites are somehow inapplicable, when the literature is, in fact, applicable particularly since Kandi itself characterized Mr. Wang's departure from the CFO role as a "resignation" despite Defendants' incorrect assertions to the contrary (*Id.* at ¶¶15-21); *see, e.g.*, *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 297 n.237 (S.D.N.Y. 2006) ("***the market may learn of possible fraud from a number of sources*** [such as] whistleblowers, analysts' questioning financial results, ***resignations of CFOs*** or auditors, announcements by the company of changes in accounting treatment going forward, newspapers and journals, etc."); *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, No. CIV.A. H013624, 2005 WL 3504860, at \*16 (S.D. Tex. Dec. 22, 2005) (same);[4] (3) Dr. Tabak's arguments regarding

---

[4] *See also Pub. Emps. Ret. Sys. of Mississippi, Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 322–23 (5th Cir. 2014) ("While nothing in the resignation announcement alone reveals the truth behind earlier misstatements or provides notice to the Defendants of what the causal connection might be between the relevant economic loss and the misrepresentations . . . this too may constitute a portion of the totality that we must consider."); *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 140 (D. Conn. 2021) (loss causation can be established by events constructively disclosing the alleged fraud, including "personnel changes"); *In re Stillwater Cap. Partners Inc. Litig.*, 858 F. Supp. 2d 277, 288–89 (S.D.N.Y. 2012) (holding that facts that showed a 40.8% decline in the company's stock price "after announcements regarding executive resignations" contributed to establishing loss causation).

Dr. Werner's loss causation analysis for Kandi's March 2017 disclosure are largely a repeat of Dr. Tabak's misguided assertion that Dr. Werner's analysis did not account for the Court's motion to dismiss order, and of the few unique arguments Dr. Tabak raises regarding the March 2017 disclosures, none compel different loss causation conclusions (*Id*. at ¶¶22-29); (4) Dr. Tabak's contention that Dr. Werner was inconsistent in his application of event windows relies on Dr. Tabak's requirement that all event windows studied must align with a pre-determined "convention," where the "convention" Dr. Werner used was based on the news and flow of information that occurred on the corrective disclosure events (and even if Dr. Werner were to adopt Dr. Tabak's "convention" of one-day event windows, the impact of this change on the artificial inflation ribbon would be *de minimis*) (*Id*. at ¶¶30-34); and (5) Dr. Tabak's concerns regarding the appropriateness of a constant dollar inflation ribbon are unfounded since Dr. Werner's inflation ribbon was appropriate and conservative, and because Dr. Tabak has offered no tangible reason to modify the constant inflation ribbon Dr. Werner computed.   *Id*. at ¶¶35-39.   Again, since Defendants have presented ***no evidence*** to dispute these facts, Plaintiff has also demonstrated that summary judgment is warranted for the element of loss causation.

### 4. Plaintiff Has Demonstrated that Summary Judgment is Warranted for the Element of Damages

Additionally, Plaintiff has demonstrated that summary judgment is warranted in Plaintiff's favor for the element of damages.  As Plaintiff previously demonstrated (ECF No. 126-1), Plaintiff has quantified losses on a per share basis attributable to investors who purchased Kandi stock during the Class Period.  *Id*. at 82-94.  Based on his analysis, Dr. Werner found that out-of-pocket damages per share range from $0 to $1.10 per share, excluding prejudgment interest.  *Id*. at 94. Dr. Werner also performed an aggregate damages calculation for the two corrective disclosures on November 14, 2016 and March 14, 2017.  ECF No. 126-2 at 2 (Table entitled "Residual Declines").

11

Dr. Werner calculated the aggregate damages for the November 14, 2016 disclosure at $5.9 million, and the cumulative damages for the March 14, 2017 disclosure at $9.9 million, for a two-trader aggregate damages calculation of $15.7 million for the damages in this case. *Id*. **Defendants present absolutely no facts whatsoever to rebut this evidence**. Sams Declaration, Ex. 1 at ¶6. Thus, Plaintiff has demonstrated that summary judgment is warranted in Plaintiff's favor for the element of damages.

### 5. Plaintiff Has Demonstrated That Summary Judgment is Warranted for the Element of Scienter

Furthermore, Plaintiff has demonstrated that summary judgment is warranted in Plaintiff's favor for the element of scienter. Indeed, not only does the evidence that Plaintiff provides warrant this finding, but Defendants also **concede** facts in their Opposition that also compel this result.

Remarkably, despite their focus upon the Court's motion to dismiss order in other contexts, Defendants completely ignore the Court's order with respect to scienter. As Judge Schofield held in largely denying Defendants' motion to dismiss:

> *The SAC pleads sufficient circumstantial evidence of recklessness or conscious misbehavior as to Defendants Chen, Lewin, Yu and Wang because the SAC plausibly alleges that they "knew facts or had access to information suggesting that their public statements were not accurate." Set Cap., 996 F.3d at 79. The SAC alleges that, on March 7, 2016, Defendants Chen, Lewin, Yu and Wang attended a meeting of Kandi's Audit Committee at which "management identified two related parties" including "the Service Company," and "reported that the Company had engaged in related-party transactions with the Service Company" in 2015. The SAC also alleges that, on August 1, 2016, those same Defendants attended another Audit Committee meeting, and Wang reported to the others that "for the six months ending June 30, 2016" "sales to the Service Company totaled nearly $4 million, while receivables from the Service Company totaled nearly $11 million."*
>
> *The Audit Committee's awareness of related-party transactions was consistent with the stated procedures for such transactions as represented in Kandi's 2014 10-K, issued shortly before the beginning of the Class Period*. Those procedures specified that Kandi's "definition of a 'Related Party' is in line with the definition set forth in the instructions to Item 404(a) of regulation S-K promulgated by the SEC." The relevant regulatory definition, in turn, defines "[t]ransactions with

12

related persons" as those "in which any related person had or will have a direct or indirect material interest," and a "related person" includes "[a]ny director or executive officer of the registrant." 17 C.F.R. § 229.404. ***Defendants do not dispute that the transactions with the Service Company, in which Defendant Hu, Kandi's CEO, held a significant stake, qualifies as a related-party transaction. The written policy makes clear that Defendants were aware of the reporting requirements for related-party transactions during the Class Period. Defendants' alleged knowledge of the existence of the transactions and of the requirements for reporting them, at the time Defendants signed off on reports omitting those transactions, is sufficient circumstantial evidence of recklessness or conscious misbehavior.***

*Venkataraman v. Kandi Techs. Grp., Inc.*, No. 20 CIV. 8082 (LGS), 2022 WL 4225562, at *7-*8 (S.D.N.Y. Sept. 13, 2022). The evidence Plaintiff submitted, moreover, confirms Judge Schofield's decision. ECF No. 133-1-133-8. For instance, on March 7, 2016, a week prior to filing its FY 2015 financial results, Kandi's Audit Committee held an internal teleconference meeting to "review[], discuss[], and approv[e]" the Company's Form 10-K for the fiscal year ended December 31, 2015. ECF No. 133-5 (KANDI-SDNY_00063348-50). During this meeting, which was attended by Defendants Yu, Lewin, Chen, and Wang, the participants spoke about Kandi's classification and treatment of related party transactions and identified two related parties – Kandi USA and the Service Company. *Id*. Similarly, on August 1, 2016, these same Defendants attended another Audit Committee meeting, and CFO Wang reported to the others that for the six months ending June 30, 2016, sales to the Service Company totaled nearly $4 million, while receivables from the Service Company totaled nearly $11 million. ECF No. 133-6 (KANDI-SDNY_00082779-78). Additionally, on March 22, 2016, an internal Company e-mail was sent to Kandi's Audit Committee members explaining that transactions made with Zhejiang ZuoZhongYou Electric Vehicle Service Co. ("ZZY") would now be considered a related party transaction and that Kandi's FY 2015 and FY 2016 transactions with said company shall be ratified by the Audit Committee. ECF No. 133-4 (KANDI-SDNY_00063340). The evidence also

demonstrates that Defendants Lewin, Chen, and Wang, were aware of internal control issues as described by Defendants Yu as of August 21, 2015. ECF No. 133-1 (KANDI-SDNY_00006153-154); ECF No. 133-9 (Deposition transcript of Henry Yu at 56-61). Additionally, an investor presentation dated August 2016 included information regarding related party sales, such as sales related to ZZY, an entity in which Defendant Hu admitted Kandi had an ownership interest. ECF Nos. 133-2-133-3 (KANDI-SDNY_00009346-381); ECF No. 133-8 (Deposition transcript of Cheng Wang at 131-33); ECF No. 133-7 (Deposition transcript of Xiaoming Hu at 49-50, 69-71, 117-120).

Defendants also *concede* facts in their Opposition that also compel summary judgment in Plaintiff's favor. For example, Defendants concede that CEO Hu testified that "ownership interest in [the Service Company] was discussed at our board meetings . . . [t]his is no secret." Motion at 23. Defendants claim that "mere awareness that a related party exists does not constitute evidence of an intent to deceive investors about the nature of transactions with that party" (Motion at 23-24), but, as Judge Schofield held, it is not only "Defendants' alleged knowledge of the existence of the transactions" that demonstrates scienter, but also their knowledge "of the requirements for reporting them." *Venkataraman*, 2022 WL 4225562, at *7-*8; *see also Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 105 (2d Cir. 2022) ("Even when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth."); *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 214 n.15 (2d Cir. 2020) (by speaking about the issue and putting it "in play, Defendants were required to speak accurately and completely"); *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) ("Even when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth.").

14

As Plaintiff has demonstrated, Defendants made representations throughout the Class Period by, among other things: (1) repeatedly portraying to market participants that related party transactions made up either zero or a *de minimis* amount of its quarterly reported revenues; and (2) misrepresenting the reliability and effectiveness of the Company's internal controls by repeatedly stating its controls were effective despite knowingly hiding from market participants the fact that the vast majority of its reported revenues were actually from related party transactions.  Sams Declaration, Ex. 1 at ¶2.  "It is well-established precedent in this Circuit that once a company speaks on an issue or topic, there is a duty to tell the whole truth, [e]ven when there is no existing independent duty to disclose information on the issue or topic." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016).  Thus, Plaintiff has demonstrated that summary judgment is warranted in Plaintiff's favor for the element of scienter.

### 6. Plaintiff Has Demonstrated That Summary Judgment is Warranted for the Elements of Connection and Economic Loss

Plaintiff has also demonstrated that summary judgment is warranted in Plaintiff's favor for the elements of "connection between the misrepresentation or omission and the purchase or sale of a security" and for economic loss. *See* ECF No. 11-2 and 11-3.  Defendants' sole arguments related to these issues are based upon their loss causation arguments (Opposition at 13-16), which fail for the reasons noted above.  Thus, Plaintiff has demonstrated that summary judgment is warranted in Plaintiff's favor for these elements.

### 7. Plaintiff Has Demonstrated that Summary Judgment is Warranted for Plaintiff's Control Person Claims

For the reasons noted above, summary judgment is warranted in Plaintiff's favor for Plaintiff's primary claims under Section 10(b).  Defendants, moreover, provide no evidence demonstrating that the Individual Defendants failed to exercise control over the Company.  Accordingly, summary judgment is therefore warranted in Plaintiff's favor for Plaintiff's control

person claims pursuant to Section 20(a) of the Exchange Act. *Gruber v. Gilbertson*, 628 F. Supp. 3d 472, 491 (S.D.N.Y. 2022).

Finally, Defendants claim (incorrectly) that Plaintiff purportedly submitted Dr. Werner's report in contravention of the Court's schedule. Opposition at 9-13. As Plaintiff previously explained, however, when the parties proposed an extended schedule related to expert discovery, the parties did so within the context of briefing for class certification. ECF No. 133 at ¶10. Thus, it was counsel for Plaintiff's understanding that the related expert discovery was discovery within the context of class certification. *Id*. Indeed, Defendants cite to Dr. Werner's testimony showing that at the point of class certification, his opinions at the time related solely to class certification. Opposition at 12. This fact demonstrates that Plaintiff proffered Dr. Werner as an expert at that time for the purposes of class certification.[5]

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion.

---

[5] Additionally, Defendants have not demonstrated bad faith. *See, e.g.*, *Watts v. City of Hartford*, No. 3:00CV0681 (RNC), 2004 WL 717132, at *2 (D. Conn. Mar. 31, 2004) ("a court may choose to deny a motion to strike and give the challenged materials whatever consideration may be appropriate in analyzing the motion for summary judgment"). To the extent Defendants assert that they are entitled to additional discovery in light of Dr. Werner's report, Plaintiff is not opposed to such discovery if Plaintiff is permitted additional discovery with respect to Dr. Tabak's report.

DATED:  April 11, 2025

**GLANCY PRONGAY & MURRAY LLP**

By:  _s/ Ex Kano S. Sams II_

Robert V. Prongay (admitted _pro hac vice_)
Ex Kano S. Sams II (admitted _pro hac vice_)
Charles H. Linehan (admitted _pro hac vice_)
Pavithra Rajesh (admitted _pro hac vice_)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: clinehan@glancylaw.com

_Counsel for Lead Plaintiff Tom Brooks and the Class_

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

_Additional Counsel_

17

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(c)**

I, Ex Kano S. Sams II, declare that pursuant to Local Civil Rule 7.1(c), that excluding captions, indices, table of contents, table of authorities, and signature blocks, this brief contains 5,834 words. I further declare that Local Civil Rule 7.1(c) states that the provisions for the length of memoranda of law provided therein govern except "as otherwise directed by the court," and that in a memo endorsement dated November 27, 2024 (ECF No. 117), the Court provided that the parties may use up to 20 pages for this brief.

_s/ Ex Kano S. Sams II_
Ex Kano S. Sams II

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On April 11, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 11, 2025.


_s/ Ex Kano S. Sams II_
Ex Kano S. Sams II