# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE KANDI TECHNOLOGIES
GROUP, INC. SECURITIES
LITIGATION

Civil Action No. 20 CIV. 8082 (DEH)

LOSS CAUSATION AND DAMAGES REBUTTAL DECLARATION OF
DR. ADAM WERNER
April 11, 2025

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   CONCLUSIONS....................................................................................................4

III.  AREAS OF AGREEMENT....................................................................................4

IV.   CRITIQUE OF THE TABAK DECLARATION............................................................5

      A.    Dr. Tabak is Wrong That I Did Not Consider the Motion to Dismiss Order ..........7

      B.    Dr. Tabak's Critiques Regarding My Analysis of the November 14, 2016
            Disclosure Are Unfounded ................................................................................9

      C.    Dr. Tabak's Critiques of My Analysis of the March 14-16, 2017
            Disclosures Are Baseless ................................................................................12

      D.    My Selection of Event Windows for the Corrective Disclosures Was
            Appropriate and Based on a Consistent News-Driven Methodology....................16

      E.    A Constant-Dollar Inflation Ribbon is Appropriate .............................................20

V.    LIMITING FACTORS AND OTHER ASSUMPTIONS..................................................22

I, Adam Werner, declare and state, under penalty of perjury, that the following is true and correct to the best of my knowledge, information, and belief. If called to testify, I could and would testify competently to the following facts.

## I.    INTRODUCTION

1.    In my expert declaration dated November 8, 2023 ("Werner Declaration") (ECF No. 96-1), I examined factors that are generally accepted by courts as indicative of the efficiency of the market in which a security trades. Based on my analysis of those factors, I concluded that Kandi Technologies Group, Inc., ("Kandi" or the "Company") common stock traded in an efficient market during the period from June 10, 2015 through March 13, 2017, inclusive. I understand that in an Opinion and Order issued on September 30, 2024, the Court granted Plaintiff's motion for class certification and, for reasons unrelated to my market efficiency analysis, slightly altered the class period to August 10, 2015 through March 13, 2017 ("Class Period"). In my declaration, I showed that each of the *Cammer* and *Krogman* factors supports a finding that Kandi stock traded in an efficient market throughout the Class Period. I further demonstrated, through event study analysis, that Kandi stock reacted to new Company-specific (and allegation-related) information as it entered the market. Finally, I determined in the Werner Declaration that a common damages model exists to measure damages on a class-wide basis for all potential class members in this matter.

2.    Following the Werner Declaration, I submitted a declaration dated February 12, 2025, containing my loss causation and damages analyses and conclusions ("Werner LCD Declaration"). In this declaration, I concluded that the alleged misrepresentations and omissions

caused the price of Kandi stock to be artificially inflated over the course of the Class Period.[1] Lead Plaintiff alleged that Defendants made misrepresentations, omissions, and half-truths throughout the Class Period by repeatedly portraying to market participants that related party transactions made up either zero or a *de minimis* amount of its quarterly reported revenues.[2] Lead Plaintiff also alleged that Kandi misrepresented the reliability and effectiveness of its internal controls by repeatedly stating its controls were effective despite knowingly hiding from market participants the fact that the vast majority of its reported revenues were actually from related party transactions.[3] I then determined that the corrective disclosures on November 14, 2016 and March 14-16, 2017 revealed the truth about the Company's reliance on related party transactions, its ineffective internal controls, and its propensity to engage in fraud to deceive investors.[4] I also calculated the total amount of artificial inflation stemming from these disclosures using the residual declines following these disclosures, equal to $1.10 per share.[5] Finally, I determined that this $1.10 per share of artificial inflation remained constant during the Class Period until the first disclosure on November 14, 2016 partially dissipated this inflation.[6]

3.    I am now asked by counsel for the Lead Plaintiff, Glancy Prongay & Murray LLP, to consider, evaluate, and respond to the arguments and conclusions in the Declaration of David I. Tabak, Ph.D. ("Tabak Declaration"). The scope of the Tabak Declaration was to "review the

---

[1] Werner LCD Declaration, ¶¶45-95.

[2] Werner LCD Declaration, ¶90.

[3] Werner LCD Declaration, ¶90.

[4] Werner LCD Declaration, ¶¶45-95.

[5] Werner LCD Declaration, ¶¶45-95.

[6] Werner LCD Declaration, ¶91.

Werner Declaration and to determine whether it lays out reliable analyses for assessing loss causation and for quantifying damages, if any, in this matter."[7]

4.    The documents I reviewed and relied upon in the course of this engagement that are in addition to those cited in my previous declarations are listed in Exhibit-2. My credentials and compensation are presented in the Werner LCD Declaration. My full vitae including testimony that I have provided since the Werner LCD Declaration is attached as Exhibit-1 to this report.

5.    I understand that as an expert witness in this proceeding, my duty in providing my declaration is to the Court and that this duty overrides any obligation to the parties who have engaged me, from whom I have received instructions or compensation. I confirm that I have complied with this duty.

---

[7] Tabak Declaration, ¶1.

## II.    CONCLUSIONS

**OPINION 1:** Contrary to Dr. Tabak's assertion, I did consider the MTD Order in my loss causation and damages opinion and I did explicitly reference this order in my previous rebuttal report. However, Dr. Tabak errs in assuming that the MTD Order is an appropriate proxy that can substitute an economic assessment of confounding information. From an economic perspective, there is nothing inconsistent between the MTD Order and my loss causation analysis.

**OPINION 2:** Dr. Tabak's critiques of my loss causation analysis for the November 2016 disclosure rely on his unfounded assertion that the academic literature I cite to are somehow inapplicable to the instant case. In fact, the literature I rely on in assessing the market signals sent by the November 2016 is applicable to the sudden CFO resignation on this day as the literature explicitly studied executive resignations and Kandi itself characterized Mr. Wang's departure from the CFO role as a resignation.

**OPINION 3:** Dr. Tabak's arguments regarding my loss causation analysis for the March 2017 disclosure are largely a repeat of his misguided assertion that my analysis did not account for the MTD Order. Of the few unique arguments Dr. Tabak raises regarding the March 2017 disclosures, none compel different loss causation conclusions than the ones I presented in the Werner LCD Declaration.

**OPINION 4:** Dr. Tabak's contention that I was inconsistent in my application of event windows relies on his requirement that all event windows studied must align with a pre-determined "convention". Yet, Dr. Tabak failed to recognize that the "convention" I used was based on the news and flow of information that occurred on the corrective disclosure events. While I do not accept Dr. Tabak's position that an appropriate "convention" must result in equal-length event windows regardless of the actual news flow, I show in Exhibit-3 that had I adopted a more dogmatic "convention" of one-day event windows, the impact of this change on the artificial inflation ribbon would be *de minimis*.

**OPINION 5:** Dr. Tabak's concerns regarding the appropriateness of a constant dollar inflation ribbon is unfounded. The inflation ribbon I present in the Werner LCD Declaration was appropriate and conservative. Other than his own speculations, Dr. Tabak has offered no tangible reason for me to modify the constant inflation ribbon I computed.

## III.    AREAS OF AGREEMENT

6.    While Dr. Tabak and I differ with respect to our overarching opinions on loss causation and damages, there remain certain facts upon which we appear to agree. These facts include:

     a. That Kandi stock traded in an efficient market throughout the Class Period;

     b. That the price of Kandi stock fell statistically significantly following the November 14, 2016 disclosure and this amount was equal to -$0.41 per share;

     c. That the price of Kandi stock fell statistically significantly on March 14, 2017 following the March 13, 2017 (after the close of trading) disclosure and this amount was equal to -$0.28 per share;

     d. That the price of Kandi stock fell statistically significantly following the March 16, 2017 disclosure and this amount was equal to -$0.35 per share; and

     e. That there was no Company-specific news disseminated on November 14, 2016 other than the announcement of Mr. Wang's sudden resignation.

7. In addition, Dr. Tabak did not perform his own event study analysis and instead used the results of my event study in the Tabak Declaration.

## IV. CRITIQUE OF THE TABAK DECLARATION

8. The scope of the Tabak Declaration was to "review the Werner Declaration and to determine whether it lays out reliable analyses for assessing loss causation and for quantifying damages, if any, in this matter."[8] To this end, Dr. Tabak presents four opinions:

     a. That the November 14, 2016 corrective disclosure could not have caused any losses as "Even if a 'signal' of 'potential' fraud were generally sufficient to find loss causation, the Werner Declaration fails to account for the fact that Mr. Wang did not 'depart[]' from management but assumed a new role within management at Kandi."[9]

---

[8] Tabak Declaration, ¶1.

[9] Tabak Declaration, ¶3.

b. That there was confounding Company-specific information disseminated alongside the allegation-related disclosures on March 14, 2016 due to the Motion to Dismiss Order, dated September 13, 2022 ("MTD Order") dismissing certain parts of the Plaintiff's claims.[10] Specifically, Dr. Tabak contends that because the restatement on March 14, 2017 also addressed "the Company's equity investment in the JV Company" and "corrections to the classification of notes receivable and notes payable in the Company's statements of cash flow", and that Plaintiff's claims relating to these topics were dismissed, this suggests that these two additional restatement actions were confounding information.[11]

c. That my application of different length event windows to measure the impact of the November 14, 2016 and the March 14-16, 2017 disclosures deviates from the manner supported by Dr. Tabak's publications regarding event windows.[12]

d. That a constant inflation ribbon may not be appropriate as "there were 39 days in the Class Period where Kandi's stock price was lower than it was immediately before the March 2017 disclosures" and "the assumption that inflation is unchanging over the Class Period is inconsistent with the changing quantities of related-party transactions across the financial reporting periods."[13]

9. As an initial matter, despite all of Dr. Tabak's contentions and concerns, nowhere in the Tabak Declaration does Dr. Tabak present an alternative estimate of per share damages nor

---

[10] Tabak Declaration, ¶4.

[11] Tabak Declaration, ¶4.

[12] Tabak Declaration, ¶5.

[13] Tabak Declaration, ¶6.

an alternative inflation ribbon. That is, while Dr. Tabak criticizes my work as being purportedly "fatally flawed,"[14] he does not even attempt to present what he may deem to be more appropriate analyses. Though Dr. Tabak takes issues with my findings and conclusions, that he cannot or will not offer any alternatives is telling. Dr. Tabak appears to be more concerned with the legal implications of the case facts rather than the economic implications. As I demonstrate below, when viewed in the appropriate context – that of loss causation and damages - all of Dr. Tabak's critiques are either baseless or misguided.

### A.      Dr. Tabak is Wrong That I Did Not Consider the Motion to Dismiss Order

10.      Dr. Tabak contends "in none of its analyses does the Werner Declaration mention, much less even attempt to account for, the allegations that have been dismissed from this case."[15] Dr. Tabak takes issue with my purported disregard of the MTD Order as, according to him, "this ruling affects *all* of [my] loss-causation analyses."[16] According to Dr. Tabak, his assumption that I did not consider the MTD Order is at least partially informed by his observation that the Werner Declaration does not list the MTD Order in its Exhibit-2, "Documents and Other Information Considered[.]"[17]

11.      Contrary to Dr. Tabak's representations, I did consider the MTD Order and while the Werner LCD Declaration did not explicitly reference this document, it was included as reference in the Rebuttal Declaration of Dr. Adam Werner, dated April 1, 2024 ("Werner Rebuttal Declaration"), which was in response to Defendants' Opposition to Plaintiff's Motion for Class

---

[14] Tabak Declaration, ¶2.

[15] Tabak Declaration, ¶13.

[16] Tabak Declaration, ¶15 (emphasis in original).

[17] Tabak Declaration, ¶24.

Certification, filed March 7, 2024 ("Opposition Motion"). As my work in this matter has been continuous, the MTD Order was very much considered in my loss causation and damages analysis.

12.    Putting aside this surface issue, Dr. Tabak's attempt to construe the MTD Order as establishing that there was confounding information on the March 14, 2017 goes beyond the realm of economics and ventures into legal interpretations. Dr. Tabak focuses on this following passage from the MTD Order in particular:

> "Plaintiff's opposition to Defendants' motion suggests that other inaccuracies identified in Kandi's restatement of financial results are actionable misstatements. In restating its financials, Kandi acknowledged that it had erred in 'classification of notes receivable and notes payable' and 'accounting for the Company's equity investment in the JV Company.' But the SAC alleges only that those issues were identified in the restatement and does not allege any of the specific, false statements about those accounting issues that the restatement addressed. That is insufficient to state a claim under Rule 9(b)."[18]

13.    According to Dr. Tabak, because the "classification of notes receivable and notes payable" and "accounting for the Company's equity investment in the JV Company" were issues that the Court in this matter deemed insufficient to state a claim under Rule 9(b) this necessarily means that any mention of these two issues on the final disclosure should be considered confounding information.[19] Because I am not a lawyer (and, to my knowledge, neither is Dr. Tabak), I cannot say whether the Court's decision that certain statements were insufficient to state a claim necessarily translates into a definitive set of constraints for how loss causation and damages analyses must be performed. As an economist, however, I find Dr. Tabak's interpretation of "classification of notes receivable and notes payable" and "accounting for the Company's equity

---

[18] MTD Order, p. 12.

[19] Tabak Declaration, ¶14.

investment in the JV Company" as issues entirely separate from Kandi's restatement announcement and the identification of weakness in internal controls unconvincing. The fact remains that Kandi's need to reclassify its notes receivable and notes payable as well as its restatement of its accounting for Kandi's equity investment in the JV Company were a direct result of the Company's internal control failures and were included by Kandi itself as part of its restated financial results. As the restatement and internal control deficiency announcement on March 14, 2017 is the crux of Plaintiff's allegations, all factors that contributed to the Company's internal control deficiencies and the need to restate its financial results should be considered as inextricable components of the alleged fraud.

14.     Tellingly, despite Dr. Tabak repeatedly arguing that the MTD Order establishes there was confounding information on the March 14, 2017 disclosure, nowhere in the Tabak Declaration does Dr. Tabak even attempt to quantify the individual impact of the purported confounding information. If it was economically reasonable to segregate information content of the March 14, 2017 disclosure as Dr. Tabak has done, one would expect Dr. Tabak to at least attempt to demonstrate the economic impact of these different pieces of information. That the most Dr. Tabak is able to offer is a juxtaposition of the text of MTD Order with the text of the March 14, 2017 disclosure demonstrates that his analysis is ultimately unhelpful in assessing loss causation and damages.

**B.     Dr. Tabak's Critiques Regarding My Analysis of the November 14, 2016 Disclosure Are Unfounded**

15.     Dr. Tabak argues that my loss causation analysis of November 14, 2016 is flawed as "The Werner Declaration never explains how signaling a potential for financial misrepresentations or fraud allows for a finding of loss causation," "The Werner Declaration also cites no news stories or analyst reports linking Mr. Wang's change of position to any potential

financial wrongdoing," and "the Werner Declaration fails to consider alternative explanations for any stock-price decline following the announcement of management changes at Kandi."[20] I address each of these arguments in turn.

16.    Contrary to Dr. Tabak's assertions, I did explain how sudden executive departures can signal concealed problems and I also explained how such a signal leads to a finding of loss causation. As I explained and supported via academic citations in the Werner LCD Declaration, it is a generally accepted principle in the published finance literature that management departures signal to investors the existence of potential undisclosed problems at a company.[21] I also explained:

> "While the first alleged corrective disclosure on November 14, 2016 did not explicitly disclose internal control issues, it was nonetheless a trigger event for investors that signaled potential issues within the Company. As highlighted in the academic literature referenced above, while not all management departures indicate that fraud has occurred, sudden departures can signal potential misdeeds on account of the link between fraud and departures. The stock price then reflects the elevated concerns. Moreover, the signals in this case were accurate according to the Plaintiff's allegations. The resulting share price decline, therefore, necessarily constituted dissipation of artificial inflation. While, theoretically, a possible alternative explanation exists for a stock price drop following an executive departure – that a company may be losing the value of an experienced and valuable manager – Kandi's poor financial performance leading up to the November 14, 2016 disclosure indicates this alternative is unlikely."[22]

17.    That Dr. Tabak may disagree with my opinion does not detract from the fact that I did support my analysis with literature references and an analysis of how those economic principles espoused in the literature applies to Kandi in the instant case.

---

[20] Tabak Declaration, ¶¶16 and 19.

[21] Werner LCD Declaration, ¶53.

[22] Werner LCD Declaration, ¶59.

18.    I understand that Dr. Tabak also raises the concern that my application of the academic literature may be inappropriate as the literature I cite to does not study executives "moving to another position at the same company".[23] Dr. Tabak does recognize, however, that the literature studies resignation of executives.[24] Importantly, the November 14, 2016 disclosure explicitly refers to Mr. Wang Cheng's departure as a resignation:

> "Mr. Wang, **who is resigning** as our Chief Financial Officer in order to assume the position of Chief Strategy Officer, has 20 years of experience in operations, strategy, financial management, and mergers and acquisitions. Going forward, he will be responsible for driving Kandi's corporate strategy and implementing investment decisions."[25]

19.    While I do not agree with Dr. Tabak's semantic approach to assessing the applicability of literature studies, that Mr. Wang's resignation as CFO is explicitly labeled a resignation by the Company itself undermines Dr. Tabak's argument. Thus, the literature studies I refer to are very much applicable in acquiring an understanding of how the sudden resignation of Mr. Wang would have been a negative signal to market participants.

20.    Dr. Tabak's following observation that there were no news stories or analyst reports linking Mr. Wang's resignation to any potential financial wrongdoing is a red herring. That the resignation was a negative market signal is based on economic theory informed by the academic literature; it does not require market participants to acknowledge the signal via official publications to have an economic effect. While the lack of explicit recognition by market participants may suggest other reasons for the cause of the statistically significant stock price decline on that day,

---

[23] Tabak Declaration, ¶17.

[24] Tabak Declaration, ¶17.

[25] "Kandi Announces Appointments of New Chief Strategy Officer and Chief Financial Officer," *Newsfile*, November 14, 2016 (emphasis added).

Dr. Tabak has failed to offer any tangible evidence whatsoever of this alternative explanation. Absent any evidence to the contrary, and in light of established economic principles linking stock price declines to negative signals sent by sudden executive resignations, I see no reason to deviate from my initial conclusion that it was the sudden CFO resignation announcement on November 14, 2016 that caused the statistically significant price decline on this day.

21.    While I understand that Dr. Tabak attempts to offer an "alternative explanation[]"[26] for Kandi's statistically significant price decline on November 14, 2016, the only explanation he proposes is entirely speculative. Dr. Tabak provides no citations, academic or otherwise, for what is essentially his own wild guess that "the market may have been concerned about the direction that Mr. Wang would pursue as Kandi's Chief Strategy Officer or about his ability to be effective in that position."[27] Though Dr. Tabak and I both recognize that there are no news stories or analyst reports to assist in understanding precisely how market participants viewed the sudden resignation, the appropriate methodology in light of this difficulty would be to refer to past studies that have examined similar phenomenon as a proxy for understanding the market reaction rather than making unsubstantiated assumptions.

C.    **Dr. Tabak's Critiques of My Analysis of the March 14-16, 2017 Disclosures Are Baseless**

22.    Dr. Tabak splits his criticisms of my analysis of the March 14-16, 2017 into three separate sections, each addressing one individual day within this three day event window.[28] For the March 14 and 16, 2017 disclosures, Dr. Tabak again repeats the argument that because I

---

[26] Tabak Declaration, ¶19.

[27] Tabak Declaration, ¶19.

[28] Tabak Declaration, ¶¶20-37.

purportedly did not consider the MTD Order, I overlooked the confounding information disseminated alongside the allegation-related information on March 14, 2017 and March 16, 2017.[29] For the March 15, 2017 disclosure, Dr. Tabak argues that this day should not have been considered in my loss causation and damages analysis and that my use of a three-day window was inappropriate.[30] For the March 16, 2017 disclosure, Dr. Tabak contends that I should not have considered this day in my analysis and that I did not control for potentially confounding information within the earnings announcement that was also disseminated on that day.[31]

23.    I have addressed Dr. Tabak's first argument in Section IV.A above. Because Dr. Tabak erroneously considers the information mentioned in the MTD Order as confounding information, his arguments with respect to my purported lack of disaggregation of the March 14 and 16, 2017 disclosures are baseless. Understood correctly, the issues Dr. Tabak contends are confounding are, in fact, inextricable components of the alleged fraud. Absent any showing or evidence from Dr. Tabak on what the quantification of this confounding information would be, or even a methodology to ascertain such a value (to the extent that such a methodology even exists), I give no weight to Dr. Tabak's argument that the March 14 and 16, 2017 disclosures contained confounding information related to the MTD Order.

24.    Dr. Tabak's arguments with respect to the March 15, 2017 disclosure are rooted in his criticisms of my use of a three-day event window for the March 14-16, 2017 disclosure. As such, I leave the discussion of these critiques to the next Section of my current declaration.

---

[29] Tabak Declaration, ¶¶20-27 and 33-37.

[30] Tabak Declaration, ¶¶28-32.

[31] Tabak Declaration, ¶¶33-37.

25.    For the March 16, 2017 disclosure, Dr. Tabak raises two specific arguments. First, Dr. Tabak contends that I should not have analyzed March 16, 2017 as this disclosure was not alleged in the Complaint.[32] Second, Dr. Tabak argues that I failed to account for the confounding information on March 16, 2017 related to the earnings announcement on that day.[33]

26.    As I explained in the Werner LCD Declaration:

"The final corrective disclosure, March 13, 2017 (after the close of trading), possess all the hallmarks of a clear corrective disclosure. This was the event by which market participants learned the truth, that Kandi's internal controls were deficient, that a restatement of financial results was necessary, and that all the financial results market participants had been relying on since the start of FY 2015 were no longer reliable. All of the information market participants received via this disclosure directly relates to (and corrects) Plaintiff's allegations of misrepresentations, omissions, and/or half-truths. However, the full impact of this disclosure is not limited to only one trading day. It cannot be ignored that just two days later, on March 16, 2017, Kandi filed restated financial statements that sought to correct the previous accounting errors, and these new financial statements revealed the full extent of the Company's previous accounting misdeeds. That is, where the March 13, 2017 disclosure (after the close of trading) revealed the existence of internal control weaknesses and accounting fraud, the March 16, 2017 Form 10-K filing detailed the economic extent of both. To appropriately capture the full extent of the alleged corrective disclosure, both the initial disclosure and the later more substantive and detailed disclosure must be considered. Therefore, I examined the final alleged disclosure on March 13, 2017 (after the close of trading) as an event window from March 14, 2017 through March 16, 2017."[34]

27.    That is, my reasoning for examining the March 16, 2017 disclosure is grounded in an economic approach – not a legal one. While I agree with Dr. Tabak that this day is not alleged by Plaintiffs as a disclosure, to ignore the financial effects and repercussions of Kandi's restatement would stop short of an economically complete analysis. If it is determined by the Court

---

[32] Tabak Declaration, ¶33.

[33] Tabak Declaration, ¶36.

[34] Werner LCD Declaration, ¶60.

in this matter that post-Class Period disclosures cannot be considered, I will revise my calculation of artificial inflation to reflect such a determination. However, absent such a finding, it remains my opinion that, from a financial economic perspective, the market's reaction to the March 14, 2017 disclosure cannot be fully captured via only a single trading day. It would be an incomplete and inaccurate analysis, from an economic perspective, to consider only the fact of a restatement and not the impact of that very same restatement. Certainly, market participants and investors did not disregard the actual restated financial results nor does Dr. Tabak argue that this is the case.

28.    Further, Dr. Tabak's concern that "Even the Werner Declaration recognizes that 'Lead Plaintiff further alleges that the truth about Kandi's inability to remediate its internal control weaknesses nor its material weaknesses in its financial reporting and oversight system was first partially corrected on November 14, 2016 when Kandi announced the sudden resignation of its CFO and ultimately corrected via the Company's March 13, 2017 press release disclosing that Kandi would be restating past financial results'"[35] does not contradict my examination of March 16, 2017 as Dr. Tabak appears to suggest. It is my finding that while the market may have learned the truth on March 14, 2017, it took the market until the filing of the restated financial statements on March 16, 2017 to fully incorporate the economic impact of this truth into the market price. Dr. Tabak's implied approach essentially suggests that a loss causation analysis is restricted to operate only within the legal view of the facts (i.e. the Complaint) with zero consideration given to the economic view of the facts. Dr. Tabak has referenced no legal or economic authority, nor am I aware of any, to support such a position.

29.    Dr. Tabak's final argument with respect to the March 14-16, 2017 disclosure is that I did not consider the earnings announcement released alongside the Form 10-K containing the

---

[35] Tabak Declaration, ¶33.

restated financial statements on March 16, 2017.[36] While Dr. Tabak suggests that this earnings announcement could "contain potential confounding news",[37] he fails to mention even a single piece of information from the earnings announcement that could be considered negative confounding information. Absent the identification of any tangible factors, Dr. Tabak's concerns of *potential* confounding information amount to little more than speculation.

      **D.**     **My Selection of Event Windows for the Corrective Disclosures Was Appropriate and Based on a Consistent News-Driven Methodology**

30.     Dr. Tabak criticizes my use of event windows that he considers to be "inconsistent event windows" and contends that this renders my loss causations and damages conclusions unreliable.[38] To note, he does not contend that the selection of a one-day window to measure the valuation impact of the November 2016 disclosure, nor the selection of a three-day event window to measure the valuation impact of the March 2017 disclosure, were necessarily inappropriate. Rather, his criticism is that the event window length should be identical for all studied events and, as a result, implies that the expert should ignore the actual news that is the subject of the event study when determining event window lengths. His argument is specious and at odds with his own report and the evidence in this case.

31.     As an initial matter, Dr. Tabak's argument relies on semantics. He focuses on a single citation in the Werner LCD Declaration in support of multi-day event windows that states "many experts have adopted the convention of looking at one-day, two-day, or five-day periods following an announcement."[39] Then, based on a cursory google search for the definition of

---

[36] Tabak Declaration, ¶37.

[37] Tabak Declaration, ¶36.

[38] Tabak Declaration, Section IX (¶38-42).

[39] Werner LCD Declaration, ¶61.

"convention" and his own inferences as to the implications of the word, Dr. Tabak concludes that an expert conducting an event study must only apply event windows of a predetermined length for all events in an event study. He does not cite any authorities, other than an online dictionary, to support this argument. In fact, in his own publication "Determination of the Appropriate Event Window Length in Individual Stock Event Studies," Dr. Tabak had explicitly warned that "a fixed-length event window may be less appropriate for studies that focus on just a few securities or a single security"[40] and proposed that "if the sample of companies is relatively small, *it becomes feasible to measure each event window individually*."[41] Below is the full excerpt from Dr. Tabak's publication:

> "*A fixed-length event window may be less appropriate for studies that focus on just a few securities or a single security*. For one thing, the smaller the sample, the less likely that an initial over- or underreaction in the price of one security will be offset by an under- or over- reaction in the price of another, because the Law of Large Numbers will not apply. Also, if the sample of companies is relatively small, *it becomes feasible to measure each event window individually. If so, one possibility is to decide on an ad hoc basis how long to allow for the market to react to an event*. A researcher might look at certain indicators that the market is reacting to news – such as unusually high or low returns, unusually high trading volume or unusually high fluctuations in price – and base a judgment about how long the market took to react on how long these indicators persisted. If on the three trading days following an event, for example, there were unusually high negative returns to the security affected, but on the fourth trading day the return was close to zero, a researcher might suspect that the reaction to the event lasted three days. If trading volume was also unusually high over the first three trading days, but

---

[40] "Determination of the Appropriate Event Window Length in Individual Stock Event Studies," by Dmitry Krivin, Robert Patton, Erica Rose, and David Tabak, *NERA Economic Consulting*, November 4, 2003, p. 6.

[41] "Determination of the Appropriate Event Window Length in Individual Stock Event Studies," by Dmitry Krivin, Robert Patton, Erica Rose, and David Tabak, *NERA Economic Consulting*, November 4, 2003, p. 6 (emphasis added).

returned to a typical level on the fourth day, this might confirm the judgment based on abnormal returns."[42]

32.     Further undermining his argument that all event windows must be identical is Dr. Tabak's own admission that he is willing to deviate from his own conventions as long as "an appropriate statistical penalty" is applied.[43] It appears that, based on an incomplete reading of my declaration, Dr. Tabak was unaware that I did apply a statistical penalty when measuring the statistical significance of the cumulative event window – a statistical adjustment designed to increase the threshold for statistical significance when assessing multi-day windows.

> "Results for the 3-Day Event Window are the sum of the individual component days, with the exception of the 3-day t -statistic. The event window t- statistic was calculated as the sum of the individual t -statistics divided by the square root of the number of trading days within the event window (e.g. 3)."[44]

33.     Notwithstanding Dr. Tabak's disregard of the statistical adjustments in my report, his criticism entirely overlooks the "convention" that I actually used to determine event window lengths in the Werner LCD Declaration. While Dr. Tabak argues for an arbitrary event window criteria that does not consider the actual evidence in the case – I explained in the Werner LCD Declaration that my choice of event windows was news-driven.[45] The November 2016 disclosure was a one-time disclosure whereby the Company announced Mr. Wang's resignation as CFO and new role, and was thus measured using a one-day event window. On the contrary, the March 2017

---

[42] "Determination of the Appropriate Event Window Length in Individual Stock Event Studies," by Dmitry Krivin, Robert Patton, Erica Rose, and David Tabak, *NERA Economic Consulting*, November 4, 2003, pp. 6-7 (emphasis added).

[43] Tabak Declaration, fn 34.

[44] Werner LCD Declaration, Exhibit 6, fn 6.

[45] Werner LCD Declaration, ¶58-63.

disclosure transpired over several days, the initial announcement of non-reliance first on March 13, 2017 (after the close of trading), and the subsequent details and extent of the restatement and the Company's associated financial prospects on March 16, 2017. As I explained in the Werner LCD Declaration, for both the November 2016 and March 2017 disclosure events my event window criteria followed the same convention – the valuation impact of the news was measured over the same period that the news was released to the market, and thereby over the same period that market participants could trade on that news.

34.    Nonetheless, if I were to apply Dr. Tabak's more dogmatic approach, the impact of such an approach on the inflation ribbon and per share damages would be *de minimis*. Assuming Dr. Tabak's "convention" of using one-day event windows, the events would be November 14, 2016, March 14, 2017, and March 16, 2017.[46] Because the residual dollar decline on March 15, 2017 was $0.06,[47] adopting Dr. Tabak's one-day event window convention would therefore lower maximum inflation during the Class Period from $1.10 per share to $1.04 per share. I present this alternative inflation ribbon in Exhibit-3.

---

[46] I understand that Dr. Tabak also suggests adopting a 3-day event window "convention" to measure the impact of the November 14, 2016 disclosure (Tabak Declaration, ¶41). However, using a 3-day event window for this disclosure would violate Dr. Tabak's own conditions for extending an event window past a single day. In Dr. Tabak's publication "Determination of the Appropriate Event Window Length in Individual Stock Event Studies," Dr. Tabak had applied a rule to only extend the event window if there are consecutive statistically significant price reactions following the initial disclosure: "The first rule we test bases event window length on how long significant daily abnormal returns to the security price continue. According to this rule, the market's reaction to an event persists until the first day with no statistically significant abnormal return. If statistically significant abnormal returns to a stock price persist, we assume that the market is still reacting to that event. … The logic behind this rule is simple: if significant abnormal returns persist, then the statistical evidence suggests that the market is continuing to incorporate the new information." (Determination of the Appropriate Event Window Length in Individual Stock Event Studies," by Dmitry Krivin, Robert Patton, Erica Rose, and David Tabak, *NERA Economic Consulting*, November 4, 2003, p. 8). For Kandi, neither of the two trading days following the November 14, 2016 disclosure (November 15 and 16, 2016) were statistically significant.

[47] Werner LCD Declaration, Exhibit-6.

### E.    A Constant-Dollar Inflation Ribbon is Appropriate

35.    Dr. Tabak raises two potential concerns regarding the use of a constant-dollar inflation ribbon within the out-of-pocket damage methodology outlined in the Werner LCD Declaration. First, while Dr. Tabak concedes that the ribbon is conservative for 362 of the 401 days of the Class Period,[48] he suggests that the ribbon may be aggressive for 39 of 401 of the Class Period where the closing price was below the March 13, 2017 closing price. Second, Dr. Tabak suggests that some of the dissipation of artificial inflation that occurred following the disclosure events should be allocated to pre-Class Period statements.

36.    Dr Tabak's potential concerns provide no reason for me to revise my inflation ribbon or damages computations. Dr. Tabak's point regarding Kandi's stock price being below the March 13, 2017 close at various points during the Class Period is moot, as my damages computation already takes this into account. As explained in the Werner LCD Declaration, my application of the out-of-pocket methodology was consistent with "statutory and case law limitations" including *Dura*, which Dr. Tabak highlights.[49] That is, for any investor who purchased Kandi stock during the Class Period, damages on that purchase would be equal to the _lesser_ of their: (i) economic/inflation loss (inflation at purchase minus inflation at sale); and (ii) their investment loss (purchase price minus sales price).[50] Therefore, if an investor purchased a share of Kandi stock below the March 13, 2017 closing price and subsequently sold that share for a loss that was below their inflation loss, that investor's damages would be capped by their investment

---

[48] Tabak Declaration, ¶45: "the Werner Declaration is correct that its analysis is a "conservative approach" when the Kandi's stock price was above its March 13, 2017 close."

[49] Werner LCD Declaration, ¶83-85 and ¶93-94.

[50] Werner LCD Declaration, ¶93-94. Also see Werner LCD Declaration fn 101, describing additional damages limitations applied to shares sold during, or retained beyond, the 90-day period as stipulated by the Private Securities Litigation Reform Act of 1995.

loss. Therefore, Dr. Tabak's concerns about compensation to certain investors who purchased below the March 13, 2017 closing price has already been accounted for in my analysis.

37.    To the extent that Dr. Tabak is advocating for a constant percentage ribbon to account for the 39 of 401 Class Period days on which the Kandi closing price was lower than the March 13, 2017 closing price, I present this hypothetical inflation ribbon in Exhibit-4. However, despite Dr. Tabak's suggestions to the contrary, this would not be more conservative than the ribbon I constructed and incorporated into my damages analysis. Exhibit-4 shows the inflation ribbon from the Werner LCD Declaration and a constant percentage inflation ribbon side-by-side, showing that the inflation ribbon I used would be the more conservative measure of inflation on 89% of days (or 358 of 401 Class Period days). In addition, as shown in Exhibit-4, maximum inflation per share using a percentage ribbon would equal $2.89 per share, more than double the maximum inflation per share of $1.10 per share under the constant dollar ribbon I present in the Werner LCD Declaration.

38.    Dr. Tabak also suggests that some of the artificial inflation that dissipated following the corrective disclosures could have been allocated to pre-Class period statements during the construction of the inflation ribbon. Notably, Dr. Tabak performs no financial, valuation, or statistical analysis to assess or otherwise determine if this was actually the case. Rather, the potential concern he highlights is more akin to musings about a hypothetical alternative ribbon that he could not and did not quantify, and did not explain the basis for constructing. He provides no evidence to support this hypothetical alternative ribbon. His suggestion further ignores and mischaracterizes Plaintiff's theory of loss causation. Plaintiff's theory of loss causation, as described and supported by financial and economic principles outlined in the Werner LCD

Declaration,[51] are not focused on one singular line-item within the Company's financial statements, or one particular financial statement, being wrong. Rather, the loss causation theory, and the price declines following the corrective disclosures, reflect the holistic view that Kandi did not have accurate financial statements, did not have reliable internal controls to timely detect and correct inaccuracies, that as a result the Company's business prospects had been misrepresented to the market, and that all of these issues were systematic and had plagued the Company for a long time and would impact the Company going forward. Because the disclosures informed the market about systemic and recurring issues within the Company, the stock price declines (and consequently inflation attributable to these declines) were not tied to any one particular misstatement, but rather all of the misstatements collectively. As such, even if Dr. Tabak had provided any evidence to support his inflation-scaling claim (he did not), that hypothetical ribbon would not reflect the economic reality and the market's perception of the Company in this case.

39.     Therefore, Dr. Tabak's concerns provide no reason for me to revise my inflation ribbon or damages computations.

## V.     LIMITING FACTORS AND OTHER ASSUMPTIONS

40.     My analyses and opinions are based on the information available as of the date of this declaration. Should any additional data or information become available subsequent to the submission of this declaration, I reserve the right to supplement or amend this declaration based on this new information.

Dated:     April 11, 2025

Adam Werner, PhD
Managing Director, SEDA

---

[51] Werner LCD Declaration, ¶48-54.

**Exhibit-1**
**Curriculum Vitae**
**Adam Werner, Ph.D.**

## EDUCATION

1998        Northwestern University, Kellogg Graduate School of Management
            Ph.D. in Finance

1992        Oberlin College
            B.A. in Economics with Honors

## TEACHING EXPERIENCE

2014 – 2023        Cal Poly San Luis Obispo
                   Orfalea College of Business
                   San Luis Obispo, CA
                   Lecturer in Economics

## BUSINESS EXPERIENCE

2023 – Present        SEDA Experts

2015 – 2023          Crowninshield Financial Research

2018 – 2021          Pismo Beach Planning Commission

2009 – 2015          Gnarus Advisors/Berkeley Economic Consulting

2008 – 2009          LitiNomics

2004 – 2008          CRA International

2000 – 2003          National Economic Research Associates, Inc.

1998 – 2000          Cornerstone Research

1992 – 1993          Federal Reserve Bank of Cleveland

## PAPERS AND PUBLICATIONS

"The Impact of Underwriter Reputation on Equity Offering: An Empirical Study."
Thesis, 1999.

"The Long-Run Performance of Underwriters and its Impact on Seasoned Equity
Offerings." 1999.

"Dynamic Measures of Underwriter Reputation: A Study of IPO's." 1999.

**Exhibit-1**
**Curriculum Vitae**
**Adam Werner, Ph.D.**

"CAFE Economics: A Note on the Limits and Effectiveness of Fuel Economy Regulation." With Stephen Sheppard, 1992.

"Validation of Aggregate Damage Estimates in Securities Class Actions." with Narinder Walia, Law360, 2021.

"Trading Models Underestimate Securities Class Damages." with Narinder Walia, Law360, 2019.

"More 'Dark Pools" Deepen Litigation Issues." Law360, 2013.

"Recent Trends in Securities Class Action Litigation: Will Enron and Sarbanes-Oxley Change the Tides." with Elaine Buckberg, Todd Foster and Ronald Miller, 2003.

"The Effects of the PSLRA and Subsequent Events on Securities Litigation." With Fred Dunbar and Todd Foster, prepared for the New York City Bar Association, 2003.

"The Energy Tax: Who Pays?" joint with Mark Schweitzer, in Federal Reserve Bank of Cleveland's Economic Commentary, 1993.

## PRESENTATIONS

"Cause or Effect: Are Settlement Statistics Driving Down Settlements?" Presentation to Robbins Geller Rudman & Dowd, LLP in San Diego, CA on October 10, 2013, Wolf Popper, LLP in New York, NY on September 18, 2013, Abraham, Fruchter & Twersky, LLP in New York, NY on September 17, 2013, Robbins Geller Rudman & Dowd, LLP in Melville, NY on September 11, 2013, Entwistle & Cappucci, LLP in New York, NY on September 10, 2013, and Faruqi & Faruqi, LLP in New York, NY on September 10, 2013.

"The Economics of Securities Litigation." Sidley & Austin in Los Angeles, CA on March 14, 2007.

"The Global Cost of Capital." Panel discussion on valuing assets in foreign countries at the University of Texas School of Law VALCON conference in Las Vegas on February 8, 2007.

"Economic Damages in Securities Fraud Matters." NERA Luncheon Seminars with Alan Cox given at the Fifth Avenue Suites Hotel in Portland, OR on November 19, 2002 and at the W Hotel in Seattle, WA on November 20, 2002.

"Shareholder Class Actions: Calculation of Damages." Presentation to Skadden, Arps, Slate, Meagher & Flom, LLP in San Francisco, CA on October 30, 2002, Marsh FINPRO in San Francisco, CA on September 18, 2002, Marsh Risk & Insurance Services in San

**Exhibit-1**
**Curriculum Vitae**
**Adam Werner, Ph.D.**

Diego, CA on September 17, 2002 and Marsh FINPRO in Los Angeles, CA on September 13, 2002.

"Capital Formation: Class Action Litigation and Prevention." Speech and panel discussion focusing on securities class action litigation, which sometimes arise from initial public offerings and/or market volatility in the aftermarket. Presented at the 2002 CALBIO Summit in San Diego, CA on April 23, 2002.

"Shareholder Class Actions after the NASDAQ Bubble." Speech given to the Securities Litigation Sub-Committee of the Colorado Bar Association at Holland & Hart, LLP in Denver, CO on April 17, 2002.

"Trends in Litigation: How Claims and Losses Are Valued." Speech at the American Bankers Association Insurance Risk Management Annual Conference in San Diego, CA on February 4, 2002.

"Recent Trends in Securities Litigation." "Basic Economic Analysis in Securities Class Action" and "Challenging the Efficient Market Assumption in Securities Class Action Matters." presented to Cooley Godward in San Diego, CA on November 28, 2001. "Recent Trends in Securities Litigation." presentation with Marcia Mayer given at Howard, Rice, Nemerovski, Canady, Falk & Rabkin in San Francisco, CA on November 27, 2001.

"Recent Trends in Securities Litigation." presentation given to Marsh USA in Denver, CO on November 8, 2001, and Thelen, Reid & Priest in Los Angeles, CA on November 6, 2001.

"Financial Economics in Litigation." speech presented to Simpson, Thacher & Bartlett in Palo Alto, CA on July 31, 2001, Baker & McKenzie in San Diego, CA on July 18, 2001, Brobeck, Phleger & Harrison in San Francisco, CA on June 25, 2001 and to Latham & Watkins in San Francisco, CA on June 26, 2001.

"Economic Analysis in Securities Fraud Cases." Speech with Alan Cox delivered to Morrison & Forester, San Francisco, CA on July 25, 2001.

"Recent Trends: Shareholder Class Actions Five Years After the PSLRA." speech presented to Shearman & Sterling in San Francisco, CA on May 23, 2001, O'Melveny & Myers in Los Angeles, CA on May 30, 2001, and Gray, Cary, Ware & Freidenrich in San Diego, CA on June 6, 2001.

**Exhibit-1**
**Curriculum Vitae**
**Adam Werner, Ph.D.**

## EXPERT REPORTS AND TESTIMONY

*In re Kandi Technologies Group, Inc. Securities Litigation.* Issued a declaration (2023), provided deposition testimony (2024), and issued a rebuttal declaration (2024) on market efficiency and damage methodology in a securities class action. Issued a declaration (2025) on loss causation and damages (U.S.D.C. Southern District of New York).

*LetsGoBrandon.com Foundation v. National Association for Stock Car Racing, LLC.* Issued a declaration on aggregate damages (2024), a rebuttal declaration (2025), and provided deposition testimony (2025) in a complex business litigation matter (Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Florida).

*David Rigo Fernandez v. Douyu International Holdings Limited, Shaojie Chen, and Mingming Su.* Issued a declaration on damages in a securities class action (U.S.D.C. District of New Jersey, 2024).

*Mary Laliberte and Marie McKnight, et al. v. Quanta Services, Inc., et al.* Issued a report (2024), provided deposition testimony (2024), and issued a supplemental report (2024), on damage methodology in an ERISA case (U.S.D.C. Southern District of Texas).

*In re January 2021 Short Squeeze Trading Litigation.* Issued a declaration (2023), a reply declaration (2023), provided deposition testimony (2023) on market efficiency and damage methodology, and issued a declaration on *Cammer* factors 1-4 (2024) in a securities class action (U.S.D.C. Southern District of Florida).

*In Re Astec Industries, Inc. Securities Litigation.* Issued a declaration (2023), provided deposition testimony (2024), and issued a rebuttal declaration (2024) on market efficiency and damage methodology in a securities class action (U.S.D.C. Eastern District of Tennessee).

*Peter Trauernicht, et al. v. Genworth Financial Inc. Retirement Savings Plan.* Issued a report (2024), supplemental report (2024), and provided deposition testimony (2024) on damage methodology in an ERISA case (U.S.D.C. Eastern District of Virginia).

*Christopher Arbour, et al. v. Tingo Group Inc., et al.* Issued a declaration on loss causation in a securities class action (U.S.D.C. District of New Jersey, 2023).

*Bo Shen, et al. v. Exela Technologies, Inc., et al.* Issued a declaration (2023) and provided deposition testimony (2023) on market efficiency and damage methodology in a securities class action (U.S.D.C. Northern District of Texas).

*In re XL Fleet Corp. Securities Litigation.* Issued a declaration on market efficiency and damage methodology in a securities class action (U.S.D.C. Southern District of New York, 2023).

**Exhibit-1**
**Curriculum Vitae**
**Adam Werner, Ph.D.**

*In re Nio, Inc. Securities Litigation.* Issued a declaration (2022), a reply declaration (2022) and provided deposition testimony (2022) on market efficiency and damage methodology in a securities class action (U.S.D.C. Eastern District of New York).

*Gelt Trading, LTD. v. Co-Diagnostics, Inc., et al.* Issued a declaration (2022) and a reply declaration (2022) on market efficiency and damage methodology in a securities class action (U.S.D.C. District of Utah, Central Division).

*6D Global Technologies, Inc. Securities Litigation.* Issued a declaration on loss causation and damages in a securities class action (U.S.D.C. Southern District of New York, 2022).

*In re Omega Healthcare Investors, Inc. Securities Litigation.* Issued a report (2022), a rebuttal report (2022) and provided deposition testimony (2022) on market efficiency and damage methodology in a securities class action (U.S.D.C. Southern District of New York).

*Securities and Exchange Commission v. Bradley C. Davis.* Issued a report (2021), a rebuttal report (2021), provided deposition testimony (2021) and trial testimony (2022) on materiality in a case brought by the SEC (U.S.D.C. Central District of California).

*Andrew Trampe, et. al. v. CD Projekt S.A.* Issued a declaration on aggregate damages in a securities class action (U.S.D.C. Central District of California, 2022).

*In re Global Brokerage, Inc. f/k/a/ FXCM Inc.* Issued a report (2020), a rebuttal report (2020), provided deposition testimony (2020) and testified (2020) on market efficiency and damage methodology in a securities class action. Issued a report (2021), a rebuttal report (2021) and provided deposition testimony (2021) on loss causation and damages (U.S.D.C. Southern District of New York).

*George Barney, et al. v. Nova Lifestyle, Inc., et al.* Issued a report on market efficiency and damage methodology in a securities class action (U.S.D.C. Central District of California, 2021).

*Peter Voulgaris, et al. v. Array Biopharma Inc., et al.* Issued a report (2021) and provided deposition testimony (2021) on market efficiency and damage methodology in a securities class action (U.S.D.C. District of Colorado).

*In re Innocoll Holdings Public Limited Company Securities Litigation.* Issued a report (2020), a rebuttal report (2020) and provided deposition testimony (2020) on market efficiency and damage methodology in a securities class action (U.S.D.C. Eastern District of Pennsylvania).

*Michael Tietz, et al. v. Crytobloc Technologies Corp., et al.* Issued a report on price impact in a securities class action (Supreme Court of British Columbia, 2020).

**Exhibit-1**
**Curriculum Vitae**
**Adam Werner, Ph.D.**

*In re Horsehead Holding Corp. Securities Litigation.* Issued a report (2020) and provided deposition testimony (2020) on market efficiency and damage methodology in a securities class action (U.S.D.C. District of Delaware).

*Bing Li, et al. v. Aeterna Zentaris, Inc., et al.* Issued a declaration (2016), a report (2017), and provided deposition testimony (2017) on market efficiency and damage methodology in a securities class action. Issued a declaration (2019) a reply report (2019), and provided deposition testimony (2020) on loss causation and damages (U.S.D.C. District of New Jersey).

*In re Patriot National Inc. Securities Litigation.* Issued a declaration (2019) and a supplemental declaration (2019) on damages in a securities class action (U.S.D.C. Southern District of New York).

*Hamza Ramzan, et al. v. GDS Holdings Limited, et al.* Issued a declaration on NASDAQ microstructure in a securities class action (U.S.D.C. Eastern District of Texas, Marshall Division, 2019).

*Ivan Nibur, et al. v. SandRidge Mississippian Trust I, et al.* Issued a declaration (2018), a reply declaration (2018), a supplemental reply declaration (2018), and provided deposition testimony (2018) on market efficiency and damage methodology in a securities class action. Issued a declaration (2019) a rebuttal declaration (2019), and provided deposition testimony (2019) on loss causation and damages (U.S.D.C. Western District of Oklahoma).

*In Re Insys Theraputics, Inc. Securities Litigation.* Issued a report on market efficiency and damage methodology in a securities class action (U.S.D.C. Southern District of New York, 2019).

*In Re Spectrum Pharmaceuticals, Inc. Securities Litigation.* Issued a declaration (2019) and provided deposition testimony (2019) on market efficiency and damage methodology in a securities class action (U.S.D.C. District of Nevada).

*Amanda Beezley et al. v. Fenix Parts, Inc., et al.* Issued a declaration on market efficiency and damage methodology in a securities class action (U.S.D.C. Northern District of Illinois, Eastern Division, 2019).

*Wayne Mucha, et al. v. Volkswagen Aktiengesellschaft, et al.* Issued a declaration regarding benefits to firms that have ADRs listed in a securities class action (U.S.D.C. Eastern District of New York, 2018).

*Michael Desta, et al. v. Wins Finance Holdings Inc., et al.* Issued a declaration (2018) and provided deposition testimony (2018) on market efficiency and damage methodology in a securities class action (U.S.D.C. Central District of California).

**Exhibit-1**
**Curriculum Vitae**
**Adam Werner, Ph.D.**

*Andrew Meyer, et al. v. Concordia International Corp., et al.* Issued a declaration (2018), a reply declaration (2018), and provided deposition testimony (2018) on market efficiency and damage methodology in a securities class action. Issued a declaration (2018), a reply declaration (2018), and provided deposition testimony (2018) on loss causation and damages (U.S.D.C. Southern District of New York).

*In re: K12 Securities Litigation.* Issued a declaration (2018) and provided deposition testimony (2018) on market efficiency and damage methodology in a securities class action (U.S.D.C. Northern District of California).

*Robert Colman, et al. v. Theranos, Inc., et al.* Issued a declaration on damage methodology and price impact in a securities class action (U.S.D.C. Northern District of California, San Jose Division, 2018).

*In re: CytRx Corporation Securities Litigation.* Issued a declaration (2017) and provided deposition testimony (2018) regarding market efficiency and damage methodology in a securities class action (U.S.D.C. Central District of California).

*Lord Abbett Affiliated Fund, Inc., et al. v. American International Group, Inc.* Issued a report regarding market efficiency, loss causation, and damages in a securities case (U.S.D.C. Southern District of New York, 2017).

*Xiaolin Chi, et al. v. Qiao Xing Universal Resources, Inc., et al.* Issued a report on damages in a securities class action (District Court of the Virgin Islands, St. Croix Division, 2017).

*John Hosey v. Twitter, Inc., et al.* Issued a declaration (2017) and provided deposition testimony (2017) regarding rebuttal to Defendants' Motion for Summary Judgement in a securities class action (Superior Court of the State of California, County of San Mateo).

*Gwyn R. Hartman Revocable Living Trust v. Southern Michigan Bancorp, Inc. et al.* Issued a report on damages arising from alleged exclusions in a proxy solicitation (U.S.D.C. Western District of Michigan, 2017).

*Fred Kelsey, et al. v. Textura Corporation, et al.* Issued a declaration (2017) and provided deposition testimony (2017) on market efficiency and damage methodology in a securities class action (U.S.D.C. Northern District of Illinois).

*Dave Carlton, et al. v. Fred Cannon.* Issued a declaration on market efficiency and damage methodology in a securities class action (U.S.D.C. Southern District of Texas, Houston Division, 2016).

**Exhibit-1**
**Curriculum Vitae**
**Adam Werner, Ph.D.**

*James Middlemiss v. Penn West Petroleum LTD., et al*. Issued a report on damages in a securities class action (Superior Court of Justice Ontario, Canada, 2016).

*David Loritz, et al. v. Exide Technologies, et al.* Issued a report on damages and loss causation in a securities class action (U.S.D.C. Central District of California, 2015)

*Manishkumar Khunt, et al. v. Alibaba Group Holding Limited, et al.* Issued a declaration on potential investor damages in a securities class action (U.S.D.C. Southern District of New York, 2015).

*Biotechnology Value Fund, L.P. et al. v. Celera Corporation et al.*  Issued a report (2014), a reply report (2014), a supplemental report (2014), and provided deposition testimony (2014) on damages arising from a merger (U.S.D.C. Northern District of California).

*In re: Hi-Crush Partners L.P. Securities Litigation.*  Issued a declaration (2014), a supplemental declaration (2014), and provided deposition testimony (2014) regarding market efficiency and damage methodology in a securities class action (U.S.D.C. Southern District of New York).

*Ian Mausner v. MarketByte LLC, et al.*  Issued a declaration about investment advisor incentives and liquidity needs in a securities class action (U.S.D.C. Southern District of California, 2014).

*Artes Medical, Inc. v. Lemperle et al.* Provided deposition testimony on behalf of defendants about alleged damages caused by a proxy contest (Superior Court of the State of California, County of San Diego, Central District, 2013).

*In re: Ebix Inc. Securities Litigation*. Issued a declaration (2012) and provided deposition testimony (2013) regarding market efficiency and damage methodology in a securities class action (U.S.D.C. Northern District of Georgia, Atlanta Division).

*Erik Poole and William Rhody v. Alange Energy Corp., et al.* Issued a report (2012) and a reply report (2013) on market efficiency and damages in a securities class action (Superior Court of Justice Ontario, Canada).

*In re: Hecla Mining Securities Litigation.* Issued a declaration on investor losses in a securities class action (U.S.D.C. District of Idaho, 2012).

*Mark Henning, et al. v. Orient Paper, Inc. et al.* Issued a declaration (2011), a supplemental declaration (2012) and provided deposition testimony (2012) regarding market efficiency and damage methodology in a securities class action (U.S.D.C. Central District of California).

**Exhibit-1**
**Curriculum Vitae**
**Adam Werner, Ph.D.**

*Carlos Munoz et al. v. China Expert Technology, Inc., et al.* Issued a declaration (2012), a supplemental declaration (2012) and provided deposition testimony (2012) in a securities class action regarding market efficiency and damage methodology (U.S.D.C. Southern District of New York).

*Theodore Dean, et al. v. China Agritech, Inc., et al.* Issued a declaration (2012), a supplemental declaration (2012) and provided deposition testimony (2012) in a case regarding market efficiency and damage methodology in a securities class action (U.S.D.C. Central District of California).

*Robert Michael Shenk, Derivatively on Behalf of Sirius XM Radio Inc. v. Melvin Alan Karmazin, et al.* Issued an expert report (2011), a supplemental expert report (2012) and provided deposition testimony (2012) in a case involving damages in a shareholder derivative matter (U.S.D.C. Southern District of New York).

*Pathway Investments Pty Ltd and Doystoy Pty Ltd v. National Australia Bank Ltd.* Submitted a report on survey techniques, the efficient market hypothesis and liquidity in a securities class action (Supreme Court of Victoria at Melbourne, Australia, Commercial and Equity Division, Commercial Court, 2012).

*Bruce Simmonds, Robert Grant and Gordon Moore v. Armtec Infrastructure Inc. et al.* Issued a report on market efficiency and damages in a securities class action (Superior Court of Justice Ontario, Canada, 2011).

*In re: BP plc. Securities Litigation.* Issued a declaration regarding damages and materiality in a securities class action (U.S.D.C. Southern District of Texas, Houston Division, 2010).

*In re: Tripath Technology Inc., Debtor.* Issued a report (2009) and provided deposition testimony (2010) regarding damages arising from Directors' and Officers' breach of fiduciary duty in bankruptcy court (U.S.D.C. Northern District of California, San Jose Division).

*David Ainslie and Muriel Marentette v. CV Technologies et al.* Issued a report estimating damages in a securities class action (Superior Court of Justice, Ontario, Canada, 2010).

*Harry Stackhouse, on Behalf of Himself and All Others Similarly Situated v. Toyota Motor Corporation, et al.* Issued a declaration regarding the relationship between Toyota's U.S. stock price and Japanese stock price in a securities class action (U.S.D.C. Central District of California, 2010).

*Phillip Elliot and William Kormos v. NovaGold Resources Inc., et al.* Issued a declaration in a securities class action regarding trading volume in the U.S. versus Canada. (Superior Court of Justice, Ontario, Canada, 2010).

**Exhibit-1**
**Curriculum Vitae**
**Adam Werner, Ph.D.**

*International Arbitration between a private equity firm and Chinese biotech company.* Issued a report (2008) and testified (2009) before an International Arbitration Committee regarding the value of a private equity investment.

*Arbitration between Albert Richards and Old Republic Title Insurance.* Deposed regarding estimated damages incurred by plaintiff as a result of a forced sale of Russian securities due to Old Republic's breach of contract (2008).

*Californians United for a Responsible Budget, et al., v. California State Public Works Board, et al.* Issued a report on the cost of issuing revenue bonds to fund California prison expansion (The Superior Court for the State of California, County of Sacramento, 2008).

*Arbitration between Daniel Lyons and Morgan Lyons, and Chinese Hospital Association and Sam English.* Deposed regarding plaintiffs' calculated damages arising from asbestos exposure for plaintiff (2003).

**Exhibit-2**

**Documents and Other Information Considered
In Addition to my Prior Declarations**

**EXPERT REPORTS**

- Loss Causation and Damages Declaration of Dr. Adam Werner, dated February 12, 2025.
- Declaration of David I. Tabak, Ph.D., dated March 24, 2025.

**ACADEMIC AND PROFESIONAL LITERATURE**

- Krivin, Dmitry, Robert Patton, Erica Rose, and David Tabak, "Determination of the Appropriate Event Window Length in Individual Stock Event Studies," *NERA Economic Consulting*, November 4, 2003.

**OTHER**

- Other documents cited in my report.

**Exhibit 3. Kandi Technologies Group INC.
Artificial Inflation Ribbon Assuming One-Day Event
Window "Convention"**

*August 10, 2015 through March 16, 2017*

|  | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] One-Day Event Window Artificial Inflation Ribbon |
|---|---|---|---|
| [1] | 8/10/2015 | $1.10 | $1.04 |
| [2] | 8/11/2015 | $1.10 | $1.04 |
| [3] | 8/12/2015 | $1.10 | $1.04 |
| [4] | 8/13/2015 | $1.10 | $1.04 |
| [5] | 8/14/2015 | $1.10 | $1.04 |
| [6] | 8/17/2015 | $1.10 | $1.04 |
| [7] | 8/18/2015 | $1.10 | $1.04 |
| [8] | 8/19/2015 | $1.10 | $1.04 |
| [9] | 8/20/2015 | $1.10 | $1.04 |
| [10] | 8/21/2015 | $1.10 | $1.04 |
| [11] | 8/24/2015 | $1.10 | $1.04 |
| [12] | 8/25/2015 | $1.10 | $1.04 |
| [13] | 8/26/2015 | $1.10 | $1.04 |
| [14] | 8/27/2015 | $1.10 | $1.04 |
| [15] | 8/28/2015 | $1.10 | $1.04 |
| [16] | 8/31/2015 | $1.10 | $1.04 |
| [17] | 9/1/2015 | $1.10 | $1.04 |
| [18] | 9/2/2015 | $1.10 | $1.04 |
| [19] | 9/3/2015 | $1.10 | $1.04 |
| [20] | 9/4/2015 | $1.10 | $1.04 |
| [21] | 9/8/2015 | $1.10 | $1.04 |
| [22] | 9/9/2015 | $1.10 | $1.04 |
| [23] | 9/10/2015 | $1.10 | $1.04 |
| [24] | 9/11/2015 | $1.10 | $1.04 |
| [25] | 9/14/2015 | $1.10 | $1.04 |
| [26] | 9/15/2015 | $1.10 | $1.04 |
| [27] | 9/16/2015 | $1.10 | $1.04 |
| [28] | 9/17/2015 | $1.10 | $1.04 |
| [29] | 9/18/2015 | $1.10 | $1.04 |
| [30] | 9/21/2015 | $1.10 | $1.04 |
| [31] | 9/22/2015 | $1.10 | $1.04 |
| [32] | 9/23/2015 | $1.10 | $1.04 |
| [33] | 9/24/2015 | $1.10 | $1.04 |
| [34] | 9/25/2015 | $1.10 | $1.04 |
| [35] | 9/28/2015 | $1.10 | $1.04 |

**Exhibit 3. Kandi Technologies Group INC.
Artificial Inflation Ribbon Assuming One-Day Event
Window "Convention"**

*August 10, 2015 through March 16, 2017*

| | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] One-Day Event Window Artificial Inflation Ribbon |
|---|---|---|---|
| [36] | 9/29/2015 | $1.10 | $1.04 |
| [37] | 9/30/2015 | $1.10 | $1.04 |
| [38] | 10/1/2015 | $1.10 | $1.04 |
| [39] | 10/2/2015 | $1.10 | $1.04 |
| [40] | 10/5/2015 | $1.10 | $1.04 |
| [41] | 10/6/2015 | $1.10 | $1.04 |
| [42] | 10/7/2015 | $1.10 | $1.04 |
| [43] | 10/8/2015 | $1.10 | $1.04 |
| [44] | 10/9/2015 | $1.10 | $1.04 |
| [45] | 10/12/2015 | $1.10 | $1.04 |
| [46] | 10/13/2015 | $1.10 | $1.04 |
| [47] | 10/14/2015 | $1.10 | $1.04 |
| [48] | 10/15/2015 | $1.10 | $1.04 |
| [49] | 10/16/2015 | $1.10 | $1.04 |
| [50] | 10/19/2015 | $1.10 | $1.04 |
| [51] | 10/20/2015 | $1.10 | $1.04 |
| [52] | 10/21/2015 | $1.10 | $1.04 |
| [53] | 10/22/2015 | $1.10 | $1.04 |
| [54] | 10/23/2015 | $1.10 | $1.04 |
| [55] | 10/26/2015 | $1.10 | $1.04 |
| [56] | 10/27/2015 | $1.10 | $1.04 |
| [57] | 10/28/2015 | $1.10 | $1.04 |
| [58] | 10/29/2015 | $1.10 | $1.04 |
| [59] | 10/30/2015 | $1.10 | $1.04 |
| [60] | 11/2/2015 | $1.10 | $1.04 |
| [61] | 11/3/2015 | $1.10 | $1.04 |
| [62] | 11/4/2015 | $1.10 | $1.04 |
| [63] | 11/5/2015 | $1.10 | $1.04 |
| [64] | 11/6/2015 | $1.10 | $1.04 |
| [65] | 11/9/2015 | $1.10 | $1.04 |
| [66] | 11/10/2015 | $1.10 | $1.04 |
| [67] | 11/11/2015 | $1.10 | $1.04 |
| [68] | 11/12/2015 | $1.10 | $1.04 |
| [69] | 11/13/2015 | $1.10 | $1.04 |
| [70] | 11/16/2015 | $1.10 | $1.04 |

**Exhibit 3. Kandi Technologies Group INC.**
**Artificial Inflation Ribbon Assuming One-Day Event**
**Window "Convention"**

*August 10, 2015 through March 16, 2017*

| | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] One-Day Event Window Artificial Inflation Ribbon |
|---|---|---|---|
| [71] | 11/17/2015 | $1.10 | $1.04 |
| [72] | 11/18/2015 | $1.10 | $1.04 |
| [73] | 11/19/2015 | $1.10 | $1.04 |
| [74] | 11/20/2015 | $1.10 | $1.04 |
| [75] | 11/23/2015 | $1.10 | $1.04 |
| [76] | 11/24/2015 | $1.10 | $1.04 |
| [77] | 11/25/2015 | $1.10 | $1.04 |
| [78] | 11/27/2015 | $1.10 | $1.04 |
| [79] | 11/30/2015 | $1.10 | $1.04 |
| [80] | 12/1/2015 | $1.10 | $1.04 |
| [81] | 12/2/2015 | $1.10 | $1.04 |
| [82] | 12/3/2015 | $1.10 | $1.04 |
| [83] | 12/4/2015 | $1.10 | $1.04 |
| [84] | 12/7/2015 | $1.10 | $1.04 |
| [85] | 12/8/2015 | $1.10 | $1.04 |
| [86] | 12/9/2015 | $1.10 | $1.04 |
| [87] | 12/10/2015 | $1.10 | $1.04 |
| [88] | 12/11/2015 | $1.10 | $1.04 |
| [89] | 12/14/2015 | $1.10 | $1.04 |
| [90] | 12/15/2015 | $1.10 | $1.04 |
| [91] | 12/16/2015 | $1.10 | $1.04 |
| [92] | 12/17/2015 | $1.10 | $1.04 |
| [93] | 12/18/2015 | $1.10 | $1.04 |
| [94] | 12/21/2015 | $1.10 | $1.04 |
| [95] | 12/22/2015 | $1.10 | $1.04 |
| [96] | 12/23/2015 | $1.10 | $1.04 |
| [97] | 12/24/2015 | $1.10 | $1.04 |
| [98] | 12/28/2015 | $1.10 | $1.04 |
| [99] | 12/29/2015 | $1.10 | $1.04 |
| [100] | 12/30/2015 | $1.10 | $1.04 |
| [101] | 12/31/2015 | $1.10 | $1.04 |
| [102] | 1/4/2016 | $1.10 | $1.04 |
| [103] | 1/5/2016 | $1.10 | $1.04 |
| [104] | 1/6/2016 | $1.10 | $1.04 |
| [105] | 1/7/2016 | $1.10 | $1.04 |

**Exhibit 3. Kandi Technologies Group INC.
Artificial Inflation Ribbon Assuming One-Day Event
Window "Convention"**

*August 10, 2015 through March 16, 2017*

| | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] One-Day Event Window Artificial Inflation Ribbon |
|---|---|---|---|
| [106] | 1/8/2016 | $1.10 | $1.04 |
| [107] | 1/11/2016 | $1.10 | $1.04 |
| [108] | 1/12/2016 | $1.10 | $1.04 |
| [109] | 1/13/2016 | $1.10 | $1.04 |
| [110] | 1/14/2016 | $1.10 | $1.04 |
| [111] | 1/15/2016 | $1.10 | $1.04 |
| [112] | 1/19/2016 | $1.10 | $1.04 |
| [113] | 1/20/2016 | $1.10 | $1.04 |
| [114] | 1/21/2016 | $1.10 | $1.04 |
| [115] | 1/22/2016 | $1.10 | $1.04 |
| [116] | 1/25/2016 | $1.10 | $1.04 |
| [117] | 1/26/2016 | $1.10 | $1.04 |
| [118] | 1/27/2016 | $1.10 | $1.04 |
| [119] | 1/28/2016 | $1.10 | $1.04 |
| [120] | 1/29/2016 | $1.10 | $1.04 |
| [121] | 2/1/2016 | $1.10 | $1.04 |
| [122] | 2/2/2016 | $1.10 | $1.04 |
| [123] | 2/3/2016 | $1.10 | $1.04 |
| [124] | 2/4/2016 | $1.10 | $1.04 |
| [125] | 2/5/2016 | $1.10 | $1.04 |
| [126] | 2/8/2016 | $1.10 | $1.04 |
| [127] | 2/9/2016 | $1.10 | $1.04 |
| [128] | 2/10/2016 | $1.10 | $1.04 |
| [129] | 2/11/2016 | $1.10 | $1.04 |
| [130] | 2/12/2016 | $1.10 | $1.04 |
| [131] | 2/16/2016 | $1.10 | $1.04 |
| [132] | 2/17/2016 | $1.10 | $1.04 |
| [133] | 2/18/2016 | $1.10 | $1.04 |
| [134] | 2/19/2016 | $1.10 | $1.04 |
| [135] | 2/22/2016 | $1.10 | $1.04 |
| [136] | 2/23/2016 | $1.10 | $1.04 |
| [137] | 2/24/2016 | $1.10 | $1.04 |
| [138] | 2/25/2016 | $1.10 | $1.04 |
| [139] | 2/26/2016 | $1.10 | $1.04 |
| [140] | 2/29/2016 | $1.10 | $1.04 |

**Exhibit 3. Kandi Technologies Group INC.
Artificial Inflation Ribbon Assuming One-Day Event
Window "Convention"**

*August 10, 2015 through March 16, 2017*

| | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] One-Day Event Window Artificial Inflation Ribbon |
|---|---|---|---|
| [141] | 3/1/2016 | $1.10 | $1.04 |
| [142] | 3/2/2016 | $1.10 | $1.04 |
| [143] | 3/3/2016 | $1.10 | $1.04 |
| [144] | 3/4/2016 | $1.10 | $1.04 |
| [145] | 3/7/2016 | $1.10 | $1.04 |
| [146] | 3/8/2016 | $1.10 | $1.04 |
| [147] | 3/9/2016 | $1.10 | $1.04 |
| [148] | 3/10/2016 | $1.10 | $1.04 |
| [149] | 3/11/2016 | $1.10 | $1.04 |
| [150] | 3/14/2016 | $1.10 | $1.04 |
| [151] | 3/15/2016 | $1.10 | $1.04 |
| [152] | 3/16/2016 | $1.10 | $1.04 |
| [153] | 3/17/2016 | $1.10 | $1.04 |
| [154] | 3/18/2016 | $1.10 | $1.04 |
| [155] | 3/21/2016 | $1.10 | $1.04 |
| [156] | 3/22/2016 | $1.10 | $1.04 |
| [157] | 3/23/2016 | $1.10 | $1.04 |
| [158] | 3/24/2016 | $1.10 | $1.04 |
| [159] | 3/28/2016 | $1.10 | $1.04 |
| [160] | 3/29/2016 | $1.10 | $1.04 |
| [161] | 3/30/2016 | $1.10 | $1.04 |
| [162] | 3/31/2016 | $1.10 | $1.04 |
| [163] | 4/1/2016 | $1.10 | $1.04 |
| [164] | 4/4/2016 | $1.10 | $1.04 |
| [165] | 4/5/2016 | $1.10 | $1.04 |
| [166] | 4/6/2016 | $1.10 | $1.04 |
| [167] | 4/7/2016 | $1.10 | $1.04 |
| [168] | 4/8/2016 | $1.10 | $1.04 |
| [169] | 4/11/2016 | $1.10 | $1.04 |
| [170] | 4/12/2016 | $1.10 | $1.04 |
| [171] | 4/13/2016 | $1.10 | $1.04 |
| [172] | 4/14/2016 | $1.10 | $1.04 |
| [173] | 4/15/2016 | $1.10 | $1.04 |
| [174] | 4/18/2016 | $1.10 | $1.04 |
| [175] | 4/19/2016 | $1.10 | $1.04 |

**Exhibit 3. Kandi Technologies Group INC.**
**Artificial Inflation Ribbon Assuming One-Day Event**
**Window "Convention"**

*August 10, 2015 through March 16, 2017*

| | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] One-Day Event Window Artificial Inflation Ribbon |
|---|---|---|---|
| [176] | 4/20/2016 | $1.10 | $1.04 |
| [177] | 4/21/2016 | $1.10 | $1.04 |
| [178] | 4/22/2016 | $1.10 | $1.04 |
| [179] | 4/25/2016 | $1.10 | $1.04 |
| [180] | 4/26/2016 | $1.10 | $1.04 |
| [181] | 4/27/2016 | $1.10 | $1.04 |
| [182] | 4/28/2016 | $1.10 | $1.04 |
| [183] | 4/29/2016 | $1.10 | $1.04 |
| [184] | 5/2/2016 | $1.10 | $1.04 |
| [185] | 5/3/2016 | $1.10 | $1.04 |
| [186] | 5/4/2016 | $1.10 | $1.04 |
| [187] | 5/5/2016 | $1.10 | $1.04 |
| [188] | 5/6/2016 | $1.10 | $1.04 |
| [189] | 5/9/2016 | $1.10 | $1.04 |
| [190] | 5/10/2016 | $1.10 | $1.04 |
| [191] | 5/11/2016 | $1.10 | $1.04 |
| [192] | 5/12/2016 | $1.10 | $1.04 |
| [193] | 5/13/2016 | $1.10 | $1.04 |
| [194] | 5/16/2016 | $1.10 | $1.04 |
| [195] | 5/17/2016 | $1.10 | $1.04 |
| [196] | 5/18/2016 | $1.10 | $1.04 |
| [197] | 5/19/2016 | $1.10 | $1.04 |
| [198] | 5/20/2016 | $1.10 | $1.04 |
| [199] | 5/23/2016 | $1.10 | $1.04 |
| [200] | 5/24/2016 | $1.10 | $1.04 |
| [201] | 5/25/2016 | $1.10 | $1.04 |
| [202] | 5/26/2016 | $1.10 | $1.04 |
| [203] | 5/27/2016 | $1.10 | $1.04 |
| [204] | 5/31/2016 | $1.10 | $1.04 |
| [205] | 6/1/2016 | $1.10 | $1.04 |
| [206] | 6/2/2016 | $1.10 | $1.04 |
| [207] | 6/3/2016 | $1.10 | $1.04 |
| [208] | 6/6/2016 | $1.10 | $1.04 |
| [209] | 6/7/2016 | $1.10 | $1.04 |
| [210] | 6/8/2016 | $1.10 | $1.04 |

**Exhibit 3. Kandi Technologies Group INC.**
**Artificial Inflation Ribbon Assuming One-Day Event**
**Window "Convention"**

*August 10, 2015 through March 16, 2017*

| | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] One-Day Event Window Artificial Inflation Ribbon |
|---|---|---|---|
| [211] | 6/9/2016 | $1.10 | $1.04 |
| [212] | 6/10/2016 | $1.10 | $1.04 |
| [213] | 6/13/2016 | $1.10 | $1.04 |
| [214] | 6/14/2016 | $1.10 | $1.04 |
| [215] | 6/15/2016 | $1.10 | $1.04 |
| [216] | 6/16/2016 | $1.10 | $1.04 |
| [217] | 6/17/2016 | $1.10 | $1.04 |
| [218] | 6/20/2016 | $1.10 | $1.04 |
| [219] | 6/21/2016 | $1.10 | $1.04 |
| [220] | 6/22/2016 | $1.10 | $1.04 |
| [221] | 6/23/2016 | $1.10 | $1.04 |
| [222] | 6/24/2016 | $1.10 | $1.04 |
| [223] | 6/27/2016 | $1.10 | $1.04 |
| [224] | 6/28/2016 | $1.10 | $1.04 |
| [225] | 6/29/2016 | $1.10 | $1.04 |
| [226] | 6/30/2016 | $1.10 | $1.04 |
| [227] | 7/1/2016 | $1.10 | $1.04 |
| [228] | 7/5/2016 | $1.10 | $1.04 |
| [229] | 7/6/2016 | $1.10 | $1.04 |
| [230] | 7/7/2016 | $1.10 | $1.04 |
| [231] | 7/8/2016 | $1.10 | $1.04 |
| [232] | 7/11/2016 | $1.10 | $1.04 |
| [233] | 7/12/2016 | $1.10 | $1.04 |
| [234] | 7/13/2016 | $1.10 | $1.04 |
| [235] | 7/14/2016 | $1.10 | $1.04 |
| [236] | 7/15/2016 | $1.10 | $1.04 |
| [237] | 7/18/2016 | $1.10 | $1.04 |
| [238] | 7/19/2016 | $1.10 | $1.04 |
| [239] | 7/20/2016 | $1.10 | $1.04 |
| [240] | 7/21/2016 | $1.10 | $1.04 |
| [241] | 7/22/2016 | $1.10 | $1.04 |
| [242] | 7/25/2016 | $1.10 | $1.04 |
| [243] | 7/26/2016 | $1.10 | $1.04 |
| [244] | 7/27/2016 | $1.10 | $1.04 |
| [245] | 7/28/2016 | $1.10 | $1.04 |

**Exhibit 3. Kandi Technologies Group INC.**
**Artificial Inflation Ribbon Assuming One-Day Event**
**Window "Convention"**

*August 10, 2015 through March 16, 2017*

|  | Date | [a]<br>Werner LCD<br>Declaration Artificial<br>Inflation Ribbon | [b]<br>One-Day Event<br>Window Artificial<br>Inflation Ribbon |
|---|---|---|---|
| [246] | 7/29/2016 | $1.10 | $1.04 |
| [247] | 8/1/2016 | $1.10 | $1.04 |
| [248] | 8/2/2016 | $1.10 | $1.04 |
| [249] | 8/3/2016 | $1.10 | $1.04 |
| [250] | 8/4/2016 | $1.10 | $1.04 |
| [251] | 8/5/2016 | $1.10 | $1.04 |
| [252] | 8/8/2016 | $1.10 | $1.04 |
| [253] | 8/9/2016 | $1.10 | $1.04 |
| [254] | 8/10/2016 | $1.10 | $1.04 |
| [255] | 8/11/2016 | $1.10 | $1.04 |
| [256] | 8/12/2016 | $1.10 | $1.04 |
| [257] | 8/15/2016 | $1.10 | $1.04 |
| [258] | 8/16/2016 | $1.10 | $1.04 |
| [259] | 8/17/2016 | $1.10 | $1.04 |
| [260] | 8/18/2016 | $1.10 | $1.04 |
| [261] | 8/19/2016 | $1.10 | $1.04 |
| [262] | 8/22/2016 | $1.10 | $1.04 |
| [263] | 8/23/2016 | $1.10 | $1.04 |
| [264] | 8/24/2016 | $1.10 | $1.04 |
| [265] | 8/25/2016 | $1.10 | $1.04 |
| [266] | 8/26/2016 | $1.10 | $1.04 |
| [267] | 8/29/2016 | $1.10 | $1.04 |
| [268] | 8/30/2016 | $1.10 | $1.04 |
| [269] | 8/31/2016 | $1.10 | $1.04 |
| [270] | 9/1/2016 | $1.10 | $1.04 |
| [271] | 9/2/2016 | $1.10 | $1.04 |
| [272] | 9/6/2016 | $1.10 | $1.04 |
| [273] | 9/7/2016 | $1.10 | $1.04 |
| [274] | 9/8/2016 | $1.10 | $1.04 |
| [275] | 9/9/2016 | $1.10 | $1.04 |
| [276] | 9/12/2016 | $1.10 | $1.04 |
| [277] | 9/13/2016 | $1.10 | $1.04 |
| [278] | 9/14/2016 | $1.10 | $1.04 |
| [279] | 9/15/2016 | $1.10 | $1.04 |
| [280] | 9/16/2016 | $1.10 | $1.04 |

**Exhibit 3. Kandi Technologies Group INC.
Artificial Inflation Ribbon Assuming One-Day Event
Window "Convention"**

*August 10, 2015 through March 16, 2017*

|  | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] One-Day Event Window Artificial Inflation Ribbon |
|---|---|---|---|
| [281] | 9/19/2016 | $1.10 | $1.04 |
| [282] | 9/20/2016 | $1.10 | $1.04 |
| [283] | 9/21/2016 | $1.10 | $1.04 |
| [284] | 9/22/2016 | $1.10 | $1.04 |
| [285] | 9/23/2016 | $1.10 | $1.04 |
| [286] | 9/26/2016 | $1.10 | $1.04 |
| [287] | 9/27/2016 | $1.10 | $1.04 |
| [288] | 9/28/2016 | $1.10 | $1.04 |
| [289] | 9/29/2016 | $1.10 | $1.04 |
| [290] | 9/30/2016 | $1.10 | $1.04 |
| [291] | 10/3/2016 | $1.10 | $1.04 |
| [292] | 10/4/2016 | $1.10 | $1.04 |
| [293] | 10/5/2016 | $1.10 | $1.04 |
| [294] | 10/6/2016 | $1.10 | $1.04 |
| [295] | 10/7/2016 | $1.10 | $1.04 |
| [296] | 10/10/2016 | $1.10 | $1.04 |
| [297] | 10/11/2016 | $1.10 | $1.04 |
| [298] | 10/12/2016 | $1.10 | $1.04 |
| [299] | 10/13/2016 | $1.10 | $1.04 |
| [300] | 10/14/2016 | $1.10 | $1.04 |
| [301] | 10/17/2016 | $1.10 | $1.04 |
| [302] | 10/18/2016 | $1.10 | $1.04 |
| [303] | 10/19/2016 | $1.10 | $1.04 |
| [304] | 10/20/2016 | $1.10 | $1.04 |
| [305] | 10/21/2016 | $1.10 | $1.04 |
| [306] | 10/24/2016 | $1.10 | $1.04 |
| [307] | 10/25/2016 | $1.10 | $1.04 |
| [308] | 10/26/2016 | $1.10 | $1.04 |
| [309] | 10/27/2016 | $1.10 | $1.04 |
| [310] | 10/28/2016 | $1.10 | $1.04 |
| [311] | 10/31/2016 | $1.10 | $1.04 |
| [312] | 11/1/2016 | $1.10 | $1.04 |
| [313] | 11/2/2016 | $1.10 | $1.04 |
| [314] | 11/3/2016 | $1.10 | $1.04 |
| [315] | 11/4/2016 | $1.10 | $1.04 |

**Exhibit 3. Kandi Technologies Group INC.
Artificial Inflation Ribbon Assuming One-Day Event
Window "Convention"**

*August 10, 2015 through March 16, 2017*

| | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] One-Day Event Window Artificial Inflation Ribbon |
|---|---|---|---|
| [316] | 11/7/2016 | $1.10 | $1.04 |
| [317] | 11/8/2016 | $1.10 | $1.04 |
| [318] | 11/9/2016 | $1.10 | $1.04 |
| [319] | 11/10/2016 | $1.10 | $1.04 |
| [320] | 11/11/2016 | $1.10 | $1.04 |
| [321] | 11/14/2016 | $0.69 | $0.63 |
| [322] | 11/15/2016 | $0.69 | $0.63 |
| [323] | 11/16/2016 | $0.69 | $0.63 |
| [324] | 11/17/2016 | $0.69 | $0.63 |
| [325] | 11/18/2016 | $0.69 | $0.63 |
| [326] | 11/21/2016 | $0.69 | $0.63 |
| [327] | 11/22/2016 | $0.69 | $0.63 |
| [328] | 11/23/2016 | $0.69 | $0.63 |
| [329] | 11/25/2016 | $0.69 | $0.63 |
| [330] | 11/28/2016 | $0.69 | $0.63 |
| [331] | 11/29/2016 | $0.69 | $0.63 |
| [332] | 11/30/2016 | $0.69 | $0.63 |
| [333] | 12/1/2016 | $0.69 | $0.63 |
| [334] | 12/2/2016 | $0.69 | $0.63 |
| [335] | 12/5/2016 | $0.69 | $0.63 |
| [336] | 12/6/2016 | $0.69 | $0.63 |
| [337] | 12/7/2016 | $0.69 | $0.63 |
| [338] | 12/8/2016 | $0.69 | $0.63 |
| [339] | 12/9/2016 | $0.69 | $0.63 |
| [340] | 12/12/2016 | $0.69 | $0.63 |
| [341] | 12/13/2016 | $0.69 | $0.63 |
| [342] | 12/14/2016 | $0.69 | $0.63 |
| [343] | 12/15/2016 | $0.69 | $0.63 |
| [344] | 12/16/2016 | $0.69 | $0.63 |
| [345] | 12/19/2016 | $0.69 | $0.63 |
| [346] | 12/20/2016 | $0.69 | $0.63 |
| [347] | 12/21/2016 | $0.69 | $0.63 |
| [348] | 12/22/2016 | $0.69 | $0.63 |
| [349] | 12/23/2016 | $0.69 | $0.63 |
| [350] | 12/27/2016 | $0.69 | $0.63 |

**Exhibit 3. Kandi Technologies Group INC.
Artificial Inflation Ribbon Assuming One-Day Event
Window "Convention"**

*August 10, 2015 through March 16, 2017*

|  | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] One-Day Event Window Artificial Inflation Ribbon |
|---|---|---|---|
| [351] | 12/28/2016 | $0.69 | $0.63 |
| [352] | 12/29/2016 | $0.69 | $0.63 |
| [353] | 12/30/2016 | $0.69 | $0.63 |
| [354] | 1/3/2017 | $0.69 | $0.63 |
| [355] | 1/4/2017 | $0.69 | $0.63 |
| [356] | 1/5/2017 | $0.69 | $0.63 |
| [357] | 1/6/2017 | $0.69 | $0.63 |
| [358] | 1/9/2017 | $0.69 | $0.63 |
| [359] | 1/10/2017 | $0.69 | $0.63 |
| [360] | 1/11/2017 | $0.69 | $0.63 |
| [361] | 1/12/2017 | $0.69 | $0.63 |
| [362] | 1/13/2017 | $0.69 | $0.63 |
| [363] | 1/17/2017 | $0.69 | $0.63 |
| [364] | 1/18/2017 | $0.69 | $0.63 |
| [365] | 1/19/2017 | $0.69 | $0.63 |
| [366] | 1/20/2017 | $0.69 | $0.63 |
| [367] | 1/23/2017 | $0.69 | $0.63 |
| [368] | 1/24/2017 | $0.69 | $0.63 |
| [369] | 1/25/2017 | $0.69 | $0.63 |
| [370] | 1/26/2017 | $0.69 | $0.63 |
| [371] | 1/27/2017 | $0.69 | $0.63 |
| [372] | 1/30/2017 | $0.69 | $0.63 |
| [373] | 1/31/2017 | $0.69 | $0.63 |
| [374] | 2/1/2017 | $0.69 | $0.63 |
| [375] | 2/2/2017 | $0.69 | $0.63 |
| [376] | 2/3/2017 | $0.69 | $0.63 |
| [377] | 2/6/2017 | $0.69 | $0.63 |
| [378] | 2/7/2017 | $0.69 | $0.63 |
| [379] | 2/8/2017 | $0.69 | $0.63 |
| [380] | 2/9/2017 | $0.69 | $0.63 |
| [381] | 2/10/2017 | $0.69 | $0.63 |
| [382] | 2/13/2017 | $0.69 | $0.63 |
| [383] | 2/14/2017 | $0.69 | $0.63 |
| [384] | 2/15/2017 | $0.69 | $0.63 |
| [385] | 2/16/2017 | $0.69 | $0.63 |

**Exhibit 3. Kandi Technologies Group INC.
Artificial Inflation Ribbon Assuming One-Day Event
Window "Convention"**

*August 10, 2015 through March 16, 2017*

| | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] One-Day Event Window Artificial Inflation Ribbon |
|---|---|---|---|
| [386] | 2/17/2017 | $0.69 | $0.63 |
| [387] | 2/21/2017 | $0.69 | $0.63 |
| [388] | 2/22/2017 | $0.69 | $0.63 |
| [389] | 2/23/2017 | $0.69 | $0.63 |
| [390] | 2/24/2017 | $0.69 | $0.63 |
| [391] | 2/27/2017 | $0.69 | $0.63 |
| [392] | 2/28/2017 | $0.69 | $0.63 |
| [393] | 3/1/2017 | $0.69 | $0.63 |
| [394] | 3/2/2017 | $0.69 | $0.63 |
| [395] | 3/3/2017 | $0.69 | $0.63 |
| [396] | 3/6/2017 | $0.69 | $0.63 |
| [397] | 3/7/2017 | $0.69 | $0.63 |
| [398] | 3/8/2017 | $0.69 | $0.63 |
| [399] | 3/9/2017 | $0.69 | $0.63 |
| [400] | 3/10/2017 | $0.69 | $0.63 |
| [401] | 3/13/2017 | $0.69 | $0.63 |
| [402] | 3/14/2017 | $0.41 | $0.35 |
| [403] | 3/15/2017 | $0.35 | $0.35 |
| [404] | 3/16/2017-thereafter | $0.00 | $0.00 |

**Exhibit 4. Kandi Technologies Group INC.**
**Werner Inflation Ribbon vs. Percentage Inflation Ribbon**

*August 10, 2015 through March 16, 2017*

| | Date | [a]<br>Werner LCD<br>Declaration Artificial<br>Inflation Ribbon | [b]<br>Percentage Artifcial<br>Inflation Ribbon | [c]<br>Is Werner LCD<br>Ribbon More<br>Conservative? |
|---|---|---|---|---|
| [1] | 8/10/2015 | $1.10 | $1.74 | YES |
| [2] | 8/11/2015 | $1.10 | $1.70 | YES |
| [3] | 8/12/2015 | $1.10 | $1.72 | YES |
| [4] | 8/13/2015 | $1.10 | $1.68 | YES |
| [5] | 8/14/2015 | $1.10 | $1.68 | YES |
| [6] | 8/17/2015 | $1.10 | $1.74 | YES |
| [7] | 8/18/2015 | $1.10 | $1.89 | YES |
| [8] | 8/19/2015 | $1.10 | $1.90 | YES |
| [9] | 8/20/2015 | $1.10 | $1.79 | YES |
| [10] | 8/21/2015 | $1.10 | $1.67 | YES |
| [11] | 8/24/2015 | $1.10 | $1.49 | YES |
| [12] | 8/25/2015 | $1.10 | $1.45 | YES |
| [13] | 8/26/2015 | $1.10 | $1.49 | YES |
| [14] | 8/27/2015 | $1.10 | $1.63 | YES |
| [15] | 8/28/2015 | $1.10 | $1.65 | YES |
| [16] | 8/31/2015 | $1.10 | $1.66 | YES |
| [17] | 9/1/2015 | $1.10 | $1.56 | YES |
| [18] | 9/2/2015 | $1.10 | $1.55 | YES |
| [19] | 9/3/2015 | $1.10 | $1.51 | YES |
| [20] | 9/4/2015 | $1.10 | $1.51 | YES |
| [21] | 9/8/2015 | $1.10 | $1.57 | YES |
| [22] | 9/9/2015 | $1.10 | $1.53 | YES |
| [23] | 9/10/2015 | $1.10 | $1.51 | YES |
| [24] | 9/11/2015 | $1.10 | $1.53 | YES |
| [25] | 9/14/2015 | $1.10 | $1.44 | YES |
| [26] | 9/15/2015 | $1.10 | $1.50 | YES |
| [27] | 9/16/2015 | $1.10 | $1.55 | YES |
| [28] | 9/17/2015 | $1.10 | $1.53 | YES |
| [29] | 9/18/2015 | $1.10 | $1.50 | YES |
| [30] | 9/21/2015 | $1.10 | $1.51 | YES |
| [31] | 9/22/2015 | $1.10 | $1.48 | YES |
| [32] | 9/23/2015 | $1.10 | $1.45 | YES |
| [33] | 9/24/2015 | $1.10 | $1.47 | YES |
| [34] | 9/25/2015 | $1.10 | $1.42 | YES |
| [35] | 9/28/2015 | $1.10 | $1.30 | YES |
| [36] | 9/29/2015 | $1.10 | $1.25 | YES |

**Exhibit 4. Kandi Technologies Group INC.**
**Werner Inflation Ribbon vs. Percentage Inflation Ribbon**
*August 10, 2015 through March 16, 2017*

|  | | [a] | [b] | [c] |
| --- | --- | --- | --- | --- |
|  | **Date** | **Werner LCD Declaration Artificial Inflation Ribbon** | **Percentage Artifcial Inflation Ribbon** | **Is Werner LCD Ribbon More Conservative?** |
| [37] | 9/30/2015 | $1.10 | $1.29 | YES |
| [38] | 10/1/2015 | $1.10 | $1.33 | YES |
| [39] | 10/2/2015 | $1.10 | $1.41 | YES |
| [40] | 10/5/2015 | $1.10 | $1.51 | YES |
| [41] | 10/6/2015 | $1.10 | $1.58 | YES |
| [42] | 10/7/2015 | $1.10 | $1.62 | YES |
| [43] | 10/8/2015 | $1.10 | $1.61 | YES |
| [44] | 10/9/2015 | $1.10 | $1.71 | YES |
| [45] | 10/12/2015 | $1.10 | $1.87 | YES |
| [46] | 10/13/2015 | $1.10 | $1.77 | YES |
| [47] | 10/14/2015 | $1.10 | $1.82 | YES |
| [48] | 10/15/2015 | $1.10 | $1.93 | YES |
| [49] | 10/16/2015 | $1.10 | $1.91 | YES |
| [50] | 10/19/2015 | $1.10 | $2.27 | YES |
| [51] | 10/20/2015 | $1.10 | $2.34 | YES |
| [52] | 10/21/2015 | $1.10 | $2.25 | YES |
| [53] | 10/22/2015 | $1.10 | $2.14 | YES |
| [54] | 10/23/2015 | $1.10 | $2.22 | YES |
| [55] | 10/26/2015 | $1.10 | $2.12 | YES |
| [56] | 10/27/2015 | $1.10 | $2.15 | YES |
| [57] | 10/28/2015 | $1.10 | $2.36 | YES |
| [58] | 10/29/2015 | $1.10 | $2.30 | YES |
| [59] | 10/30/2015 | $1.10 | $2.31 | YES |
| [60] | 11/2/2015 | $1.10 | $2.38 | YES |
| [61] | 11/3/2015 | $1.10 | $2.55 | YES |
| [62] | 11/4/2015 | $1.10 | $2.68 | YES |
| [63] | 11/5/2015 | $1.10 | $2.63 | YES |
| [64] | 11/6/2015 | $1.10 | $2.65 | YES |
| [65] | 11/9/2015 | $1.10 | $2.21 | YES |
| [66] | 11/10/2015 | $1.10 | $2.38 | YES |
| [67] | 11/11/2015 | $1.10 | $2.34 | YES |
| [68] | 11/12/2015 | $1.10 | $2.40 | YES |
| [69] | 11/13/2015 | $1.10 | $2.37 | YES |
| [70] | 11/16/2015 | $1.10 | $2.54 | YES |
| [71] | 11/17/2015 | $1.10 | $2.52 | YES |
| [72] | 11/18/2015 | $1.10 | $2.51 | YES |

**Exhibit 4. Kandi Technologies Group INC.**
**Werner Inflation Ribbon vs. Percentage Inflation Ribbon**

*August 10, 2015 through March 16, 2017*

|  | Date | [a]<br>Werner LCD<br>Declaration Artificial<br>Inflation Ribbon | [b]<br>Percentage Artifcial<br>Inflation Ribbon | [c]<br>Is Werner LCD<br>Ribbon More<br>Conservative? |
|---|---|---|---|---|
| [73] | 11/19/2015 | $1.10 | $2.51 | YES |
| [74] | 11/20/2015 | $1.10 | $2.51 | YES |
| [75] | 11/23/2015 | $1.10 | $2.42 | YES |
| [76] | 11/24/2015 | $1.10 | $2.43 | YES |
| [77] | 11/25/2015 | $1.10 | $2.50 | YES |
| [78] | 11/27/2015 | $1.10 | $2.44 | YES |
| [79] | 11/30/2015 | $1.10 | $2.49 | YES |
| [80] | 12/1/2015 | $1.10 | $2.52 | YES |
| [81] | 12/2/2015 | $1.10 | $2.47 | YES |
| [82] | 12/3/2015 | $1.10 | $2.43 | YES |
| [83] | 12/4/2015 | $1.10 | $2.43 | YES |
| [84] | 12/7/2015 | $1.10 | $2.36 | YES |
| [85] | 12/8/2015 | $1.10 | $2.38 | YES |
| [86] | 12/9/2015 | $1.10 | $2.39 | YES |
| [87] | 12/10/2015 | $1.10 | $2.45 | YES |
| [88] | 12/11/2015 | $1.10 | $2.34 | YES |
| [89] | 12/14/2015 | $1.10 | $2.27 | YES |
| [90] | 12/15/2015 | $1.10 | $2.39 | YES |
| [91] | 12/16/2015 | $1.10 | $2.55 | YES |
| [92] | 12/17/2015 | $1.10 | $2.63 | YES |
| [93] | 12/18/2015 | $1.10 | $2.58 | YES |
| [94] | 12/21/2015 | $1.10 | $2.77 | YES |
| [95] | 12/22/2015 | $1.10 | $2.78 | YES |
| [96] | 12/23/2015 | $1.10 | $2.89 | YES |
| [97] | 12/24/2015 | $1.10 | $2.83 | YES |
| [98] | 12/28/2015 | $1.10 | $2.75 | YES |
| [99] | 12/29/2015 | $1.10 | $2.83 | YES |
| [100] | 12/30/2015 | $1.10 | $2.65 | YES |
| [101] | 12/31/2015 | $1.10 | $2.68 | YES |
| [102] | 1/4/2016 | $1.10 | $2.63 | YES |
| [103] | 1/5/2016 | $1.10 | $2.61 | YES |
| [104] | 1/6/2016 | $1.10 | $2.55 | YES |
| [105] | 1/7/2016 | $1.10 | $2.18 | YES |
| [106] | 1/8/2016 | $1.10 | $2.22 | YES |
| [107] | 1/11/2016 | $1.10 | $2.14 | YES |
| [108] | 1/12/2016 | $1.10 | $2.18 | YES |

**Exhibit 4. Kandi Technologies Group INC.**
**Werner Inflation Ribbon vs. Percentage Inflation Ribbon**

*August 10, 2015 through March 16, 2017*

|  | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] Percentage Artifcial Inflation Ribbon | [c] Is Werner LCD Ribbon More Conservative? |
|---|---|---|---|---|
| [109] | 1/13/2016 | $1.10 | $2.11 | YES |
| [110] | 1/14/2016 | $1.10 | $2.16 | YES |
| [111] | 1/15/2016 | $1.10 | $2.06 | YES |
| [112] | 1/19/2016 | $1.10 | $1.99 | YES |
| [113] | 1/20/2016 | $1.10 | $1.91 | YES |
| [114] | 1/21/2016 | $1.10 | $1.97 | YES |
| [115] | 1/22/2016 | $1.10 | $2.07 | YES |
| [116] | 1/25/2016 | $1.10 | $1.94 | YES |
| [117] | 1/26/2016 | $1.10 | $1.91 | YES |
| [118] | 1/27/2016 | $1.10 | $1.87 | YES |
| [119] | 1/28/2016 | $1.10 | $1.83 | YES |
| [120] | 1/29/2016 | $1.10 | $1.94 | YES |
| [121] | 2/1/2016 | $1.10 | $1.93 | YES |
| [122] | 2/2/2016 | $1.10 | $1.86 | YES |
| [123] | 2/3/2016 | $1.10 | $1.83 | YES |
| [124] | 2/4/2016 | $1.10 | $1.89 | YES |
| [125] | 2/5/2016 | $1.10 | $1.78 | YES |
| [126] | 2/8/2016 | $1.10 | $1.72 | YES |
| [127] | 2/9/2016 | $1.10 | $1.61 | YES |
| [128] | 2/10/2016 | $1.10 | $1.61 | YES |
| [129] | 2/11/2016 | $1.10 | $1.53 | YES |
| [130] | 2/12/2016 | $1.10 | $1.56 | YES |
| [131] | 2/16/2016 | $1.10 | $1.77 | YES |
| [132] | 2/17/2016 | $1.10 | $1.82 | YES |
| [133] | 2/18/2016 | $1.10 | $1.78 | YES |
| [134] | 2/19/2016 | $1.10 | $1.80 | YES |
| [135] | 2/22/2016 | $1.10 | $1.84 | YES |
| [136] | 2/23/2016 | $1.10 | $1.82 | YES |
| [137] | 2/24/2016 | $1.10 | $1.86 | YES |
| [138] | 2/25/2016 | $1.10 | $1.83 | YES |
| [139] | 2/26/2016 | $1.10 | $1.76 | YES |
| [140] | 2/29/2016 | $1.10 | $1.71 | YES |
| [141] | 3/1/2016 | $1.10 | $1.77 | YES |
| [142] | 3/2/2016 | $1.10 | $1.78 | YES |
| [143] | 3/3/2016 | $1.10 | $1.75 | YES |
| [144] | 3/4/2016 | $1.10 | $1.76 | YES |

**Exhibit 4. Kandi Technologies Group INC.**
**Werner Inflation Ribbon vs. Percentage Inflation Ribbon**

*August 10, 2015 through March 16, 2017*

|  | Date | [a]<br>Werner LCD<br>Declaration Artificial<br>Inflation Ribbon | [b]<br>Percentage Artifcial<br>Inflation Ribbon | [c]<br>Is Werner LCD<br>Ribbon More<br>Conservative? |
|---|---|---|---|---|
| [145] | 3/7/2016 | $1.10 | $1.80 | YES |
| [146] | 3/8/2016 | $1.10 | $1.75 | YES |
| [147] | 3/9/2016 | $1.10 | $1.78 | YES |
| [148] | 3/10/2016 | $1.10 | $1.84 | YES |
| [149] | 3/11/2016 | $1.10 | $1.91 | YES |
| [150] | 3/14/2016 | $1.10 | $2.27 | YES |
| [151] | 3/15/2016 | $1.10 | $2.10 | YES |
| [152] | 3/16/2016 | $1.10 | $2.04 | YES |
| [153] | 3/17/2016 | $1.10 | $1.99 | YES |
| [154] | 3/18/2016 | $1.10 | $1.98 | YES |
| [155] | 3/21/2016 | $1.10 | $1.95 | YES |
| [156] | 3/22/2016 | $1.10 | $1.89 | YES |
| [157] | 3/23/2016 | $1.10 | $1.73 | YES |
| [158] | 3/24/2016 | $1.10 | $1.79 | YES |
| [159] | 3/28/2016 | $1.10 | $1.71 | YES |
| [160] | 3/29/2016 | $1.10 | $1.80 | YES |
| [161] | 3/30/2016 | $1.10 | $1.78 | YES |
| [162] | 3/31/2016 | $1.10 | $1.77 | YES |
| [163] | 4/1/2016 | $1.10 | $1.77 | YES |
| [164] | 4/4/2016 | $1.10 | $1.73 | YES |
| [165] | 4/5/2016 | $1.10 | $1.72 | YES |
| [166] | 4/6/2016 | $1.10 | $1.72 | YES |
| [167] | 4/7/2016 | $1.10 | $1.70 | YES |
| [168] | 4/8/2016 | $1.10 | $1.76 | YES |
| [169] | 4/11/2016 | $1.10 | $1.79 | YES |
| [170] | 4/12/2016 | $1.10 | $1.85 | YES |
| [171] | 4/13/2016 | $1.10 | $1.95 | YES |
| [172] | 4/14/2016 | $1.10 | $2.00 | YES |
| [173] | 4/15/2016 | $1.10 | $1.93 | YES |
| [174] | 4/18/2016 | $1.10 | $1.92 | YES |
| [175] | 4/19/2016 | $1.10 | $1.84 | YES |
| [176] | 4/20/2016 | $1.10 | $1.81 | YES |
| [177] | 4/21/2016 | $1.10 | $1.83 | YES |
| [178] | 4/22/2016 | $1.10 | $1.89 | YES |
| [179] | 4/25/2016 | $1.10 | $1.82 | YES |
| [180] | 4/26/2016 | $1.10 | $1.81 | YES |

**Exhibit 4. Kandi Technologies Group INC.**
**Werner Inflation Ribbon vs. Percentage Inflation Ribbon**

*August 10, 2015 through March 16, 2017*

|  | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] Percentage Artifcial Inflation Ribbon | [c] Is Werner LCD Ribbon More Conservative? |
|---|---|---|---|---|
| [181] | 4/27/2016 | $1.10 | $1.82 | YES |
| [182] | 4/28/2016 | $1.10 | $1.80 | YES |
| [183] | 4/29/2016 | $1.10 | $1.77 | YES |
| [184] | 5/2/2016 | $1.10 | $1.76 | YES |
| [185] | 5/3/2016 | $1.10 | $1.74 | YES |
| [186] | 5/4/2016 | $1.10 | $1.75 | YES |
| [187] | 5/5/2016 | $1.10 | $1.73 | YES |
| [188] | 5/6/2016 | $1.10 | $1.72 | YES |
| [189] | 5/9/2016 | $1.10 | $1.68 | YES |
| [190] | 5/10/2016 | $1.10 | $1.61 | YES |
| [191] | 5/11/2016 | $1.10 | $1.62 | YES |
| [192] | 5/12/2016 | $1.10 | $1.54 | YES |
| [193] | 5/13/2016 | $1.10 | $1.51 | YES |
| [194] | 5/16/2016 | $1.10 | $1.57 | YES |
| [195] | 5/17/2016 | $1.10 | $1.61 | YES |
| [196] | 5/18/2016 | $1.10 | $1.65 | YES |
| [197] | 5/19/2016 | $1.10 | $1.61 | YES |
| [198] | 5/20/2016 | $1.10 | $1.64 | YES |
| [199] | 5/23/2016 | $1.10 | $1.65 | YES |
| [200] | 5/24/2016 | $1.10 | $1.66 | YES |
| [201] | 5/25/2016 | $1.10 | $1.70 | YES |
| [202] | 5/26/2016 | $1.10 | $1.71 | YES |
| [203] | 5/27/2016 | $1.10 | $1.69 | YES |
| [204] | 5/31/2016 | $1.10 | $1.71 | YES |
| [205] | 6/1/2016 | $1.10 | $1.68 | YES |
| [206] | 6/2/2016 | $1.10 | $1.71 | YES |
| [207] | 6/3/2016 | $1.10 | $1.69 | YES |
| [208] | 6/6/2016 | $1.10 | $1.70 | YES |
| [209] | 6/7/2016 | $1.10 | $1.79 | YES |
| [210] | 6/8/2016 | $1.10 | $1.85 | YES |
| [211] | 6/9/2016 | $1.10 | $1.81 | YES |
| [212] | 6/10/2016 | $1.10 | $1.75 | YES |
| [213] | 6/13/2016 | $1.10 | $1.73 | YES |
| [214] | 6/14/2016 | $1.10 | $1.72 | YES |
| [215] | 6/15/2016 | $1.10 | $1.79 | YES |
| [216] | 6/16/2016 | $1.10 | $1.74 | YES |

**Exhibit 4. Kandi Technologies Group INC.**
**Werner Inflation Ribbon vs. Percentage Inflation Ribbon**

*August 10, 2015 through March 16, 2017*

|  | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] Percentage Artifcial Inflation Ribbon | [c] Is Werner LCD Ribbon More Conservative? |
|---|---|---|---|---|
| [217] | 6/17/2016 | $1.10 | $1.79 | YES |
| [218] | 6/20/2016 | $1.10 | $1.74 | YES |
| [219] | 6/21/2016 | $1.10 | $1.74 | YES |
| [220] | 6/22/2016 | $1.10 | $1.71 | YES |
| [221] | 6/23/2016 | $1.10 | $1.75 | YES |
| [222] | 6/24/2016 | $1.10 | $1.68 | YES |
| [223] | 6/27/2016 | $1.10 | $1.57 | YES |
| [224] | 6/28/2016 | $1.10 | $1.63 | YES |
| [225] | 6/29/2016 | $1.10 | $1.73 | YES |
| [226] | 6/30/2016 | $1.10 | $1.76 | YES |
| [227] | 7/1/2016 | $1.10 | $1.77 | YES |
| [228] | 7/5/2016 | $1.10 | $1.68 | YES |
| [229] | 7/6/2016 | $1.10 | $1.68 | YES |
| [230] | 7/7/2016 | $1.10 | $1.68 | YES |
| [231] | 7/8/2016 | $1.10 | $1.69 | YES |
| [232] | 7/11/2016 | $1.10 | $1.72 | YES |
| [233] | 7/12/2016 | $1.10 | $1.73 | YES |
| [234] | 7/13/2016 | $1.10 | $1.72 | YES |
| [235] | 7/14/2016 | $1.10 | $1.81 | YES |
| [236] | 7/15/2016 | $1.10 | $1.74 | YES |
| [237] | 7/18/2016 | $1.10 | $1.74 | YES |
| [238] | 7/19/2016 | $1.10 | $1.75 | YES |
| [239] | 7/20/2016 | $1.10 | $1.78 | YES |
| [240] | 7/21/2016 | $1.10 | $1.77 | YES |
| [241] | 7/22/2016 | $1.10 | $1.74 | YES |
| [242] | 7/25/2016 | $1.10 | $1.77 | YES |
| [243] | 7/26/2016 | $1.10 | $1.77 | YES |
| [244] | 7/27/2016 | $1.10 | $1.75 | YES |
| [245] | 7/28/2016 | $1.10 | $1.74 | YES |
| [246] | 7/29/2016 | $1.10 | $1.73 | YES |
| [247] | 8/1/2016 | $1.10 | $1.71 | YES |
| [248] | 8/2/2016 | $1.10 | $1.69 | YES |
| [249] | 8/3/2016 | $1.10 | $1.71 | YES |
| [250] | 8/4/2016 | $1.10 | $1.75 | YES |
| [251] | 8/5/2016 | $1.10 | $1.80 | YES |
| [252] | 8/8/2016 | $1.10 | $1.91 | YES |

**Exhibit 4. Kandi Technologies Group INC.**
**Werner Inflation Ribbon vs. Percentage Inflation Ribbon**

*August 10, 2015 through March 16, 2017*

| | Date | [a]<br>Werner LCD<br>Declaration Artificial<br>Inflation Ribbon | [b]<br>Percentage Artifcial<br>Inflation Ribbon | [c]<br>Is Werner LCD<br>Ribbon More<br>Conservative? |
|---|---|---|---|---|
| [253] | 8/9/2016 | $1.10 | $1.79 | YES |
| [254] | 8/10/2016 | $1.10 | $1.72 | YES |
| [255] | 8/11/2016 | $1.10 | $1.72 | YES |
| [256] | 8/12/2016 | $1.10 | $1.68 | YES |
| [257] | 8/15/2016 | $1.10 | $1.70 | YES |
| [258] | 8/16/2016 | $1.10 | $1.66 | YES |
| [259] | 8/17/2016 | $1.10 | $1.66 | YES |
| [260] | 8/18/2016 | $1.10 | $1.56 | YES |
| [261] | 8/19/2016 | $1.10 | $1.53 | YES |
| [262] | 8/22/2016 | $1.10 | $1.54 | YES |
| [263] | 8/23/2016 | $1.10 | $1.54 | YES |
| [264] | 8/24/2016 | $1.10 | $1.52 | YES |
| [265] | 8/25/2016 | $1.10 | $1.52 | YES |
| [266] | 8/26/2016 | $1.10 | $1.55 | YES |
| [267] | 8/29/2016 | $1.10 | $1.56 | YES |
| [268] | 8/30/2016 | $1.10 | $1.56 | YES |
| [269] | 8/31/2016 | $1.10 | $1.53 | YES |
| [270] | 9/1/2016 | $1.10 | $1.51 | YES |
| [271] | 9/2/2016 | $1.10 | $1.53 | YES |
| [272] | 9/6/2016 | $1.10 | $1.54 | YES |
| [273] | 9/7/2016 | $1.10 | $1.53 | YES |
| [274] | 9/8/2016 | $1.10 | $1.44 | YES |
| [275] | 9/9/2016 | $1.10 | $1.40 | YES |
| [276] | 9/12/2016 | $1.10 | $1.42 | YES |
| [277] | 9/13/2016 | $1.10 | $1.39 | YES |
| [278] | 9/14/2016 | $1.10 | $1.39 | YES |
| [279] | 9/15/2016 | $1.10 | $1.39 | YES |
| [280] | 9/16/2016 | $1.10 | $1.38 | YES |
| [281] | 9/19/2016 | $1.10 | $1.39 | YES |
| [282] | 9/20/2016 | $1.10 | $1.36 | YES |
| [283] | 9/21/2016 | $1.10 | $1.41 | YES |
| [284] | 9/22/2016 | $1.10 | $1.39 | YES |
| [285] | 9/23/2016 | $1.10 | $1.39 | YES |
| [286] | 9/26/2016 | $1.10 | $1.38 | YES |
| [287] | 9/27/2016 | $1.10 | $1.39 | YES |
| [288] | 9/28/2016 | $1.10 | $1.38 | YES |

**Exhibit 4. Kandi Technologies Group INC.**
**Werner Inflation Ribbon vs. Percentage Inflation Ribbon**

*August 10, 2015 through March 16, 2017*

|  | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] Percentage Artifcial Inflation Ribbon | [c] Is Werner LCD Ribbon More Conservative? |
|---|---|---|---|---|
| [289] | 9/29/2016 | $1.10 | $1.35 | YES |
| [290] | 9/30/2016 | $1.10 | $1.35 | YES |
| [291] | 10/3/2016 | $1.10 | $1.36 | YES |
| [292] | 10/4/2016 | $1.10 | $1.44 | YES |
| [293] | 10/5/2016 | $1.10 | $1.56 | YES |
| [294] | 10/6/2016 | $1.10 | $1.48 | YES |
| [295] | 10/7/2016 | $1.10 | $1.43 | YES |
| [296] | 10/10/2016 | $1.10 | $1.44 | YES |
| [297] | 10/11/2016 | $1.10 | $1.40 | YES |
| [298] | 10/12/2016 | $1.10 | $1.42 | YES |
| [299] | 10/13/2016 | $1.10 | $1.38 | YES |
| [300] | 10/14/2016 | $1.10 | $1.37 | YES |
| [301] | 10/17/2016 | $1.10 | $1.33 | YES |
| [302] | 10/18/2016 | $1.10 | $1.30 | YES |
| [303] | 10/19/2016 | $1.10 | $1.25 | YES |
| [304] | 10/20/2016 | $1.10 | $1.25 | YES |
| [305] | 10/21/2016 | $1.10 | $1.27 | YES |
| [306] | 10/24/2016 | $1.10 | $1.27 | YES |
| [307] | 10/25/2016 | $1.10 | $1.23 | YES |
| [308] | 10/26/2016 | $1.10 | $1.33 | YES |
| [309] | 10/27/2016 | $1.10 | $1.24 | YES |
| [310] | 10/28/2016 | $1.10 | $1.24 | YES |
| [311] | 10/31/2016 | $1.10 | $1.23 | YES |
| [312] | 11/1/2016 | $1.10 | $1.20 | YES |
| [313] | 11/2/2016 | $1.10 | $1.14 | YES |
| [314] | 11/3/2016 | $1.10 | $1.09 | NO |
| [315] | 11/4/2016 | $1.10 | $1.13 | YES |
| [316] | 11/7/2016 | $1.10 | $1.17 | YES |
| [317] | 11/8/2016 | $1.10 | $1.09 | NO |
| [318] | 11/9/2016 | $1.10 | $0.96 | NO |
| [319] | 11/10/2016 | $1.10 | $0.98 | NO |
| [320] | 11/11/2016 | $1.10 | $0.96 | NO |
| [321] | 11/14/2016 | $0.69 | $0.55 | NO |
| [322] | 11/15/2016 | $0.69 | $0.59 | NO |
| [323] | 11/16/2016 | $0.69 | $0.62 | NO |
| [324] | 11/17/2016 | $0.69 | $0.62 | NO |

**Exhibit 4. Kandi Technologies Group INC.**
**Werner Inflation Ribbon vs. Percentage Inflation Ribbon**

*August 10, 2015 through March 16, 2017*

| | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] Percentage Artifcial Inflation Ribbon | [c] Is Werner LCD Ribbon More Conservative? |
|---|---|---|---|---|
| [325] | 11/18/2016 | $0.69 | $0.58 | NO |
| [326] | 11/21/2016 | $0.69 | $0.60 | NO |
| [327] | 11/22/2016 | $0.69 | $0.62 | NO |
| [328] | 11/23/2016 | $0.69 | $0.68 | NO |
| [329] | 11/25/2016 | $0.69 | $0.73 | YES |
| [330] | 11/28/2016 | $0.69 | $0.80 | YES |
| [331] | 11/29/2016 | $0.69 | $0.89 | YES |
| [332] | 11/30/2016 | $0.69 | $0.82 | YES |
| [333] | 12/1/2016 | $0.69 | $0.76 | YES |
| [334] | 12/2/2016 | $0.69 | $0.76 | YES |
| [335] | 12/5/2016 | $0.69 | $0.81 | YES |
| [336] | 12/6/2016 | $0.69 | $0.81 | YES |
| [337] | 12/7/2016 | $0.69 | $0.78 | YES |
| [338] | 12/8/2016 | $0.69 | $0.81 | YES |
| [339] | 12/9/2016 | $0.69 | $0.81 | YES |
| [340] | 12/12/2016 | $0.69 | $0.82 | YES |
| [341] | 12/13/2016 | $0.69 | $0.88 | YES |
| [342] | 12/14/2016 | $0.69 | $0.86 | YES |
| [343] | 12/15/2016 | $0.69 | $0.80 | YES |
| [344] | 12/16/2016 | $0.69 | $0.77 | YES |
| [345] | 12/19/2016 | $0.69 | $0.76 | YES |
| [346] | 12/20/2016 | $0.69 | $0.84 | YES |
| [347] | 12/21/2016 | $0.69 | $0.81 | YES |
| [348] | 12/22/2016 | $0.69 | $0.81 | YES |
| [349] | 12/23/2016 | $0.69 | $0.81 | YES |
| [350] | 12/27/2016 | $0.69 | $0.81 | YES |
| [351] | 12/28/2016 | $0.69 | $0.81 | YES |
| [352] | 12/29/2016 | $0.69 | $0.79 | YES |
| [353] | 12/30/2016 | $0.69 | $0.77 | YES |
| [354] | 1/3/2017 | $0.69 | $0.76 | YES |
| [355] | 1/4/2017 | $0.69 | $0.77 | YES |
| [356] | 1/5/2017 | $0.69 | $0.82 | YES |
| [357] | 1/6/2017 | $0.69 | $0.79 | YES |
| [358] | 1/9/2017 | $0.69 | $0.78 | YES |
| [359] | 1/10/2017 | $0.69 | $0.81 | YES |
| [360] | 1/11/2017 | $0.69 | $0.83 | YES |

**Exhibit 4. Kandi Technologies Group INC.**
**Werner Inflation Ribbon vs. Percentage Inflation Ribbon**

*August 10, 2015 through March 16, 2017*

|  | Date | [a] Werner LCD Declaration Artificial Inflation Ribbon | [b] Percentage Artifcial Inflation Ribbon | [c] Is Werner LCD Ribbon More Conservative? |
|---|---|---|---|---|
| [361] | 1/12/2017 | $0.69 | $0.79 | YES |
| [362] | 1/13/2017 | $0.69 | $0.80 | YES |
| [363] | 1/17/2017 | $0.69 | $0.77 | YES |
| [364] | 1/18/2017 | $0.69 | $0.77 | YES |
| [365] | 1/19/2017 | $0.69 | $0.76 | YES |
| [366] | 1/20/2017 | $0.69 | $0.77 | YES |
| [367] | 1/23/2017 | $0.69 | $0.76 | YES |
| [368] | 1/24/2017 | $0.69 | $0.71 | YES |
| [369] | 1/25/2017 | $0.69 | $0.69 | NO |
| [370] | 1/26/2017 | $0.69 | $0.72 | YES |
| [371] | 1/27/2017 | $0.69 | $0.71 | YES |
| [372] | 1/30/2017 | $0.69 | $0.70 | YES |
| [373] | 1/31/2017 | $0.69 | $0.67 | NO |
| [374] | 2/1/2017 | $0.69 | $0.66 | NO |
| [375] | 2/2/2017 | $0.69 | $0.66 | NO |
| [376] | 2/3/2017 | $0.69 | $0.67 | NO |
| [377] | 2/6/2017 | $0.69 | $0.68 | NO |
| [378] | 2/7/2017 | $0.69 | $0.66 | NO |
| [379] | 2/8/2017 | $0.69 | $0.65 | NO |
| [380] | 2/9/2017 | $0.69 | $0.63 | NO |
| [381] | 2/10/2017 | $0.69 | $0.64 | NO |
| [382] | 2/13/2017 | $0.69 | $0.67 | NO |
| [383] | 2/14/2017 | $0.69 | $0.65 | NO |
| [384] | 2/15/2017 | $0.69 | $0.67 | NO |
| [385] | 2/16/2017 | $0.69 | $0.67 | NO |
| [386] | 2/17/2017 | $0.69 | $0.66 | NO |
| [387] | 2/21/2017 | $0.69 | $0.65 | NO |
| [388] | 2/22/2017 | $0.69 | $0.67 | NO |
| [389] | 2/23/2017 | $0.69 | $0.66 | NO |
| [390] | 2/24/2017 | $0.69 | $0.66 | NO |
| [391] | 2/27/2017 | $0.69 | $0.63 | NO |
| [392] | 2/28/2017 | $0.69 | $0.65 | NO |
| [393] | 3/1/2017 | $0.69 | $0.64 | NO |
| [394] | 3/2/2017 | $0.69 | $0.66 | NO |
| [395] | 3/3/2017 | $0.69 | $0.66 | NO |
| [396] | 3/6/2017 | $0.69 | $0.66 | NO |

**Exhibit 4. Kandi Technologies Group INC.**
**Werner Inflation Ribbon vs. Percentage Inflation Ribbon**

*August 10, 2015 through March 16, 2017*

| | Date | [a]<br>Werner LCD Declaration Artificial Inflation Ribbon | [b]<br>Percentage Artifcial Inflation Ribbon | [c]<br>Is Werner LCD Ribbon More Conservative? |
|---|---|---|---|---|
| [397] | 3/7/2017 | $0.69 | $0.63 | NO |
| [398] | 3/8/2017 | $0.69 | $0.64 | NO |
| [399] | 3/9/2017 | $0.69 | $0.64 | NO |
| [400] | 3/10/2017 | $0.69 | $0.67 | NO |
| [401] | 3/13/2017 | $0.69 | $0.69 | NO |
| [402] | 3/14/2017 | $0.41 | $0.41 | Outside of Class Period |
| [403] | 3/15/2017 | $0.35 | $0.35 | Outside of Class Period |
| [404] | 3/16/2017-thereafter | $0.00 | $0.00 | Outside of Class Period |