UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SRINIVASAN VENKATARAMAN,<br><br>*Individually and On Behalf of All Others Similarly Situated*,<br><br>                      Plaintiff,<br><br>          v.<br><br>KANDI TECHNOLOGIES GROUP, INC., et al.,<br><br>                   Defendants. | 20 Civ. 8082 (DEH)<br><br>**<u>OPINION</u>**<br>**<u>AND ORDER</u>** |

DALE E. HO, United States District Judge:

    Named Plaintiff Srinivasan Venkataraman and Lead Plaintiff Tom Brooks ("Plaintiff"), individually and on behalf of all others similarly situated, bring this action alleging violations of (1) § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 by Defendants Xiaoming Hu, Cheng Wang, Liming Chen, Jerry Lewin and Henry Yu (collectively, the "Individual Defendants") and Kandi Technologies Group, Inc. ("Kandi" or the "Company") and (2) § 20(a) of the Exchange Act by the Individual Defendants. *See* 2024 Op. & Order ("2024 Op."), ECF No. 115. Before the Court are the parties' cross-motions for summary judgment. *See* ECF Nos. 120, 124. For the reasons set forth below, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

## BACKGROUND

    The procedural history and factual allegations in this case are set forth in prior opinions of this Court, familiarity with which is assumed. *See* 2021 Op. & Order ("2021 Op."), ECF No. 49; 2022 Op. & Order ("2022 Op."), ECF No. 64; 2024 Op. In short, this case arises out of Kandi's restatement of certain of its financial statements in March 2017. *See* 2021 Op. at 2. After the

announcement that Kandi's financial statements would need to be restated, Kandi's share price allegedly fell $0.30 per share, or approximately 6%, from its prior closing price. *See id.*

Srinivasan Venkataraman commenced this action on June 10, 2020. *See* ECF No. 1. After the Honorable Lorna G. Schofield granted Defendants' first motion to dismiss, *see* ECF No. 49, Plaintiff filed the Second Amended Complaint ("SAC") on December 3, 2021, *see* ECF No. 54. On January 7, 2022, Defendants filed a motion to dismiss the SAC. *See* ECF No. 57. On September 13, 2022, Judge Schofield granted in part and denied in part Defendants' motion to dismiss. *See* 2022 Op. Specifically, Judge Schofield held that "any claims based directly on statements before June 10, 2015" are time-barred. *Id.* at 9. But Plaintiff's § 10(b) claim survived to the extent it was based on alleged misstatements after that date, and Plaintiff's § 20(a) claim survived to the same extent based on the surviving § 10(b) claim. *Id.* at 10, 18.

This case was reassigned to the undersigned on October 24, 2023. *See* ECF No. 92. Prior to reassignment, "all expert discovery" (which was anticipated to include expert testimony on market efficiency, economic loss, and loss causation) was set to be completed no later than November 30, 2023. *See* ECF No. 86. Upon reassignment, the Court directed the parties to file a status update providing, *inter alia*, all existing deadlines in the case and a detailed statement of all discovery undertaken to date and yet to be completed. *See* ECF No. 92 at 2. In their status letter, dated November 6, 2023, the parties stated that expert discovery, including depositions, was scheduled to be completed by November 30, 2023, and that Plaintiff planned to file a motion for class certification, which would contain the report of Plaintiff's expert, on November 10, 2023. *See* ECF No. 93 at 2. The parties agreed "that [the] close of expert discovery should be extended and should run concurrently with a briefing schedule on class certification." *Id.* at 3. The parties proposed November 10, 2023 as the deadline for "Plaintiff to file motion for class certification and file expert report," January 26, 2024 as the deadline for "Defendants to complete expert discovery,

to file opposition to motion to for class certification, and to file expert report," and March 22, 2024 as the deadline for "Plaintiff to complete expert discovery, to file reply in support of motion for class certification, and to file expert rebuttal report." *Id.* On November 10, 2023, Plaintiff filed his motion for class certification. *See* ECF No. 94. In support of the motion, Plaintiff submitted the expert declaration of Dr. Adam Werner, who was "asked to opine on whether damages in this matter are subject to a common methodology that can be calculated on a class-wide basis." Nov. 10, 2023 Sams Decl. Ex. A ¶ 2, ECF No. 96-1 (the "First Werner Declaration").

On January 3, 2024, the Court adopted the parties' proposed schedule for briefing on the class certification motion and for completion of expert discovery, ordering that "[a]ll expert discovery, including expert reports and depositions, shall be completed no later than March 22, 2024." ECF No. 97. On January 10, 2024, the parties requested a modification of the Court's January 3, 2024 scheduling order. *See* ECF No. 98. The parties reiterated that expert discovery should run concurrently with briefing on class certification and requested that the deadline for "Plaintiff to complete expert discovery, to file reply in support of motion for class certification, and to file expert rebuttal report" be extended to May 16, 2024, to accommodate the deposition of Plaintiff's expert, Dr. Werner. *Id.* They requested that the deadline "for Defendants to complete expert discovery, to file opposition to motion to for class certification, and to file expert report" be moved to March 7, 2024. *Id.* On January 11, 2024, the Court adopted the parties' proposed schedule modification, ordering that:

> Defendants shall file opposition to Motion for Class Certification (ECF No. 94), complete expert discovery, and file expert report by March 7, 2024.

> Plaintiff shall file reply in support of Motion for Class Certification (ECF No. 94), complete expert discovery, and file expert rebuttal report by May 16, 2024.

*See* ECF No. 99.  Briefing on the motion for class certification was complete on May 16, 2024.

*See* ECF No. 109.  On September 30, 2024, the Court issued an Opinion and Order granting in part

Plaintiff's motion for class certification.  *See* 2024 Op.

On November 12, 2024, the parties filed a letter proposing a schedule for their anticipated

motions for summary judgment.  *See* ECF No. 116.  The Court adopted the proposed schedule in

part, ordering that:

> By January 30, 2025, both parties shall file their Opening Briefs, not to exceed 25
> pages each. By March 14, 2025, both parties shall file Consolidated Response/
> Reply Briefs, not to exceed 20 pages each.

ECF No. 117.  At the parties' request, the Court later extended the deadlines for the opening briefs

to February 13, 2025 and the consolidated response/reply briefs to March 28, 2025.  *See* ECF No.

119.

The parties filed their cross-motions for summary judgment on February 13, 2025.  *See*

ECF Nos. 120, 124.  Defendants moved for summary judgment based in large part on the absence

of any expert evidence in the record to support Plaintiff's claims of loss causation and damages.

*See* Defs.' Mem. Supp. Summ. J. ("Defs.' Mem."), ECF No. 122.  Defendants noted that Plaintiff's

expert at the class certification stage, Dr. Werner, had "made clear that he was retained solely to

opine on market efficiency for class certification purposes," and that nothing in his analysis

"therefore even attempted to prove that specific misstatements actually caused an impact on

Kandi's stock price or sought to or quantify Plaintiff's purported damages resulting from any

purported losses."  *Id.* at 2.  And with discovery long since closed, Defendants argued, Plaintiff

would be unable to present evidence at trial that would allow a jury to determine whether the

alleged misstatements caused Plaintiff's losses.  *See id.*

That same day, Plaintiff cross-moved for summary judgment and attached to his motion a

"Loss Causation and Damages Declaration of Dr. Adam Werner" (hereinafter, the "Second Werner

Declaration"), dated February 12, 2025, along with a damages estimate prepared by Dr. Werner. *See* Feb. 13, 2025 Sams Decl. Exs. 1 ("Werner Decl."), ECF No. 126-1, 2, ECF No. 126-2. In his new declaration, Dr. Werner stated that he had now been asked by counsel for Plaintiff "to determine whether the alleged losses of the Lead Plaintiff and the Class were caused by Defendants' alleged misrepresentations, omissions, and half-truths (i.e. loss causation)," and to quantify any such loss. *Id.* ¶ 2. Plaintiff relied heavily on the Second Werner Declaration throughout his memorandum of law in support of his motion for summary judgment. *See* Pl.'s Mem. Supp. Summ. J. ("Pl.'s Mem.") at 2-7, 12-18, 20, 22, ECF No. 125.

In response to Plaintiff's motion for summary judgment and associated memorandum of law, Defendants argued that the Second Werner Declaration "ma[de] its first appearance in this litigation as an attachment to Plaintiff's summary judgment papers," in violation of the Federal Rules of Civil Procedure and the Court's scheduling order, and should be excluded. *See* Defs.' Mem. Opp'n Pl.'s Mot. Summ. J. ("Defs.' Resp.") at 2, ECF No. 128. Nevertheless, Defendants submitted a declaration of their own expert, Dr. David I. Tabak (the "Tabak Declaration"), responding to and criticizing the Second Werner Declaration. *See* Khalouian Decl. Ex. A, ECF No. 129-1. Meanwhile, in response to Defendants' motion for summary judgment, Plaintiff argued that he had in fact presented evidence of loss causation and damages, pointing to what he described as the "previously submitted" Second Werner Declaration. *See* Pl.'s Resp. Def.'s Mot. Summ. J. ("Pl.'s Resp.") at 1, ECF No. 132.[1]

---

[1] On March 28, after summary judgment briefing was complete, the parties sought leave to file reply briefs in further support of their respective motions. *See* ECF No. 131. On April 11, 2025, both parties submitted their proposed reply briefs. *See* ECF Nos. 135, 136. Along with his proposed reply, Plaintiff also submitted a rebuttal declaration of Dr. Werner responding to the Tabak Declaration. *See* Apr. 11, 2025 Sams Decl. Ex. 1, ECF No. 137-1.

In his proposed reply brief, which is 16 pages long, Plaintiff urged the Court to strike Defendants' 25-page opposition brief for exceeding the 20 pages allowed for response/reply briefs

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).[2]  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

---

in the Court's scheduling order.  *See* ECF No. 136 (citing ECF No. 117).  On April 14, 2025, Defendants filed a letter responding to the page-limit arguments in Plaintiff's reply brief and arguing that the operative scheduling order, in which the Court granted the parties' request to extend the summary judgment briefing schedule, *see* ECF No. 119, did not specify page limits.  *See* ECF No. 138.  Defendants noted that any prejudice resulting from the "ambiguity" created by the Court's scheduling order was remedied by the fact that Plaintiff's reply brief exceeded the page limits set by the Individual and Local Rules.  *See id.*  Plaintiff filed a letter in response, arguing that the Court's scheduling order was not ambiguous, that Plaintiff's reply brief complied with the limit of 20 pages "established by the Court with respect to responses/replies for the parties' briefing," and that Defendants' letter constituted an improper sur-reply.  *See* ECF No. 139.

The parties' motion for leave to file reply briefs (ECF No. 131) is **DENIED** *nunc pro tunc*.  The Court will disregard both reply briefs (ECF Nos. 135, 136) and the last 5 pages of Defendants' opposition brief (ECF No. 128), which contravene the Court's scheduling order at ECF No. 117.  However, even if the Court were to consider these materials, it would not change its conclusion in this case, because, as explained, *infra*, the Court concludes that Plaintiff has failed to adduce any admissible evidence as to loss causation and damages within the discovery period.

[2] All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Johnson*, 680 F.3d at 236. But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e) (amended to Fed. R. Civ. P. 56(c)(4) in 2010)).

## DISCUSSION

## I.    Elements of a Section 10(b) and Section 20(a) Claim

The basic elements of a securities fraud claim for violation of Section 10(b) and Rule 10b-5 are: "(1) a material misrepresentation (or omission); (2) scienter, *i.e.,* a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance . . . ; (5) economic loss; and (6) loss causation, *i.e.*, a causal connection between the material misrepresentation and the loss." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 180-81 (S.D.N.Y. 2008) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).

To state a claim under Section 20(a), a plaintiff must allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant

7

was, in some meaningful sense, a culpable participant in the controlled person's fraud."
*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014).

## II.    Application

Defendants move for summary judgment on two alternative grounds: (1) that Plaintiff has failed to offer any evidence demonstrating loss causation and damages, two essential elements of his securities fraud claims; and (2) that the alleged misstatements are not actionable as a matter of law. Because the Court agrees with Defendants that Plaintiff has not offered admissible evidence to demonstrate loss causation and damages, it does not reach Defendants' alternative argument that the alleged misstatements are not actionable, nor does it address Plaintiff's arguments in his own motion for summary judgment as to the remaining elements of his securities fraud claims.

### A.    The Second Werner Declaration

Defendants moved for summary judgment on the basis that Plaintiff allowed the discovery period to lapse without ever presenting expert analysis on loss causation and damages, thereby foreclosing any chance of proving those essential elements of his claims at trial. *See* Defs.' Mem. at 14-16. Plaintiff, meanwhile, submitted an expert declaration on loss causation and damages for the first time in connection with his own motion for summary judgment—nine months after the close of expert discovery. *See* Second Werner Decl. The Court must decide, as a threshold matter, whether the Second Werner Declaration is admissible.

Rule 26 requires a party seeking to use an expert witness at trial to disclose the expert's identity. Fed. R. Civ. P. 26(a)(2)(A). If that expert has been "retained or specially employed to provide expert testimony in the case," the party's disclosure "must be accompanied by a written report" that contains, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Pursuant to Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Expert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1) . . . ." *In re Kreta Shipping, S.A.*, 181 F.R.D. 273, 275 (S.D.N.Y. 1998).

"[C]ourts will not admit supplemental expert evidence following the close of discovery when it expounds a wholly new and complex approach designed to fill a significant and logical gap in the first report, as doing so would eviscerate the purpose of the expert disclosure rules." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 279 (S.D.N.Y. 2011)). Accordingly, courts in this Circuit routinely exclude expert testimony disclosed for the first time during summary judgment briefing. *See, e.g.*, *Franconero v. UMG Recordings, Inc.*, 542 F. App'x 14, 16-17 (2d Cir. 2013) (affirming exclusion of expert affidavit submitted in opposition to summary judgment motion and quoting *Cedar Petrochemicals*); *Caruso v. Bon Secours Charity Health Sys., Inc.*, 703 F. App'x 31, 33-34 (2d Cir. 2017) (affirming exclusion of expert reports submitted in opposition to summary judgment motion); *Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 31, 39-42 (S.D.N.Y. 2014) (excluding expert report submitted in opposition to summary judgment motion where report was "designed to fill a significant and logical gap" in past reports and served more than a year after initial disclosures were due), *objections overruled*, 301 F.R.D. 47 (S.D.N.Y. 2014).

As Defendants explain, courts look to four factors in deciding whether to exclude evidence under Rule 37:

> (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997); *see* Defs.'
Resp. at 10-13.[3]  The Court addresses each in turn.

*First*, Plaintiff's explanation of his failure to comply with the discovery deadlines is
halfhearted and unpersuasive.  In his own motion papers, he completely ignores the fact that the
Second Werner Declaration, a cornerstone of his motion, was not previously disclosed.  *See* Pl.'s
Mem.  Then, in response to Defendants' motion, Plaintiff brazenly describes the Second Werner
Declaration as having been "previously submitted"—as if to suggest it was in Defendants'
possession all along, rather than disclosed for the first time the day summary judgment motions
were due.  *See* Pl.'s Resp. at 1.  Finally, almost as an afterthought at the end of his response brief,
Plaintiff states that when the parties proposed a deadline for the close of expert discovery, "it was
counsel for Plaintiff's understanding that these proposed dates were made within the context of
class certification, and that the related expert discovery was discovery within the context of class
certification."  *Id.* at 11.  But nothing in the parties' letters or the Court's orders supports this
reading.  Prior to this case's reassignment, the parties had indicated in their proposed case
management plan that expert testimony would address market efficiency, economic loss, and loss
causation—and the then-operative scheduling order stated that "*all* expert discovery shall be
completed no later than" November 30, 2023.  ECF No. 86 (emphasis added).  In November 2023,
the parties jointly agreed to extend expert discovery to March 22, 2024, agreeing that "expert
discovery should run concurrently with the briefing on class certification."  ECF No. 98.  The

---

[3] At no point does Plaintiff discuss these factors—not in his opening brief in support of
summary judgment, which relied heavily on the belatedly disclosed Second Werner Declaration,
*see* ECF No. 125; not in his response to Defendants' summary judgment motion, in which
Defendant argued that Plaintiff had no evidence of loss causation, *see* ECF No. 132; and not in his
proposed reply brief, *see* ECF No. 136, despite the lengthy discussion of the *Softel* factors in
Defendants' opposition brief, *see* Defs.' Resp. at 10-13.

Court's January 3, 2024 scheduling order stated that "*[a]ll* expert discovery, including expert reports and depositions, shall be completed no later than March 22, 2024." ECF No. 97 (emphasis added). In later requesting an extension of that deadline, the parties never hinted that they understood "*all* expert discovery" to encompass only expert discovery for purposes of class certification. *See* ECF No. 98. The Court is unaware of any other filing or order in this case suggesting that expert discovery would be bifurcated. In the end, this Court's operative scheduling order was crystal clear that Plaintiff was to "complete expert discovery . . . by May 16, 2024." ECF No. 99. Plaintiff's noncompliance with that order is wholly unjustified.

*Second*, the Second Werner Declaration's centrality to Plaintiff's case could be understood to cut either in favor of or against preclusion. On the one hand, the exclusion of critical evidence is obviously more prejudicial to the party seeking to offer that evidence than is the exclusion of less important evidence. *See Softel*, 118 F.3d at 962 (holding that this factor weighed only slightly in favor of inclusion because prejudice from exclusion was slight). On the other hand, a party's late filing of an expert report that is critical to his case "only serves to underscore the inexcusable quality of its delayed submission." *Point Prods. A.G. v. Sony Music Ent., Inc.*, No. 93 Civ. 4001, 2004 WL 345551, at *11 (S.D.N.Y. Feb. 20, 2004); *accord Kelly v. Beliv LLC*, No. 21 Civ. 8134, 2024 WL 1076217, at *8 (S.D.N.Y. Mar. 12, 2024). Here, as in *Point Productions*, "this is not a case in which a new or previously unknown event has recently come to light. Rather, what we have here is an eleventh hour effort to rescue a deficient expert report that has been the basis for the course of this litigation." *Point Prods.*, 2004 WL 345551, at *11. Plaintiff's failure to timely procure and disclose expert testimony that he knew from the start would be essential to his case weighs in favor of exclusion.

*Third*, the prejudice to Defendants from permitting the Second Werner Declaration would be severe. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (affirming

exclusion of evidence where the "prejudice to the defendants in having to prepare for this evidence would have been severe, as discovery would have had to be reopened to determine whether [the expert's] calculations were proper"). Dr. Werner has already been deposed. And throughout his deposition, Dr. Werner specifically cautioned that he was retained to opine on market efficiency and the availability of a common damages methodology, not loss causation or specific damages. *See* Khalouian Decl. Ex. A ("Werner Tr.") at 39:4-8 ("[M]y opinion in this case is on market efficiency and whether or not a general damage methodology exists. I believe the question you're asking refers to loss causation and specific damages."), 52:6-8 ("I haven't been asked to opine on loss causation at this point in time."), 62:20-22 ("I've not been asked to opine on loss causation and specific damages calculations."), ECF No. 121-1. Plaintiff's attempt to submit a second declaration from Dr. Werner on topics that he did not address in his deposition is a quintessential example of sandbagging. And if the Court were to reopen discovery, Defendants would suffer additional "significant prejudice because Defendant[s] would likely have to designate a rebuttal witness, develop rebuttal evidence, defend and take depositions, and then engage in additional motion practice, all at considerable expense. Summary judgment briefing would essentially have to be redone." *Kelly*, 2024 WL 1076217, at *8; *see also Advanced Analytics*, 301 F.R.D. at 41 ("Absent preclusion, discovery will need to be re-opened in order to provide Defendants with an opportunity to explore [the expert's] new 'revelations' that were not previously advanced, 'rendering Defendants' summary judgment motion, addressed in good faith to the theories and evidence that had been disclosed, an expensive waste of effort.'" (quoting *Every v. Makita U.S.A., Inc.*, 02 Civ. 8545, 2005 WL 2757952, at *6 (S.D.N.Y. Oct. 24, 2005)). This factor therefore cuts in favor of exclusion.

    *Fourth*, while a continuance is theoretically not impossible, it would be inappropriate here because of the reasons stated above, and the fact that discovery has now been closed for nearly a

year and a half. *See Design Strategy, Inc.*, 469 F.3d at 297 (noting that fact that discovery had been closed for "approximately one and a half years" "weigh[ed] heavily on both the prejudice and possibility of continuance factors"). At no point in the nine months between the close of expert discovery and the filing of the Second Werner Declaration did Plaintiff's counsel seek a continuance, despite knowing full well that evidence on loss causation and damages would be essential to the case. Even now, Plaintiff's counsel does not affirmatively ask to reopen expert discovery, instead apparently choosing the strategy of pretending nothing is wrong and hoping no one will notice. *See* Pl.'s Mem.; Pl.'s Resp.[4] Granting a continuance here "would only encourage Plaintiff's counsel to . . . utilize the same tactic—filing expert declarations after the deadline to do so has passed—in future cases before this Court and others." *Kelly*, 2024 WL 1076217, at *8.

In sum, Plaintiff's failure to timely disclose the Second Werner Declaration was neither substantially justified nor harmless, and each *Softel* factor weighs in favor of excluding it. Plaintiff offers virtually no argument to the contrary.[5] The Court recognizes that the exclusion of evidence here will have severe consequences, but a "district court has wide discretion to impose sanctions, including severe sanctions, under [Rule] 37." *Design Strategy, Inc.*, 469 F.3d at 294. And here, the Court concludes that the exclusion of the Second Werner Declaration is appropriate in light of

---

[4] In a footnote in his proposed reply brief, Plaintiff grudgingly states that "[t]o the extent Defendants assert that they are entitled to additional discovery in light of Dr. Werner's report, Plaintiff is not opposed to such discovery if Plaintiff is permitted additional discovery with respect to Dr. Tabak's report." Pl.'s Reply at 16 n.5.

[5] Plaintiff's only reference to the admissibility of the Second Werner Declaration, aside from his explanation that counsel understood the discovery deadlines to apply only to class certification, is the brief statement in a footnote in his proposed reply brief that "Defendants have not demonstrated bad faith." *See* Pl.'s Reply at 16 n.5. But the Second Circuit has explicitly held that a showing of bad faith is not required for evidence to be excluded under Rule 37(c)(1). *Design Strategy, Inc.*, 469 F.3d at 296.

Plaintiff's noncompliance with the discovery schedule and minimal efforts to defend or remedy that noncompliance.

### B.    Loss Causation and Damages

To prevail on his Section 10(b) claims, Plaintiff must demonstrate both an economic loss and a causal connection between Defendants' material misrepresentations and that economic loss. *See Dura Pharms., Inc.*, 544 U.S. at 342-43. As the Supreme Court in *Dura* explained, a decline in stock price may reflect "not [an] earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events." *Id.* "Sorting out which declines were caused by such extraneous factors" and which were caused by a defendant's misrepresentations "is generally the province of an expert." *In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 364 (S.D.N.Y. 2009). In securities fraud cases, an expert typically "produces the almost obligatory 'event study' that begins by isolating stock declines associated with market-wide and industry-wide downturns from those specific to the company itself." *Id.* Without such expert analysis to disaggregate confounding factors, there is "simply no way for a juror to determine whether the alleged fraud caused any portion of [p]laintiffs' loss." *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554-55 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010); *see also In re Warner Commc'n Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) ("Undoubtedly, expert testimony would be needed to fix not only the amount, but the existence, of actual damages."), *aff'd*, 798 F.2d 35 (2d Cir. 1986)).

Without the belatedly disclosed Second Werner Declaration, Plaintiff has no evidence from which a jury could find loss causation or damages, two essential elements of his securities fraud

claims.[6]   Indeed, Plaintiff's argument as to loss causation and damages rests entirely on the conclusions drawn by Dr. Werner.  *See* Pl.'s Mem. at 13-18; Pl.'s Resp. at 2-6, 9-10.[7]   Because Plaintiff offers no other evidence of loss causation or damages, his Section 10(b) claims fail as a matter of law.  And because Plaintiff's control personal liability claims under Section 20(a) depend on a primary violation, *see Carpenters*, 750 F.3d at 236, those claims, too, must be dismissed.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (ECF No. 120) is **GRANTED**, Plaintiff's motion for summary judgment (ECF No. 124) is **DENIED**, and the parties' motion for leave to file reply briefs (ECF No. 131) is **DENIED.**

The Clerk of Court is respectfully requested to terminate ECF Nos. 120, 124, and 131, and to close this case.

SO ORDERED.

Dated: September 26, 2025

New York, New York

DALE E. HO
United States District Judge

---

[6] Defendants also attack the Second Werner Declaration on the merits, arguing that it fails to establish that the financial restatement had any actual impact on Kandi's stock price.  *See* Defs.' Resp. at 13-20.  Because the Court excludes the Second Werner Declaration as untimely, it does not address these arguments.

[7] In his proposed reply brief, Plaintiff continues to advance the opinion of Dr. Werner as his sole evidence in support of loss causation and damages.  *See* Pl.'s Reply at 9-12.